1  ARNOLD & PORTER LLP
   MARTIN R. GLICK (No. 40187)
2  marty.glick@aporter.com
   JOHN C. ULIN (No. 165524)
3  john.ulin@aporter.com
   SARAH J. GIVAN (No. 238301)
4  sarah.givan@aporter.com
   SEAN M. CALLAGY (No. 255230)
5  sean.callagy@aporter.com
   Three Embarcadero Center, 7th Floor
6  San Francisco, California 94111-4024
   Telephone:  415.471.3100
7  Facsimile:   415.471.3400

8  Attorneys for Defendant and Counterclaim Plaintiff
   THE SAUL ZAENTZ COMPANY d/b/a Middle-
9  earth Enterprises, a Delaware corporation

BY:___
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2013 JAN 18  PM 3: 23
FILED

10                UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12  FOURTH AGE LIMITED, a United Kingdom          Case No. 12-cv-09912-ABC (SH)
    corporation; PRISCILLA MARY ANNE REUEL
13  TOLKIEN, as TRUSTEE OF THE TOLKIEN           **ANSWER OF THE SAUL**
    TRUST, a United Kingdom Charitable Trust; THE **ZAENTZ COMPANY TO**
14  J.R.R. TOLKIEN ESTATE LIMITED, a United       **THE COMPLAINT AND THE**
    Kingdom corporation; HARPERCOLLINS            **SAUL ZAENTZ COMPANY'S**
15  PUBLISHERS, LTD., a United Kingdom            **COUNTERCLAIMS FOR**
    corporation; UNWIN HYMAN LTD., a United       **(1) DECLARATORY RELIEF**
16  Kingdom corporation; and GEORGE ALLEN &       **AND (2) BREACH OF**
    UNWIN (PUBLISHERS) LTD., a United Kingdom     **IMPLIED COVENANT OF**
17  corporation,                                  **GOOD FAITH AND FAIR**
                                                  **DEALING**
18                     Plaintiffs,

19        v.                                       **REQUEST FOR JURY TRIAL**

20  WARNER BROS. DIGITAL DISTRIBUTION,
    INC., a division of WARNER BROS. HOME
21  ENTERTAINMENT, INC., a Delaware corporation;
    WARNER BROS. ENTERTAINMENT, INC., a
22  Delaware corporation, as successor-in-interest to
    New Line Cinema Corp.; WARNER BROS.
23  CONSUMER PRODUCTS, INC., a Delaware
    corporation; WARNER BROS. INTERACTIVE
24  ENTERTAINMENT, INC., a division of WARNER
    BROS. HOME ENTERTAINMENT, INC., a
25  Delaware corporation; NEW LINE
    PRODUCTIONS, INC., a California corporation,
26  THE SAUL ZAENTZ COMPANY d/b/a Middle-
    earth Enterprises, a Delaware corporation; and
27  DOES 1-10, inclusive,

28                     Defendants.

THE SAUL ZAENTZ COMPANY d/b/a Middle-earth Enterprises, a Delaware corporation,

                Counterclaim Plaintiff,

     v.

FOURTH AGE LIMITED, a United Kingdom corporation; PRISCILLA MARY ANNE REUEL TOLKIEN, as TRUSTEE OF THE TOLKIEN TRUST, a United Kingdom Charitable Trust; THE J.R.R. TOLKIEN ESTATE LIMITED, a United Kingdom corporation; HARPERCOLLINS PUBLISHERS, LTD., a United Kingdom corporation; UNWIN HYMAN LTD., a United Kingdom corporation; and GEORGE ALLEN & UNWIN (PUBLISHERS) LTD., a United Kingdom corporation,

                Counterclaim Defendants,

1    Defendant THE SAUL ZAENTZ COMPANY d/b/a Middle-earth Enterprises

2    ("Zaentz"), a Delaware corporation, answers Plaintiffs' Complaint (the "Complaint")

3    as follows:

4                           **JURISDICTION AND VENUE**

5        1.    Paragraph 1 states legal conclusions to which no response is required.

6        2.    Paragraph 2 states legal conclusions to which no response is required.

7                          **INTRODUCTION STATEMENT**

8        3.    Admitted.

9        4.    Zaentz admits that, pursuant to rights granted to Zaentz and licensed to

10   New Line Cinema, defendant Warner Bros. Entertainment, Inc., through its

11   subsidiary, New Line Cinema, produced and distributed three motion pictures based

12   on *The Lord of the Rings* (the "Films") between 2000 and 2003.  Zaentz admits that

13   Defendants also obtained certain rights to *The Hobbit* and that three motion pictures

14   based on *The Hobbit* have scheduled release dates in December 2012 (already

15   released), December 2013, and July 2014.  Except as specifically admitted, the

16   allegations of Paragraph 4 are denied.

17       5.    Zaentz admits that when its predecessors-in-interest obtained the film

18   rights to *The Lord of the Rings* and *The Hobbit* in 1969, its predecessors-in-interest

19   also obtained merchandising rights, including the right to use the characters, places,

20   objects and events referred to in *The Lord of the Rings* and *The Hobbit*.  Except as

21   specifically admitted, the allegations of Paragraph 5 are denied.

22       6.    Zaentz admits the first sentence of Paragraph 6.  Zaentz admits there

23   exists a continuing demand for particular types of goods that incorporate elements

24   from Tolkien's *The Lord of the Rings* and *The Hobbit* in many areas of the world.

25   Except as specifically admitted, the allegations of the second sentence of Paragraph 6

26   are denied.

27       7.    Zaentz admits that the Films were a financial and critical success.

28   Zaentz admits that Defendants have for many years and with the knowledge of

Plaintiffs licensed the right to develop and sell downloadable video games based on *The Lord of the Rings* and *The Hobbit*, including but not limited to games available only by downloading or access to the Internet.  Zaentz further admits that, for decades and with the knowledge and acquiescence of Plaintiffs, it has asserted that it has rights relating to a wide variety of goods and services, and also has registered trademarks and filed "intent to use" applications in categories such as hotels, restaurants, travel agencies, ringtones, and online/downloadable games.  Except as specifically admitted, the allegations of Paragraph 7 are denied.

8.     Zaentz admits that it has licensed the production and distribution of gambling games featuring characters and story elements from the Films in brick-and-mortar casinos.  Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 concerning the reactions and comments of fans and therefore denies same.  Except as specifically admitted, the remaining allegations of Paragraph 8 are denied.

9.     Paragraph 9 states legal conclusions to which no response is required.  To the extent a response is required, Zaentz admits that Plaintiffs agreed to grant Defendants certain rights to exploit *The Lord of the Rings* and *The Hobbit*.  Except as specifically admitted, the allegations of Paragraph 9 are denied.

10.     Zaentz admits that the parties have engaged in settlement discussions that were unsuccessful. Except as specifically admitted, the allegations of Paragraph 10 are denied.

11.     Paragraph 11 states legal conclusions to which no response is required.  To the extent a response is required, the allegations of Paragraph 11 are denied.

**THE PARTIES**

12.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 and therefore denies same.

13.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 and therefore denies same.

14.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 and therefore denies same.

15.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 and therefore denies same.

16.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 and therefore denies same.

17.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 and therefore denies same.

18.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 and therefore denies same.

19.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 and therefore denies same.

20.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 and therefore denies same.

21.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 and therefore denies same.

22.     Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 and therefore denies same.

23.     Zaentz admits that it is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Berkeley, California, and that it does business with entities located in Los Angeles, California. Zaentz admits the second sentence of Paragraph 23.  Except as specifically admitted, the allegations of Paragraph 23 are denied.

24.     Paragraph 24 states legal conclusions to which no response is required. To the extent a response is required, Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 and therefore denies same.

25.     Paragraph 25 states legal conclusions to which no response is required.

To the extent a response is required, the allegations of Paragraph 25 are denied.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

26. Admitted.

27. Admitted.

28. Admitted.

29. Paragraph 29 states legal conclusions to which no response is required. To the extent a response is required, Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29 and therefore denies same.

30. Paragraph 30 states legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 30 are denied.

31. Zaentz admits that *The Lord of the Rings* and *The Hobbit* (and associated and proprietary characters, elements and marks) are among the most famous and valuable marks in the world, and that an excellent reputation and highly valuable goodwill has been developed in *The Lord of the Rings* and *The Hobbit* (and associated characters, elements and marks) and in the products, goods and services featuring them. Zaentz denies that this is a result of *Plaintiffs'* efforts; rather, the fame and goodwill developed in these marks, products, goods, and services is largely the result of the dedicated efforts of Zaentz and its licensees (including Warner Bros.) over the past four decades. Except as specifically admitted, the allegations of Paragraph 31 are denied.

32. Admitted that there is an agreement between Sassoon and United Artists dated July 8, 1969, and that there is an agreement between George Allen & Unwin, Ltd. ("GAU") and United Artists dated July 8, 1969 (collectively, the "1969 Agreements"). Except as specifically admitted, the allegations of Paragraph 32 are denied.

33. Admitted that under the 1969 Agreements, United Artists obtained, inter alia, the right to make films based on *The Lord of the Rings*. Except as specifically

admitted, the allegations of Paragraph 33 are denied.

34.   Zaentz admits that under Schedules D to the 1969 Agreements (hereinafter, the "Schedules D") (which were executed subsequently by the parties to the 1969 Agreements), United Artists obtained additional merchandising rights to those granted by the remainder of the 1969 Agreements in connection with *The Lord of the Rings* and *The Hobbit*.  Except as specifically admitted, the allegations of the first sentence of Paragraph 34 are denied.  Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34 and therefore denies same.

35.   Denied.

36.   Zaentz admits that the 1969 Agreements contain a clause specifying reservation of "the right to utilize and/or dispose of all rights and/or interests not herein specifically granted."  Zaentz denies that this clause in any way prohibits any of the activities that Plaintiffs allege are beyond the scope of the parties' agreements, and notes that the 1969 Agreements "grant[] and sell[] to [Zaentz] for the entire world all of the motion picture rights in and to the Work" . . . ."forever", and that such rights include the "exclusive, unlimited and unrestricted rights to  . . . exploit, dispose of, and generally deal in and with [its films] in any other manner or by any method whatsoever, whether now known or hereafter devised . . . ." and "the right to use and exploit and to license others to use and exploit all commercial tie-ups of any sort or nature arising out of or connected with said motion picture photoplays . . . ."  Except as specifically admitted, the allegations of Paragraph 36 are denied.

37.   Zaentz admits that the Paragraph 15 of the Schedules D contains a clause that states in part, "None of the terms of this agreement can be waived or modified except by an express agreement in writing signed by both parties."   Except as specifically admitted, the allegations of Paragraph 37 are denied.

38.   Zaentz admits that the Schedules D were amended on or about October 20, 1975 (the "1975 Amendment"), and that the 1975 Amendment stated in part that

1  it was intended to "provide general guidance in determining the rights in other such
2  articles as to which questions may arise in the future."  Zaentz further admits that the
3  1975 Amendment lists several categories of products as illustrative examples of some
4  of the types of products each party may produce.  Except as specifically admitted, the
5  allegations of Paragraph 38 are denied.

6      39.    Admitted.

7      40.    Zaentz admits that the Schedules D were further amended in or about
8  November 16, 1981 (the "1981 Amendment").  Except as specifically admitted, the
9  allegations of Paragraph 40 are denied.  Zaentz notes that additional agreements have
10  been entered among Plaintiffs, Zaentz, various of the Defendants and third parties
11  concerning Defendants' rights, including but not limited to an agreement dated
12  September 7, 2010, concerning rights in *The Hobbit*, and an agreement dated
13  September 1, 2010, specifying the application of California law.

14      41.    Zaentz admits that through a number of written agreements, New Line
15  Cinema succeeded to certain of the rights, interests, and obligations of United Artists
16  and Zaentz under the 1969 Agreements and the Schedules D.  Except as specifically
17  admitted, the allegations of Paragraph 41 are denied.

18      42.    Admitted.

19      43.    Zaentz admits that the Films and associated merchandising have earned
20  Zaentz and Warner Bros. millions of dollars in merchandising revenue, and notes that
21  Plaintiffs likewise have received millions of dollars in royalties as a result of the
22  success of the Films and merchandising.  Zaentz lacks knowledge or information
23  sufficient to form a belief as to the truth of the allegations of Paragraph 43 and
24  therefore denies same.

25      44.    Zaentz lacks knowledge or information sufficient to form a belief as to
26  the truth of the allegations of Paragraph 44 and therefore denies same.

27      45.    Zaentz lacks knowledge or information sufficient to form a belief as to
28  the truth of the allegations of Paragraph 45 and therefore denies same.

46.     Zaentz admits that Defendants did in the past license the development, distribution, and marketing of an online slot game based on the Films, but such game is no longer being made available.  Except as specifically admitted, the allegations of Paragraph 46 are denied as to Zaentz.  As to Warner Bros., Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46 and therefore denies same.

47.     Denied as to Zaentz.  As to Warner Bros., Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47 and therefore denies same.

48.     Zaentz admits that Defendants have licensed and provided content and approvals in connection with a Lord of the Rings-themed casino slot machine featuring the characters, events, and imagery from the Films (the "Casino Slot Machine").  Zaentz admits that Defendants licensed the right to develop, manufacture and distribute the Casino Slot Machine to WMS Gaming, Inc., which has licensed and distributed and continues to manufacture, license and distribute the Casino Slot Machine to casinos in various countries and in California.  Except as specifically admitted, the allegations of Paragraph 48 are denied.

49.     Zaentz admits that a player of the Casino Slot Machine can, if they choose, create a personal account on a dedicated website, in order to access additional content, free of charge, that will enable enhanced gameplay.  Except as specifically admitted, the allegations of Paragraph 49 are denied.

50.     Zaentz admits that plaintiffs stated their objection in writing to the Online Slots and Casino Slot Machines and alleged that these activities violated plaintiffs' rights in and to *The Lord of the Rings*.  Except as specifically admitted, the allegations of Paragraph 50 are denied.

51.     Zaentz admits that the parties subsequently engaged in settlement discussions that were unsuccessful. Except as specifically admitted, the allegations of Paragraph 51 are denied.

52.     Denied.

53.     Admitted that some of the Defendants have licensed, sold, distributed, and marketed, with plaintiffs' knowledge, a series of video games based on *The Lord of the Rings* that can be acquired digitally by way of electronic download and can be accessed online.   Zaentz denies that Defendants have developed, licensed, sold, distributed or marketed online video games based on *The Lord of the Rings* without authorization from plaintiffs.   Except as specifically admitted, the allegations of Paragraph 53 are denied.

54.     Admitted that some of the Defendants have licensed, sold, distributed, and marketed, with plaintiffs' knowledge, a series of video games based on *The Hobbit* that are accessible online and/or through digital download.  Zaentz denies that Defendants have developed, licensed, sold, distributed or marketed online video games based on *The Hobbit* without authorization from plaintiffs.   Except as specifically admitted, the allegations of Paragraph 54 are denied.

55.     Denied.

56.     Admitted that Schedules D do not give Zaentz "unlimited" rights to exploit *The Lord of the Rings* or *The Hobbit*.   Except as specifically admitted, the allegations of Paragraph 56 are denied.

57.     Zaentz admits that it has over the past four decades carefully developed and invested resources in a trademark program designed to protect its rights in connection with *The Lord of the Rings* and *The Hobbit*.   Except as specifically admitted, the allegations of Paragraph 57 are denied.

58.     Zaentz admits that the parties dispute the scope of Defendants' rights under the 1969 Agreements, the Schedules D, and their amendments.  Zaentz admits that it contends that its merchandising and trademark rights include downloadable games and services such as travel agencies, hotels, restaurants, theme parks, and gambling.   Except as specifically admitted, the allegations of Paragraph 58 are denied.

59.     Zaentz admits that it has registered as the owner of trademarks in International Class 16 (paper goods and printed matter).  Plaintiffs have been aware of this activity and these registrations for *decades*.  Except as specifically admitted, the allegations of Paragraph 59 are denied.

60.     Zaentz admits that the parties have engaged in settlement discussions that have been unsuccessful.  Except as specifically admitted, the allegations of Paragraph 60 are denied.

61.     Denied.

## FIRST CLAIM FOR RELIEF

### (Against All Defendants and Does 1-5 for Copyright Infringement)

62.     To the extent the allegations of the preceding paragraphs are admitted or denied, such responses are incorporated herein by reference.

63.     Paragraph 63 states legal conclusions to which no response is required. To the extent a response is required, Zaentz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 63 and therefore denies same.

64.     Paragraph 64 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 64.

65.     Denied.

66.     Paragraph 66 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 66.

67.     Paragraph 67 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 67.

68.     Paragraph 68 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 68.

69.     Paragraph 69 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 69.

**SECOND CLAIM FOR RELIEF**

**(Against Warner Bros. Entertainment, Zaentz and Does 6-10 For**

**Breach of Contract)**

70.     To the extent the allegations of the preceding paragraphs are admitted or denied, such responses are incorporated herein by reference.

71.     Paragraph 71 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 71.

72.     Paragraph 72 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 72.

73.     Paragraph 73 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 73.

74.     Paragraph 74 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 74.

75.     Paragraph 75 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 75.

76.     Paragraph 76 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 76.

**THIRD CLAIM FOR RELIEF**

**(Against all Defendants for Declaratory Judgment—**

**Gambling Games and Downloadable Games Beyond Scope of**

**Merchandising License)**

77.     To the extent the allegations of the preceding paragraphs are admitted or denied, such responses are incorporated herein by reference.

78.     Zaentz admits that an actual controversy has arisen between the parties as to whether the right to develop, produce, advertise, distribute and/or otherwise exploit (a) gambling games based on *The Lord of the Rings* and/or *The Hobbit* (such as the Online Slots and Casino Slot Machine) and (b) digital, downloadable-only video games based on *The Lord of the Rings* and *The Hobbit*, available for play only

via the Internet or via download through digital platforms is within the scope of the rights granted to Zaentz and Warner Bros. by contract, and whether such development, production, advertisement, distribution and/or other exploitation constitutes an infringement of plaintiffs' alleged copyrights in *The Lord of the Rings* and *The Hobbit*s.  Zaentz admits that it contends, and Plaintiffs dispute, that such activities are encompassed in the rights owned by Zaentz and do not constitute copyright infringements.   Except as specifically admitted, the allegations of Paragraph 78 are denied.

79.    Paragraph 79 states legal conclusions to which no response is required.

## FOURTH CLAIM FOR RELIEF

### (Against all Defendants for Declaratory Judgment—

### Extra-Contractual Trademark, Service Marks and Services

### Licensing Activity)

80.    To the extent the allegations of the preceding paragraphs are admitted or denied, such responses are incorporated herein by reference.

81.    Paragraph 81 states legal conclusions to which no response is required. To the extent a response is required, Zaentz denies the allegations of Paragraph 81.

82.    Denied.

83.    Zaentz admits that it contends that it has the right to license others to use the "Name and Subject Marks" in association with services, and that it has broad merchandising rights in such services such as hotels, restaurants, travel agencies, ringtones, and online games, casino gambling and online/downloadable video games. Zaentz admits that it has registered trademarks or services marks in some of these categories.   Except as specifically admitted, the allegations of Paragraph 83 are denied.

84.    Paragraph 84 states legal conclusions to which no response is required. To the extent a response is required, Zaentz admits that there is a dispute between the parties regarding the scope of Defendants' merchandising rights.   Except as

1    specifically admitted, the allegations of Paragraph 84 are denied.

2        85.    Paragraph 85 states legal conclusions to which no response is required.

3        86.    Paragraph 86 states legal conclusions to which no response is required.

4        87.    Paragraph 87 states legal conclusions to which no response is required.

5                          **PRAYER FOR RELIEF**

6        88.    Zaentz denies the Prayer for Relief contained in the wherefore clause

7    and accompanying paragraphs 1(a)-(c), 2(a)-(b), 3(a)-(c), 4(a)-(b), and 5(a)-(b), and

8    denies that Plaintiffs are entitled to any of the relief requested in its prayer for relief

9    or any relief whatsoever.

10                         **AFFIRMATIVE DEFENSES**

11       Zaentz hereby sets forth its separate and affirmative defenses to the

12   Counterclaims, without conceding that the burden of proof rests with Zaentz with

13   respect to these issues. Zaentz reserves the right to assert such other separate and

14   affirmative defenses as continuing investigation and discovery may disclose.

15                    **FIRST AFFIRMATIVE DEFENSE**

16                      **(Failure to State a Claim)**

17       89.    Plaintiff's Complaint, in whole or in part, fails to state claims upon

18   which relief may be granted.

19                   **SECOND AFFIRMATIVE DEFENSE**

20                        **(Lack of Standing)**

21       90.    Plaintiffs lack standing to pursue some or all of the claims asserted in the

22   Complaint.  Zaentz is informed and believes, and on that basis alleges, that the term

23   "Plaintiffs" is defined in the Complaint to include six entities or individuals, and that

24   the Complaint never articulates which Plaintiffs own which interests, if any, or which

25   claims each Plaintiff is pursuing against Zaentz.

26                    **THIRD AFFIRMATIVE DEFENSE**

27                      **(Consent, Authorization)**

28       91.    Plaintiffs' claims are barred, in whole or in part, on the ground that

Plaintiffs expressly or impliedly consented to and/or authorized Zaentz's actions.

## FOURTH AFFIRMATIVE DEFENSE

### (Acquiescence, Ratification)

92.   Plaintiffs' claims are barred, in whole or in part, because Plaintiffs ratified and acquiesced to Zaentz's assertion of rights and actual exploitation of those rights.

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

93.   Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

### (Estoppel)

94.   Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

### (Laches)

95.   Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

## EIGHTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

96.   Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations, including 17 U.S.C. §507(b), Cal. Code Civ. Proc. §337, and/or N.Y. Civ. Prac. Laws & Rules §213.  Zaentz is informed and believes, and on that basis alleges, that Plaintiffs knew of Defendants' assertions of rights and actual exploitation of rights long before the application limitations periods.

## NINTH AFFIRMATIVE DEFENSE

### (Release)

97.   Plaintiffs' claims are barred, in whole or in part, by the release entered

into by Plaintiffs in the "Hobbit Binding Term Sheet" agreement dated as of September 7, 2010.

## TENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

98.   Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Remedy Limited to Action at Law for Damages)

99.   Plaintiff's claims for injunction are barred, in whole or in part, by contractual provisions providing that Plaintiffs' only remedy for alleged breach is an action at law for damages.

## TWELFTH AFFIRMATIVE DEFENSE

### (Material Breach)

100.   To the extent there is otherwise a valid contract claim against Zaentz, Plaintiffs' claim is barred by their own material breach of the parties' agreements, including the implied covenant of good faith and fair dealing.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

101.   Plaintiffs' claims are barred, in whole or in part, on the ground that Plaintiffs would be unjustly enriched if they were granted the relief sought.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Apportionment)

102.   In the event that Plaintiffs prevail in this action, in whole or part, the Zaentz will be entitled to a reduction of damages awarded equal to any distribution to, or recovery by, Plaintiffs from any other sources, including co-defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Damages Uncertain, Contingent, and Speculative)

103.   Plaintiffs are not entitled to recover the alleged damages, if any, because

they are uncertain, contingent and speculative.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

104.   Plaintiffs failed to take reasonable and appropriate steps to mitigate the alleged damages, if any.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Reservation of Defenses)

105.   Zaentz reserves the right to allege other affirmative defenses as they may become known during the course of discovery, and hereby reserve the right to amend its answer to allege such affirmative defenses at such time as they become known.


Dated: January 18, 2013

ARNOLD & PORTER LLP

By: _____
Martin R. Glick
John C. Ulin
Sarah J. Givan
Sean M. Callagy

Attorneys for Defendant THE SAUL ZAENTZ COMPANY d/b/a Middle-earth Enterprises, a Delaware corporation

## **COUNTERCLAIMS**

Defendant THE SAUL ZAENTZ COMPANY d/b/a Middle-earth Enterprises ("Zaentz"), a Delaware corporation, as and for its counterclaims against Fourth Age Ltd., Priscilla Mary Anne Reuel Tolkien, The Tolkien Trust, The J.R.R. Tolkien Estate Ltd., HarperCollins Publishers, Ltd., Unwin Hyman Ltd., and George Allen & Unwin (Publishers) Ltd. (collectively, "Counterclaim Defendants"), allege as follows:

### **JURISDICTION AND VENUE**

1.      This Court has supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367(a) because these claims arise out of the subject matter of the original action.  Additionally, the claims for declaratory judgment are brought under 28 U.S.C. § 2201.

2.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial part of the wrongful conduct alleged herein occurred in this district.

### **NATURE OF THE ACTION**

3.      Zaentz brings these claims to vindicate the rights it acquired to *The Lord of the Rings* and *The Hobbit* (collectively, the "Works").  Zaentz and its predecessors-in-interest paid substantial consideration for broad rights in the Works.  Counterclaim Defendants have asserted that, under existing agreements with Zaentz, Zaentz cannot use or license motion pictures based on the Tolkien Works, or trademarks derived from the Works, on or in connection with online/downloadable video games; slot machines; online gambling sites; or any services.  This contention by the Counterclaim Defendants contravenes the plain, unambiguous language of the parties' agreements and is directly counter to the actual course of conduct of the parties spanning several decades.

4.      Even though Counterclaim Defendants granted these rights away long ago and have, for many years, consented to their exploitation in this manner, Counterclaim Defendants have made a complete about face and now assert that Zaentz does not have certain rights in the Works, including online/downloadable

video games, gambling games, and services.   Counterclaim Defendants take this position despite their prior knowledge of Zaentz's activities, the significant royalties they have received from those activities, and their express and implied assurances that Zaentz has these rights.

5.     Zaentz has no choice but to file these Counterclaims to thwart Counterclaim Defendants' attempt to extract more compensation for rights it granted to Zaentz's predecessors-in-interests more than four decades ago.   Zaentz (and its predecessors-in-interest) has already acquired and paid for these rights; Zaentz seeks to exercise them without further interference from Counterclaim Defendants.

## THE PARTIES

6.     The Saul Zaentz Company is a Delaware corporation with its principal place of business in Berkeley, California.   Saul Zaentz has dedicated his professional life to the production of creative works of art, and in so doing has made historic contributions to the worlds of music and film.   After his early years managing concert tours for such artists as Stan Getz and Duke Ellington, Mr. Zaentz, in 1967, became the principal owner of Fantasy Records, and he produced the quintessential American roots-rock band, Creedence Clearwater Revival.   Mr. Zaentz's decades of work in film production resulted in three Best Picture Academy Awards for his films: *One Flew Over The Cuckoo's Nest* (1975), *Amadeus* (1984), and *The English Patient* (1996).   In 1976, Zaentz obtained substantial rights in the Tolkien Works, which it has exploited extensively in film and stage productions and in merchandising and licensing of those properties.   The film rights were ultimately licensed to New Line Cinema (since acquired by Warner Bros.), which made the epic *The Lord of the Rings* trilogy, a series of motion pictures which proved a staggering commercial and critical success (collectively, and including the one recently-released and two additional anticipated films based on *The Hobbit*, the "New Line Films").

7.     Upon information and belief, Fourth Age Ltd. is a corporation created and existing under the laws of the United Kingdom.

- 17 -

8.      Upon information and belief, Priscilla Mary Anne Reuel is a citizen and resident of the United Kingdom and a Trustee of The Tolkien Trust.

9.      Upon information and belief, The Tolkien Trust is a registered charity created and existing under the laws of the United Kingdom.

10.     Upon information and belief, The J.R.R. Tolkien Estate Ltd. is a corporation created and existing under the laws of the United Kingdom.

11.     Fourth Age Ltd., Priscilla Mary Anne Reuel Tolkien, The Tolkien Trust, and The J.R.R. Tolkien Estate are sometimes referred to collectively herein as the "Estate."   Upon information and belief, the Estate is the successor-in-interest to J.R.R. Tolkien with respect to certain of his copyright interests in *The Lord of the Rings* and *The Hobbit*.

12.     Upon information and belief, HarperCollins Publishers, Inc. is a corporation created and existing under the laws of the United Kingdom.

13.     Upon information and belief, Unwin Hyman Ltd. is a corporation created and existing under the laws of the United Kingdom and is a wholly-owned subsidiary of HarperCollins.

14.     Upon information and belief, George Allen & Unwin (Publishers) Ltd. is a corporation created and existing under the laws of the United Kingdom and is a wholly-owned subsidiary of Unwin Hyman Ltd.

15.     Upon information and belief, HarperCollins is the worldwide licensee of the book publishing rights in *The Lord of the Rings* and *The Hobbit*, George Allen & Unwin is the successor-in-interest to the 1969 agreements with United Artists, and Harper Collins and Unwin Hyman acquired certain rights from George Allen & Unwin.

16.     Zaentz is informed and believes, and based thereon alleges that in doing the acts and things hereinafter alleged, each counterclaim defendant acted individually for itself, and as the agent, employee, and/or representative of each of the other counterclaim defendants and, in doing the things hereinafter alleged, each was

1    at all times acting within the course and scope of said agency, representation or

2    employment relationship with the advance knowledge, acquiescence, or subsequent

3    ratification of each and every other counterclaim defendant.

4                                   **FACTUAL BACKGROUND**

5    **The Contracts At Issue**

6             17.    In 1969, Counterclaim Defendants via their purported predecessors-in-

7    interest granted to United Artists various film, stage, and merchandising rights

8    relating to the Tolkien Works.   Two of these agreements dated July 8, 1969,

9    colloquially referred to as Contracts A and B, granted United Artists broad film and

10   stage rights to the Works, including broad rights to advertise and exploit such

11   productions.   Various schedules were attached to Contracts A and B, including

12   "Schedule D", which granted United Artists an optional right to conduct various

13   trademark and merchandising activities that need not have any tie to film or stage

14   works relating to the Works.   Collectively, these agreements are referred to herein as

15   the "1969 Agreements."

16            18.    The 1969 Agreements have been amended and clarified by the parties

17   over the years, including but not limited to pursuant to written amendments in 1975

18   and 1981.   Zaentz acquired United Artists' rights via written agreement in 1976.

19            19.    Contracts A and B unequivocally grant Zaentz the right to advertise and

20   exploit the Works, in connection with films based on them, "in any manner and

21   through any mediums that [Zaentz] may desire . . . ."   Zaentz also was given the

22   "exclusive, unlimited and unrestricted rights to . . . exploit, dispose of, and generally

23   deal in and with [its films] in any other manner or by any method whatsoever,

24   whether now known or hereafter devised . . . ."   This right expressly extends to

25   "commercial tie-ups of any sort or nature" involving the films or the titles, characters,

26   or names associated with the films.

27            20.    Based on this plain language, there can be no question that Zaentz can

28   exploit its film productions by, for example, using clips and still images from these

films in any way in connection with any products, services, or businesses.  The 1969 Agreements impose no restriction whatsoever on the nature of the products, services, or businesses with which Zaentz's and its licensees' films may be associated, except for a limitation on certain print publications not at issue between the parties.

21.    A number of agreements have governed the relationship between Zaentz and Warner Bros. Home Entertainment, Inc., Warner Bros. Entertainment, Inc., Warner Bros. Consumer Prods., Inc., and New Line Productions, Inc. (collectively, "Warner").  Over the years, Zaentz has optioned or licensed to Warner rights to use the Tolkien Works and the trademarks associated with those works in various forms, including, of particular importance here, online video games, slot machines, and online games of chance.

22.    In 2010, for purposes relating to possible rights various Tolkien heirs might have claimed to possess to terminate certain transfers of copyright, the parties agreed to implement a further agreement (hereinafter, the "2010 Regrant Agreement") pursuant to which the Estate, HarperCollins, and their purported predecessors-in-interest revoked those transfers of copyright.  In addition, the Estate, HarperCollins, and their purported predecessors-in-interest re-granted to Zaentz all of the same rights as were granted under the 1969 Agreements, including any and all amendments, on the same terms and conditions as existed previously, in exchange for significant consideration from both Zaentz and the Warner Counterclaim Plaintiffs to Counterclaim Defendants.

**Zaentz's and Warner's Long History of Exploitation Of Online Video Games and Gambling Without Objection by Counterclaim Defendants**

23.    For years, and with Counterclaim Defendants' knowledge, Zaentz and Warner have asserted their contractual rights to and exploited online video games and gambling games based on *The Lord of the Rings* and *The Hobbit*.  Notwithstanding this long history of exploitation, Counterclaim Defendants never voiced any objection until late 2010.  Prior to this time, Counterclaim Defendants had knowingly accepted

royalty payments from this very exploitation, and they continue to do so today.

24.    Counterclaim Defendants' knowledge of and agreement with Zaentz's and Warner's exploitation of these rights is well-documented and, upon information and belief, discovery in this case will uncover even more evidence of their knowledge.

25.    For example, over 16 years ago, the parties confirmed that Zaentz had the rights to online video games.  In May 1996, Zaentz told Defendant HarperCollins "in the strongest terms possible, that [Harper Collins and the Estate] ha[d] no right to any computer games…[A]ny computer or on-line game that uses graphics (rather than words) as its primary tool is, *ipso facto*, property of [Zaentz.]"  In its July 1996 response, HarperCollins conceded the correctness of Zaentz's position.  Moreover, even though Cathleen Blackburn, counsel for the Estate and its purported predecessors-in-interest, as well as the company secretary for some of them, was copied on these letters, the Estate never voiced any objection to Zaentz's position nor to HarperCollins' admission.

26.    Just two years later, the Estate confirmed Zaentz's online video game rights.  Throughout the parties' long relationship, the Estate has, at times, requested, received, and reviewed Zaentz's license agreements with downstream parties, such as Warner.  Consistent with this practice, the Estate reviewed a 1998 agreement between Zaentz and Sierra On-Line for a "license covering computer and *on-line games*."  That license agreement explicitly licensed the right to games for "*any on-line network*, including without limitation, the global computer network commonly known as the *Internet*…."  Other provisions of the license agreement reinforce the "online" nature of the rights being licensed.  After reviewing a copy of the executed Sierra license, Ms. Blackburn declared that the "rights granted to Sierra" were "rights granted [to Zaentz's predecessor in interest] under the 1969 merchandising agreements."  Leaving no doubt, two years later, in August 2000, Ms. Blackburn reaffirmed that the Sierra license was "validly granted."  Thus, Ms. Blackburn

confirmed in written representations on behalf of Counterclaim Defendants or their predecessors-in-interest that the grant conveyed rights to online video games. If for any reason the original agreements did not confer online video game rights, Ms. Blackburn amended the original grant to include those rights.

27. The same month that Ms. Blackburn reaffirmed that the online video game rights were validly granted, Ms. Blackburn confirmed to a third party that Zaentz was the proper source of online video game rights to *The Lord of the Rings* and *The Hobbit*. Specifically, in August 2000, Ms. Blackburn received a fax from a third party inquiring "whether the on-line rights to Tolkien's Trilogy and The Hobbit were, in fact, granted to Saul Zaentz Company or Zaentz's Tolkien Enterprises, or whether the opportunity still exists to license the on-line rights to such literary works from the Estate of J.R.R. Tolkien." In response, Ms. Blackburn directed the third party to Zaentz and also forwarded a copy to Zaentz, noting that the exchange of correspondence was "self-explanatory." Had Ms. Blackburn actually believed that Zaentz did not hold rights to all types of online exploitation, there would have been no reason to refer this third party to Zaentz.

28. The 1969 Agreements convey rights to Zaentz to online video games. To the extent the 1969 Agreements did not originally convey rights to online video games, the 1969 Agreements were amended in 1998 to convey online video game rights.

29. Counterclaim Defendants also received and reviewed many of Zaentz's trademark and service mark registration applications. These applications expressly cover, *inter alia*, online video games, downloadable games, gambling games, and various services. Some of these trademark registrations have been on the Federal Register and foreign trademark registries for decades.

30. Additionally, Zaentz, through its licensees such as Warner, has openly exploited the rights to online video games and gambling games in the international market for many years. Given Counterclaim Defendants' active monitoring of

activity based on the Works, they clearly had at least constructive notice of this activity.

31.    As these examples demonstrate, Counterclaim Defendants have long known of and agreed to Zaentz's and Warner's exploitation of online video games and gambling games.

**Zaentz's Trademarks, Service Marks, and Service Licensing**

32.    Counterclaim Defendants have also raised disputes with respect to Zaentz's registration of trademarks and service marks derived from the names and visual representations of the characters, places, items, and events depicted in the Works (referred to herein as the "Tolkien Marks").  Zaentz has spent over 35 years, and over $30 million, in its efforts to register and protect the Tolkien Marks world-wide.  Zaentz currently owns approximately 5,620 active registrations and pending applications for the Tolkien Marks throughout the world.  Zaentz's registration program is integral to its world-wide licensing program and essential to its efforts to prevent consumers from being deceived by counterfeiters.  Counterclaim Defendants have benefitted enormously from these activities, having received tens of millions of dollars from Zaentz's merchandising program.    Despite this, Counterclaim Defendants now raise objections to some of Zaentz's trademark registration activities.

33.    Counterclaim Defendants assert that Zaentz has unlawfully registered as the owner of trademarks and services marks in categories that do not qualify as "articles of tangible personal property," and asserts that Zaentz has no merchandising rights beyond "articles of tangible personal property."  Counterclaim Defendants have given the following as examples of goods and services to which they allege Zaentz has no rights to exploit or register trademarks or services marks for: online/downloadable video games, casino gambling, hotels, restaurants, travel agencies, ringtones, online games, educational services, parties, festivals and cultural activities and amusement and theme parks.

34.    Counterclaim Defendants have also known of Zaentz's activities and

registrations for goods and services in a number of these categories for many years. Indeed, at times Counterclaim Defendants have actively urged Zaentz to take enforcement action against third party infringers who were unlawfully using the Tolkien Marks in these categories, and Zaentz has done so at considerable expense.

35.    The 1969 Agreements expressly include the right to register service marks.  Zaentz has been acting well within its rights in not only using the Tolkien Marks in these categories, but in registering them, as well.  Indeed, Zaentz has spent millions of dollars over the decades registering the Tolkien Marks in these categories, ultimately to the benefit of all of the parties.

36.    Counterclaim Defendants also assert that Zaentz has unlawfully registered as the owner of trademarks in International Class 16, relating to printed published matter, contending that this excludes Counterclaim Defendants from registering marks in that class for printed published matter.  This is not a new issue. Zaentz first registered the Tolkien Marks in Class 16 in the late 1970's with Counterclaim Defendants knowledge and continues to do so today.

## FIRST COUNTERCLAIM
### (Declaratory Judgment)

37.    Zaentz realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 36 as though set forth in full herein.

38.    There presently exists between the parties an actual controversy and dispute in that Zaentz claims the right to exploit online video games and gambling games based on the Works and/or films based on those Works.  Counterclaim Defendants deny that Zaentz has such rights.

39.    There presently exists between the parties an actual controversy and dispute in that Zaentz claims the right to use and license others to use the Tolkien Marks in connection with goods and services including but not limited to online/downloadable video games, casino gambling, hotels, restaurants, travel agencies, ringtones, online games, educational services, parties, festivals and cultural

activities, amusement and theme parks, and goods under International Class 16. Counterclaim Defendants deny that Zaentz has such rights.

40.    In addition, Counterclaim Defendants have purported to sue Zaentz for its exploitation activities without any limitation as to time.  The parties, however, previously entered into general releases.   Under the 2010 Regrant Agreement, Counterclaim Defendants released any claims based on conduct occurring on or before September 1, 2010.

41.    Zaentz hereby requests a declaration of this Court setting forth the respective rights and other legal relations of Zaentz and Counterclaim Defendants.  In particular, Zaentz requests the following declarations:

a. Zaentz may exercise its rights to exploit online/downloadable video games based on the Works;

b. Zaentz may exercise its rights to exploit gambling games based on the Works;

c. Counterclaim Defendants are estopped from challenging Zaentz's exploitation of online/downloadable video games;

d. Counterclaim Defendants are estopped from challenging Zaentz's exploitation of gambling games;

e. Zaentz may exercise its right to register trademarks, use and license others to use the Tolkien Marks in connection with goods and services including online/downloadable video games, gambling games, hotels, restaurants, travel agencies, ringtones, online games, educational services, parties, festivals and cultural activities, amusement and theme parks;

f. Zaentz may exercise its right to register trademarks in International Class 16;

g. Counterclaim Defendants are precluded from asserting any claims based on conduct occurring prior to September 1, 2010.

42.   It is necessary and appropriate that the Court render the requested declaratory judgment so that the parties can govern themselves accordingly.

## SECOND COUNTERCLAIM
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

43.   Zaentz realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 42 as though set forth in full herein.

44.   Under the 2010 Regrant Agreement, Counterclaim Defendants granted to Zaentz broad rights in and to the Works.  In return, Zaentz, either directly or through its licensees, agreed to pay royalties for that exploitation.

45.   The 2010 Regrant Agreement conveyed all of the rights originally conveyed in the 1969 Agreements, which included the rights to exploit online video games and gambling games.  Alternatively, the 1969 Agreements were amended in 1998 to include the rights to online video games.  The 2010 Regrant Agreement also conveyed all of the rights contained in the 1998 amendment.

46.   Zaentz has fully performed all conditions, covenants, and promises required on its part to be performed under the 1969 Agreements and the 2010 Regrant Agreement.

47.   On numerous occasions Zaentz has inquired of Counterclaim Defendants to set forth a good faith basis for the claims they now assert against Zaentz in the face of both the express contract language in the 1969 Agreements and the 2010 Regrant Agreement, and in light of Plaintiffs' continuous course of conduct and enjoyment of the benefits of that conduct over many years.  No such explanation has been forthcoming.  Plaintiffs lack a good faith basis for their claims regarding online games and slot machines, understand the possible consequence their claims of breach of contract may have on the exploitation of those rights, and nevertheless assert them in breach of the covenant of good faith and fair dealing implied in the 1969 Agreements and in the 2010 Regrant Agreements.

48.   On information and belief, as a direct result of Counterclaim

1    Defendants' breach, Counterclaim Defendants have unfairly interfered with Zaentz's

2    right to receive the full benefits of its online games and slot machines licensing rights

3    and activities.

4         49.    As a direct and proximate cause of Counterclaim Defendants' breach,

5    Zaentz has been harmed and damaged in an amount to be determined at trial.

6                        **PRAYER FOR RELIEF**

7    WHEREFORE, Zaentz requests that this Court:

8         a. award Zaentz damages on its Counterclaims against Counterclaim

9             Defendants and its costs and expenses of this action, including reasonable

10            attorneys' fees as permitted by law;

11         b. issue a judicial declaration as alleged herein above;

12         c. grant such other and further relief to Zaentz as the Court deems just and

13            proper under the circumstances.

14

15    Dated: January 18, 2013            ARNOLD & PORTER LLP

16

17                              By: _____
                                 Martin R. Glick

18                                  John C. Ulin
                                 Sarah J. Givan

19                                  Sean M. Callagy

20                                  Attorneys for Defendant and
                                 Counterclaim Plaintiff THE SAUL

21                                  ZAENTZ COMPANY d/b/a Middle-
                                 earth Enterprises, a Delaware

22                                  corporation

23

24

25

26

27

28

- 27 -

## REQUEST FOR JURY TRIAL

Zaentz hereby requests a jury trial on all issues so triable.

Dated: January 18, 2013

ARNOLD & PORTER LLP

By: _____
Martin R. Glick
John C. Ulin
Sarah J. Givan
Sean M. Callagy

Attorneys for Defendant and
Counterclaim Plaintiff THE SAUL
ZAENTZ COMPANY d/b/a Middle-
earth Enterprises, a Delaware
corporation

# PROOF OF SERVICE

    I am a citizen of the United States employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Three Embarcadero Center, 7th Floor, San Francisco, CA  94111.  On January 18, 2013, I served true copies of the following document(s) described as **ANSWER OF THE SAUL ZAENTZ COMPANY TO THE COMPLAINT AND THE SAUL ZAENTZ COMPANY'S COUNTERCLAIMS FOR (1) DECLARATORY RELIEF AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** in a sealed envelope(s) or package(s) on the interested parties in this action addressed as shown below.

| | |
|---|---|
| Bonnie E. Eskenazi | *Attorneys for Plaintiffs* |
| Elisabeth A. Moriarty | ***Via Hand Delivery*** |
| Ricardo P. Cestero | |
| Greenberg Glusker Fields Claman and Machtinger LLP | |
| 1900 Avenue of the Stars, 21st Floor | |
| Los Angeles, CA 90067 | |

| | |
|---|---|
| Daniel M. Petrocelli | *Attorneys for Defendants* |
| dpetrocelli@omm.com | *Warner Bros., et al.* |
| O'Melveny & Meyers LLP | ***Via Electronic Mail only*** |
| 1999 Avenue of the Stars, 7th Floor | |
| Los Angeles, CA 90067 | |

☐   **BY MAIL**  I caused the sealed envelope(s) or package(s) to be deposited with postage fully prepaid thereon in the United States Mail in Los Angeles, California.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

☑   **BY PERSONAL SERVICE**  I caused Ace Attorney Service, Inc. to deliver such envelope by hand to the office of the addressee(s) above.

☑   **(VIA EMAIL)** The above-referenced document(s) (together with all exhibits and attachments thereto) was transmitted via email on January 18, 2013 before 6:00 p.m. PST to the person(s) at the email address(es) set forth on the attached service list.  Within a reasonable time after transmission, no indication that the transmission was unsuccessful had been received.

☑   **FEDERAL**  I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on January 18, 2013, at San Francisco, California.

Jane Rustice