1  DANIEL PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  VICTOR JIH (S.B. #186515)
   vjih@omm.com
3  MOLLY LENS (S.B. #283867)
   mlens@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, California  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for Warner Defendants and
   Counterclaim Plaintiffs
8
                UNITED STATES DISTRICT COURT
9
                CENTRAL DISTRICT OF CALIFORNIA
10

   FOURTH AGE LTD., a United            Case No. 12-9912-ABC (SHx)
11 Kingdom corporation; PRISCILLA
   MARY ANNE REUEL, as TRUSTEE
12 OF THE TOLKIEN TRUST, a United
   Kingdom Charitable Trust; THE J.R.R.  **WARNER'S FIRST AMENDED**
13 TOLKIEN ESTATE LTD., a United         **COUNTERCLAIMS FOR (1)**
   Kingdom corporation;                  **BREACH OF CONTRACT AND**
14 HARPERCOLLINS PUBLISHERS              **(2) DECLARATORY RELIEF**
   LTD., a United Kingdom corporation;
15 UNWIN HYMAN LTD., a United            **REQUEST FOR JURY TRIAL**
   Kingdom corporation; and GEORGE
16 ALLEN & UNWIN (PUBLISHERS)
   LTD., a United Kingdom corporation,
17
                     Plaintiffs,
18
        v.
19
   WARNER BROS. DIGITAL
20 DISTRIBUTION, a division of
   WARNER BROS. HOME
21 ENTERTAINMENT INC., a Delaware
   corporation; WARNER BROS.
22 ENTERTAINMENT INC., a Delaware
   corporation, as successor-in-to New
23 Line Cinema Corp.; WARNER BROS.
   CONSUMER PRODUCTS, INC., a
24 Delaware corporation; WARNER
   BROS. INTERACTIVE
25 ENTERTAINMENT INC., a division of
   WARNER BROS. HOME
26 ENTERTAINMENT INC., a Delaware
   corporation; and NEW LINE
27 PRODUCTIONS, INC., a California
   corporation; THE SAUL ZAENTZ
28

| | |
|---|---|
| 1 | COMPANY d/b/a Middle-Earth Enterprises, a Delaware corporation; and DOES 1-10, inclusive, |
| 2 | |
| 3 | Defendants. |
| 4 | |
| 5 | WARNER BROS. HOME ENTERTAINMENT INC.; WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. CONSUMER PRODUCTS INC.; and NEW LINE PRODUCTIONS, INC., |
| 6 | |
| 7 | |
| 8 | Counterclaim Plaintiffs, |
| 9 | |
| 10 | v. |
| 11 | FOURTH AGE LTD.; THE TOLKIEN TRUST; THE J.R.R. TOLKIEN ESTATE LTD.; PRISCILLA MARY ANNE REUEL TOLKIEN; HARPERCOLLINS PUBLISHERS LTD.; UNWIN HYMAN LTD.; and GEORGE ALLEN & UNWIN (PUBLISHERS) LTD., |
| 12 | |
| 13 | |
| 14 | |
| 15 | Counterclaim Defendants. |
| 16 | |

## COUNTERCLAIMS

Counterclaim plaintiffs Warner Bros. Home Entertainment Inc., Warner Bros. Entertainment Inc., Warner Bros. Consumer Products Inc., and New Line Productions, Inc. (collectively, "Warner"), as and for their counterclaims against Fourth Age Ltd., Priscilla Mary Anne Reuel Tolkien, The Tolkien Trust, The J.R.R. Tolkien Estate Ltd., HarperCollins Publishers, Ltd., Unwin Hyman Ltd., and George Allen & Unwin (Publishers) Ltd. (collectively, "Counterclaim Defendants"), allege as follows:

## JURISDICTION AND VENUE

1. This Court has supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367(a) because these claims arise out of the subject matter of the original action. Additionally, the second claim for declaratory judgment is brought under 28 U.S.C. § 2201.

2. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial part of the wrongful conduct alleged herein occurred in this district.

## NATURE OF THE ACTION

3. Warner brings these claims to vindicate the rights it acquired to *The Lord of the Rings* and *The Hobbit* (collectively, the "Works"). Warner paid substantial consideration for broad rights in the Works. For years, Warner and The Saul Zaentz Company ("Zaentz") invested and engaged in activities with Counterclaim Defendants' knowledge, relying on the broad rights it acquired, and consistent with the customary activities that movie studios traditionally pursue to make large-scale motion pictures both possible and profitable.

4. Even though Counterclaim Defendants granted these rights away long ago and have, for many years, consented to their exploitation in this manner, Counterclaim Defendants have made a complete about face and now assert that Warner does not have certain rights, including online video games and gambling

games. Counterclaim Defendants take this position despite their prior knowledge of Warner's activities, the significant profits they have received from the activities, and their express and implied assurances that Warner has these rights.

5. The Counterclaim Defendants' actual and anticipatory repudiation of the grant of these rights has severely damaged Warner. This repudiation is a direct violation of the grant of rights, thwarting Warner's ability to exploit and to license the rights with third parties.

## THE PARTIES

6. Warner Bros. Home Entertainment Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Los Angeles, California.

7. Warner Bros. Entertainment Inc. is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles, California.

8. Warner Bros. Consumer Products Inc., is a corporation organized under the laws of the State of Delaware with its principal place of business in Los Angeles, California.

9. New Line Productions, Inc. is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles, California.

10. Upon information and belief, Fourth Age Ltd. is a corporation created and existing under the laws of the United Kingdom.

11. Upon information and belief, Priscilla Mary Anne Reuel is a citizen and resident of the United Kingdom and a Trustee of The Tolkien Trust.

12. Upon information and belief, The Tolkien Trust is a registered charity created and existing under the laws of the United Kingdom.

13. Upon information and belief, The J.R.R. Tolkien Estate Ltd. is a corporation created and existing under the laws of the United Kingdom.

14. Fourth Age Ltd., Priscilla Mary Anne Reuel Tolkien, The Tolkien Trust, and The J.R.R. Tolkien Estate are sometimes referred to collectively herein as the "Tolkien Estate." Upon information and belief, the Tolkien Estate is the successor-in-interest to J.R.R. Tolkien with respect to certain of his copyright interests in *The Lord of the Rings* and *The Hobbit*.

15. Upon information and belief, HarperCollins Publishers, Inc. is a corporation created and existing under the laws of the United Kingdom.

16. Upon information and belief, Unwin Hyman Ltd. is a corporation created and existing under the laws of the United Kingdom and is a wholly-owned subsidiary of HarperCollins.

17. Upon information and belief, George Allen & Unwin (Publishers) Ltd. is a corporation created and existing under the laws of the United Kingdom and is a wholly-owned subsidiary of Unwin Hyman Ltd.

18. Upon information and belief, HarperCollins is the worldwide licensee of the book publishing rights in *The Lord of the Rings* and *The Hobbit*, George Allen & Unwin is the successor-in-interest to the 1969 agreements with United Artists Corp., and Harper Collins and Unwin Hyman acquired certain rights from George Allen & Unwin.

19. Warner is informed and believes, and based thereon alleges that in doing the acts and things hereinafter alleged, each counterclaim defendant acted individually for itself, and as the agent, employee, and/or representative of each of the other counterclaim defendants and, in doing the things hereinafter alleged, each was at all times acting within the course and scope of said agency, representation or employment relationship with the advance knowledge, acquiescence, or subsequent ratification of each and every other counterclaim defendant.

## FACTUAL BACKGROUND

### A. Warner's and Zaentz's Long History of Exploitation Without Objection by Counterclaim Defendants

20. Warner and Zaentz are the successors-in-interest to merchandising and other rights to *The Hobbit* and *The Lord of the Rings* that were granted to United Artists in a set of agreements dated July 8, 1969 (the "1969 Agreements").

21. For years, Warner and Zaentz have—with Counterclaim Defendants' knowledge—asserted their contractual rights to and exploited online video games and gambling games based on *The Lord of the Rings*. Counterclaim Defendants also knew that Warner and Zaentz expected to exploit those same rights with respect to *The Hobbit*. Notwithstanding this long history of exploitation, Counterclaim Defendants never voiced any objection until late 2010. Prior to this time, Counterclaim Defendants had, upon information and belief, knowingly accepted royalty payments from this very exploitation, and they continue to do so today.

22. Counterclaim Defendants' knowledge of and agreement with Warner's and Zaentz's exploitation of these rights is well-documented and, upon information and belief, discovery in this case will uncover even more evidence of their knowledge.

23. For example, over 16 years ago, the parties confirmed that Zaentz had the rights to online video games. In May 1996, Zaentz told Defendant HarperCollins "in the strongest terms possible, that [Harper Collins and the Tolkien Estate] ha[d] no right to any computer games...[A]ny computer or on-line game that uses graphics (rather than words) as its primary tool is, *ipso facto*, property of [Zaentz.]" In its July 1996 response, HarperCollins conceded the correctness of Zaentz's position. Moreover, even though Cathleen Blackburn, counsel for Fourth Age Ltd., The Tolkien Trust, The J.R.R. Tolkien Estate Ltd., The J.R.R. Tolkien

1967 Discretionary Settlement, and The J.R.R Tolkien Copyright Trust, as well as the company secretary for Fourth Age Ltd. and The J.R.R. Tolkien Estate Ltd., was copied on these letters, the Tolkien Estate never voiced any objection to Zaentz's position nor to HarperCollins' admission.

24. Just two years later, the Tolkien Estate confirmed Zaentz's online video game rights. Throughout the parties' long relationship, the Tolkien Estate has, at times, requested, received, and reviewed Zaentz's license agreements with downstream parties, such as Warner. Consistent with this practice, the Tolkien Estate reviewed a 1998 agreement between Zaentz and Sierra On-Line for a "license covering computer and *on-line games*." That license agreement explicitly licensed the right to games for "*any on-line network*, including without limitation, the global computer network commonly known as the *Internet*...." Other provisions of the license agreement reinforce the "online" nature of the rights being licensed. After reviewing a copy of the executed Sierra license, Ms. Blackburn declared that the "rights granted to Sierra" were "rights granted [to Zaentz's predecessor in interest] under the 1969 merchandising agreements." Leaving no doubt, two years later, in August 2000, Ms. Blackburn reaffirmed that the Sierra license was "validly granted."

25. Thus, Ms. Blackburn confirmed in written representations on behalf of Counterclaim Defendants or their predecessors-in-interest that the grant conveyed rights to online video games. If for any reason the original agreements did not confer online video game rights, Ms. Blackburn amended the original grant to include those rights.

26. The same month that Ms. Blackburn reaffirmed the online video game rights were validly granted, Ms. Blackburn also confirmed to a third party that Zaentz was the proper source of online video game rights to *The Lord of the Rings* and *The Hobbit*. Specifically, in August 2000, Ms. Blackburn received a fax from a

third party inquiring "whether the on-line rights to Tolkien's Trilogy and The Hobbit were, in fact, granted to Saul Zaentz Company or Zaentz's Tolkien Enterprises, or whether the opportunity still exists to license the on-line rights to such literary works from the Estate of J.R.R. Tolkien." In response, Ms. Blackburn directed the third party to Zaentz and also forwarded a copy to Zaentz, noting that the exchange of correspondence was "self-explanatory." Had Ms. Blackburn actually believed that Zaentz did not hold rights to all types of online exploitation, there would have been no reason to refer this third party to Zaentz.

27. Counterclaim Defendants also received and reviewed many of Zaentz's trade and service mark registration applications. These applications expressly cover, *inter alia*, online video games and gambling games.

28. Additionally, Warner and Zaentz have openly exploited the rights to online video games and gambling games in the international market for many years. Given Counterclaim Defendants' active monitoring of activity based on the Works, they clearly had at least constructive notice of this activity.

29. As these examples demonstrate, Counterclaim Defendants have long known of and agreed to Warner's and Zaentz's exploitation of online video games and gambling games.

**B.     The 2010 Regrant Agreement**

30. In 2010, before committing even greater substantial resources to its film adaptations of *The Hobbit*, Warner wanted to protect its ability to produce and exploit *The Hobbit* films without any dispute or interruptions from Counterclaim Defendants.

31. Accordingly, the parties reached an agreement in September of 2010, which was memorialized in the "2010 Regrant Agreement" signed by Counterclaim Defendants as well as a number of other related entities and individuals.

32. Under the 2010 Regrant Agreement, Counterclaim Defendants, *inter alia*, revoked the grant of rights arising under copyright laws made under or pursuant to certain agreements that J.R.R. Tolkien and his heirs had previously entered into, and then regranted to Zaentz all rights in *The Hobbit* and *The Lord of the Rings* that had previously been granted in the 1969 Agreements as those agreements may have been amended and supplemented over the years.

33. Thus, the original grants conveying the rights to online video games and gambling games were regranted to Zaentz in 2010. To the extent the 1969 Agreements did not originally convey rights to online video games, the agreements were amended in 1998 to convey online video game rights and those rights were similarly regranted to Zaentz in 2010.

34. Under the 2010 Regrant Agreement, Zaentz, New Line Productions, Inc. and Warner Bros. Entertainment Inc., *inter alia*, reaffirmed and restated the existing grants and agreements amongst themselves with respect to the rights regranted to Zaentz.

### C. Counterclaim Defendants Immediately Breach the 2010 Regrant Agreement

35. After the 2010 Regrant Agreement was signed, Warner was astounded when Counterclaim Defendants asserted that Warner had absolutely no rights to online games in general and no rights to any form of gambling, and that Counterclaim Defendants wanted yet another multi-million dollar payday for online rights, even though Warner had long exploited the rights to online games and to casino gambling machines with Counterclaim Defendants' knowledge and agreement. Counterclaim Defendants' assertion that Warner and Zaentz do not have these rights is not reasonable and, upon information and belief, was not asserted in good faith. Rather, Counterclaim Defendants are simply attempting to

extract additional huge sums of money for rights and/or take back rights that they had already granted.

36. Warner has been significantly harmed as a result of Counterclaim Defendants' breach of the 2010 Regrant Agreement. Counterclaim Defendants' breach has severely hampered Warner's ability to exercise the rights granted. For example, because of the repudiation, Warner terminated its online gambling license agreement with Microgaming. This cost Warner millions of dollars in foregone license fees and also required that Warner repay a significant sum to Microgaming to cover a portion of its development and advertising costs.

37. By repudiating the rights granted to Zaentz (which Zaentz then licensed to Warner), Counterclaim Defendants impaired Warner's ability to proceed with new exploitation, at a time when online gaming and gambling are becoming increasingly lucrative. Counterclaim Defendants' repudiation prevented Warner from being able to represent to third parties that it has rights or to find third parties who are willing to exploit those rights given the cloud over the rights. Warner suffered significant financial harm and loss of good will as a result. Because of the repudiation, Warner has not entered into license agreements for online gambling games and casino slot machines in connection with *The Hobbit*—a form of customary exploitation it had previously utilized in connection with *The Lord of the Rings* trilogy—which has harmed Warner both in the form of lost license revenue and also in decreased exposure for *The Hobbit* films. For example, Warner was unable to proceed with plans for a *Hobbit*-themed casino slot machine with WMS Gaming. This alone cost Warner millions of dollars in license fees. Warner has invested considerable time and money into plans for further exploitation of the Works that it has now had to delay, reconsider, and perhaps cancel altogether as a result of Counterclaim Defendants' repudiation of Warner's rights under the 2010 Regrant Agreement.

## FIRST COUNTERCLAIM

### (Breach of Contract)

38. Warner realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 37 as though set forth in full herein.

39. Under the 2010 Regrant Agreement, Counterclaim Defendants granted to Zaentz broad rights in and to the Works. In return, Zaentz, either directly or through its licensees, agreed to pay royalties and/or other compensation for that exploitation.

40. The 2010 Regrant Agreement conveyed all of the rights originally conveyed in the 1969 Agreements, which included the rights to exploit online video games and gambling games. Alternatively, the original 1969 Agreements were amended in 1998 to include the rights to online video games. The 2010 Regrant Agreement also conveyed all of the rights contained in the 1998 amendment.

41. In addition, implied in every contract, including the 2010 Regrant Agreement, is a covenant among the parties thereto that no party will do anything to interfere with another party's enjoyment of its contractual rights and benefits, and that each contracting party will do everything that the contract presupposes it will do to accomplish the contract's purpose.

42. Warner is an intended third-party beneficiary to the rights granted to Zaentz under the 2010 Regrant Agreement. Warner, as a licensee of Zaentz, acquired broad rights to exploit the Works, including online video games and gambling games. The license of those rights from Zaentz to Warner was reaffirmed and restated by the 2010 Regrant Agreement.

43. Warner has fully performed all conditions, covenants, and promises required on its part to be performed under the 2010 Regrant Agreement.

44. Counterclaim Defendants have materially breached the 2010 Regrant Agreement by, among other things, repudiating their broad grant of rights under the

2010 Regrant Agreement to Zaentz (which Zaentz then licensed to Warner), which provide for Warner's exploitation of online video games and gambling games.

45. As a direct and proximate cause of Counterclaim Defendants' breach, Warner has been damaged in an amount to be determined at trial.

## SECOND COUNTERCLAIM

### (Declaratory Judgment)

46. Warner realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 45 as though set forth in full herein.

47. There presently exists between the parties an actual controversy and dispute in that Warner claims the right to exploit online video games and gambling games based on the Works and/or films based on those Works. Counterclaim Defendants deny that Warner has such rights.

48. In addition, Counterclaim Defendants have purported to sue Warner for its exploitation activities without any limitation as to time. The parties, however, previously entered into general releases. Under a 2009 settlement agreement between the Tolkien Estate and Warner, Counterclaim Defendants released any claims based on conduct occurring on or before September 30, 2008 that relate to any rights, obligations or issues arising under the 1969 Agreements. Under the 2010 Regrant Agreement, Counterclaim Defendants also released any claims based on conduct occurring on or before September 1, 2010 that relate to the exploitation of the Works.

49. Warner hereby requests a declaration of this Court setting forth the respective rights and other legal relations of Warner and Counterclaim Defendants. In particular, Warner requests the following declarations:

    a. Warner may exercise its rights to exploit online video games based on the Works;

      b.    Warner may exercise its rights to exploit gambling games based on the Works;

      c.    Counterclaim Defendants are estopped from challenging Warner's exploitation of online video games;

      d.    Counterclaim Defendants are estopped from challenging Warner's exploitation of gambling games;

      e.    Counterclaim Defendants are precluded from asserting any claims based on conduct occurring prior to September 30, 2008; and

      f.    Counterclaim Defendants are precluded from asserting any claims based on conduct occurring prior to September 1, 2010.

50.    It is necessary and appropriate that the Court render the requested declaratory judgment so that the parties can govern themselves accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Warner requests that this Court:

(a) award Warner damages on its counterclaims against Counterclaim Defendants and its costs and expenses of this action, including reasonable attorneys' fees as permitted by law;

(b) issue a judicial declaration as alleged herein above; and

(c) grant such other and further relief to Warner as the Court deems just and proper under the circumstances.

Dated: March 11, 2013

                              DANIEL PETROCELLI  
                              VICTOR JIH  
                              MOLLY LENS  
                              O'MELVENY & MYERS LLP

By: _____  
              Daniel Petrocelli

Attorneys for Warner Defendants and Counterclaim Plaintiffs

## REQUEST FOR JURY TRIAL

Warner requests a jury trial on all issues so triable.

Dated: March 11, 2013

                              DANIEL PETROCELLI  
                              VICTOR JIH  
                              MOLLY LENS  
                              O'MELVENY & MYERS LLP

By: _____  
              Daniel Petrocelli

Attorneys for Warner Defendants and Counterclaim Plaintiffs

## PROOF OF SERVICE - BY U.S. MAIL

I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 1999 Avenue of the Stars, 7th Floor, Los Angeles, California 90067-6035. On March 11, 2013, I served the following:

**WARNER'S FIRST AMENDED COUNTERCLAIMS FOR (1) BREACH OF CONTRACT AND (2) DECLARATORY RELIEF**

by putting a true and correct copy thereof in a sealed envelope, with postage fully prepaid, and placing the envelope for collection and mailing today with the United States Postal Service in accordance with the firm's ordinary business practices, addressed as follows:

Bonnie E. Eskenazi
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067-4590

Martin R. Glick
ARNOLD & PORTER LLP
Three Embarcadero Center
7th Floor
San Francisco, CA 94111-4024

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 11, 2013, at Los Angeles, California.

Evelyn Wilson