BONNIE E. ESKENAZI (SBN 119401)
BEskenazi@ggfirm.com
ELISABETH A. MORIARTY (SBN 156569)
EMoriarty@ggfirm.com
RICARDO P. CESTERO (SBN 203230)
RCestero@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LIMITED, a United Kingdom corporation; PRISCILLA MARY ANNE REUEL TOLKIEN, as TRUSTEE OF THE TOLKIEN TRUST, a United Kingdom Charitable Trust; THE J.R.R. TOLKIEN ESTATE LIMITED, a United Kingdom corporation; HARPERCOLLINS PUBLISHERS, LTD., a United Kingdom corporation; UNWIN HYMAN LTD., a United Kingdom corporation; and GEORGE ALLEN & UNWIN (PUBLISHERS) LTD., a United Kingdom corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, INC., a division of WARNER BROS. HOME ENTERTAINMENT, INC., a Delaware corporation; WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation, as successor-in-interest to New Line Cinema Corp.; WARNER BROS. CONSUMER PRODUCTS, INC., a Delaware corporation; WARNER BROS. INTERACTIVE ENTERTAINMENT, INC., a division of WARNER BROS. HOME ENTERTAINMENT, INC.; NEW LINE PRODUCTIONS, INC., a California corporation; THE SAUL ZAENTZ COMPANY d/b/a Middle-earth Enterprises, a Delaware corporation; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. CV 12-09912 ABC (SHx)<br><br>Hon. Audrey B. Collins<br><br>**DECLARATION OF RICARDO P. CESTERO IN SUPPORT OF SPECIAL MOTIONS TO STRIKE THE WARNER PARTIES' FIRST COUNTERLCIAM FOR BREACH OF CONTRACT AND ZAENTZ' SECOND COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT**<br><br>**[Declaration of Steven A. Maier, Special Motions to Strike and Motions to Dismiss filed concurrently herewith]**<br><br>Date: May 13, 2013<br>Time: 10:00 a.m.<br>Courtroom: 680 |

84971-00003/1906963.3

CESTERO DECLARATION IN SUPPORT OF
ANTI-SLAPP MOTIONS

AND RELATED COUNTERCLAIMS.

# **DECLARATION OF RICARDO P. CESTERO**

I, Ricardo P. Cestero, declare:

1. I am an attorney duly licensed to practice in all of the courts of the State of California and I am a Partner of Greenberg Glusker Fields Claman & Machtinger LLP, attorneys of record for Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as Trustee of the Tolkien Trust, the J.R.R. Tolkien Estate Limited, Harper Collins Publishers, Ltd., Unwin Hyman, Ltd. and George Allen & Unwin (Publishers), Ltd. (the "Tolkien/HC Parties") herein. The facts set forth herein are of my own personal knowledge and if sworn I could and would testify competently thereto.

2. Attached hereto as Exhibit A is a true and correct copy of an agreement dated July 8, 1969 between George Allen & Unwin, Ltd. ("GAU") on the one hand and United Artists Corporation on the other (the "GAU Agreement"). As alleged in paragraph 34 of the Tolkien/HC Parties' Complaint, GAU is a predecessor in interest to Plaintiffs HarperCollins Publishers, Ltd., Unwin Hyman, Ltd. and George Allen & Unwin (Publishers), Ltd.

3. Attached hereto as Exhibit B is a true and correct copy of an agreement dated July 8, 1969 between Sassoon Trustee and Executor Corp. ("Sassoon") on the one hand and United Artists Corporation on the other (the "Sassoon Agreement"). As alleged in paragraph 34 of the Tolkien/HC Parties' Complaint, Sassoon is a predecessor in interest to Plaintiffs Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as trustee of the Tolkien Trust, and The J.R.R. Tolkien Estate Limited. The GAU Agreement and the Sassoon Agreement are

collectively referred to as the 1969 Agreements. The 1969 Agreements granted to United Artists certain film, stage and live television rights in and to the literary works by J.R.R. Tolkien, *The Hobbit* and three volumes comprising *The Lord of the Rings* (the "Tolkien Works").

4. Attached hereto as Exhibit C is a true and correct copy of Schedule D to the GAU Agreement, which was executed sometime after the GAU Agreement. Attached hereto as Exhibit D is a true and correct copy of Schedule D to the Sassoon Agreement, which was executed sometime after the Sassoon Agreement. Schedules D to the 1969 Agreements granted certain limited merchandising rights in and to the Tolkien Works.

5. Attached hereto as Exhibit E is a true and correct copy of an amendment to the Schedules D attached to the 1969 Agreements executed on or about October 20, 1975 (the "1975 Amendment"). The 1975 Amendment was executed by and between Sasoon and GAU on the one hand and United Artists Corporation on the other.

6. Attached hereto as Exhibit F is a true and correct copy of an agreement dated December 2, 1976 between United Artists and the Saul Zaentz Company ("Zaentz") by which Zaentz acquired from United Artists all of United Artists' rights under the 1969 Agreements and Schedules D thereto, as amended.

7. Attached hereto as Exhibit G is a true and correct copy of an agreement dated November 16, 1981 between predecessors of the Tolkien/HC Parties and Zaentz amending the terms of Schedules D to the 1969 Agreements. Schedules D, the 1975 Amendment and the 1981 Amendment are collectively referred to herein as the "Merchandising License."

8. As admitted by paragraph 41 of the Warner Parties' Answer and Zaentz's Answer, in or about 1999, New Line Cinema entered into an agreement with Zaentz to acquire certain of Zaentz's rights under the 1969 Agreements and the Merchandising License.

9. In 2001, 2002 and 2003, New Line Cinema released three major motion pictures based on the three volumes of *The Lord of the Rings* (the "Films"). Each of these films was extremely successful both with critics and with audiences. Together, the films generated a reported $6 billion in worldwide revenue.

10. Following the huge financial success of the Films, New Line Cinema refused to pay the Tolkien/HC Parties a single penny based on their share of defined gross receipts. Accordingly, on February 11, 2008, the Tolkien/HC Parties sued New Line Cinema for more than $150 million in unpaid profit participation royalties owed to the Tolkien/HC Parties (the "Accounting Lawsuit"). I was one of the attorneys of record for the plaintiffs in that suit.

11. After litigating the Accounting Lawsuit for over a year, in March 2009, the parties submitted the dispute to mediation before the Hon. Daniel Weinstein, ret. I attended that mediation. The parties were unable to resolve the dispute at that mediation, but returned for a further mediation session with Judge Weinstein in August of 2009. Again, I attended the mediation. There, the parties agreed in principle to the terms of a settlement. On or about August 21, 2009, the parties executed a "Binding Term Sheet" containing the terms of the agreed settlement. A true and correct copy of the Binding Term Sheet is attached hereto as Exhibit H.

12. Among other things, the Binding Term Sheet provided that the Tolkien/HC Parties would waive, and agree not to assert, any claim for statutory termination of the 1969 Agreements that might have existed in their favor under the United States Copyright Act. Further, the Binding Term Sheet provided that the parties would negotiate in good faith on a long form agreement designed to effectuate this waiver. In addition, the parties agreed to negotiate in good faith to try and resolve their disputes regarding how to account for the Tolkien/HC Parties' future profit participation interest in the Films or any future motion pictures based on the Tolkien Works. The Binding Term Sheet was ratified and became binding in

1 September 2009.

2     13. Shortly after execution of the Binding Term Sheet, the parties began negotiating the terms of an agreement to effectuate the waiver of the Tolkien/HC Parties' copyright termination rights. I participated in those negotiations. Those negotiations lasted for months. Ultimately, the parties reached an impasse and, pursuant to paragraph 5 of the Binding Term Sheet, decided to submit the matter to mediation before Judge Weinstein.

    14. The parties conducted a two-day mediation session in August of 2010. I attended the mediation. The parties did not reach agreement at the mediation session, but continued negotiations thereafter with the help of the mediators. I participated in those negotiations. Ultimately, on August 26, 2010, the parties agreed to the material terms of a term sheet resolving their disagreements on both the copyright termination issues and the accounting rules for the Tolkien/HC Parties' participation in revenue from the Films and future films.

    15. After reaching agreement on the material terms, the parties began negotiating a new term sheet entitled the "Hobbit Binding Term Sheet." I represented the Tolkien Parties in those negotiations. As of September 8, 2010, the parties were still working on the final language of the Hobbit Binding Term Sheet. On that date, I learned that the Warner Parties had purported to license the first volume of *The Lord of the Rings* for use in an online slot machine game. The Tolkien/HC Parties believed that the Merchandising License did not allow for either gambling games or for video games accessible only online or through download.

    16. On September 8, 2010, I telephoned Mark B. Helm, the attorney for the Warner Parties with whom I had been negotiating the Hobbit Binding Term Sheet, and informed him that the Tolkien/HC Parties had just learned of an online slot machine game that they believed was beyond the scope of rights granted. I informed Mr. Helm that the Tolkien/HC Parties would need to limit the scope of the releases contained in the Hobbit Binding Term Sheet so as to preserve any

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1 claims based on unauthorized activities that exceeded the scope of the rights granted.

17. Over the next several days, the parties negotiated an appropriate modification of the release language. I participated in those negotiations. Ultimately, on September 14, 2010, the parties exchanged signatures on the Hobbit Binding Term Sheet. A true and correct copy of the Hobbit Binding Term Sheet is attached hereto as Exhibit I. Among other things, the Hobbit Binding Term Sheet required that the parties enter into an agreement whereby the Tolkien/HC Parties would revoke the prior grants of rights in the Tolkien Works to Zaentz and then regrant precisely those same rights (the "Regrant Agreement"). In addition, the Hobbit Binding Term Sheet contained an agreement regarding the accounting provisions for film revenues. Finally, the Hobbit Binding Term Sheet contained various limited releases of claims the parties may have had against each other.

18. Following the execution of the Hobbit Binding Term Sheet, the parties engaged in negotiations on the terms of the long form Regrant Agreement. I participated in those negotiations. During those negotiations, the parties included provisions again preserving the Tolkien/HC Parties' rights to bring claims based on the unauthorized exploitations of the Tolkien Works. Ultimately, the parties executed the Regrant Agreement on September 30, 2010. A true and correct copy of the Regrant Agreement is attached hereto as Exhibit J.

19. On September 20, 2010, ten days prior to the execution of the Regrant Agreement, I sent a letter to Mr. Helm formally objecting to the unauthorized online slot machine and demanding that the Warner Parties cease and desist from any further such conduct. A true and correct copy of my September 20, 2010 letter is attached hereto as Exhibit K.

20. On October 4, 2010, my partner, Bonnie E. Eskenazi sent a letter to Thomas A. Magnani, counsel for Zaentz, asserting the Tolkien/HC Parties' objections to the online slot machine game and enclosing a copy of my letter to Mr.

Helm. Ms. Eskenazi copied me on her letter to Mr. Magnani. A true and correct copy of Ms. Eskenazi's October 4, 2010 letter is attached hereto as Exhibit L.

21. On October 8, 2010, Mr. Helm responded to my letter and contended, among other things, that both Zaentz and the Warner Parties were fully authorized to license both gambling games and video games accessible only online or through download from the Internet. However, Mr. Helm suggested that the Warner Parties were amenable to negotiating an amicable resolution to the dispute. A true and correct copy of Mr. Helm's October 8, 2010 letter is attached hereto as Exhibit M.

22. On October 12, 2010, Ms. Eskenazi responded to Mr. Helm's letter. Ms. Eskenazi copied me on her response. Ms. Eskenazi disputed all of the contentions made in Mr. Helm's letter. Specifically, Ms. Eskenazi noted that prior to Mr. Helm's October 8, 2010 letter, the Tolkien/HC Parties had never been aware that Zaentz or the Warner Parties had ever licensed a video game that was accessible only online or through download and did not require the initial purchase of a tangible article such as a game cartridge or CD-ROM. Further, Ms. Eskenazi informed Mr. Helm that the Tolkien/HC Parties had additionally learned that the Warner Parties had purported to license physical slot machines for use in casinos, and that such a use was also far beyond the rights granted under the Merchandising License. A true and copy of Ms. Eskenazi's October 12, 2010 letter is attached hereto as Exhibit N.

23. On October 13, 2010, Mr. Magnani responded to Ms. Eskenazi's letter of October 4, 2010. Mr. Magnani copied me on his response. Similar to Mr. Helm, Mr. Magnani contended that Zaentz was fully authorized to license gambling games and video games accessible only online or through download. In addition, Mr. Magnani asserted that Zaentz had sweeping trademark rights in services and other areas outside of the rights granted by the 1969 Agreements and the Merchandising License. A true and correct copy of Mr. Magnani's October 13, 2010 letter is attached hereto as Exhibit O.

24. Ms. Eskenazi responded to Mr. Magnani's letter on October 25, 2010. Ms. Eskenazi copied me on her response. As she had with the Warner Parties, Ms. Eskenazi disputed the contentions in Mr. Magnani's letter and attempted to clarify, among other things, that all prior video game activity of which the Tolkien/HC Parties had been aware were sold in a physical format, requiring a game cartridge or CD-ROM to play. A true and correct copy of Ms. Eskenazi's October 25, 2010 letter is attached hereto as Exhibit P.

25. Following this exchange of correspondence, the parties agreed to try and negotiate a settlement of these disputes. Beginning in November 2010, I attended several in-person meetings with counsel for the Warner Parties and Zaentz in which we discussed various proposals for resolving the dispute. I also participated in numerous telephone conferences of all counsel in which we tried to work out a resolution. These discussions lasted well into 2011. Unfortunately, by late 2011, the parties had been unable to reach an agreement.

26. In early 2012, the Tolkien/HC Parties requested that the parties again submit their dispute to mediation in front of Judge Weinstein. After some negotiation, in May, 2012 the parties agreed to mediate the dispute over the course of two days. The Tolkien/HC Parties made arrangements for client representatives to fly in from England to attend both sessions of the mediation.

27. The first day of mediation occurred on June 13, 2012 in San Francisco and only Zaentz and the Tolkien/HC Parties attended. I attended the mediation. That mediation session lasted all day. No agreement was reached. The second day of mediation occurred in Santa Monica on June 16, 2012 and all three parties attended. I attended the mediation. Unfortunately, no agreement was reached there either. Following the two mediation sessions, the Tolkien/HC Parties and Zaentz continued their discussions regarding a potential settlement. I was copied on that correspondence. However, by September, 2012, it became clear that the parties would not be able to resolve their differences amicably. Accordingly, the

1 Tolkien/HC Parties proceeded with filing this action on November 19, 2012.

2       28.    The Tolkien/HC Parties have never asserted their claims regarding the unauthorized activities at issue in this case with third parties. Specifically, although they were fully entitled to do so, the Tolkien/HC Parties never sent cease and desist letters to the Warner Parties' gambling licensees. Nor have the Tolkien/HC Parties ever sent cease and desist letters to any third party licensee making unauthorized online video games. The only place the Tolkien/HC Parties have ever asserted these claims is in connection with the negotiations and discussions outlined in this declaration.

      29.    On February 21, 2013, my partner Elisabeth A. Moriarty and I met and conferred with counsel for the Warner Parties and Zaentz to discuss the substance of this motion. Ms. Moriarty and I informed counsel for the Warner Parties and Zaentz of the nature and substance of this motion and the concurrently filed Motions to Dismiss and provided legal authorities supporting the Tolkien/HC Parties' position.

      30.    In response to this discussion, counsel for each of the Warner Parties and Zaentz indicated that they would be filing Amended Counterclaims. On March 11, 2013, the Warner Parties and Zaentz each filed First Amended Counterclaims. Thereafter, on March 14, 2013, Ms. Moriarty and I met and conferred with counsel for the Warner Parties and Zaentz and explained to them that we did not believe the amendment cured the defects in the original counterclaims. Accordingly, we stated

\\\\
\\\\
\\\\
\\\\
\\\\
\\\\
\\\\

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

that Plaintiffs would still proceed with this motion and the concurrently filed Motions to Dismiss.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of March, 2013 at Los Angeles, California.

                                                    /s/ Ricardo P. Cestero
                                                       Ricardo P. Cestero

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

84971-00003/1906963.3

10

CESTERO DECLARATION IN SUPPORT OF ANTI-SLAPP MOTIONS