# EXHIBIT P



Bonnie E. Eskenazi
D: 310.785.6857
F: 310.201.2357
BEskenazi@GreenbergGlusker.com
File Number: 84971-2

October 25, 2010

**Via E-Mail and U.S. Mail**

Thomas A. Magnani
Director, Business Department
Howard Rice Nemerovski Canady Falk & Rabkin
Three Embarcadero Center
Seventh Floor
San Francisco CA 94111

Re:     *The Lord of the Rings* Slot Machine Games

Dear Tom:

I am writing in response to your letter of October 13, 2010. Needless to say, we have a very different view of the situation. Allow me to address a few points.

Your interpretation of the grants of merchandising rights in the 1969 Agreements is wholly misguided. Although the agreements do reference "service marks" those references do not, and cannot, expand the scope of the rights granted. The only purpose of including references to "service marks" in the agreements is to make clear that, when a particular item of merchandise is licensed, the trademark registration for that item may fall under either a trademark or service mark category and Zaentz is granted the right to use the name of the work regardless of the category into which the product falls. Indeed, the very language you quote from Section 14 of Schedule D makes this abundantly clear.

Furthermore, your discussion of Sections 2(c) and 2(j) is equally unavailing. In the context of the "motion picture rights" grant in which they are contained, these sections must be read to address solely the rights to create motion pictures based on the works, and to then use the works in connection with the exploitation of the motion pictures themselves. These sections are wholly unrelated to merchandising, which is expressly dealt with in Schedule D. Your reading of Sections 2(c) and (j) would render Schedule D ineffectual by swallowing any restrictions on merchandising set forth therein.

Moreover, I do not believe it is correct that Zaentz has licensed *The Lord of the Rings* in connection with "hotels, restaurants, travel agencies, ringtones…and housing developments." At a minimum, the Tolkien Estate has never been advised of any such activity. To the contrary, virtually all of Zaentz's licensing activity has been in the categories of cards, figurines, and physical games (including PC/console games requiring a physical purchase). In fact, a brief review of Zaentz's licensing history amply demonstrates that Zaentz has never engaged in any licensing purely for services. The fact that Zaentz may have pursued infringers in various

Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067
T: 310.553.3610  |  F: 310.553.0687

GreenbergGlusker.com

84971-00003/1751703.2

Thomas A. Magnani
October 25, 2010
Page 2


service areas does not in any way constitute a grant of rights to Zaentz to provide services using *The Lord of the Rings* marks. What's more, Section 24 of the 1969 Agreements and Paragraph 15 of Schedule D, expressly state, *inter alia*, that the agreements cannot be modified or amended except by an instrument in writing, signed by the parties. Any discussion of the history of Zaentz' licensing activities (including your reference to the Sierra license) must take these sections into account.

With regard specifically to the Turbine game, it was the Tolkien Estate's understanding that this had at all times required the physical purchase of a box containing CD-ROMs, a manual and other physical materials, which enabled both stand-alone home computer game play, as well as online game play. In the course of their current investigations, however, they have discovered that the game appears recently to have been made available on a download-only basis, to which they take formal objection on the grounds that a product of this nature is not an "article of tangible personal property." The fact that a physical game, once purchased, is playable online is clearly distinguishable from a product that is deliverable online. Neither our clients' awareness of the Sierra license, nor their tolerance of the online aspects of the Turbine game, is effective to extend Zaentz's rights to products deliverable online, or amounts to any acquiescence in the offering of such products. This should be abundantly clear from Paragraph 15 of Schedule D, which provides that the parties cannot waive any provisions of that agreement without a writing signed by the parties. Accordingly, please confirm that the download-only version of the game will immediately be withdrawn.

Your view that the grant of merchandising rights in the 1969 Agreement is broad enough to cover gambling games is simply not supported by the documents. Specifically, the October 20, 1975 Agreement between GAU and Sassoon, on the one hand, and United Artists, on the other, makes abundantly clear that the phrase "articles of tangible personal property" has nowhere near the meaning you suggest. Indeed, that 1975 Agreement specifically identified the types of articles of merchandise licensed to UA to include things like "strip cartoon books, drawing books, coloring books" and "calendars, greeting cards, postcards, notelets and other printed stationery." Although these lists in the 1975 Agreement were not exhaustive, the parties expressly agreed that the description of these categories would "provide general guidance in determining the rights in other such articles as to which questions may arise in the future." Accordingly, the grant of merchandising rights in the 1969 Agreements is most certainly limited to items in the nature of the traditional types of merchandising created in connection with literary properties. Slot machines (whether online or physical) are nowhere near these categories.

As for your references to the "commercial tie-up" language of the 1969 Agreements, these are equally unavailing. Commercial tie-ups may only be used in connection with promoting a motion picture photoplay. The slot machine games Zaentz and NL have purported to license are not being used to promote any motion pictures. Rather, they are simply a crass attempt to squeeze more money out of *The Lord of the Rings* property.

GreenbergGlusker.com

84971-00003/1751703.3

Thomas A. Magnani
October 25, 2010
Page 3

The assertions in your penultimate paragraph are nothing more than inflammatory. No reasonable person would ever think that the riddle game in the Gollum and Bilbo scene in *The Lord of the Rings* is even remotely similar to people pouring money into a "one-armed bandit." Your attempt to draw some connection reflects a complete lack of respect or regard for Professor Tolkien and his works that is quite unsettling. Indeed, it is truly shocking that you would try to equate the story of *The Lord of the Rings* with slot machine gambling if, as you claim, your client values its relationship with the Tolkien Estate. The present gambling activities prey on the vulnerable (including the addicted) for financial gain, are, for the most part, illegal in the US and other jurisdictions, and are being cynically promoted by (among other means) a 'spam' email campaign. It is impossible to comprehend how you and your client could show such disrespect and disregard for the Tolkien Estate by avowing your support for these activities.

Similarly troubling is the implication in your letter that preservation of the value of the rights granted to you is somehow beyond the scope of the parties' relationship. Even setting aside the parties' contractual obligations, my clients have always understood careful regard for the integrity of the rights granted to be of great concern to Zaentz. While we hope that remains true, I'm afraid the implication in your letter strongly suggests otherwise.

The slot machine licenses have seriously tarnished the image and reputation of our clients' property and will continue to do so until gambling-related products are removed from the market and all gambling-relating licensing activity ceases. As you know, we are prepared to meet with you to hear your client's proposals for resolution of this matter, but should make clear at this point that the redress required will most certainly not be restricted to "future" activities. Please be clear that, unless all of the infringing gambling activities are comprehensively terminated and all other appropriate remedies provided, a lawsuit will be issued.

Sincerely,


Bonnie E. Eskenazi

BEE/rpc

Thomas A. Magnani
October 25, 2010
Page 4


cc:     Elisabeth A. Moriarty, Esq.
        Ricardo P. Cestero, Esq.
        Aaron A. Moss, Esq.
        Candace A. Carlo, Esq.
        Rachel Valadez, Esq.

84971-00003/1751703.2