DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
VICTOR H. JIH (S.B. #186515)
vjih@omm.com
MOLLY M. LENS (S.B. #283867)
mlens@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

Attorneys for the Warner Parties

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LTD., *et al*,<br><br>    Plaintiffs,<br><br>  v.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, *et al*,<br><br>    Defendants. | Case No. 12-9912-ABC (SHx)<br><br>**WARNER'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**<br><br>**Judge**: Hon. Audrey B. Collins<br>**Magistrate**: Hon. Stephen J. Hillman |
| WARNER BROS. DIGITAL DISTRIBUTION INC., *et al*,<br><br>    Counterclaim Plaintiffs,<br><br>  v.<br><br>FOURTH AGE LTD., *et al*,<br><br>    Counterclaim Defendants. | |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. WARNER'S BREACH OF CONTRACT CLAIM IS VALID ....................... 3

    A. The Breach Is Actionable Even If It Is Not A "Total" Breach ............................................................................................................ 3

    B. The Litigation Privilege Does Not Apply .............................................. 6

III. WARNER'S DECLARATORY JUDGMENT CLAIM IS VALID ................................................................................................................ 10

IV. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Page

## CASES

*Balmoral Racing Club, Inc. v. Churchill Downs, Inc.*,
   2011 WL 6009610 (N.D. Ill. Nov. 29, 2011) ...................................................... 10

*Borgonovo v. Henderson*,
   182 Cal. App. 2d 220 (1960) .............................................................................. 6

*Calabrese v. Rexall Drug & Chem. Co.*,
   218 Cal. App. 2d 774 (1963) .............................................................................. 4

*Comedy Club, Inc. v. Improv W. Assocs.*,
   514 F.3d 833 (9th Cir. 2007) .............................................................................. 5

*Digerati Holdings, LLC v. Young Money Entm't, LLC*,
   194 Cal. App. 4th 873 (2011) ............................................................................. 9

*Fireman's Fund Ins. Co. v. Ignacio*,
   860 F.2d 353 (9th Cir. 1988) ............................................................................ 12

*Jungersen v. Miller*,
   125 F. Supp. 846 (N.D. Ohio 1954) ................................................................. 12

*Kirke La Shelle Co. v. Paul Armstrong Co.*,
   263 N.Y. 79 (N.Y. 1933) .................................................................................... 4

*Maponics, LLC v. Wahl*,
   2008 WL 2788282 (N.D. Cal. July 18, 2008) .................................................... 7

*Microsoft Corp. v. Motorola, Inc.*,
   2012 WL 395734 (W.D. Wash. Feb. 6, 2012) ................................................. 11

*Mitchel v. City of Santa Rosa*,
   476 Fed. Appx. 661 (9th Cir. 2011) ................................................................... 7

*Monotype Imaging Inc. v. Deluxe Corp.*,
   2012 WL 3096679 (D. Mass. July 26, 2012) ..................................................... 5

*Navellier v. Sletten* ("*Navellier II*"),
   106 Cal. App. 4th 763 (2003) ............................................................................. 8

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
   442 F.3d 101 (2d Cir. 2006) ............................................................................... 6

*OgoSport LLC v. Maranda Enters. LLC*,
   2011 WL 4404070 (E.D. Wis. Sept. 20, 2011) ................................................ 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Pac. Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*,
 411 F.2d 889 (9th Cir. 1969) ..................................................................................... 4

*Pac. Rollforming, LLC v. Trakloc N. Am., LLC*,
 2010 WL 2523946 (S.D. Cal. June 18, 2010) ......................................................... 7

*Paramount Pictures Corp. v. Puzo*,
 2012 WL 4465574 (S.D.N.Y. Sept. 26, 2012) ......................................................... 4

*Pettrey v. Enter. Title Agency*,
 2006 WL 3342633 (N.D. Ohio Nov. 17, 2006) ..................................................... 10

*Quantum Wave, LLC v. Russell*,
 2012 WL 98542 (D. Ariz. Jan. 12, 2012) ......................................................... 11, 12

*Rothman v. Jackson*,
 49 Cal. App. 4th 1134 (1996) ................................................................................... 7

*Ryan v. Zemanian*,
 2012 WL 4447881 (S.D. Cal. Sept. 25, 2012) ......................................................... 7

*S.O.S., Inc. v. Payday, Inc.*,
 886 F.2d 1081 (9th Cir. 1989) .................................................................................. 5

*Sentry Ins. v. Novelty, Inc.*,
 2009 WL 5087688 (W.D. Wis. Dec. 17, 2009) ..................................................... 10

*Strickrath v. Globalstar, Inc.*,
 2008 WL 2050990 (N.D. Cal. May 13, 2008) ....................................................... 11

*U.S. Bank Nat'l Ass'n v. Alliant Energy Res., Inc.*,
 2009 WL 1850813 (W.D. Wis. June 26, 2009) ................................................ 10, 12

*VW Credit, Inc. v. Friedman & Wexler, LLC*,
 2010 WL 2330364 (N.D. Ill. June 7, 2010) ........................................................... 12

*Wentland v. Wass*,
 126 Cal. App. 4th 1484 (2005) ................................................................................. 8

*Zurich Am. Ins. Co. v. Trans Cal. Ins. Assocs., Inc.*,
 2010 WL 4968078 (E.D. Cal. Dec. 1, 2010) ............................................................ 7

**OTHER AUTHORITIES**

1 B.E. Witkin, *Summary of California Law* § 263 (7th ed.) ........................................ 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1406 (2d ed. 1990) .......................................................................... 10

Restatement (Second) of Contracts § 205 ................................................................. 4

## I. INTRODUCTION

The Tolkien/HC Parties' motion seeks to dismiss a claim that Warner has not asserted. The entire motion rests on the false and misleading premise that "the Warner Parties have sued the Tolkien/HC Parties simply for suing them." (DK 40 at 2.) Repeating this refrain does not make it true. None of the three grounds asserted by the Tolkien/HC Parties is applicable or sufficient to challenge the viability of Warner's amended counterclaims and, accordingly, the Tolkien/HC Parties' motion should be denied.

Warner has alleged a textbook claim for breach of contract. The claim seeks redress for the damage caused by the Tolkien/HC Parties' repudiation of Warner's rights to exploit online video games and gambling games based on *The Lord of the Rings* and *The Hobbit* (collectively, the "Tolkien Works"). Under the terms of the 1969 Agreements and 2010 Regrant Agreement, Warner has these rights. Warner has been exploiting the rights for years. Warner has been fully accounting to and paying the Tolkien/HC Parties for these rights. They have had full knowledge of this exploitation. Despite this long course of dealing, the Tolkien/HC Parties have now taken the position that Warner cannot continue to exploit these rights without paying millions of dollars more for, at least, the online rights. In the face of this repudiation and demand for additional consideration, Warner terminated existing license agreements and refrained from entering into additional licenses. The Tolkien/HC Parties' repudiation has placed an impermissible cloud on the rights, causing Warner to suffer millions of dollars in damages.

As the counterclaim allegations make clear, Warner's breach of contract claim does not target or depend in any way on the Tolkien/HC Parties' lawsuit or their pre-litigation activity. Warner's claim is based on the Tolkien/HC Parties' repudiation itself—not on any particular way in which that repudiation was communicated. Warner suffered the same losses, and would have the same valid claim for damages, *even if the Tolkien/HC Parties had never filed this lawsuit.*

Neither the original nor the amended counterclaims ever even mention the lawsuit or any pre-litigation communications. In fact, when the Tolkien/HC Parties erroneously claimed that Warner's original counterclaim referenced the lawsuit, Warner immediately clarified that the claim is based on the Tolkien/HC Parties' contract repudiation, not their lawsuit. Unable to identify any allegation in the amended counterclaim to support this motion, the Tolkien/HC Parties rely on the original pleading. Even then, the Tolkien/HC Parties point to only one word in the original pleading as "evidence" of the supposed impropriety of Warner's claim: "challenging." But, as Warner clearly explained during the meet-and-confer process, Warner used the word "challenging" to refer generally to the Tolkien/HC Parties' repudiation of the rights at issue, and not to the litigation or any pre-litigation activity. Warner even offered to—and did—amend its pleading to eliminate any uncertainty caused by that word.

In straining to apply the California litigation privilege, the Tolkien/HC Parties mischaracterize Warner's claim as asserting that the rights were repudiated through the litigation and pre-litigation communications. This is improper on every level. First, as a *procedural* matter, a motion to dismiss must be based on facts apparent from the face of the pleading. It is improper for the Tolkien/HC Parties to rewrite the pleadings to manufacture a false pleading defect. Second, as a *factual* matter, the Tolkien/HC Parties' assertion is simply incorrect. As explained in more detail in Warner's opposition to the Tolkien/HC Parties' Special Motion to Strike, the Tolkien/HC Parties widely repudiated Warner's rights multiple times outside the context of this litigation. Beyond filing this litigation, the Tolkien/HC Parties also publicly repudiated Warner's rights to gambling games and video games in communications to the press, none of which are shielded by the litigation privilege. Finally, as a *legal* matter, the fact that the Tolkien/HC Parties filed a lawsuit does not immunize their breach of contract. The law does not incentivize or allow breaching parties to race to the courthouse by providing them immunity for

breaching a contract even if that breach is first expressed in litigation or in a pre-litigation communication.

Lastly, in asking this Court to dismiss Warner's claim for declaratory judgment as redundant, the Tolkien/HC Parties offer only a superficial—and incorrect—analysis of the issues raised by Warner's claim for declaratory relief. The declarations sought by Warner are not redundant because they are broader than the relief requested by the Tolkien/HC Parties. Warner's declaratory relief claim also does not merely seek the establishment of a valid defense to the Tolkien/HC Parties' claims in this case, but seeks affirmative declarations that Warner is free to exploit the online and gambling rights in any context. Moreover, the Tolkien/HC Parties ignore entirely the well-settled rule that district courts should forbear from prematurely dismissing declaratory relief claims at the pleading stage of litigation if there is any question as to redundancy. Finally, the Tolkien/HC Parties have never identified *any* prejudice that they would allegedly face should the declaratory claims remain in the lawsuit. For all of these reasons, the court should deny the Tolkien/HC Parties' motion to dismiss.

## II. WARNER'S BREACH OF CONTRACT CLAIM IS VALID

### A. The Breach Is Actionable Even If It Is Not A "Total" Breach

The allegations in the First Amended Counterclaims set forth the Tolkien/HC Parties' breach of contract and, for purposes of this motion to dismiss, must be accepted as true. The parties' agreements for *The Hobbit* and *The Lord of the Rings* conveyed broad rights, "which included the rights to exploit online video games and gambling games." (DK 36 ¶ 40.) Despite the Tolkien/HC Parties' "knowledge of and agreement with Warner's and Zaentz's exploitation of these rights" for years (*id.* ¶¶ 21-22), the Tolkien/HC Parties have now disavowed those grants, and seek "yet another multi-million dollar payday for online rights, even though Warner had long exploited the rights to online games and to casino gambling machines with Counterclaim Defendants' knowledge and agreement." (*Id.* ¶ 35.) This disavowal

has "severely hampered Warner's ability to exercise the rights granted," costing "Warner millions of dollars in foregone license fees" and requiring that "Warner repay a significant sum to Microgaming to cover a portion of its development and advertising costs." (*Id.* ¶ 36.) Warner has also "now had to delay, reconsider, and perhaps cancel altogether" plans to exploit the rights. (*Id.* ¶ 37.)

The Tolkien/HC Parties' unequivocal disavowal of Warner's rights and claim to contract rights they do not have constitutes a present and anticipatory repudiation of the parties' agreement. (DK 36 ¶¶ 41, 44.) *See Pac. Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*, 411 F.2d 889, 895 (9th Cir. 1969) (where a party maintains an "untenable construction of a contract on a matter of essential substance," this will be regarded as a repudiation of the contract); *Paramount Pictures Corp. v. Puzo*, 2012 WL 4465574, at *4 (S.D.N.Y. Sept. 26, 2012) ("repudiation occurs when a party advances an untenable contract interpretation to avoid its contractual obligations or when it refuses to perform its contractual obligations absent the other party's satisfaction of extracontractual conditions").[1]

The Tolkien/HC Parties have also breached the covenant, implied in every contract, not to "do anything which shall have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *See Calabrese v. Rexall Drug & Chem. Co.*, 218 Cal. App. 2d 774, 782 (1963); *see also Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (N.Y. 1933); Restatement (Second) Contracts § 205 (the "obligation of good faith and fair dealing" is violated "by dishonest conduct such as … asserting an interpretation contrary to one's own understanding");[2] *cf. Monotype Imaging Inc. v. Deluxe Corp.*, 2012 WL 3096679,

---

[1] As the Tolkien/HC Parties note, there is a question whether California or New York substantive law applies to the parties' agreements. (DK 40 at 7, n.4.) For purposes of this motion, however, the same legal principles apply under both California and New York law.

[2] As set forth in Warner's concurrently filed opposition to the Tolkien/HC Parties' anti-SLAPP motion, this sort of conduct is precisely what the Tolkien/HC Parties have done through their repudiation of the 2010 Regrant Agreement. For example,

at *4 (D. Mass. July 26, 2012) (claim for breach of contract based on the licensor's interpretation of intellectual property license). The Tolkien/HC Parties' suggestion that there is "no executory obligation of the Tolkien/HC Parties remaining to be performed" (DK 40 at 8) is meritless because it ignores this continuing obligation of good faith and fair dealing. The Tolkien/HC Parties' disavowal is not only a present repudiation of the existing grant, but it also breaches their ongoing obligation not to interfere with or injure Warner's contract rights.[3]

The Tolkien/HC Parties generally do not dispute that the allegations in the counterclaim adequately allege the elements for a breach of contract. Rather, they assert that any claimed breach must be total, going "to the *whole* of the contract." (DK 40 at 7 (emphasis added).) This is a misstatement of the law. The Tolkien/HC Parties rely on cases in which a party terminated or canceled an agreement or refused to perform on the grounds that their performance was excused. Warner, however, does not seek to avoid the performance of its obligations, nor does Warner seek to terminate or rescind the 2010 Regrant Agreement. Warner is seeking contract damages. *See Comedy Club, Inc. v. Improv W. Assocs.*, 514 F.3d 833, 847 n.12 (9th Cir. 2007) (under California law, the "general rule is that if the breach is a material breach, it may give grounds for the non-breaching party to cancel the contract, but if the breach is a partial breach, the non-breaching party's remedy is for damages"); *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006) (under New York law, if "a breach is

---

having taken the position through their long-time attorney, Cathleen Blackburn, that the rights to online video games were included under Schedules D, the Tolkien/HC Parties cannot now advance a contrary interpretation.

[3] A similar claim was brought in *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989). In that case, the plaintiff brought an action for copyright infringement against the defendant for exceeding the scope of its license agreement. *Id.* at 1085. The defendant countersued alleging that the plaintiff breached the parties' contract and the implied covenant of good faith and fair dealing "by denying implicitly the existence of [defendant's] license." *Id.* at 1092. Though the Ninth Circuit dismissed the counterclaim, it did so only for reasons that do not apply here.

- 5 -

only partial, it may entitle the non-breaching party to damages for the breach, but it does not entitle him simply to treat the contract as at an end"). Contrary to the Tolkien/HC Parties' novel argument, the relevant case law uniformly holds that a party can allege damages for a partial breach, just as Warner does in this case.

Acceptance of the Tolkien/HC Parties' argument would mean that a party is not liable for damages merely because it did not breach the entire contract. Under the Tolkien/HC Parties' erroneous view of the law, a party who granted a worldwide copyright license could breach with impunity if it later took the position that the license only applied to one particular question. This is not the law. "Any breach, total or partial, which causes a measurable injury, gives the injured party a right to damages as compensation therefor." 1 B.E. Witkin, Summary of California Law, § 263 at 294-95 (7th ed.); *see also Borgonovo v. Henderson*, 182 Cal. App. 2d 220, 231 (1960); *New Windsor*, 442 F.3d at 117 (same under New York law).

### B. The Litigation Privilege Does Not Apply

The Tolkien/HC Parties' argument that Warner's breach of contract claim is barred by the litigation privilege is similarly flawed. The Tolkien/HC Parties argue that Warner's breach of contract claim should be dismissed because it is based on "communications made during the course of, or preparatory to, this lawsuit." (DK 40 at 16.) Yet, neither Warner's original counterclaim nor its amended allegations ever mention the filing of the lawsuit or any pre-litigation communications, nor does Warner allege that its harm is tied to the filing of the lawsuit or any pre-litigation communications. Rather, Warner's claim is based on the fact that the Tolkien/HC Parties have repudiated the parties' contract; the particular manner by which the Tolkien/HC Parties have chosen to assert that repudiation is irrelevant.

In considering the Tolkien/HC Parties' motion to dismiss, the Court is limited to a review of the allegations in the complaint. *See Mitchel v. City of Santa Rosa*, 476 Fed. Appx. 661, 664 (9th Cir. 2011) (reversing grant of summary judgment because court relied on declaration submitted by defendant). The

1   Tolkien/HC Parties' attempt to seek dismissal of Warner's counterclaim by
2   injecting purported and disputed "evidence" into the analysis of Warner's
3   complaint must be rejected.  Here, where the applicability of the litigation privilege
4   is not apparent from the face of Warner's complaint, the motion must be denied.
5   *See Ryan v. Zemanian*, 2012 WL 4447881, at *3, 5 (S.D. Cal. Sept. 25, 2012)
6   (denying motion to dismiss based on the litigation privilege because it was not
7   apparent from the face of the complaint that the privilege applied and noting that
8   movant could subsequently challenge the claim on a motion for summary
9   judgment); *Maponics, LLC v. Wahl*, 2008 WL 2788282, at *3 (N.D. Cal. July 18,
10  2008) ("Based on the allegations of the counterclaim, it is sufficiently unclear that
11  the statements at issue qualify for the litigation privilege that the motion to dismiss
12  is denied."); *Zurich Am. Ins. Co. v. Trans Cal. Ins. Assocs., Inc.*, 2010 WL
13  4968078, at *4 (E.D. Cal. Dec. 1, 2010) (denying motion to dismiss because "a
14  factual inquiry is required to determine whether the litigation privilege bars the
15  claim" based on post-litigation communications); *Pac. Rollforming, LLC v. Trakloc
16  N. Am., LLC*, 2010 WL 2523946, at *5 (S.D. Cal. June 18, 2010) (whether litigation
17  privilege applied was not an issue that could be decided as a matter of law).
18          Even if the Court accepted the Tolkien/HC Parties' invitation to go beyond
19  the allegations of the pleading, dismissal would still be improper.  As detailed in the
20  evidence submitted in support of Warner's opposition to the Tolkien/HC Parties'
21  anti-SLAPP motion, the Tolkien/HC Parties have repudiated the contract in the
22  press, which falls outside the ambit of the litigation privilege.  *See Rothman v.
23  Jackson*, 49 Cal. App. 4th 1134, 1149 (1996).  This is fatal to the Tolkien/HC
24  Parties' litigation privilege defense.  The moving papers mischaracterize Warner's
25  counterclaim, asserting that "all of the acts which allegedly damaged the Warner
26  Parties are communications made during the course of, or preparatory to, this
27  lawsuit" (DK 40 at 16), because otherwise the litigation privilege has no
28  application.  Since the Tolkien/HC Parties also manifested their repudiation in non-

- 7 -

privileged communications to the press, the litigation privilege cannot bar the contract claim. Thus, even were this Court to consider facts beyond the pleadings, which it cannot, dismissal would still be improper.

Finally, and again discussed in more detail in Warner's anti-SLAPP opposition, the litigation privilege is inapplicable to Warner's breach of contract claim. The litigation privilege "is generally described as one that precludes liability in tort, not liability for breach of contract." *Navellier v. Sletten* ("*Navellier II*"), 106 Cal. App. 4th 763, 773-75 (2003). Whether the privilege can be applied to a contract claim "turns on whether its application furthers the policies underlying the privilege." *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1492 (2005). The purpose of the privilege is to "ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation." *Id.* It is not intended to give parties a way to immunize contract breaches by running to the courthouse. As the *Wentland* court held, the privilege should not be applied to a claim "based on breach of a separate promise independent of the litigation." *Id.* at 1494. Even if a party chooses to manifest that breach through litigation or pre-litigation communications, the breach is "not simply a communication, but also wrongful conduct or performance under the contract," and hence not protected by the litigation privilege. *Id.* Here, applying the litigation privilege would immunize the Tolkien/HC Parties' wrongful conduct and leave Warner without any remedy for the millions in damages it has suffered as a result of the Tolkien/HC Parties' breach, both of which run directly counter to the policies underlying the litigation privilege.

This case is not *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal. App. 4th 873, 876 (2011), on which the Tolkien/HC Parties primarily rely. The cross-complainant in *Digerati* specifically alleged in its contract claim that it was harmed by cross-defendants' filing of a lawsuit for injunctive relief and by cease-and-desist letters to third-party distributors stating

- 8 -

that Digerati was not authorized to release a film. *Id.* at 887-88. Here, Warner has not pleaded harm arising from either specific pre-litigation communications or the lawsuit itself. Rather, Warner's harm arises from the Tolkien/HC Parties' disavowal itself, separate and apart from any litigation or pre-litigation correspondence. The repudiation of rights has "prevented Warner from being able to represent to third parties that it has the rights or to find third parties who are willing to exploit those rights given the cloud over the rights." (DK 36 ¶ 17.) Because of the repudiation, Warner "terminated its online gambling license agreement with Microgaming," "has not entered into license agreements for online gambling games and casino slot machines in connection with *The Hobbit*," and "has now had to delay, reconsider, and perhaps cancel altogether" its "plans for further exploitation." (DK 36 ¶¶ 16-17.) This harm and Warner's contract claim would exist even if the Tolkien/HC Parties had never filed a lawsuit.

  The *Digerati* decision is also questionable authority. Because the parties in that case apparently never raised the issue of whether the litigation privilege can even apply to a breach of contract claim, the *Digerati* court did not consider whether barring the breach of contract claim would further the purposes of the privilege. The Tolkien/HC Parties' use of *Digerati* would bring it into conflict with *Navellier II* and *Wentland*, cases the *Digerati* decision does not address.

  For the above reasons, the Tolkien/HC Party's motion to dismiss Warner's breach of contract claim must be denied.

### III. WARNER'S DECLARATORY JUDGMENT CLAIM IS VALID

  The Tolkien/HC Parties also ask this Court to exercise its discretion and dismiss Warner's declaratory relief counterclaim. But district courts may dismiss counterclaims only "when it is *clear* that there is *complete identity* of factual and legal issues between the complaint and the counterclaim." *See Pettrey v. Enter. Title Agency*, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006) (emphasis added). It is widely recognized that "it is very difficult to determine whether the

1  declaratory-judgment counterclaim really is redundant prior to trial." 6 Charles A.
2  Wright & Arthur R. Miller, Federal Practice & Procedure § 1406, at 36 (2d ed.
3  1990). For this reason, rather than dismiss potentially non-redundant declaratory
4  judgment counterclaims, "[t]he safer course for the court to follow is to deny a
5  request to dismiss a counterclaim for declaratory relief unless there is no doubt that
6  it will be rendered moot by the adjudication of the main action." *Id.*

7  Accordingly, even where claims seeking declaratory relief appear to be
8  redundant—which is certainly not the case here—courts are reluctant "to dismiss a
9  viable and plausible claim at such an early stage [in the litigation.]" *U.S. Bank*
10 *Nat'l Ass'n v. Alliant Energy Res., Inc.*, 2009 WL 1850813, at *3 (W.D. Wis. June
11 26, 2009); *see also Balmoral Racing Club, Inc. v. Churchill Downs, Inc.*, 2011 WL
12 6009610, at *2 (N.D. Ill. Nov. 29, 2011) (finding that it was "likely" that the
13 counterclaim was redundant but refusing to dismiss the claim because the court
14 "will have a much better handle on the issue closer to trial"); *Sentry Ins. v. Novelty,*
15 *Inc.*, 2009 WL 5087688, at *3 (W.D. Wis. Dec. 17, 2009) (holding that it was
16 premature to dismiss a declaratory relief counterclaim that "appear[ed] to be the
17 inverse of plaintiff's claims").

18 Here, Warner's declaratory judgment counterclaim is different from and
19 broader than the relief requested by the Tolkien/HC Parties. For example, the
20 Tolkien/HC Parties seek a declaration that Warner does not have the right to exploit
21 video games that do not involve physical media, such as a cartridge or disk. (DK 1
22 ¶ 7.) Warner, by contrast, seeks a declaration that it can exploit online video games
23 regardless of whether physical media is involved, as well as a declaration that it has
24 rights to digital content other than video games, such as ringtones and screensavers.
25 Additionally, while the Tolkien/HC Parties assert that Warner's right to exploit its
26 motion pictures "are not at issue in this dispute," Warner seeks a declaration that
27 the motion picture grants do convey online and gambling rights. (DK 36 ¶ 49(a)-
28 (b).) Because the counterclaims are broader than the relief sought by the

Tolkien/HC Parties, dismissal is improper. *See*, *e.g., Microsoft Corp. v. Motorola, Inc.*, 2012 WL 395734, at *4 (W.D. Wash. Feb. 6, 2012).

Similarly, Warner's declaratory judgment claim cannot be dismissed as duplicative of its defenses. While there may be some similarity, "they serve vastly different purposes." *See Microsoft Corp.*, 2012 WL 395734, at *4. "Although the affirmative defenses and [declaratory relief] counterclaim may share facts and circumstances, defending an action based on non-liability is not the same as vindicating or restoring one's reputation and goodwill through a declaratory judgment stating that [defendant] did nothing unlawful." *OgoSport LLC v. Maranda Enters. LLC*, 2011 WL 4404070, at *2 (E.D. Wis. Sept. 20, 2011). "This is a distinction with a difference, and one that is dispositive of whether this court should grant [plaintiff's] motion because of redundancy." *Id.* Courts have recognized that this principle is especially true in cases involving intellectual property rights. *See, e.g., Strickrath v. Globalstar, Inc.*, 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008). Warner is not simply seeking a declaration of non-infringement; it is seeking an affirmative declaration that the Tolkien/HC Parties are estopped from challenging Warner's exploitation in any circumstance.

Finally, no prejudice befalls a plaintiff if a declaratory judgment counterclaim remains pending, whereas a wrongfully dismissed counterclaim can lead to delay or, worse still, a second lawsuit. *See Quantum Wave, LLC v. Russell*, 2012 WL 98542, at *1 (D. Ariz. Jan. 12, 2012) (noting that deferring the determination whether the claims were redundant "will not impose any additional burden on the counter defendants"); *U.S. Bank*, 2009 WL 1850813, at *3 ("If, as plaintiff argues, the counterclaims are truly repetitious, then plaintiff will not have to expend much time on any additional discovery or briefing."); *VW Credit, Inc. v. Friedman & Wexler, LLC*, 2010 WL 2330364, at *2 (N.D. Ill. June 7, 2010) ("[E]ven if the counterclaim turns out to be an exact mirror image of [plaintiffs'] claim, which seems doubtful, the fact that the counterclaim remained pending …

would not prejudice [plaintiff] in the slightest."); *Jungersen v. Miller*, 125 F. Supp. 846, 847 (N.D. Ohio 1954) (observing that "no possible harm can result from the delay" in determining whether a counterclaim is redundant).[4]

For the above reasons, Warner's declaratory judgment claim is neither redundant of the Tolkien/HC Parties' claims nor duplicative of Warner's affirmative defenses. Accordingly, the motion to dismiss this claim fails.

## IV. CONCLUSION

For all of the reasons set forth above and in Warner's concurrently filed opposition to the Tolkien/HC Parties' Special Motion to Strike, Warner respectfully requests that the Court deny the Tolkien/HC Parties' Motion to Dismiss.

Dated: April 15, 2013　　　　　　　　O'MELVENY & MYERS LLP

By: _____
　　　Daniel M. Petrocelli
Attorneys for Warner Defendants and
Counterclaim Plaintiffs

---

[4] The Tolkien/HC Parties' heavy reliance on *Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353 (9th Cir. 1988), is misplaced. (DK 40 at 18.) In *Fireman's Fund*, the court affirmed the dismissal of a federal claim for declaratory relief that was asserted while a related tort claim was pending in the Superior Court of Guam. 860 F.2d at 354. The Ninth Circuit found that the declaratory judgment claim was improperly being used to obtain interlocutory review of the Superior Court's finding that it had jurisdiction over the dispute. *Id*. at 355.

- 12 -