1   BONNIE E. ESKENAZI (SBN 119401)
    BEskenazi@ggfirm.com
2   ELISABETH A. MORIARTY (SBN 156569)
    EMoriarty@ggfirm.com
3   RICARDO P. CESTERO (SBN 203230)
    RCestero@ggfirm.com
4   GREENBERG GLUSKER FIELDS CLAMAN &
    MACHTINGER LLP
5   1900 Avenue of the Stars, 21st Floor
    Los Angeles, California  90067-4590
6   Telephone:  310.553.3610
    Fax:  310.553.0687
7
    Attorneys for Plaintiffs
8
                 UNITED STATES DISTRICT COURT
9
               CENTRAL DISTRICT OF CALIFORNIA
10

11   FOURTH AGE LIMITED, a United Kingdom          Case No.  CV 12-09912
     corporation; PRISCILLA MARY ANNE REUEL        ABC (SHx)
12   TOLKIEN, as TRUSTEE OF THE TOLKIEN
     TRUST, a United Kingdom Charitable Trust; THE  Audrey B. Collins
13   J.R.R. TOLKIEN ESTATE LIMITED, a United
     Kingdom corporation; HARPERCOLLINS            **REPLY BRIEF IN
14   PUBLISHERS, LTD., a United Kingdom corporation;  SUPPORT OF
     UNWIN HYMAN LTD., a United Kingdom            MOTION TO
15   corporation; and GEORGE ALLEN & UNWIN         DISMISS FIRST
     (PUBLISHERS) LTD., a United Kingdom           AMENDED
16   corporation,                                  COUNTERCLAIMS
                                                   OF THE WARNER
17                  Plaintiffs,                    PARTIES**

18   v.                                            **[F.R.C.P. 12(b)(6)]**

19   WARNER BROS. DIGITAL DISTRIBUTION, INC.,      **[Reply Brief re: Special
     a division of WARNER BROS. HOME               Motion to Strike filed
20   ENTERTAINMENT, INC., a Delaware corporation;  concurrently herewith]**
     WARNER BROS. ENTERTAINMENT, INC., a
21   Delaware corporation, as successor-in-interest to New  Date:  May 13, 2013
     Line Cinema Corp.; WARNER BROS. CONSUMER      Time:  10:00 a.m.
22   PRODUCTS, INC., a Delaware corporation;       Courtroom:  680
     WARNER BROS. INTERACTIVE
23   ENTERTAINMENT, INC., a division of WARNER
     BROS. HOME ENTERTAINMENT, INC.; NEW
24   LINE PRODUCTIONS, INC., a California
     corporation; THE SAUL ZAENTZ COMPANY d/b/a
25   Middle-earth Enterprises, a Delaware corporation; and
     DOES 1-10, inclusive,
26                  Defendants.

27   AND RELATED COUNTERCLAIMS.

28

*Left margin (vertical text):* GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   ARGUMENT ..................................................................................... 3

    A.    The Warner Parties Do Not Properly Plead The Requisite Facts Showing The Purported Repudiatory Statements and Conduct .......... 3

    B.    The Warner Parties Do Not, And Cannot, Allege A Refusal to Perform A Contractual Obligation Going To The Entirety or Essence of the Contract ........................................................................ 6

    C.    The Implied Covenant of Good Faith and Fair Dealing Cannot Salvage the Warner Parties' Counterclaim .......................................... 10

    D.    The "Repudiation" Claim is an Improper Attempt to Circumvent the Malicious Prosecution Standards ................................................. 12

    E.    The Tolkien/HC Parties' Purported "Assertion" of their Rights Is Absolutely Privileged .................................................................... 13

    F.    The Warner Parties' Amended Second Counterclaim for Declaratory Relief is Redundant and Superfluous .............................. 17

III.  CONCLUSION ................................................................................. 19

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

i

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. 2, 4

*Atkins, Kroll & Co., Ltd. v. Nedlloyd Line*,
    210 F.Supp. 315 (N.D. Cal. 1962) .......................................... 9

*Baker Driveway Co., Inc. v. Bankhead Enterprises*,
    478 F.Supp. 857 (E. D. Mich. 1979) ...................................... 13

*Bell Atlantic Com. v Twombly*,
    550 U.S. 544 (2007) ................................................................. 3, 4

*C.B.C. Enter., Inc. v. United States*,
    24 Cl.Ct. 1 (Cl.Ct. 1991) ........................................................ 13

*City of Los Angeles v. AT&T Mobility LLC*,
    2012 U.S. Dist. LEXIS 6511 (C.D. Cal. 2012) ...................... 9

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ................................................ 11

*Fireman's Fund Ins. Co. v. Ignacio*,
    860 F.2d 353 (9th Cir. 1988) .................................................. 17, 18

*Ford Motor Co. v. Obsolete Ford Parts, Inc.*,
    318 F.Supp.2d 516 (E. Dist. Mich. 2004) ............................. 13

*Graybill v. Wells Fargo Bank, N.A.*,
    2013 WL 978245 (N.D. Cal. March 12, 2013) ....................... 4

*Monotype Imaging Inc. v. Deluxe Corp.*,
    883 F.Supp.2d 317 (D. Mass. July 26, 2013) ......................... 11

*Pacific Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*,
    411 F.2d 889 (9th Cir. 1969) .................................................. 6, 7, 8

*Paramount Pictures Corp. v. Puzo*,
    2012 WL 4465574 (S.D.N.Y. Sept. 26, 2012) ................ 2, 6, 8, 10, 12

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989) ................................................ 11

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ................................................ 4

*Stickrath v. Globalstar, Inc.*,
    2008 WL 2050990 (N.D. Cal. May 13, 2008) ........................ 19

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

ii

REPLY RE MOTION TO DISMISS WARNER
PARTIES' COUNTERCLAIMS

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATE CASES**

*Atkinson v. District Bond Co.,*
5 Cal.App.2d 738 (1935) ...................................................................... 8

*British Films Do Brasil, Ltda v. London Film Productions, Inc.,*
166 N.Y.S.2d 703 (N.Y. Sup. Ct. 1957) ................................................ 8

*Central Valley General Hospital v. Smith,*
162 Cal.App.4th 501 (2008) ............................................................ 1, 4

*Digerati Holdings, LLC v. Young Money Entertainment,*
194 Cal. App. 4th 873 (2011) ............................................................ 16

*Feldman v. 1100 Park Lane Associates,*
160 Cal. App. 4th 1467 (2008) .......................................................... 17

*Gittlitz v. Lewis,*
212 N.Y.S.2d 219 (N.Y. Sup. Ct. 1961) ................................................ 8

*Oren Royal Oaks Venture v. Greenberg Bernhard, Weiss & Karma, Inc.,*
42 Cal.3d 1157 (1986) ...................................................................... 13

*Pacific Gas & Electric Co. v. Bear Stearns & Co.,*
50 Cal.3d 1118 (1990) ...................................................................... 13

*Racine & Laramie, Ltd. v. Department of Parks & Recreation,*
11 Cal.App.4th 1026 (1992) ........................................................ 10, 11

*Ramona Unified School Dist. v. Tsiknas,*
135 Cal.App.4th 510 (2005) .............................................................. 13

*Silberg v. Anderson,*
50 Cal.3d 205 (1990) ........................................................................ 16

*Taylor v. Johnston,*
15 Cal.3d 130 (Cal. 1975) ......................................................... 1, 4, 7, 8

*Tollefson v. Roman Catholic Bishop of San Diego,*
219 Cal.App.3d 843 (1990) ............................................................... 11

*Wentland v. Wass,*
126 Cal.App.4th 1484 (2005) ..................................................... 15, 17

**STATE STATUTES**

California Civil Code § 47 ..................................................................... 5

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................. 4

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY RE MOTION TO DISMISS WARNER
PARTIES' COUNTERCLAIMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

Black's Law Dictionary (Pocket Edition, West 1996) .......................................... 1, 4

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## I.   **INTRODUCTION**

The Warner Parties' Opposition is premised on the absurd proposition that any party who sues another for breach of contract claiming that the other has exceeded the scope of its contractual rights has "repudiated" the contract, and is itself liable for breach.  This turns the law of contracts on its head.  Taking a contrary position regarding a contract's meaning in connection with the assertion of one's legal rights in and of itself cannot be and is not a repudiation.

The Warner Parties go to great lengths to distract the Court's attention from their failure to identify any acts or conduct on the part of the Tolkien/HC Parties alleged to constitute the purported repudiation.  Hoping to obscure that the so-called "repudiation" consists of nothing more than "positions" taken by the Tolkien/HC Parties in pre-litigation demand letters, settlement discussions and in this litigation — all conduct absolutely protected by the litigation privilege — the Warner Parties urge the Court to focus solely on the charge of repudiation itself, and to ignore the "particular way in which the repudiation was communicated."  (Opp. at 1:25-27; 6:22-24).  Of course, the term "repudiation" represents no more than a legal conclusion about "a contracting's party's words or actions that indicate an intention not to perform the contract…."  Black's Law Dictionary (Pocket Edition, West 1996).  It is not possible to repudiate a contract without making a statement or engaging in an act demonstrating a refusal or inability to perform one's contractual obligations.  *See Taylor v. Johnston*, 15 Cal.3d 130, 137 (Cal. 1975); *Central Valley General Hospital v. Smith*, 162 Cal.App.4th 501, 514 (2008).  The "repudiation" cannot be divorced from the words, conduct and context in which the repudiation occurred.

Contrary to the Warner Parties' contention, the "particular manner" by which the Tolkien/HC Parties are alleged to have asserted the repudiation is highly relevant and cannot be ignored.  It is the Warner Parties' burden to plead <u>facts</u> sufficient to allow the Court (and the Tolkien/HC Parties) to determine what

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY RE  MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

particular acts, statements or conduct constitute the alleged repudiation. Federal notice pleading standards are not an invitation for litigants to pursue frivolous claims based on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege *facts*—not legal conclusions disguised as facts— sufficient to state "a *plausible* claim for relief[.]" *Id.* at 679 (emphasis added).

Not only have the Warner Parties failed to plead any facts putting the Tolkien/HC Parties and the Court on notice of the acts and/or statements constituting the alleged repudiation, they <u>omitted</u> allegations from their original pleading which show that it is the Tolkien Parties' "challenging" or "denying" the Warner Parties' purported rights about which the Warner Parties actually complain. (Original Counterclaim, ¶ 43). The Warner Parties cannot survive a motion to dismiss by sleight of hand. By omitting factual allegations from its Amended Counterclaim, thereby basing their "claim" on unsubstantiated legal conclusions, the Warner Parties have failed to plead facts sufficient to establish any cognizable legal theory. In any event, the Warner Parties cannot run from their original allegations.

Even setting these pleading defects aside, the Warner Parties do not and cannot state a claim of repudiation. The Warner Parties' own cited authorities make clear that the mere "disavowal" of a party's purported contractual rights or the taking of an untenable interpretation of the parties' contractual rights and duties is not, in and of itself, a repudiation. To constitute a repudiation, such conduct must be paired with an absolute and unequivocal refusal to perform an obligation going to the entirety or heart of the contract. *E.g. Paramount Pictures Corp. v. Puzo*, 2012 WL 4465574 at *4-5, *8 (S.D.N.Y. Sept. 26, 2012)

It is clear from the face of the pleadings that the Tolkien/HC Parties have fully performed their obligations under the 1969 Agreements – they signed the agreements and granted the rights described in those agreements. There is nothing

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

left for the Tolkien/HC Parties to perform.  Indeed, the Warner Parties concede they have been exploiting the rights set forth in the agreements for years.  (FACC, ¶¶ 3-4, 21-29, 35).  The Tolkien/HC Parties' assertions regarding Intangible Video Game[1] rights and gambling rights are nothing more than a claim that the Warner Parties have <u>exceeded the rights</u> set forth in the 1969 Agreements.  The Tolkien/HC Parties have not refused to comply with their obligation to grant the Warner Parties rights; as licensor under the 1969 Agreements, the Tolkien/HC Parties fulfilled that obligation decades ago.[2]  Rather, the Tolkien/HC Parties are <u>affirming</u> the contract by seeking to enforce the parameters of the grant of rights and the reservation of rights clauses in the contract.  This is the direct opposite of repudiation.

Finally, the Opposition fails to refute the Tolkien/HC Parties' arguments in favor of dismissing the Warner Parties' redundant and unnecessary requests for declaratory relief.  Everything which the Warner Parties seek by way of declaratory relief is already before the Court in connection with the Tolkien/HC Parties' declaratory relief claims and the Warner Parties' own affirmative defenses.

For each of the foregoing reasons, the Motion to Dismiss should be granted in its entirety, with prejudice and without leave to amend.

## II.   ARGUMENT

### A.   The Warner Parties Do Not Properly Plead The Requisite Facts Showing The Purported Repudiatory Statements and Conduct.

As a threshold matter, the Warner Parties' deliberate failure to disclose to the Court and the Tolkien/HC Parties any factual basis for their repudiation claim is fatal to their pleading.  It is fundamental that, in order to meet federal pleading standards, the plaintiff's allegations must give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Com. v Twombly*,

---

[1] Defined terms have the same meaning as set forth in the Tolkien/HC Parties' moving papers.
[2] To the extent the Warner Parties' counterclaim is based on the 2010 Regrant Agreement, it is undisputed that this later agreement regranted all rights originally conveyed in the 1969 Agreements.  (FACC ¶40).

REPLY RE  MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

550 U.S. 544, 555 (2007).  This showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Thus to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleading must "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim for relief that is plausible on its face.' … A claim has facial plausibility when the plaintiff pleads <u>factual content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, *supra*, at 678 (emphasis added).  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").

The word "repudiation" is a legal conclusion resulting from particular statements or conduct amounting to an unequivocal refusal to perform.  See Black's Law Dictionary (Pocket Edition, West 1996).  One cannot repudiate a contract without a statement or act demonstrating a refusal or inability to perform one's obligations thereunder.  *See Taylor*, 15 Cal.3d at 137; *Central Valley*, 162 Cal.App.4th at 514.  Repudiation cannot exist in a vacuum.

Thus, to satisfy their pleading requirements, the Warner Parties must allege facts sufficient to allow the Court (and the Tolkien/HC Parties) to determine what particular repudiatory acts, statements or conduct they attribute to the Tolkien/HC Parties, what particular obligation the Tolkien/HC Parties are alleged to have refused to perform and how the Tolkien/HC Parties asserted that refusal.  *See Graybill v. Wells Fargo Bank, N.A.*, 2013 WL 978245, at *13 (N.D. Cal. March 12, 2013)("Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity") (internal citations omitted).

1    Nowhere in the Amended First Counterclaim do the Warner Parties allege <u>facts</u>
2    sufficient to support the conclusion that there has been a repudiation.  The Warner
3    Parties simply state the bald legal conclusion that the Tolkien/HC Parties have
4    breached the parties' agreements by "repudiating their broad grant of rights"
5    thereunder.  (FACC, ¶ 44).  This is circular in the extreme, and falls far short of the
6    requisite federal pleading standards.  For this reason alone, the Motion to Dismiss
7    should be granted.

8          The Warner Parties' failure to allege facts in support of their unsubstantiated
9    legal conclusion is not inadvertent.  Indeed, the Warner Parties urge the Court to
10   <u>ignore</u> the particular way in which the purported repudiation was communicated
11   (Opp. at 1, 6).  They argue that the Tolkien/HC Parties have "taken the position"
12   that the Warner Parties do not have rights in Intangible Video Games and gambling,
13   but do not want to disclose *how* and in what context this "position" was taken.  The
14   Warner Parties even suggest that the Court should disregard allegations pleaded in
15   their original counterclaims (which allegations they omitted after learning of the
16   Tolkien/HC Parties' intended Motions to Dismiss and to Strike).  As is set forth in
17   the moving papers, those original allegations make clear that it is the Tolkien
18   Parties' "challenging" or "denying" of the Warner Parties' purported rights about
19   which the Warner Parties complain.  (Motion at 5-6, 16; Original Counterclaim, ¶
20   43).

21         The reason the Warner Parties try so desperately to obscure the facts on
22   which they attempt to base their claim is obvious — there has been no repudiation.
23   The so-called "repudiation" is nothing more than the Tolkien/HC Parties' assertion
24   of legal claims regarding the scope of the parties' respective rights under the
25   relevant agreements in pre-litigation and litigation communications — all conduct
26   which is absolutely privileged under California law and which renders the Warner
27   Parties' claim fatally defective.  California Civil Code § 47.  The Warner Parties
28   cannot avoid dismissal simply by neglecting to allege (or by omitting) the requisite

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY RE  MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

1   (but fatal) facts.[3]

2   **B.    The Warner Parties Do Not, And Cannot, Allege A Refusal to**

3   **Perform A Contractual Obligation Going To The Entirety or**

4   **Essence of the Contract.**

5   The crux of the Warner Parties' argument is that the Tolkien/HC Parties'

6   purported "disavowal" of the Warner Parties' alleged right to exploit Intangible

7   Video Games and gambling games based on the Tolkien Works is sufficient to

8   constitute "a present and anticipatory repudiation of the parties' agreement."  (Opp.

9   at 4).  But even the two cases on which the Warner Parties primarily rely (*Pacific*

10  *Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.* and *Paramount Pictures Corp.*

11  *v. Puzo*) confirm that the mere "disavowal" of a party's purported contractual

12  rights, standing alone, does not constitute a repudiation; such conduct must be

13  coupled with an absolute and unequivocal refusal to perform for a repudiation to

14  occur.  Thus the court in *Paramount Pictures Corp. v. Puzo*, 2012 WL 4465574

15  (S.D.N.Y. Sept. 26, 2012) recognized that:

16          "Contrary to the Estate's assertions, '*a statement disavowing a party's*

17          *rights under a contract*,' 'the erroneous claim to a right not given by

18          the contract,' or 'an untenable interpretation of a parties' [sic]

19          contractual rights or duties' *is not, in and of itself, a repudiation*.  . . .

20          Indeed, none of the cases cited by the Estate support the proposition

21          that the advancement of a particular contract interpretation, *if not done*

22          *to avoid performance*, amounts to repudiation.  Instead, these cases

23          confirm that to constitute repudiation, such conduct *must be paired*

24          *with an effort to escape performance* of a contractual obligation."

25  _____

26  [3] In their Opposition, the Warner Parties concoct a new theory based on press
    statements allegedly made by the Tolkien/HC Parties' representatives.  Of course,
    on a Motion to Dismiss, the Court cannot consider such evidentiary matters outside

27  the four corners of the pleadings.  In any event, as is set forth in the accompanying
    Reply Brief in Support of the Motion to Strike, such alleged statements, apart from

28  being inadmissible hearsay, do not constitute a repudiation.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY RE  MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

1    *Puzo*, 2012 WL at \*4-5 (citations omitted, emphasis added).

2         The Warner Parties' other cited case is in accord.  *Pacific Coast Eng'g Co. v.*

3    *Merritt-Chapman & Scott Corp.*, 411 F.2d 889, 894-895 (9th Cir. 1969) ("[W]hen

4    there is a disagreement as to the meaning of terms in a contract, ***one party's offer to***

5    ***perform in accordance with his interpretation is not itself an anticipatory***

6    ***breach***." "Whether the offer is in good faith or otherwise, it must be accompanied

7    by a ***clear manifestation of intention not to perform*** in accordance with any other

8    interpretation" before a repudiation occurs.) (citations omitted, emphasis added).

9         It is clear from the face of the pleadings that the Tolkien/HC Parties have

10   fully performed their obligations under the parties' agreements.  As licensor under

11   the parties' 1969 contracts, the Tolkien/HC Parties made one promise:  to grant the

12   rights as stated in the 1969 Agreements.  The Tolkien/HC Parties fulfilled that

13   obligation over four decades ago — they signed the agreements and granted the

14   film and merchandising rights described in those agreements.  (FACC, ¶ 3-4, 21-29,

15   35).  While the parties dispute the "metes and bounds" of the grant (i.e. whether the

16   license did or did not include the rights to license Intangible Video Games and

17   gambling games), there is no dispute that the grant of rights itself occurred long

18   ago.

19        Thus, the Tolkien/HC Parties have not withheld any performance from the

20   Warner Parties.  The promised rights — whatever their scope — were conveyed

21   forty years ago in a fully executed contract and there is nothing further for the

22   Tolkien/HC Parties to perform.  The Tolkien/HC Parties do not dispute that there

23   was a license to the Warner Parties of certain film and merchandising rights under

24   the parties' agreements; the Tolkien/HC Parties simply assert that the license is a

25   <u>limited</u> license, and that the Warner Parties have exceeded its scope by exploiting

26   Intangible Video Games and gambling games.  The Tolkien/HC Parties' position as

27   to the proper interpretation of the contract does not, and cannot, alter the actual

28   scope of the license; that scope is for the trier of fact to decide.  *See Taylor*, 15

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Cal.3d at 140 ("A mere declaration … of a party of an intention not to be bound will not of itself amount to a breach, so as to create an effectual renunciation of the contract; for one party cannot by any act or declaration destroy the binding force and efficacy of the contract").

The Tolkien/HC Parties seek to <u>reaffirm</u> and <u>enforce</u> the terms of the parties' agreements by requiring the Warner Parties to adhere to the limits set forth in the grant of rights and the reservation of rights clauses.  The Tolkien/HC Parties' assertion of their contractual rights simply tees up a legal dispute concerning the scope of those rights for the trier of fact to resolve.  That is the antithesis of repudiation.

Moreover, contrary to the Warner Parties' contention, the refusal to perform must go to the entirety or essence of the contract.  *Puzo*, 2012 WL at *8 ("Under New York law, repudiation is generally defined as a refusal to perform with respect to the *entire* contract") (emphasis in original).  "To justify the adverse party in treating the renunciation as a breach, <u>the refusal to perform must be of the whole contract</u> … and must be distinct, unequivocal and absolute."  *Taylor*, 15 Cal.3d at 140, citing *Atkinson v. District Bond Co.*, 5 Cal.App.2d 738, 743 (1935) (emphasis added); *Gittlitz v. Lewis*, 212 N.Y.S.2d 219, 220 (N.Y. Sup. Ct. 1961) (the repudiation must be "an unqualified and positive refusal to perform and must go to the whole of the contract"); *British Films Do Brasil, Ltda v. London Film Productions, Inc.*, 166 N.Y.S.2d 703, 706 (N.Y. Sup. Ct. 1957) (repudiation "must be entire, absolute and unequivocal, covering the entire performance to which the contract binds the promisor"); *Pacific Coast Eng'g*, 411 F.2d at 894 (*citing Atkinson, supra*, as "a particularly good statement of the general rule and the law in California").  Some treatises note that repudiation may also involve a "refusal to render ***such a material part of the promised performance*** that it goes to the ***essence*** of the contract."  *Puzo*, 2012 WL at *8 (emphasis added).  Under either standard, the Warner Parties' claim fails.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY RE  MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    The Warner Parties do not, and cannot, point to <u>any</u> executory obligation

2    which the Tolkien/HC Parties have failed to perform, let alone one going to the

3    ***entirety or essence*** of the agreement.  To the contrary, the Warner Parties

4    themselves allege substantial (if not total) performance by the Tolkien/HC Parties

5    of their obligations under the parties' agreements and the Warner Parties'

6    enjoyment of significant benefits under the contracts.  According to the Warner

7    Parties, the film rights, merchandising rights and even the rights to Intangible Video

8    Games and gambling, were all licensed decades ago, and the Warner Parties have

9    enjoyed the contractual benefits of such rights with the Tolkien/HC Parties'

10   knowledge and consent.   (FACC ¶¶ 3-4, 21-29, 33, 39-40).

11       If anything, the right to produce and distribute films based on *The Lord of the*

12   *Rings* and *The Hobbit* and tangible merchandising rights constitute the essence or

13   "heart" of the parties' agreement; the Warner Parties acknowledge that such rights

14   have been licensed, and that that they have exploited such rights to their great

15   financial benefit.  The Warner Parties allege that they have produced and

16   distributed three motion pictures based on *The Lord of the Rings* which met with

17   "virtually unprecedented critical and financial success," that they have licensed and

18   sold merchandise which has generated "millions of dollars in merchandising

19   revenue," and that they released an initial film based on *The Hobbit* (with two more

20   *Hobbit* films scheduled to be released in December 2013 and July 2014).  (Warner

21   Answer, ¶¶ 4, 42 and 43; see also FACC ¶ 3).[4]  It is thus undisputed that the

22   Tolkien/HC Parties performed their obligation to license film rights and tangible

23   merchandising rights — decidedly significant parts of the contract.  On these facts,

24   there cannot be repudiation, because any alleged failure to perform by the

25   _____

26   [4] The Court may properly consider admissions contained in the Warner Parties'
     Answer to the Complaint on a Motion to Dismiss.  See  *City of Los Angeles v.*
     *AT&T Mobility LLC*, 2012 U.S. Dist. LEXIS 6511 at *5-6 (C.D. Cal. 2012)

27   (considering admissions in defendant/counterclaimant's answer in granting
     plaintiff/counterclaim defendant's motion to dismiss); *Atkins, Kroll & Co., Ltd. v.*

28   *Nedlloyd Line*, 210 F.Supp. 315, 317 (N.D. Cal. 1962) (same).

1    Tolkien/HC Parties manifestly does not go to the entirety of the contract.  The

2    Warner Parties do not, and cannot, allege that the purported license of Intangible

3    Video Game and gambling rights was the "essence" of the parties' agreement.

4        Apparently recognizing this, the Warner Parties cite to cases generally

5    discussing the availability of damages for a "partial breach" (Opp. at 5-6).  But the

6    Warner Parties conflate principles of ordinary contract breach with repudiation.

7    They mean different things and have different consequences.  Thus, while a partial

8    breach may give rise to contract damages under appropriate circumstances, "for a

9    repudiation to have legal effect, courts have generally required that the threatened

10   breach be serious enough that the injured party could treat it as total if it occurred."

11   *Puzo*, 2012 WL at *8 (citation omitted).  The Warner Parties cite no case standing

12   for the proposition that there can be a "partial breach by repudiation" — that is

13   because those two concepts are mutually exclusive, as is set forth above.

14       **C.**    **The Implied Covenant of Good Faith and Fair Dealing Cannot**

15       **Salvage the Warner Parties' Counterclaim.**

16       The Warner Parties attempt to argue that the implied covenant of good faith

17   and fair dealing remains an executory obligation of the Tolkien/HC Parties.  (Opp.

18   at 4-5).  But the implied covenant of good faith and fair dealing cannot impose

19   substantive duties or limits on the contracting parties beyond those incorporated in

20   the specific terms of their agreement.  "If there exists a contractual relationship

21   between the parties, as was the case here, the implied covenant is limited to

22   assuring compliance with the express terms of the contract, and cannot be extended

23   to create obligations not contemplated by the contract."  *Racine & Laramie, Ltd. v.*

24   *Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1032 (1992) (citations

25   omitted).  In other words, there is no "free-floating" duty of good faith and fair

26   dealing that is unattached to existing contract obligations; the duty exists only in

27   relation to the performance of a specific contract term.  "The covenant of good faith

28   is read into contracts in order to protect the express covenants or promises of the

contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Racine, supra,* at 1031.

There is no express contractual provision in the parties' agreement obligating the Tolkien/HC Parties to refrain from litigating to enforce their rights or contesting the Warner Parties' interpretation of the rights granted and reserved under the parties' contract.[5] There is, however, an express provision in the parties' agreements precluding Zaentz and the Warner Parties from challenging or contesting *the Tolkien/HC Parties'* rights.  [Cestero Declaration, ¶ 4, Exs. C and D at ¶ 3.A ("Licensee agrees that it will not during the term of this agreement, or thereafter, attack the title or any rights of Licensor in and to the Name or Subject Mark or attach the validity of this license")].[6]  Plainly, the parties could have made that provision reciprocal, but apparently deliberately chose not to do so.  The Court cannot imply a contractual provision that contradicts or is inconsistent with the parties' express intent.  *See Tollefson v. Roman Catholic Bishop of San Diego*, 219 Cal.App.3d 843, 855 (1990) ("[T]here simply cannot exist a valid express contract on one hand and an implied contract, on the other, each embracing the identical subject but requiring different results and treatment").

The Warner Parties have cited no California or New York case in which the assertion of a particular contractual interpretation in an attempt to enforce one's legal rights is found to constitute a repudiation of the implied covenant of good faith and fair dealing.[7]

Taken to its logical conclusion, the Warner Parties' argument means that the

---

[5] For that reason, *Monotype Imaging Inc. v. Deluxe Corp.*, 883 F.Supp.2d 317 (D. Mass. July 26, 2013) is inapposite.
[6] The Court may consider a contract referenced in pleading on a motion to dismiss where the pleading "necessarily relies upon a document…the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).
[7] In the one case the Warner Parties *do* cite — *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989), the Ninth Circuit granted motions to dismiss claims for breach of contract and tortious breach of the implied covenant based on a denial of the existence of a license.  This case does not assist the Warner Parties in any respect.

REPLY RE  MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  Tolkien/HC Parties can <u>never</u> protect themselves against improper contractual

2  overreaching by the Warner Parties in a court of law or otherwise, without fear of

3  being sued for breach themselves. That cannot be, and is not, the law.

4       In any event, even if the Tolkien/HC Parties had some implied obligation not

5  to challenge the Warner Parties' exercise of their alleged rights in Intangible Video

6  Games and gambling games, such alleged rights would only constitute a small

7  sliver of the universe of rights licensed to the Warner Parties' predecessors under

8  the parties' agreements, and do not go to the heart of the contract. As a result,

9  "logic dictates that any implied obligation not to injure or interfere with those rights

10 also cannot 'go to the essence of the agreement.'" *Puzo*, 2012 WL at *9 (granting

11 motion to dismiss where the Estate of Puzo failed to allege that implied covenant

12 not to interfere with book publishing rights was the essence of the parties'

13 agreements). Consequently, even if the implied covenant constitutes an executory

14 obligation (which it does not), the Tolkien/HC Parties' purported disavowal of the

15 Warner Parties' rights to Intangible Video Games and gambling games does not

16 constitute a repudiation as a matter of law.

17     **D.**    **The "Repudiation" Claim is an Improper Attempt to Circumvent**

18           **the Malicious Prosecution Standards.**

19      This is a dispute about the scope of rights granted under a 40 year old license.

20 Under that license, the Warner Parties (through their predecessors) obtained certain

21 motion picture and limited merchandising rights in and to the Tolkien Works and

22 the Tolkien/HC Parties expressly retained certain rights. The Warner Parties

23 contend the rights granted to them include the rights to exploit Intangible Video

24 Games and gambling games; the Tolkien/HC Parties assert that such exploitations

25 are not included in the rights grant, and that those rights are instead reserved to

26 them.

27      The trier of fact will determine who is correct. If the Tolkien/HC Parties are

28 found to be correct, their rights will be enforced and the Warner Parties must cease

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY RE MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

their infringing and extra-contractual conduct.  If the Warner Parties are found to be correct, they can continue to exploit Intangible Video Games and gambling games and can attempt to file a malicious prosecution action at the appropriate time, if they can meet the stringent pleading requirements of that tort.  What the Warner Parties cannot do, however, is assert a breach of contract counterclaim in this action based on the Tolkien/HC Parties' assertion of their legal rights under the contract.

As is set forth in the moving papers, although labeled a claim for breach of contract, at its core the Amended First Counterclaim is really nothing more than a thinly-veiled, deficient claim for malicious prosecution — the Warner Parties are challenging the Tolkien/HC Parties' substantive motivation for pursuing their legal claims.  The Warner Parties' transparent efforts to avoid the stringent malicious prosecution standards by disguising their claim as one for breach of contract should be rejected.  *Oren Royal Oaks Venture v. Greenberg Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 1169 (1986); *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1131, 1137 (1990); *Ramona Unified School Dist. v. Tsiknas*, 135 Cal.App.4th 510, 520-522 (2005); *see also Ford Motor Co. v. Obsolete Ford Parts, Inc.*, 318 F.Supp.2d 516, 518-520 (E. Dist. Mich. 2004); *Baker Driveway Co., Inc. v. Bankhead Enterprises*, 478 F.Supp. 857, 859-60 (E. D. Mich. 1979) (cited with approval by the California Supreme Court in *Pacific Gas & Electric and Oren Royal Oaks Venture*); *C.B.C. Enter., Inc. v. United States*, 24 Cl.Ct. 1 (Cl.Ct. 1991).

The Warner Parties do not even attempt to address this independent ground for granting the Motion to Dismiss.  Their silence speaks volumes.

**E.**      **The Tolkien/HC Parties' Purported "Assertion" of their Rights Is Absolutely Privileged.**

The Warner Parties' attempt to avoid the application of the litigation privilege is a game of smoke and mirrors.  They assure the Court that their repudiation claim is not based on any statements leading up to or made in

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY RE  MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

connection with this lawsuit, but ask the Court to pay no attention to "the particular manner in which the Tolkien/HC Parties have chosen to assert that repudiation." (Opp. at 6). The Warner Parties' original and amended counterclaim, read together, make it clear that the repudiation claim is based squarely on the Tolkien/HC Parties' statements in settlement discussions and demand letters and in this litigation. For example, the Warner Parties (falsely) tell the Court that the application of the litigation privilege is not apparent from the face of the Warner Parties' pleadings, but neglect to mention that they _omitted_ allegations from their original pleadings that make clear that the so-called repudiation is the Tolkien/HC Parties' "challenging Warner's exploitation of the broad rights granted to Zaentz and Warner under the 2010 Agreement" and their "denying that the 2010 Regrant Agreement conveyed the rights to exploit online video games and gambling games." (Original Counterclaim, ¶ 43).[8] The Warner Parties also conveniently forget that even their Amended Counterclaim makes clear that the purported "repudiation" was caused by the Tolkien/HC Parties' "assertion" of their rights. (FACC, ¶ 35). The Warner Parties further acknowledge in the Amended Counterclaim that there presently exists between the parties an actual controversy and dispute over whether the Warner Parties have the right to exploit Intangible Video Games and gambling games based on the Tolkien Works, that the Tolkien/HC Parties "deny that the Warner Parties have such rights" and that the Tolkien/HC Parties have sued the Warner Parties over their exploitation activities. (FACC, ¶¶ 47, 48). There is no other allegation in the Amended Counterclaim evidencing any manner in which the Tolkien/HC Parties "challenged" and "denied" the Warner Parties' claimed rights or "asserted" their own rights, other than in connection with the parties' pending dispute.

---

[8] As is set forth in detail in the Tolkien/HC Parties' Motion, the Warner Parties are bound by their original allegations and the Court should read the omitted allegations into the Amended Counterclaim. (See Motion at 9 and cases cited therein).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Unable to escape their own fatal allegations, the Warner Parties next contend
2    that the litigation privilege is inapplicable to their breach of contract claim.  This is
3    yet another smoke screen.  As is set forth in detail in the accompanying Reply in
4    Support of Anti-SLAPP Motion (at 19-21), and as even the Warner Parties concede
5    (Opp. at 8:8-10), the litigation privilege does apply to breach of contract claims
6    when "its application furthers the policies underlying the privilege."  *Wentland v.*
7    *Wass*, 126 Cal.App.4th 1484, 1492 (2005).  The purpose of the litigation privilege
8    is to "ensure free access to the courts, promote complete and truthful testimony,
9    encourage zealous advocacy, give finality to judgments, and avoid unending
10   litigation."  *Id.*  Such policy reasons apply with force here.

11   As set forth above, the allegations in the original and amended counterclaim
12   refer only to statements made in connection with the parties' disputes.  Thus, if the
13   Warner Parties' view of the litigation privilege is adopted, it would block, not
14   promote, access to the courts — the Tolkien/HC Parties would be punished for
15   seeking redress for their legal rights in a court of law.  Further, the Warner Parties'
16   theory would generate never-ending litigation in every breach of contract case, as
17   every defendant charged with exceeding the scope of a license would counterclaim
18   against the plaintiff claiming "repudiation" and then the plaintiff would amend its
19   complaint to assert a repudiation claim against the defendant, and so on.  The
20   Warner Parties' claim would also discourage zealous advocacy, creating liability
21   merely because an attorney wrote a demand letter asserting his client's rights.

22   The Warner Parties protest that application of the litigation privilege here
23   would bar them from the courthouse and leave them without a remedy.  As is set
24   forth above, that is not true.  If the trier of fact determines that the Tolkien/HC
25   Parties' assertion of their legal rights under the contract was unjustified, the Warner
26   Parties may potentially have a remedy — they can attempt to bring a malicious
27   prosecution action at the appropriate time, if they can meet the requisite pleading
28   standards of that tort.  Moreover, the precise purpose of the litigation privilege is to

1    bar certain types of lawsuits (such as the Warner Parties' counterclaim) if the claim

2    violates important public policies, even though the result may seem inequitable.

3    *Silberg v. Anderson*, 50 Cal.3d 205, 213-214 (1990).

4         Finally, the Warner Parties' attempts to distinguish *Digerati Holdings, LLC*

5    *v. Young Money Entertainment*, 194 Cal. App. 4th 873 (2011) are unavailing.  The

6    Warner Parties argue that while the cross-complainant in *Digerati* alleged harm

7    caused by cross-defendants' filing of a lawsuit and sending of demand letters to

8    third parties, the Warner Parties only allege harm arising from the Tolkien/HC

9    Parties "disavowal."  But the "disavowal" complained of is nothing more than the

10   Tolkien/HC Parties' assertion of their legal rights in anticipation of this lawsuit and

11   in the lawsuit itself.  The alleged "threat" to the Warner Parties' exploitation of

12   their rights is the present litigation, which creates the possibility that there will be a

13   judicial determination that gambling games and Intangible Video Games were not

14   among the rights licensed to the Warner Parties, but were instead expressly reserved

15   to the Tolkien/HC Parties by contract.  The Warner Parties claim to have terminated

16   their online gambling license with third party Microgaming.  (FACC, ¶ 36).  But

17   the Warner Parties do not allege anything other than that they did so voluntarily,

18   presumably out of a concern that their legal position was untenable (perhaps also

19   hoping that if they desisted from one of the most egregious of their excesses, the

20   Tolkien/HC Parties would not then bother to pursue them in respect of their

21   remaining breaches and infringements).  There is no allegation that the Tolkien/HC

22   Parties took any action to interfere with such third party licenses; if the Tolkien/HC

23   Parties had interfered with third party licenses, surely, the Warner Parties would

24   have alleged it.  And in any event, in *Digerati*, the cross-defendants <u>had</u> asserted

25   these claims in demand letters to third parties as well as to Digerati, and still the

26   court found that the litigation privilege applied.  *Id.* at 887-888.

27        Nor is *Digerati* "questionable authority," as the Warner Parties suggest.

28   Although the Warner Parties are correct that *Digerati* does not specifically discuss

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY RE MOTION TO DISMISS
WARNER PARTIES' COUNTERCLAIMS

the applicability of the litigation privilege to breach of contract claims, that is because *Digerati* came six years after *Wentland v. Wass* and three years after *Feldman v. 1100 Park Lane Associates,* 160 Cal. App. 4th 1467 (2008), on which *Digerati* expressly relies.  Given that *Digerati* came long after the issue of the applicability of the litigation privilege to breach of contract actions was settled, it is hardly surprising that the court in *Digerati* did not revisit the analysis.  In any event, *Digerati* correctly applied the litigation privilege to the claims at issue there; the Court here should do the same.

### F.   The Warner Parties' Amended Second Counterclaim for Declaratory Relief is Redundant and Superfluous.

In an attempt to save their duplicative and unnecessary counterclaim for declaratory relief, the Warner Parties rely almost exclusively on decisions from other jurisdictions.  Such authorities are non-binding and unpersuasive, particularly in the face of the Ninth Circuit and other California authority cited by the Tolkien/HC Parties which directly contravenes their position.  *E.g.  Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353 (9th Cir. 1988).

The Warner Parties try (unsuccessfully) to distinguish *Fireman's Fund*. (Opp. at 12, n.4).  They suggest that *Fireman's Fund* is a case concerning only the policy of preventing multiple actions.  In reality, *Fireman's Fund* sets forth the Ninth Circuit's articulation of the purpose behind the Declaratory Judgment Act, which is directly at odds with the Warner Parties' purported invocation of that Act by way of mirror image counterclaims in this litigation.

The Motion cites the Ninth Circuit's decision in *Fireman's Fund* for the proposition that a declaratory judgment claim may not be brought to adjudicate issues already the subject of a pending action.  In *Fireman's Fund*, the Ninth Circuit affirmed the district court's dismissal of plaintiff's declaratory relief claim on the ground that a tort claim pending in another court would resolve the issues raised in the challenged action.  While the court acknowledged the desire to avoid

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  "piecemeal litigation" as one of the grounds for affirming, it was not the only

2  ground.  The court held, as an independent ground for affirming the dismissal, that

3  the maintenance of a declaratory relief action when a pending action for damages

4  would resolve the declaratory relief issues, would violate the "central purpose of the

5  Declaratory Judgment Act."  *Id.* at 354.

6         The Warner Parties argue that their redundant claim for declaratory relief has

7  been brought in the same action as the Tolkien/HC Parties' declaratory relief claims

8  raising the same issues, whereas in *Fireman's Fund*, the redundant declaratory relief

9  claim was brought in another court.  This distinction, however, militates against the

10  Warner Parties' argument.  The fact that the Warner Parties' counterclaims are

11  repetitive of issues before this Court, and have been brought in an action in which

12  the Warner Parties are already parties and may participate, emphasizes the

13  gratuitous nature of those counterclaims.  Because a redundant claim for

14  declaratory relief will not be allowed in another action, a fortiori, it should not be

15  allowed to be filed by way of counterclaim in a suit already pending between the

16  parties.

17         The Warner Parties also fail to show that their declaratory relief counterclaim

18  seeks different and broader relief that that asserted in the Tolkien/HC Parties'

19  declaratory relief claims and the Warner Parties' affirmative defenses.  The Motion

20  contains a detailed comparison of the Warner Parties' counterclaim, its affirmative

21  defenses and the Tolkien/HC Parties' claims.  (Motion at 18-19).  This analysis

22  demonstrates unequivocally that the Warner Parties' counterclaim is a mirror image

23  and utterly redundant.  At minimum, the purported examples of "broader relief" set

24  forth in the Opposition (at 10) are squarely addressed in the Tolkien/HC Parties'

25  request for a declaration "of the parties rights regarding the scope of the

26  Merchandising License" [defined as including collectively the 1969 Agreements,

27  Schedules D (the "Merchandising Agreements"), the 1975 Amendment and the

28  1981 Amendment] (Complaint, ¶ 40 and Prayer, ¶ 3(a)).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1        Finally, the Warner Parties suggest there is a special rule which permits

2   redundant, mirror image counterclaims in intellectual property cases.  (Opp. at 11).

3   The case on which the Warner Parties rely, however, (*Stickrath v. Globalstar, Inc.*,

4   2008 WL 2050990 (N.D. Cal. May 13, 2008)), simply notes that in patent and

5   trademark infringement cases, a court may find on a plaintiff's claim that the

6   defendant has not infringed, without reaching and adjudicating the validity of the

7   underlying patent or mark.  Thus, it may be proper to allow the defendant to assert a

8   counterclaim that seeks a declaration that the patent or trademark is invalid, as that

9   relief would not necessarily be encompassed in the plaintiff's claim.  *Id*. at *4.

10   Here, of course, the Warner Parties do not seek a declaration as to the alleged

11   invalidity of the Tolkien/HC Parties' trademarks, or any patent.  The dispute

12   involves the scope of a license.  The special rule, if it exists, is inapplicable here.

13        Each of the judicial declarations which the Warner Parties seek is already

14   before the Court; all are therefore redundant.  The Warner Parties should not be

15   permitted to state superfluous claims for relief simply for the sake of stating a

16   counterclaim or being a counterclaimant.  Because the Warner Parties' Amended

17   Counterclaim for Declaratory Relief is entirely duplicative of issues already in the

18   case, it should be dismissed without leave to amend.

19   **III.   CONCLUSION**

20        For all the foregoing reasons, as well as those detailed in the Motion to

21   Dismiss, the Amended Counterclaim should be dismissed in its entirety, with

22   prejudice and without leave to amend.

23

24   DATED:  April 29, 2013         GREENBERG GLUSKER FIELDS
                                CLAMAN & MACHTINGER LLP

25

26                                By:  /s/ Bonnie E. Eskenazi

27                                  BONNIE E. ESKENAZI (SBN 119401)

28