BONNIE E. ESKENAZI (SBN 119401)
BEskenazi@ggfirm.com
ELISABETH A. MORIARTY (SBN 156569)
EMoriarty@ggfirm.com
RICARDO P. CESTERO (SBN 203230)
RCestero@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LIMITED, a United Kingdom corporation; PRISCILLA MARY ANNE REUEL TOLKIEN, as TRUSTEE OF THE TOLKIEN TRUST, a United Kingdom Charitable Trust; THE J.R.R. TOLKIEN ESTATE LIMITED, a United Kingdom corporation; HARPERCOLLINS PUBLISHERS, LTD., a United Kingdom corporation; UNWIN HYMAN LTD., a United Kingdom corporation; and GEORGE ALLEN & UNWIN (PUBLISHERS) LTD., a United Kingdom corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, INC., a division of WARNER BROS. HOME ENTERTAINMENT, INC., a Delaware corporation; WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation, as successor-in-interest to New Line Cinema Corp.; WARNER BROS. CONSUMER PRODUCTS, INC., a Delaware corporation; WARNER BROS. INTERACTIVE ENTERTAINMENT, INC., a division of WARNER BROS. HOME ENTERTAINMENT, INC.; NEW LINE PRODUCTIONS, INC., a California corporation; THE SAUL ZAENTZ COMPANY d/b/a Middle-earth Enterprises, a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV 12-09912 ABC (SHx)<br><br>Hon. Audrey B. Collins<br><br>**REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE AMENDED SECOND COUNTERCLAIM OF THE SAUL ZAENTZ COMPANY PURSUANT TO CODE OF CIVIL PROCEDURE §425.16**<br><br>[Reply to Motion to Dismiss, Supplemental Cestero Declaration and Evidentiary Objections filed concurrently herewith]<br><br>Date: May 13, 2013<br>Time: 10:00 a.m.<br>Courtroom: 680 |

84971-00003/1924329.3

REPLY IN SUPPORT OF
ANTI-SLAPP MOTION

# TABLE OF CONTENTS

**Page**

1. Zaentz's Amended Second Counterclaim Falls Squarely Within The Anti-SLAPP Statute ................................................................................................... 1

2. Zaentz Has Not Established a Probability of Prevailing on the Merits ........... 4

3. The Litigation Privilege Bars Zaentz's Counterclaim ..................................... 6

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

REPLY IN SUPPORT OF
ANTI-SLAPP MOTION

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 3

*Bell Atlantic Com. v Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 3

*Paramount Pictures Corp. v. Puzo*,
  2012 WL 4465574 (S.D.N.Y. Sept. 26, 2012) ...................................................... 6

**STATE CASES**

*British Films Do Brasil, Ltda v. London Film Productions, Inc.*,
  166 N.Y.S.2d 703 (N.Y. Sup. Ct. 1957) ................................................................ 5

*Careau & Co. v. Security Pacific Business Credit*,
  222 Cal.App.3d 1371 (1990) ................................................................................. 5

*City of Cotati v. Cashman*,
  29 Cal. 4th 69 (2002) ............................................................................................. 2

*Digerati Holdings, LLC v. Young Money Entertainment, LLC*,
  194 Cal.App.4th 873 (Cal. Ct. App. 2011) ............................................................. 1

*Equilon Enterprises v. Consumer Cause, Inc.*,
  29 Cal.4th 53, 124 Cal.Rptr.2d 507 (Cal. 2002) ................................................... 4

*Feldman v. 1100 Park Lane Associates*,
  160 Cal. App. 4th 1467 (2008) ......................................................................... 2, 7

*Gittlitz v. Lewis*,
  212 N.Y.S.2d 219 (N.Y. Sup. Ct. 1961) ............................................................... 5

*Greka Integrated, Inc. v. Lowrey*,
  133 Cal. App. 4th 1572 (2005) .............................................................................. 2

*Hall v. Time Warner, Inc.*
  153 Cal.App.4th 1337, 63 Cal.Rptr.3d 798 (Cal. Ct. App. 2007) ........................ 4

*Hylton v. Frank E. Rogozienski, Inc.*,
  177 Cal.App.4th 1264, 99 Cal.Rptr.3d 805 (Cal. Ct. App. 2009) ........................ 2

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) ............................................................................................. 2

*Nygard, Inc. v. Uusi-Kerttula*
  159 Cal.App.4th 1027, 72 Cal.Rptr.3d 210 (Cal. Ct. App. 2008) ........................ 4

*Rothman v. Jackson*,
  49 Cal.App.4th 1134, 57 Cal.Rptr.2d 284 (Cal. Ct. App. 1996) .......................... 4

REPLY IN SUPPORT OF
ANTI-SLAPP MOTION

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Taylor v. Johnston*,
  15 Cal.3d 130 (Cal. 1975) ................................................................................ 5

*Wallace v. McCubbin*,
  196 Cal. App. 4th 1169 (2011) ........................................................................ 2

**STATE STATUTES**

Cal. Civ. Proc. Code §425.16 ................................................................................ 1

Cal. Civ. Proc. Code §425.16(e)(1) ....................................................................... 1

Cal. Civ. Proc. Code §425.16(e)(2) ....................................................................... 1

Cal. Civ. Proc. Code §425.16(e)(4) ....................................................................... 3

Cal. Civ. Proc. Code §426.16 ................................................................................ 1

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1

**OTHER AUTHORITIES**

Webster's New World Dictionary (3d College Ed., p. 82) ................................... 3

The Saul Zaentz Company ("Zaentz") has submitted a single brief in opposition to the Tolkien/HC Parties' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike pursuant to California Code of Civil Procedure §426.16, in which it essentially incorporates by reference the points and authorities proffered by the Warner Parties in their Oppositions to the Tolkien/HC Parties' Motions. In the interests of brevity, the Tolkien/HC Parties will follow suit. The Tolkien/HC Parties hereby incorporate by reference the arguments and analysis detailed in their Reply in Support of Special Motion to Strike the Amended First Counterclaim of the Warner Parties Pursuant to California Code of Civil Procedure §425.16 (filed concurrently herewith). A brief summary of the relevant arguments is set forth below.

**1.** *Zaentz's Amended Second Counterclaim Falls Squarely Within The Anti-SLAPP Statute.*

As set forth in the Tolkien/HC Parties' moving papers, pre-litigation statements in demand letters and settlement discussions fall within the anti-SLAPP statute, as does the act of filing a lawsuit. *See* Cal. Civ. Proc. Code §425.16(e)(1) and (2); *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal.App.4th 873, 887-888 (Cal. Ct. App. 2011). Zaentz does not dispute these legal principles.

Instead, like the Warner Parties, Zaentz first denies its counterclaim is based on litigation or pre-litigation statements. Zaentz then tries to distract the Court's attention from the <u>acts or statements</u> by the Tolkien/HC Parties which <u>constitute</u> the alleged repudiation of the 1969 Agreements. The reason for this is simple; Zaentz's original counterclaim makes clear that the alleged "repudiation" is nothing more than the Tolkien/HC Parties' assertion of their claims in this lawsuit. Zaentz's original counterclaim repeatedly alleged that the purported breach of contract resulted from the Tolkien/HC Parties' "***claims of breach of contract***." (Original Counterclaim, ¶ 47). Although Zaentz replaced this language with the word

"repudiation" in its Amended Counterclaims, that "artifice of pleading" does not change the fact that Zaentz's amended second counterclaim arises out of the Tolkien/HC Parties' assertion of their claims. *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal.App.4th 1264, 1272, 99 Cal.Rptr.3d 805, 810 (Cal. Ct. App. 2009).

Of course, repudiation, like breach of contract, is a legal conclusion to be derived from the legal effect of certain acts or statements. It cannot exist in a vacuum divorced from the words, conduct and context in which it allegedly occurred. In evaluating the Tolkien/HC Parties' anti-SLAPP Motion, the Court must seek to determine the allegedly wrongful *conduct* giving rise to Zaentz's claim. *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78-79 (2002). *See also Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1579-1580 (2005) (the "arises from" element is determined by examining the defendant's <u>acts</u> underlying the plaintiff's cause of action); *Navellier v. Sletten*, 29 Cal. 4th 82, 90 (2002) (anti-SLAPP statute's "focus is not on the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability"); *Feldman v. 1100 Park Lane Associates*, 160 Cal. App. 4th 1467, 1484 (2008) (same); *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1175 (2011) ("the first prong of analysis under the anti-SLAPP statute focuses on the acts on which liability is based, not the gestalt of the cause of action"). Zaentz cannot simply hide behind the label of "repudiation" in order to avoid a critical examination of the actual activity which purportedly constitutes that repudiation.

Even Zaentz's Amended Second Counterclaim still explicitly alleges that the Tolkien/HC Parties' purported repudiation resulted from their "***assert[ion]***" of their rights. (ACC, ¶¶ 3, 4) (emphasis added). Zaentz also alleges that the Tolkien/HC Parties have sued Zaentz. (ACC, ¶ 40). All of these allegations are incorporated into the second counterclaim for breach of the implied covenant.

Zaentz contends the Court should ignore the allegations in the amended counterclaim because "Zaentz followed the normal convention of incorporating

1 prior allegations by reference instead of repeating them all…." (Opp. at p. 5).
2 Zaentz misses the point. The problem is not that Zaentz incorporated these
3 allegations by reference. The problem is that Zaentz incorporated these allegations
4 because they believed they were relevant to its claims for breach of the implied
5 covenant. Without those allegations, Zaentz's counterclaim would have been
6 utterly devoid of any factual allegations whatsoever and would therefore fail as a
7 matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare
8 recitals of the elements of a cause of action" are inadequate); *Bell Atlantic Com. v*
9 *Twombly*, 550 U.S. 544, 555 (2007) (Complaint must contain allegations of
10 sufficient factual matter to support causes of action asserted). Accordingly, the
11 Court must consider all the allegations incorporated into Zaentz's second
12 counterclaim in evaluating the Tolkien/HC Parties anti-SLAPP Motion.

13 Of course, an *assertion* is, by definition, a "***positive statement; declaration***."
14 Webster's New World Dictionary (3d College Ed., p. 82). It is most certainly
15 speech-related conduct that falls within the ambit of the anti-SLAPP statute.
16 Moreover, as set forth above, pre-litigation demand letters, settlement discussions
17 and filing a lawsuit are all protected conduct as well (and Zaentz does not contend
18 otherwise).

19 The allegations in the original counterclaim, taken together with the
20 allegations in the amended counterclaim lead to the inescapable conclusion that the
21 <u>acts</u> Zaentz complains about are statements made in connection with litigation and
22 pre-litigation communications. To the extent Zaentz now attempts to contend in its
23 opposition (as the Warner Parties do) that the acts giving rise to the claim of
24 repudiation are merely the statements attributed to counsel for the Tolkien/HC
25 Parties in three online news articles, that conduct also falls within the anti-SLAPP
26 statute. California Code of Civil Procedure §425.16(e)(4) provides that any
27 conduct "in furtherance of the exercise of…free speech in connection with a public
28 issue or an issue of public interest" falls within the anti-SLAPP statute. Even

assuming for the moment that each of the three statements attributed to the Tolkien/HC Parties' lawyers were actually made by those lawyers to those reporters (a faulty assumption), each of those statements is most certainly an exercise of free speech. *See Rothman v. Jackson*, 49 Cal.App.4th 1134, 1149, 57 Cal.Rptr.2d 284, 294 (Cal. Ct. App. 1996) (statements to the press are protected by first amendment principles generally). Moreover, each of the statements clearly related to an issue of public interest – the internationally-beloved Tolkien Works and the Warner Parties' and Zaentz's exploitation of those works. *See Hall v. Time Warner, Inc.* 153 Cal.App.4th 1337, 1347, 63 Cal.Rptr.3d 798, (Cal. Ct. App. 2007) (because of his fame and notoriety, Marlon Brando's decisions about his will were issues of public interest); *Nygard, Inc. v. Uusi-Kerttula* 159 Cal.App.4th 1027, 1042, 72 Cal.Rptr.3d 210 (Cal. Ct. App. 2008) (statements about famous Finnish businessman related to issue of public interest).

Given the worldwide interest in the Tolkien Works and the various ways in which they are exploited, it cannot be disputed that statements about those subjects are matters of public interest. Indeed, Zaentz's own opposition concedes that the films based on the Tolkien Works have won widespread critical acclaim and commercial success. (Zaentz Opp. at p. 1). Given the public's interest in the Tolkien Works, statements about the rights to exploit those works are surely a matter of public interest.

Accordingly, Zaentz's Amended Second Counterclaim falls squarely within the anti-SLAPP statute.

**2.** <u>*Zaentz Has Not Established a Probability of Prevailing on the Merits.*</u>

Once the Tolkien/HC Parties have established that the anti-SLAPP statute applies, Zaentz has the burden to ***state and substantiate*** a viable claim in order to defeat the motion. *Equilon Enterprises v. Consumer Cause, Inc.,* 29 Cal.4th 53, 67, 124 Cal.Rptr.2d 507, 518 (Cal. 2002). Like the Warner Parties, Zaentz fails to even

mention (let alone support) the elements of a claim for breach of contract. Notably Zaentz does not even mention damages, even though that is a necessary element of its claim. *See Careau & Co. v. Security Pacific Business Credit*, 222 Cal.App.3d 1371, 1388 (1990). This is not surprising, given that neither Zaentz nor the Warner Parties submitted any evidence that they suffered any harm whatsoever caused by the alleged "repudiation." And, to the extent Zaentz relies on the alleged termination of a gambling license as damages, that termination occurred <u>before</u> the conduct Zaentz alleges constitutes the repudiation and therefore could not have caused that purported harm.

Moreover, as to the element of breach, the only evidence Zaentz points to is the inadmissible evidence submitted by the Warner Parties of statements allegedly made to the media by counsel for the Tolkien/HC Parties. However, these purported statements cannot possibly constitute repudiation. "A mere declaration … of a party of an intention not to be bound will not of itself amount to a breach, so as to create an effectual renunciation of the contract; for one party cannot by any act or declaration destroy the binding force and efficacy of the contract. To justify the adverse party in treating the renunciation as a breach, <u>the refusal to perform must be of the whole contract</u> … and must be distinct, unequivocal and absolute. *Taylor v. Johnston*, 15 Cal.3d 130, 140 (Cal. 1975) (emphasis added), citing *Atkinson v. District Bond Co.*, 5 Cal.App.2d 738, 743 (1935); *see also Gittlitz v. Lewis*, 212 N.Y.S.2d 219, 220 (N.Y. Sup. Ct. 1961) (the repudiation must be "an unqualified and positive refusal to perform and must go to the whole of the contract."); *British Films Do Brasil, Ltda v. London Film Productions, Inc.*, 166 N.Y.S.2d 703, 706 (N.Y. Sup. Ct. 1957) (repudiation "must be entire, absolute and unequivocal, covering the entire performance to which the contract binds the promisor").

The purported statements attributed to Ms. Eskenazi and Ms. Blackburn manifestly do not go to the whole, or even the essence, of the parties' contracts. The alleged statements do not deny the validity of rights Zaentz admits it has been

exercising for years. They simply reflect a difference of opinion about the scope of the rights licensed.

As the Court in *Paramount Pictures Corp. v. Puzo*, 2012 WL 4465574 (S.D.N.Y. Sept. 26, 2012) recognized, the mere "disavowal" of a party's purported contractual rights, standing alone, does not constitute a repudiation. Repudiation requires a refusal to perform with respect to the *entire* contract. *Id.* at *8 ("Under New York law, repudiation is generally defined as a refusal to perform with respect to the *entire* contract") (emphasis in original). Some treatises note that repudiation may also involve a "refusal to render *such a material part of the promised performance* that it goes to the *essence* of the contract." *Id.* (emphasis added). Under either standard, the alleged statements of Ms. Eskenazi and Ms. Blackburn fall woefully short of a repudiation.[1]

The evidence before the Court establishes that the Tolkien/HC Parties have fully performed their obligations under the 1969 Agreements – they signed the agreements and granted the rights described in those agreements. Indeed, Zaentz concedes they have been exploiting those rights for years. (ACC, ¶¶ 23-36). The Tolkien/HC Parties' assertions regarding Intangible Video Game rights and gambling rights is nothing more than a claim that Zaentz has exceeded the rights granted in the 1969 Agreements. By making this claim, the Tolkien/HC Parties are affirming the contract and their own performance under the contract by seeking to enforce the terms of the contract. This is not, and cannot be, repudiation.

### 3. *The Litigation Privilege Bars Zaentz's Counterclaim.*

Zaentz, unlike the Warner Parties, does not dispute that the litigation

---

[1] The statements contained in the Tolkien/HC Parties' pre-litigation communications similarly fall far short of a repudiation. At all times, the Tolkien/HC Parties have made clear that they dispute only Zaentz's attempts to exploit Intangible Video Games and Gambling Games. They have never refused to perform their obligations under the 1969 Agreements, nor does the present controversy reach the entirety of the rights under the contract, or even the majority of those rights. Accordingly, Zaentz has absolutely no evidence of any purported "repudiation."

privilege applies to claims for breach of the covenant of good faith and fair dealing. Rather, Zaentz simply asserts that the litigation privilege does not protect the alleged statements by the Tolkien/HC Parties' counsel to the media. However, as explained above, Zaentz's claim is based on far more than those statements. The Tolkien/HC Parties' assertions of their breach of contract claims occurred either in pre-litigation statements or in this very lawsuit. Those assertions are manifestly subject to the litigation privilege. *See Feldman*, 160 Cal. App. 4th at 1484.

For all the foregoing reasons, as well as the reasons set forth in the Tolkien/HC Parties' moving papers, the Tolkien/HC Parties respectfully request that the Court grant this motion and strike Zaentz's Amended Second Counterclaim with prejudice and without leave to amend.

DATED: April 29, 2013          GREENBERG GLUSKER FIELDS
                               CLAMAN & MACHTINGER LLP


                               By: /s. Bonnie E. Eskenazi
                                   BONNIE E. ESKENAZI (SBN 119401)