1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  VICTOR JIH (S.B. #186515)
   vjih@omm.com
3  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, California  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:  (310) 246-6779

7  Attorneys for the Warner Parties

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LTD., *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, *et al*,<br><br>Defendants.<br><br>WARNER BROS. DIGITAL DISTRIBUTION INC., *et al*,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>FOURTH AGE LTD., *et al*,<br><br>Counterclaim Defendants. | Case No. 12-9912-ABC (SHx)<br><br>**DISCOVERY MATTER**<br><br>**[REDACTED] WARNER'S NOTICE OF MOTION AND MOTION TO COMPEL DOCUMENTS AND PRIVILEGE LOG**<br><br>**(UNREDACTED VERSION FILED UNDER SEAL PURSUANT TO JUNE 4, 2013 PROTECTIVE ORDER)**<br><br>DECLARATION OF MOLLY M. LENS, AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>**Judge**: Hon. Audrey B. Collins<br>**Magistrate**: Hon. Stephen J. Hillman<br><br>**Hearing Date**:  February 24, 2014<br>**Hearing Time**:  2:00 p.m.<br><br>**Discovery Cutoff**:  April 15, 2014 |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 24, 2014 at 2:00 p.m., or as soon thereafter as the matter may be heard by the above-entitled court, located at 255 East Temple Street, Los Angeles, California, in Courtroom 550, defendants and counterclaim plaintiffs Warner Bros. Home Entertainment Inc., Warner Bros. Entertainment Inc., Warner Bros. Consumer Products Inc., and New Line Productions, Inc. (collectively, "Warner") will and hereby do move the Court for an order compelling plaintiffs and counterclaim defendants Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as Trustee of the Tolkien Trust, The J.R.R. Tolkien Estate Ltd., Harper Collins Publishers, Ltd., Unwin Hyman Ltd. and George Allen & Unwin (Publishers), Ltd. (collectively, the "Tolkien/HC Parties") to: (1) produce all documents responsive to Warner's first three sets of Requests for Production with accompanying custodian metadata; (2) produce information sufficient to indicate whether, when, and to whom the Tolkien/HC Parties issued document preservation notices, as well as any copies of such preservation notices; and (3) produce a privilege log for any documents the Tolkien/HC Parties have withheld.

This motion is made pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure and Rule 37-2 of the Local Rules of this Court on the grounds that: (1) the Tolkien/HC Parties have failed to comply with their obligations to perform a reasonable search for and production of all documents, electronic or otherwise, responsive to Warner's three sets of Requests for Production, and (2) the Tolkien/HC Parties are preventing Warner from challenging their unreasonable assertions of privilege by failing to produce a privilege log.

Pursuant to Local Rule 37-1, the parties attempted to resolve this dispute, but were unable to do so. Pursuant to Central District Local Rule 37-2.4, and as explained in the Declaration of Molly M. Lens filed concurrently herewith, Warner

1  is forced to submit this as a motion rather than a joint stipulation because the
2  Tolkien/HC Parties have improperly refused to meet and confer in a timely manner
3  in accordance with Local Rule 37-1.
4      This motion is based on this Notice of Motion and Motion; the
5  accompanying Memorandum of Points and Authorities; the concurrently-filed
6  Declaration of Molly M. Lens; any additional briefing that may be filed; all
7  exhibits, files, and records on file in this action; matters of which judicial notice
8  may be taken; and such additional submissions and argument as may be presented
9  at or before the hearing on this motion.

Dated: January 27, 2014

DANIEL M. PETROCELLI
VICTOR JIH
MOLLY M. LENS
O'MELVENY & MYERS LLP

By: _____
      Daniel M. Petrocelli

Attorneys for the Warner Parties

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE TOLKIEN/HC PARTIES HAVE FAILED TO PERFORM A REASONABLE SEARCH FOR RESPONSIVE DOCUMENTS | 4 |
| | A. The Tolkien/HC Parties Must Perform a Reasonable Search for and Produce All Responsive Electronic Documents | 4 |
| | B. The Tolkien/HC Parties Must Perform a Reasonable Search For and Produce All Responsive Hard-Copy Documents | 6 |
| | C. The Tolkien/HC Parties Must Cease Masking Their Non-Compliance by Refusing to Produce Custodian Metadata | 7 |
| | D. Request for Relief | 9 |
| III. | THE TOLKIEN/HC PARTIES MUST PRODUCE A PRIVILEGE LOG | 10 |
| IV. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*,
2008 WL 5214330 (N.D. Cal. Dec. 12, 2008) ...................................................... 12

*Bortex Indus. Co. v. Fiber Optic Designs, Inc.*,
2013 WL 6228978 (E.D. Pa. Dec. 2, 2013) .......................................................... 7

*Dexia Credit Local v. Rogan*,
231 F.R.D. 287 (N.D. Ill. 2005) .......................................................................... 12

*Duplan Corp. v. Deering Milliken, Inc.*,
397 F.Supp. 1146 (D.S.C. 1974) ......................................................................... 11

*FDIC v. Fid. & Deposit Co.*,
2013 WL 2421770 (S.D. Ind. June 3, 2013) ....................................................... 11

*Ibrahim v. Dep't of Homeland Sec.*,
2013 WL 1703367 (N.D. Cal. Apr. 19, 2013) .................................................... 10

*In re Application of the FTC for an Order Compelling Avrett Free & Ginsberg to Comply with a Subpoena for Documentary Material*,
2001 WL 396522 (S.D.N.Y. Apr. 19, 2001) ....................................................... 12

*In re Seroquel Prods. Liab. Litig.*,
2007 WL 219989 (M.D. Fla. Jan. 26, 2007)………………………………….... 9

*Marten v. Yellow Freight Sys.*,
1998 U.S. Dist. LEXIS 268 (D. Kan. Jan. 6, 1998) ............................................ 11

*Meeks v. Parsons*,
2009 WL 3003718 (E.D. Cal. Sept. 18, 2009) .................................................... 4

*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency*,
2011 WL 381625 (S.D.N.Y. Feb. 7, 2011) ......................................................... 8

*Qualcomm Inc. v. Broadcom Corp.*,
2008 WL 66932 (S.D. Cal. Jan. 7, 2008) ............................................................. 7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Ramirez v. Cnty. of L.A.*,
　231 F.R.D. 407 (C.D. Cal. 2005) .................................................................... 10

*Thompson v. Yates*,
　2011 WL 5975469 (E.D. Cal. Nov. 29, 2011) ..................................................4

*United States v. Martin*,
　278 F.3d 988 (9th Cir. 2002) ........................................................................... 11

*Verigy US, Inc. v. Mayder*,
　2008 WL 5063873 (N.D. Cal. Nov. 21, 2008) ................................................ 11

**RULES**

Fed. R Civ. P. 33(d) .................................................................................................8

Fed. R. Civ. P. 26(b)(5)(A)(ii) ............................................................................... 10

Fed. R. Civ. P. 34 ................................................................................................ 4, 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Warner brings this motion to compel the production of basic contract and course of conduct documents that will further establish the Tolkien/HC Parties' decades-long approval of the very conduct they now challenge. Despite the Tolkien/HC Parties' assurances that all these and other relevant documents have been collected and produced, the recent deposition testimony of their principal outside counsel has materially undermined such assurances. It is clear that the Tolkien/HC Parties have not conducted a search of the vast majority of electronic documents, are taking unfounded privilege positions, and may not have undertaken the requisite measures to preserve relevant evidence.

This case arises from the Tolkien/HC Parties' repudiation of rights to *The Lord of the Rings* and *The Hobbit* (collectively, the "Tolkien Works") that they granted to Warner's predecessors-in-interest over forty years ago. For over ten years, Warner has invested and engaged in activities, including the exploitation of online video games and gambling games based on the Tolkien Works, in reliance upon the broad rights it acquired. Prior to 2010, the Tolkien/HC Parties never challenged or objected to Warner's exploitation of gambling games and online video games.

Indeed, the Tolkien/HC Parties' representatives, including the Tolkien Estate's longtime lawyer, Cathleen Blackburn, have affirmatively represented—repeatedly over the course of several decades—that the Tolkien/HC Parties' previous grants of rights to Warner's predecessors-in-interest covered such activity. Moreover, the Tolkien/HC Parties knowingly accepted substantial royalty payments from the activities they now challenge. Still, despite the Tolkien/HC Parties' knowledge of such activities, willing acceptance of royalties from the challenged exploitations, and assurances that Warner has rights to engage in these activities, the Tolkien/HC Parties have made an about-face and repudiated Warner's rights.

1  The documents in the possession of the Tolkien/HC Parties' representatives
2  indicating what the Tolkien/HC Parties knew about the disputed exploitations, and
3  when they knew it, are key to Warner's case. Warner has therefore propounded
4  discovery aimed at uncovering the full extent to which the Tolkien/HC Parties
5  knew of and approved the exploitation of gambling and online video games by
6  Warner and its predecessors-in-interest, including The Saul Zaentz Company
7  ("Zaentz"). To that end, Warner has served three sets of Requests for Production
8  on the Tolkien/HC Parties—the first on March 20, 2013, the second on September
9  11, 2013, and the third on October 29, 2013 (collectively, the "Requests").

10  For months, the Tolkien/HC Parties have maintained that they are complying
11  with their obligations to make a reasonable and diligent search for documents
12  responsive to Warner's Requests. Indeed, it was the Tolkien/HC Parties who
13  insisted in October that all parties be "substantially complete" with their document
14  productions by November 4, 2013, and the Tolkien/HC Parties have never indicated
15  that their productions fell short of this standard or indicated that they would need
16  additional time.

17  On December 10 and 13, 2013, Warner took the depositions of Ms.
18  Blackburn and her partner, Steven Maier. Both reside in England and have been
19  extensively involved for years in the Tolkien Parties' business and legal matters,
20  including the activities involved in this case. Mr. Maier also serves as director of
21  one of the Tolkien entities that is a plaintiff in this action. Both are crucial
22  witnesses in this case. Their depositions revealed that the Tolkien/HC Parties'
23  collections and productions are grossly incomplete and that all relevant evidence
24  may not have been preserved as required by law. The Tolkien/HC Parties have
25  failed to collect electronically stored information ("ESI") from most—if not all—of
26  their custodians. It also appears that evidence preservation notices were not issued.
27  Further, the Tolkien/HC Parties have never sent a single one of their outside
28  lawyers to England, where several of their key custodians reside, to search their

1  hard copy files for responsive documents. And, the Tolkien/HC Parties have
2  attempted to mask the incompleteness of their collections by refusing to produce
3  any metadata for their document productions that would allow Warner to identify
4  the specific custodian or file source from which a document was collected. This is
5  far from the "reasonable and diligent" search required by the law.

6  In addition to their deficient search, the Tolkien/HC Parties are also
7  suppressing critical documents by asserting unwarranted positions with respect to
8  privilege. They now claim, for example, that non-legal business communications
9  are privileged merely because they involve people who sometimes function as
10 attorneys. They also argue, inexplicably, that because the Tolkien Parties and
11 HarperCollins parties share a common commercial interest, any communications
12 between them are somehow protected by a common interest privilege. Finally, the
13 Tolkien/HC Parties take the indefensible position that the common interest
14 privilege protects their communications with Zaentz—one of the parties they have
15 sued in this lawsuit. Given these baseless positions, the Tolkien/HC Parties must
16 provide a privilege log so that Warner and the Court may fairly evaluate all of their
17 privilege claims.

18 In light of the foregoing, Warner respectfully seeks an Order requiring that
19 the Tolkien/HC Parties: (1) immediately comply with their obligation to perform a
20 reasonable search for, and production of, all electronic and hard-copy documents
21 responsive to Warner's three outstanding sets of Requests for Production, with
22 accompanying custodian information, from all of the custodians and sources that
23 the Tolkien/HC Parties have identified as likely to have relevant information; (2)
24 produce information sufficient to indicate whether, when, and to whom the
25 Tolkien/HC Parties issued document preservation notices, as well as any copies of
26 such preservation notices; and (3) produce a privilege log sufficient to establish
27 whether the documents the Tolkien/HC Parties have refused to produce on the basis
28 of privilege have been rightfully withheld.

WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

## II. THE TOLKIEN/HC PARTIES HAVE FAILED TO PERFORM A REASONABLE SEARCH FOR RESPONSIVE DOCUMENTS

A party responding to Requests for Production under Fed. R. Civ. P. 34 is obligated to conduct a "reasonable and diligent search" for all responsive documents. *See Thompson v. Yates*, 2011 WL 5975469, at *2 (E.D. Cal. Nov. 29, 2011); *Meeks v. Parsons*, 2009 WL 3003718, at *4 (E.D. Cal. Sept. 18, 2009). The Tolkien/HC Parties' search falls utterly short of this standard.

### A. The Tolkien/HC Parties Must Perform a Reasonable Search for and Produce All Responsive Electronic Documents

The Tolkien/HC Parties have failed to comply with their discovery obligations by refusing to perform a reasonable search for, or make a production of, ESI. *See* Fed. R. Civ. P. 34; *see also* Fed. R. Civ. P. 34 Advisory Committee Note ("A Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information.").

To date, the Tolkien/HC Parties have done nothing to search for or produce electronic documents from Cathleen Blackburn or Steven Maier despite their role as crucial percipient witnesses. They have refused to collect Ms. Blackburn's or Mr. Maier's ESI on the theory that any responsive documents would have been in these custodians' hard copy files, since, according to the Tolkien/HC Parties, Ms. Blackburn's and Mr. Maier's "practice has always been to print and file all email correspondence." Lens Decl. Ex. 3 at 15.

That is not a valid basis to forgo the search for electronic documents. Among other reasons, there can be no assurances that every relevant electronic document was reproduced and saved in hard-copy form. Indeed, Mr. Maier admitted this. Lens Decl. Ex. 4 at 113:7-9; 115:18-19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

For nearly seven months, Warner and Zaentz have insisted that the Tolkien Parties produce Ms. Blackburn's and Mr. Maier's ESI from their prior firm,

Manches LLP, from which they departed at the end of 2011 to form their own firm. Our requests have been met with evasive and changing representations. This information is critical—it was while employed at Manches that Ms. Blackburn and Mr. Maier expressly affirmed Warner's and Zaentz's online rights, confirmed Zaentz's and Warner's rights to third parties, and first raised any objection to Warner's exploitation of gambling and online video games in 2010. During the parties' preliminary meet and confer, Ricardo Cestero, counsel for the Tolkien/HC Parties, informed Warner that Ms. Blackburn and Mr. Maier did not transfer *any* of their ESI from Manches to their current firm, Maier Blackburn. Lens Decl. ¶ 10. During his deposition, however, Mr. Maier revealed that electronic information relating to "live matters," including matters for the Tolkien/HC Parties, was transferred to Maier Blackburn when he and Ms. Blackburn departed Manches. Lens Decl. Ex. 4 at 208:15-212:5 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

In light of this testimony, and the fact that the Tolkien/HC Parties have produced no ESI from Manches or Maier Blackburn, Warner believes the Tolkien Parties are concealing key information about the "active matters" presently in dispute.

      The Tolkien/HC Parties' disclosures about their collection of the HarperCollins Parties' ESI have likewise been dilatory, inconsistent, and opaque. Warner cannot, and need not, continue to wait for more shifting representations from the Tolkien/HC Parties' about their search for ESI (or lack thereof). They are required by the Federal Rules to perform a reasonable and diligent search for *all* responsive documents, including ESI; their sustained efforts to dodge this obligation are inexcusable.

      There is also a significant question whether the Tolkien/HC Parties have undertaken the necessary measures to preserve relevant evidence. In his recent

deposition, for example, Mr. Maier was asked specifically about the issuance of preservation notices to the Manches firm, which Ms. Blackburn and he left on December 31, 2011, more than one year after the underlying dispute commenced. Lens Decl. Ex. 4 at 213:11-228:1. Although he is a litigator and Ms. Blackburn a transactional lawyer, Mr. Maier claimed that Ms. Blackburn had responsibility for any preservation notices, but could not recall ever having seen an evidence preservation notice or memo of any kind. *Id*. at 214:10-216:11; 221:14-222:10. Mr. Maier likewise testified that he did nothing personally to stop the Manches computer systems from deleting or dropping any electronic data related to the Tolkien Parties. *Id*. at 220:9-15. Mr. Maier also indicated that he did not take any measures to issue a document preservation notice to other counsel in the United States who have represented the Tolkien Parties on matters involved in the litigation. *Id*. at 227:24-228:11. Following Mr. Maier's deposition, Warner made requests to counsel for the Tolkien/HC Parties for information regarding any preservation notices issues by the Tolkien/HC Parties, as well as any copies of such notices. Lens Decl. Ex. 1. To date, however, Warner has received neither copies of any document preservation notices nor any information about them, including whether they exist.

### B. The Tolkien/HC Parties Must Perform a Reasonable Search For and Produce All Responsive Hard-Copy Documents

The Tolkien/HC Parties have not been diligent in their search for hard copy documents. Instead, they have relied on shortcuts and have blindly accepted the representations of their custodians that they have provided all potentially responsive documents. The depositions of Cathleen Blackburn and Steven Maier made this abundantly clear.

Ms. Blackburn testified that Greenberg Glusker, outside counsel for the Tolkien/HC Parties, did not review the entirety of her firm's file on the Tolkien Parties for responsive documents. Instead, she simply provided Greenberg with a

preexisting index of hard copy files that she maintained, and allowed Greenberg to make decisions about which documents to collect and produce based on that index alone. Lens Decl. Ex. 5 at 248:8-249:23. Mr. Maier confirmed that no Greenberg lawyer has ever set foot in Maier Blackburn's offices in England. Lens Decl. Ex. 4 at 222:11-224:8.

This does not constitute a reasonable and diligent search under Rule 34. The Tolkien/HC Parties cannot merely rely on the representations of their custodians about which of their files may be responsive. *See Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932, at *9 (S.D. Cal. Jan. 7, 2008) ("Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.") (vacated in part on unrelated grounds). Courts have further held that it is unreasonable for outside counsel to make collection and production decisions from thousands of miles away. *See, e.g., Bortex Indus. Co. v. Fiber Optic Designs, Inc*., 2013 WL 6228978, at *8, *14 (E.D. Pa. Dec. 2, 2013) (finding that outside counsel had not worked diligently with his client to ensure that responsive documents were searched for, located, and produced where he had made no effort to travel to China to review the client's files in person).

On the basis of their inadequate search of Ms. Blackburn's and Mr. Maier's documents alone, it is evident that Tolkien/HC Parties have not diligently searched all potential sources of responsive hard-copy documents.

### C. The Tolkien/HC Parties Must Cease Masking Their Non-Compliance by Refusing to Produce Custodian Metadata

The parties have all agreed to produce with their document productions certain metadata fields, including "custodian" metadata, for email, electronic files, and hard copy files. Lens Decl. Ex. 7 at 111-12. Warner and Zaentz have complied with the parties' agreement; the Tolkien/HC Parties have not. Warner and Zaentz have each included with their productions custodian metadata that specifies, as appropriate, the name of a document's individual custodian, or the particular file

from which a document was produced. The Tolkien/HC Parties, by contrast, have only provided information indicating whether documents they have produced were collected from "Tolkien" or from "HarperCollins"—not the name of any individual custodian or specific file source at a Tolkien/HC Party entity.

The Tolkien/HC Parties' practice obfuscates the deficiencies of their search for documents and frustrates Warner's ability to engage in meaningful discovery. The Tolkien/HC Parties have identified the following people, within their custody, possession, or control, as likely to possess responsive documents: Cathleen Blackburn, Steven Maier, Christopher Tolkien, Priscilla Tolkien, Ballie Tolkien, Simon Tolkien, Michael Tolkien, David Brawn, Simon Dowson-Collins, Jane Johnson, Chris Smith, Bonnie Eskenazi, Elisabeth Moriarty, Ricardo Cestero, Candace Carlo, Aaron Moss, Rachel Valadez, Jeremy Nussbaum, Richard Williamson, Mary Butler, and Adrian Laing. Lens Decl. Exs. 3; 9; 10 at 131. Nevertheless, by refusing to provide custodian information, Warner has no way to evaluate whether the Tolkien/HC Parties have actually collected or produced documents from any of these individuals. The Tolkien/HC Parties' practice also precludes Warner from determining which witness(es) may have seen or possessed certain documents for purposes of deposition questioning. It also renders meaningless the Tolkien/HC Parties' reliance upon Fed. R Civ. P. 33(d) in response, for example, to Interrogatories asking the Tolkien/HC Parties to identify any license agreements reviewed by the Tolkien/HC Parties or their agents and representatives. *See, e.g.*, Lens Decl. Ex. 11 at 143-44.

Not only is the Tolkien/HC Parties' current refusal to produce custodian metadata at odds with their previous agreement to furnish such information, it is also at odds with their obligations under the law. Courts recognize that custodial information is a requisite part of a production of ESI. *See, e.g., Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency*, 2011 WL 381625, at *21 (S.D.N.Y. Feb. 7, 2011) (withdrawn on other grounds) (stating that

1  custodial information, meaning "the name of the custodian or source system from
2  which the item was collected," is a metadata field that should be included with
3  every production of ESI), Lens Decl. Ex. 12; *In re Seroquel Prods. Liab. Litig.*,
4  2007 WL 219989, at *4 (M.D. Fla. Jan. 26, 2007) (ordering the production of
5  custodian metadata, including "the names of the custodians in whose files the
6  documents are located").

### D. Request for Relief

In light of the foregoing, Warner respectfully requests that the Court issue an order compelling the Tolkien/HC Parties to search for, collect, and produce documents responsive to Warner's three outstanding sets of Requests for Production from the following individuals, all of whom the Tolkien/HC Parties have previously represented would be likely to possess relevant information: Cathleen Blackburn, Steven Maier, Christopher Tolkien, Priscilla Tolkien, Ballie Tolkien, Simon Tolkien, Michael Tolkien, David Brawn, Simon Dowson-Collins, Jane Johnson, Chris Smith, Bonnie Eskenazi, Elisabeth Moriarty, Ricardo Cestero, Candace Carlo, Aaron Moss, Rachel Valadez, Jeremy Nussbaum, Richard Williamson, Mary Butler, and Adrian Laing.  The Tolkien/HC Parties should also be ordered to search for and produce all responsive documents from any central repositories of documents, and any additional individuals the Tolkien/HC Parties have not yet added to their list of custodians who may possess responsive information.  Warner requests that the Court order the Tolkien/HC Parties to complete their production of all electronic and hard-copy documents, along with accompanying custodian information, within thirty days of the Court's Order.  Finally, Warner also requests that the Tolkien/HC Parties produce within thirty days of the Court's Order information sufficient to indicate whether, when, and to whom they issued document preservation notices, as well as any copies of such preservation notices.

## III. THE TOLKIEN/HC PARTIES MUST PRODUCE A PRIVILEGE LOG

Federal law requires a party who withholds otherwise responsive documents on the grounds of privilege to produce a privilege log that enables opposing parties, and the Court, to evaluate their claims of privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii) (when a party intends to assert privilege over a document to avoid producing in response to a document request, "the party must ... describe the nature of the documents ... not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"); *Ramirez v. Cnty. of L.A.*, 231 F.R.D. 407, 410 (C.D. Cal. 2005); *Ibrahim v. Dep't of Homeland Sec.*, 2013 WL 1703367, at *2 (N.D. Cal. Apr. 19, 2013) (stating the "use of a privilege log is a standard, commonplace method of satisfying Rule 26(b)(5) without revealing privileged or protected information").

In order to accommodate the Tolkien/HC Parties' previous claims that the creation of a privilege log would be burdensome, Warner agreed that the parties could withhold their privileged documents in good faith without noting such documents on a privilege log. Warner, however, specifically reserved its rights to later insist that the Tolkien/HC Parties produce such a log. Now, after months of discovery, it is clear that the Tolkien/HC Parties have abused this accommodation.

Warner learned for the first time during the depositions of Ms. Blackburn and Mr. Maier that the Tolkien/HC Parties are taking outlandish positions with respect to privilege, making clear that Warner cannot take the Tolkien/HC Parties' assertions of privilege at face value. For example:

- The Tolkien/HC Parties are asserting that non-legal, business communications are protected by the attorney-client privilege. The Tolkien/HC Parties suggest, for instance, that *all* communications involving Ms. Blackburn and Mr. Maier are privileged, even though they each serve multiple roles on behalf of the Tolkien Parties, including business functions. Lens Decl. Ex. 4 at 37:14-18; 194:17-198:3; Ex. 5 at 34:8-35:8. Ms. Blackburn's own CV admits that she

manages the business of the Tolkien Estate. Lens Decl. Ex. 6 at 101. Mr. Maier went so far as to testify that despite his role as a director of The Tolkien Estate Ltd., he has never communicated with anyone from the Tolkien/HC Parties in a non-legal capacity. Lens Decl. Ex. 4 at 194:17-198:3. This is plainly improper. As the Ninth Circuit has previously held, "[t]he fact that a person is a lawyer does not make all communications with that person privileged." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Indeed, where an attorney performs both legal and non-legal roles on behalf of a client, it is well settled that only those communications made in an attorney's *legal* capacity are privileged. *See, e.g., FDIC v. Fid. & Deposit Co.*, 2013 WL 2421770, at *3 (S.D. Ind. June 3, 2013) ("Courts have consistently held that, when in-house counsel conducts both business and legal functions, only those communications made when the attorney is wearing his 'legal advisor hat' are protected."). Further, a corporation cannot expect that installing an attorney as an officer or employee of the company will shield its non-legal business communications with that attorney. *See, e.g., Marten v. Yellow Freight Sys.*, 1998 U.S. Dist. LEXIS 268, at *15-17 (D. Kan. Jan. 6, 1998).

- The Tolkien Parties maintain that their shared commercial interests with the HarperCollins Parties is sufficient to create a common interest privilege over all of their communications. Lens Decl. Ex. 5 at 171:12-179:8. This position runs directly counter to well-established law, which holds that only a common *legal* interest can justify the application of the common interest privilege. *See, e.g., Verigy US, Inc. v. Mayder*, 2008 WL 5063873 (N.D. Cal. Nov. 21, 2008) ("A basic requirement of the common interest exception is that the parties must have a common legal, as opposed to commercial, interest.") (internal citations omitted); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C. 1974) (holding that "the key consideration [for the common interest privilege to apply] is that the nature of the interest be identical, not similar, and

be legal, not solely commercial"); *In re Application of the FTC for an Order Compelling Avrett Free & Ginsberg to Comply with a Subpoena for Documentary Material*, 2001 WL 396522, at *5 (S.D.N.Y. Apr. 19, 2001) (holding that a business strategy that includes a concern about litigation is not a basis for establishing a shared privilege).

- The Tolkien/HC Parties are asserting a common interest privilege over communications between them and Zaentz—one of the parties they sued in this lawsuit. Lens Decl. Ex. 4 at 78:1-91:7. To the extent the common interest privilege might have previously covered any legal communications between the Tolkien/HC Parties and Zaentz, that privilege no longer applies, as "[a]n exception to the assertion of the common interest privilege exists when the participants in the common interest become adverse to each other in litigation." *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 295 (N.D. Ill. 2005).

In light of these unfounded positions, it is clear that a privilege log is necessary to achieve transparency and enable Warner to evaluate the Tolkien/HC Parties' claims of privilege and ensure that the Tolkien/HC Parties are not suppressing critical documents. *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.,* 2008 WL 5214330 (N.D. Cal. Dec. 12, 2008) ("The purpose of a privilege log is to provide the opposing party and the Court with enough information to evaluate the claim of privilege. The burden of establishing either attorney-client privilege or the protection of the work product doctrine lies with the proponent. Failure to provide sufficient identification waives the privilege.").

Warner respectfully requests that the Court issue an order compelling the Tolkien/HC Parties to produce a privilege log for all documents withheld prior to October 12, 2010, when the Tolkien/HC Parties first objected to Warner's exploitation of gambling and online video games. This log should include descriptions sufficient to determine: (1) whether communications involving Ms. Blackburn or Mr. Maier were made in a legal (as opposed to a business) advisory

capacity, and (2) whether the timing and subject matter of any communications between the Tolkien/HC Parties and Zaentz, or between the Tolkien Parties and the HarperCollins Parties, actually justify the assertion of a common interest privilege.

## IV. CONCLUSION

For all the foregoing reasons, Warner respectfully requests that the Court issue an Order compelling the Tolkien/HC Parties to: (1) perform a reasonable search for, and production of, all documents responsive to Warner's three outstanding sets of Requests for Production with accompanying custodian metadata; (2) produce information sufficient to indicate whether, when, and to whom the Tolkien/HC Parties issued document preservation notices, as well as any copies of such preservation notices; and (3) produce a privilege log.

Dated: January 27, 2014

DANIEL M. PETROCELLI
VICTOR JIH
MOLLY M. LENS
O'MELVENY & MYERS LLP

By: _____
Daniel M. Petrocelli

Attorneys for the Warner Parties