BONNIE E. ESKENAZI (SBN 119401)
BEskenazi@ggfirm.com
ELISABETH A. MORIARTY (SBN 156569)
EMoriarty@ggfirm.com
RICARDO P. CESTERO (SBN 203230)
RCestero@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LIMITED, a United Kingdom corporation; PRISCILLA MARY ANNE REUEL TOLKIEN, as TRUSTEE OF THE TOLKIEN TRUST, a United Kingdom Charitable Trust; THE J.R.R. TOLKIEN ESTATE LIMITED, a United Kingdom corporation; HARPERCOLLINS PUBLISHERS, LTD., a United Kingdom corporation; UNWIN HYMAN LTD., a United Kingdom corporation; and GEORGE ALLEN & UNWIN (PUBLISHERS) LTD., a United Kingdom corporation,<br><br>                     Plaintiffs,<br><br>v.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, INC., a division of WARNER BROS. HOME ENTERTAINMENT, INC., a Delaware corporation; WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation, as successor-in-interest to New Line Cinema Corp.; WARNER BROS. CONSUMER PRODUCTS, INC., a Delaware corporation; WARNER BROS. INTERACTIVE ENTERTAINMENT, INC., a division of WARNER BROS. HOME ENTERTAINMENT, INC.; NEW LINE PRODUCTIONS, INC., a California corporation; THE SAUL ZAENTZ COMPANY d/b/a Middle-earth Enterprises, a Delaware corporation; and DOES 1-10, inclusive,<br><br>                     Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No.  CV 12-09912 ABC (SHx)<br><br>**DISCOVERY MATTER**<br><br>Hon. Audrey B. Collins<br><br>Magistrate Stephen J. Hillman<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO WARNER PARTIES' MOTION TO COMPEL DOCUMENTS AND PRIVILEGE LOG; REQUEST FOR SANCTIONS AGAINST THE WARNER PARTIES AND THEIR COUNSEL IN THE AMOUNT OF $9,525**<br><br>**Date:  Feb. 24, 2013**<br><br>**Time:  2:00 p.m.** |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ................................................................................................... 3

    A.  Warner Misrepresentation No. 1:  The Tolkien/HC Parties have refused to meet and confer ........................................................................ 4

    B.  Warner Misrepresentation No. 2:  The Tolkien/HC Parties have "refused" to provide a privilege log ..................................................... 6

    C.  Warner Misrepresentation No. 3:  There is a "significant question whether the Tolkien/HC Parties have undertaken the necessary measures to preserve relevant evidence." ........................... 9

    D.  Warner Misrepresentation No. 4:  The Tolkien/HC Parties have "refused" to provide custodian metadata information ...................... 10

    E.  Warner Misrepresentation No. 5:  The Tolkien/HC Parties "have "failed to collect electronically stored information from most – if not all—of their custodians." ..................................................... 12

        1.  The Tolkien Parties have agreed to collect and produce Ms. Blackburn's and Mr. Maier's electronic files from MaierBlackburn ........................................................................ 12

        2.  The Tolkien Parties have made diligent efforts to collect Ms. Blackburn's and Mr. Maier's electronic files from Manches .............................................................................. 13

        3.  The Tolkien Parties have collected, or are in the process of collecting hard copy and ESI documents for the Tolkien heirs and Greenberg Glusker attorneys ...................... 16

        4.  The HC Parties have diligently searched for electronic and hard copy files ........................................................... 18

    F.  Warner Misrepresentation No. 5:  The Tolkien/HC Parties "have not been diligent" in their search for hard copy documents ............. 19

III.  THE COURT SHOULD SANCTION WARNER AND ITS COUNSEL IN THE AMOUNT OF $9,525 FOR FILING A PREMATURE AND IMPROPER MOTION .......................................... 20

IV.  CONCLUSION ............................................................................................ 21

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Apple Inc. v. Samsung Electronics Co. Ltd.*,
   2013 U.S. Dist. LEXIS 116493 (N.D. Cal. August 14, 2013) ............................ 15

*Dole v. Milonas*,
   889 F.2d 885 (9th Cir.1989) ................................................................................. 8

*General Electric Co. v. Wilkins*,
   2012 U.S. Dist. LEXIS 22331 (E.D. Cal. February 21, 2012) ............................ 15

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) .............................................................................. 8

*In re Teleglobe Communications*,
   493 F. 3d 345 (3rd Cir. 2007) ............................................................................... 8

*Margolis v. The Dial Corp.*,
   2012 U.S. Dist. LEXIS 92355 (S.D. Cal. July 3, 2012) ..................................... 15

*Swanson v. Alza Corp.*,
   2013 U.S. Dist. LEXIS 145493 (N.D. Cal. October 7, 2013) ............................ 15

*USF Insurance Company v. Smith's Food and Drug Center*,
   921 F.Supp.2d 1082 (D.Nev. 2013) ...................................................................... 8

*Zublake v. UBS Warburg LLC*,
   217 F.R.D. 309 (S.D.N.Y. 2003) ........................................................................ 15

**FEDERAL: STATUTES AND RULES**

F.R.C.P. 26(b)(2)(B) ................................................................................................ 15

F.R.C.P. 26(b)(2)(C)(iii) .......................................................................................... 15

F.R.C.P. 37(a)(5)(B) ............................................................................................. 5, 20

Local Rule 37-1 ..................................................................................................... 5, 20

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

## I.     **INTRODUCTION**

Warner's Motion to Compel Documents and Privilege Log (the "Motion") demonstrates that it is determined to burden and harass the Tolkien/HC Parties and unnecessarily increase the costs of this litigation by engaging in "scorched earth" discovery tactics.[1]  Warner's Motion is premised on the misstatement that the Tolkien/HC Parties refused to meet and confer.  But Warner filed its Motion in bad faith <u>two days</u> before the parties' previously-scheduled meet and confer conference.  Instead of waiting two days to determine if the parties could resolve or narrow the issues raised in Warner's Motion – which they have – Warner insisted on burdening the Court with its Motion, without giving plaintiffs the opportunity to respond by following the proper joint stipulation procedure.   And, after the parties' conferred and were able to resolve or narrow the issues in Warner's Motion, Warner still refused to take its Motion off calendar – even though the parties' meet and confer discussions are continuing – unless plaintiffs ceded to Warner's unreasonable, unrealistic and one-sided demands without any commitment that defendants would also abide by the same standards and deadlines Warner sought to impose on plaintiffs.  Warner's Motion grossly misrepresents the Tolkien Parties' efforts to collect, review and produce non-privileged responsive documents, and is premature in light of the parties' continuing meet and confer discussions.

This case involves merchandising rights in and to *The Lord of the Rings* and *The Hobbit*.  Professor J.R.R. Tolkien's seminal work "*The Lord of the Rings*" is one of the most esteemed literary properties of all time.  When plaintiffs'

---

[1] Plaintiffs Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as Trustee of the Tolkien Trust, The J.R.R. Tolkien Estate Ltd. are collectively referred to herein as the "Tolkien Parties."  Harper Collins Publishers, Ltd., Unwin Hyman Ltd. and George Allen & Unwin (Publishers), Ltd. are collectively referred to herein as the "HC Parties." The Tolkien Parties and HC Parties are collectively referred to herein as the "Tolkien/HC Parties" or "plaintiffs."  Defendants Warner Bros. Digital Distribution, Inc., Warner Bros. Home Entertainment, Inc., Warner Bros. Consumer Products, Inc., Warner Bros. Interactive Entertainment, Inc., and New Line Productions, Inc. are collectively referred to herein as "Warner."   Defendant The Saul Zaentz Company is referred to herein as "Zaentz."  Warner and Zaentz are collectively referred to herein as "defendants."

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

predecessors-in-interest licensed the film rights to *The Lord of the Rings* and *The Hobbit* in 1969, they also granted defendants' predecessors-in-interest certain limited merchandising rights.  However, in recent years, and particularly in the aftermath of the unprecedented financial and critical success of the Films, defendants have, with increasing boldness, engaged in a continuing and escalating pattern of usurping rights to which they are not entitled — and which belong exclusively to plaintiffs as reserved rights – including, for example, developing, licensing and/or selling video games delivered other than by way of physical media such as a DVD or cartridge, including, but not limited to, games delivered by way of electronic download, mobile telephone networks or social media websites, featuring characters and story elements from the Tolkien Works.

To make matters worse, plaintiffs discovered that defendants have, in excess of the limited rights granted to them, begun licensing the production and distribution of gambling games (both over the Internet and in brick-and-mortar casinos) featuring characters and story elements from *The Lord of the Rings*. Gambling constitutes a further category of rights which have never been granted to defendants (and which plaintiffs themselves would intend never to exploit).  Not only does the production of gambling games patently exceed the scope of defendants' rights, but this infringing conduct has outraged Tolkien's devoted fan base, causing irreparable harm to Tolkien's legacy and reputation and the valuable goodwill generated by his works.

As demonstrated by its Motion, Warner has adopted a "no stone unturned" discovery strategy, including seeking the production of electronic documents from the Tolkien Parties' former law firm which are not reasonably accessible and only available, if at all, on unrestored backup tapes and which will likely be duplicative of the tens of thousands of hard copy documents already produced by plaintiffs. At the same time, defendants have not yet completed their own productions and are unwilling to commit to the deadlines they are attempting to impose on plaintiffs.

1 For each of the reasons explained below, Warner's motion is procedurally
2 improper, premature and moot. The Motion should be denied in its entirety, and
3 Warner should be sanctioned for refusing to meaningfully meet and confer, and for
4 burdening plaintiffs and the Court with its unnecessary Motion.

5

6 **II.** **ARGUMENT**

7     Warner's Motion is premised on a series of misrepresentations and purposely
8 misleading assertions regarding the Tolkien/HC Parties' collection, review and
9 production of non-privileged, responsive documents in this action. Contrary to
10 Warner's accusations, the Tolkien/HC Parties' are not avoiding their obligations to
11 collect and produce responsive documents, nor have they improperly withheld
12 documents on privileged grounds. Indeed, the Tolkien/HC Parties have diligently
13 collected and reviewed hundreds of thousands of pages of documents with any
14 possibility of relevance to the issues in dispute, and have produced in excess of
15 30,000 pages of documents. Warner, however, insists on engaging in an improper
16 fishing expedition designed to burden and harass plaintiffs and unnecessarily
17 increase the costs of this litigation.

18     Each of the purported issues raised in Warner's Motion has either been
19 resolved or narrowed through the meet and confer process or is the subject of
20 continuing discussions between the parties. Warner's Motion is therefore improper,
21 premature and moot. The Tolkien/HC Parties repeatedly requested that Warner
22 withdraw its improper Motion, to allow the parties to further meet and confer and to
23 only seek the Court's intervention on those matters, if any, on which the parties
24 reach an impasse. Warner, however, has insisted on moving forward with its
25 manufactured Motion in an attempt to increase the burden and cost of this litigation
26 and impose a discovery standard on plaintiffs which Warner and Zaentz refuse to
27 follow themselves. Each of Warner's misrepresentations is detailed below.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**A.     Warner Misrepresentation No. 1:  The Tolkien/HC Parties have refused to meet and confer.**

Warner attempts to justify filing its Motion without complying with the Central District's joint stipulation procedure by claiming that the Tolkien/HC Parties have refused to meet and confer.  In reality, it is Warner who refused to meaningfully meet and confer in good faith prior to filing its Motion.  Warner filed its Motion only two days before the parties were scheduled to hold a meet and confer conference.  Declaration of Julia R. Haye ("Haye Decl.") ¶¶ 6-7, Ex. E. Rather than wait a mere two days to determine if the matters in dispute could be resolved or narrowed, Warner simply filed its Motion, telling the Court that "the parties attempted to resolve this dispute, but were unable to do so."  Notice of Motion, at 1:26-27.  As detailed herein, the issues raised by Warner's Motion were in fact either resolved through the parties' meet and confer discussions subsequent to the filing of the Motion, or are the subject of further discussions.

There is no legitimate justification for Warner's filing its Motion two days before the scheduled meet and confer.  Warner complains that the meet and confer had been unreasonably delayed for one week at plaintiffs' request.  However, the parties have been proceeding with depositions over the last few weeks, in Los Angeles, San Francisco and New York, and plaintiffs were concerned that they would not be in a position to fully respond to Warner's questions without a few days additional time.[2]  Rescheduling a meet and confer conference for one week to a date certain, of course, is not a "refusal" to meet and confer, as Warner tells the

---

[2] Warner sent its meet and confer letter on January 7, 2014.  Haye Decl. Ex. A.  On January 16, 2014, plaintiffs explained that, given the breadth of issues raised by Warner, including certain issues being raised by Warner for the first time, plaintiffs would need a few additional days to prepare for the meet and confer.  *Id.*, Ex. B. Warner agreed to schedule the meet and confer for Thursday, January 23, 2014. *Id.*, Ex. C.  Due to numerous depositions and related travel, plaintiffs requested to postpone the meet and confer for one week to allow them time to obtain additional information necessary to respond more fully and accurately.  *Id.*, Ex. D.  At the time Warner filed its Motion, the parties were scheduled to meet and confer two days later.  *Id.* at ¶¶ 6-7, Ex. E.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   Court.  Nor is it an indication that the parties had reached an impasse regarding the

2   matters in dispute; they had not.  Plaintiffs' request to reschedule the meet and

3   confer for one week later than scheduled was eminently reasonable, particularly

4   given the number of depositions and amount of travel that has taken place over the

5   past few weeks.  In any event, plaintiffs' request to <u>reschedule</u> the meet and confer

6   was not a "<u>refusal</u>" to meet and confer, and does not provide a basis for Warner to

7   circumvent the requirements of Rule 37 or the joint stipulation procedure mandated

8   in the Central District.

9        Warner's strategy is manifestly disingenuous, given its previous positions

10  with respect to the parties' meet and confer obligations.  Warner's counsel

11  previously chastised plaintiffs that "[t]he meet-and-confer obligation is not a

12  mechanical check-the-box technicality to complete…. it is an obligation to make 'a

13  good faith effort to eliminate the necessity for hearing the motion.'"  Haye Decl. ¶

14  17, Ex. M.  The Tolkien Parties agree.  Regretfully, Warner appears to have

15  reversed course, and was "simply determined to file a motion, regardless of [its]

16  obligations under Local Rule 37-1" – the precise conduct which Warner

17  (wrongfully) previously accused the Tolkien/HC Parties of engaging in.  *Id.*

18       In any event, on Thursday, January 30, 2014, the parties did meet and confer

19  for over an hour, and succeeded in resolving or narrowing the issues presented in

20  Warner's Motion and other issues.  Some issues remain the subject of continued

21  discussion, including issues now before the Court.  Nevertheless, Warner refused to

22  withdraw its obsolete and improper Motion unless the Tolkien/HC Parties agreed to

23  a series of unrealistic, one-sided demands which defendants themselves would not

24  similarly commit to satisfy.  Haye Decl. ¶ 12, Ex. J.  Even more egregious, Warner

25  waited to send its demands to plaintiffs' counsel until Friday afternoon, knowing

26  full well that plaintiffs reside in England and that plaintiffs' counsel would be

27  unable to discuss the proposal with the clients before plaintiffs' opposition was due

28  on Monday.  Warner's conduct underscores that its proposal was made in bad faith

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

1   and that its Motion is pure litigation gamesmanship.

2       It is apparent that Warner is the party who is refusing to meaningfully meet

3   and confer, in an obvious attempt to fabricate a Motion for whatever strategic

4   purpose it hopes to accomplish.  For these reasons alone, Warner's current Motion

5   should be summarily denied in its entirety.  The Court should not be burdened with

6   having to analyze and address matters which the parties have already resolved or

7   are continuing to discuss.  To the extent the parties are unable to resolve any

8   specific issues after completing the meet and confer, Warner should properly file a

9   joint stipulation which will afford plaintiffs a proper opportunity to respond to the

10  specific issues on which they have reached an impasse.

11      **B.**      **Warner Misrepresentation No. 2:  The Tolkien/HC Parties have**

12      **"refused" to provide a privilege log.**

13      Warner's statement that the Tolkien/HC Parties have refused to provide a

14  privilege log is, quite simply, a bald-face lie.  In truth, given the enormous scope of

15  the document production in this case, the parties jointly agreed during early meet

16  and confer discussions that the burden of preparing privilege logs likely outweighed

17  the benefit.  Haye Decl. ¶ 14, Ex. L.  The document production to date by all parties

18  includes more than 155,375 pages of documents.  Declaration of Joanna Blythe

19  ("Blythe Decl.") ¶ 2.  The Tolkien/HC Parties believe that there are many more

20  than that number of privileged documents.  For that reason, all parties thus agreed

21  to forego the production of privilege logs, while reserving their respective rights to

22  re-raise the issue at a later time.  Haye Decl. ¶ 14, Ex. L.

23      During the meet and confer process related to this Motion, Warner demanded

24  that the Tolkien/HC Parties, and only the Tolkien/HC Parties, produce a privilege

25  log.  Haye Decl. ¶¶ 11-12, Ex. J.  The Tolkien/HC Parties responded that while they

26  continued to believe a privilege log was more burdensome than beneficial, they

27  would agree to produce a log, provided that all parties agree to produce a log.  Haye

28  Decl. ¶¶ 10-11, Ex. I.  As defendants are aware, plaintiffs have many questions

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

regarding the privilege assertions made by defendants during the course of this case.  For example, Warner has made numerous unfounded assertions with respect to Benjamin Zinkin, an attorney who acted in both a legal and business capacity, and David Imhoff, a marketing executive who is not an attorney.  Haye Decl. ¶ 15. Warner has also improperly redacted communications between non-lawyer representatives of Warner and Zaentz.  *Id.*  Similarly, Zaentz has asserted that all communications between Al Bendich, an attorney who worked in a business capacity, and any Zaentz employees are privileged, and has in fact, clawed back documents that, on their face, contradict Zaentz's purported privilege claims – even while questions were pending of a witness at deposition regarding such documents. *Id.*  These are merely examples.  Defendants' privilege assertions have been the subject of the parties meet and confer, and such discussions are continuing.

Notwithstanding the questionable nature of many of defendants' privilege assertions, plaintiffs offered to provide a privilege log so long as all defendants agree to do the same.  Defendants have remained silent regarding their willingness to provide reciprocal logs; instead, Warner continues to ask the Court to impose a one-sided obligation to require plaintiffs to undergo the burden and expense of providing a privilege log while defendants continue to hide behind suspect privilege assertions.  Regardless, the parties have not reached an impasse on this issue – plaintiffs are awaiting a response from both Warner and Zaentz to their proposal that all parties agree to provide privilege logs.  Simply put, the parties have not yet completed their meet and confer discussions and, therefore, this issue is not yet ripe for resolution by the Court.

Warner's suggestion that plaintiffs have asserted "outlandish assertions with respect to privilege" is likewise inaccurate.  Although the propriety of the Tolkien/HC Parties' privilege assertions is not before the Court in this Motion, Warner's contention that communications between Mr. Maier and/or Ms. Blackburn and their clients were made in a non-legal capacity is baseless and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

inaccurate.  Similarly, plaintiffs disagree with Warner's contention that plaintiffs have improperly withheld communications between the Tolkien/HC Parties based on a common interest privilege, or communications between the Tolkien Estate and Zaentz based on a common interest and/or joint client privilege.  During the meet and confer, plaintiffs provided defendants with authority supporting their position with respect to joint client communications between the Tolkien Estate and Zaentz.  Defendants never responded.  *See, e.g., In re Teleglobe Communications*, 493 F. 3d 345, 363 (3rd Cir. 2007) ("waiving the joint-client privilege requires the consent of all joint clients"); *USF Insurance Company v. Smith's Food and Drug Center*, 921 F.Supp.2d 1082, 1096 (D.Nev. 2013) (while documents may not be privileged as between former joint clients currently in litigation, the privilege remains as to strangers to the attorney-client relationship").  The Tolkien/HC Parties will fully brief and support their privilege assertions at the appropriate time, if necessary.

As for the issue actually before the Court in this Motion (privilege logs), the Tolkien/HC Parties continue to believe that preparing a privilege log will be enormously and unduly burdensome and time-consuming (a position with which all parties agreed in their early discussions).  Plaintiffs submit that the Court should reaffirm the parties' original agreement to forego production of privilege logs.  Any specific privilege concerns can be addressed by the parties and, if necessary, the Court, on a case by case basis.  In the alternative (and as explained to Warner during the meet and confer), plaintiffs are prepared to provide a privilege log consistent with the requirements of federal law, provided that all defendants are required to do the same.[3]  Litigation must be conducted on a level playing field, and the rules of discovery should apply equally to all sides.

---

[3] *See Dole v. Milonas*, 889 F.2d 885, 888 n. 3 (9th Cir.1989) (privilege log deemed appropriate that identified (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated); s*ee also In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992).

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**C.** **Warner Misrepresentation No. 3:  There is a "significant question whether the Tolkien/HC Parties have undertaken the necessary measures to preserve relevant evidence."**

Warner intimates that because it has "received neither copies of any document preservation notices nor any information about them, including whether they exist," plaintiffs failed to preserve relevant evidence.  Motion at 6:16-18.  This is demonstrably untrue.  During the meet and confer process, plaintiffs informed defendants that a document preservation notice was issued to the Tolkien Parties and their English counsel (Mr. Maier and Ms. Blackburn and their then-law firm, Manches) by Greenberg Glusker on February 21, 2008 in connection with a prior litigation between the parties.  Haye Decl. ¶ 10, Ex. I.  Given the manner in which the current dispute arose (emerging during settlement discussions in connection with the prior case), this notice continued through to the present litigation and was never released.  Additionally, in an abundance of caution, the Tolkien Parties and their English counsel were issued a <u>second</u> document preservation notice in this action on January 11, 2012; the HC Parties were likewise issued a document preservation notice on January 14, 2012.  Haye Decl. ¶ 10, Ex. I.

Plaintiffs have provided the information Warner requested.  The Motion on this point is pure harassment.  Notably, during the meet and confer process plaintiffs likewise requested that <u>defendants</u> similarly confirm which entities or individuals have been issued document preservation notices and the date(s) of any such notice(s).  Defendants have ignored plaintiffs' requests.  This is further evidence of defendants' gamesmanship and efforts to avoid having discovery rules apply to them.  Once again, given that plaintiffs are awaiting defendants' response to their proposal regarding document preservation notices, the parties have not yet reached an impasse on this issue.  However, if the Court is inclined to rule on Warner's request, the Court should order defendants to provide the same information regarding their document preservation notices that they have insisted

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

1   plaintiffs provide.

2          With respect to the production of the notices themselves, the notices issued

3   by Greenberg Glusker to its clients and their English counsel are clearly attorney-

4   client privileged communications.  They should not be produced.  Again, if the

5   Court is inclined to order their production, all parties should be required to produce

6   any and all document preservation notices issued in connection with this dispute.

7   Warner's and Zaentz's refusal to comply with the requirements it seeks to

8   unilaterally impose on plaintiffs should be rejected.

9          **D.**     **Warner Misrepresentation No. 4:  The Tolkien/HC Parties have**

10              **"refused" to provide custodian metadata information.**

11          Warner incorrectly claims that plaintiffs have failed to provide "custodian"

12  metadata for its electronic and hard copy documents in a purported attempt to

13  "obfuscate[] the deficiencies of their search for documents."  Motion, at 8:5-6.  In

14  support of its unfounded accusations, Warner asserts that "Warner and Zaentz have

15  each included with their productions custodian metadata that specifies, as

16  appropriate, the name of a document's individual custodian, or the particular file

17  from which a document was produced."  Motion, at 7:25-8:1.  This statement is

18  patently false and misleading in the extreme.

19          Contrary to Warner's misrepresentations, plaintiffs have provided custodian

20  information in a similar manner to defendant Zaentz.  Specifically, the vast majority

21  of Zaentz's electronic files have either no custodian information whatsoever or list

22  "SZC" as the custodian.  Plaintiffs have similarly provided custodian information as

23  to whether the documents come from the Tolkien Parties' files, or the HC Parties'

24  files.  Blythe Decl. ¶ 3.  Given that plaintiffs' have interpreted the parties'

25  agreement to provide "custodian" information in the exact manner as Warner's co-

26  defendant Zaentz, clearly such a position is reasonable and was understood by all

27  parties to be sufficient.  Furthermore, the parties agreed during the early meeting of

28  counsel that discovery would be directed broadly to the Tolkien/HC Parties, and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

1   need not be directed to individual persons or entities.  Haye Decl. ¶ 16.  Plaintiffs'

2   provision of "custodian" information is consistent with the manner in which the

3   parties' agreed discovery would be served and responded to in this action.  Warner

4   now seeks to change that agreement and the parties are meeting and conferring

5   about their requests.  In any event, given that Zaentz has failed to provide the

6   custodian information Warner now seeks from plaintiffs and the parties' agreement

7   with respect to service of discovery requests in this action, Warner cannot credibly

8   assert that plaintiffs improperly provided custodian data in an effort to conceal

9   purported deficiencies in their document collection and production.

10          Notwithstanding that plaintiffs believe the custodian information provided is

11   sufficient, during the meet and confer plaintiffs offered to provide a custodian

12   overlay file for its electronic documents which identified the individual custodian,

13   provided that all defendants did the same.  Haye Decl. ¶ 10, Ex. I.  Once again,

14   plaintiffs are awaiting a response to their proposal from both Warner and Zaentz;

15   they have not reached an impasse on this issue.  Yet instead of simply responding to

16   plaintiffs' proposal and accepting a reciprocal agreement regarding the protocol for

17   providing custodian data for ESI to be applicable to all parties, Warner has insisted

18   on burdening the Court with an issue about which the parties continue to confer.

19          With respect to hard copy documents, as plaintiffs explained during the meet

20   and confer, there is no metadata associated with hard copy documents, at least as

21   plaintiffs' understand that term.  *Id.*; Blythe Decl. ¶ 4.  Plaintiffs produced the

22   documents as they are kept in the ordinary course of business.  They have no

23   obligation to "create" metadata for file designations for its hard copy documents

24   simply because Warner chose to do so with respect to some of its hard copy

25   documents.  Indeed, plaintiffs could simply have delivered boxes of paper

26   documents to Warner's counsel, on which no "metadata" obviously would appear.

27   Warner knows that the vast majority of plaintiffs' documents are stored in hard

28   copy format, while Warner, on the other hand, has produced very few hard copy

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

1   documents.  Warner's insistence that plaintiffs assign additional information to

2   their hard copy documents is designed solely to burden plaintiffs and to

3   unnecessarily increase the costs of an already extremely expensive document

4   production.

5        Significantly, Warner's own hard copy document production is missing

6   custodian information; Zaentz, for its part, listed the custodian of all hard copy

7   documents as "SZC," consistent with what plaintiffs have done.  Blythe Decl. ¶ 5.

8   Again, Plaintiffs offered to further discuss this issue with defendants and to provide

9   additional information once the parties agreed on a protocol applicable to all

10  parties.  To date, defendants have refused to agree to a reciprocal protocol.

11     **E.**    **<u>Warner Misrepresentation No. 5:  The Tolkien/HC Parties "have</u>**

12          **<u>"failed to collect electronically stored information from most – if</u>**

13          **<u>not all—of their custodians."</u>**

14       Warner argues that the Tolkien/HC Parties have refused to "perform a

15  reasonable search for, or make a production of, ESI."  Warner's assertions are

16  inaccurate and fail to disclose efforts made by the Tolkien/HC Parties to collect and

17  produce ESI.  Warner knows this, because the Tolkien/HC Parties explained it to

18  Warner's counsel in detail during the meet and confer.  Still, Warner persists in

19  proceeding with its premature, obsolete Motion.

20          1.    <u>The Tolkien Parties have agreed to collect and produce Ms.</u>

21             <u>Blackburn's and Mr. Maier's electronic files from</u>

22             <u>MaierBlackburn</u>.

23       As explained to Warner during the meet and confer, most of Ms. Blackburn's

24  and Mr. Maier's documents are hard copy files and, with respect to the limited

25  amount of non-privileged, responsive files stored electronically, the Tolkien Parties

26  have no objection to collecting Ms. Blackburn's and Mr. Maier's electronic files

27  from their current firm, MaierBlackburn.  Haye Decl. ¶ 10, Ex. I.  In fact, the

28  Tolkien Parties are already in the process of collecting, reviewing and producing

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    non-privileged, responsive ESI files from Ms. Blackburn and Mr. Maier.  *Id.*  As

2    previously explained during earlier meet and confer discussions, it was the Tolkien

3    Parties' understanding that Ms. Blackburn's and Mr.  Maier's ESI was duplicative

4    of documents which had already been collected in hard copy format.  *Id.*  The hard

5    copy documents were then collected and reviewed, and non-privileged, responsive

6    documents were produced.  *Id.*  Although the Tolkien Parties believe that the

7    MaierBlackburn electronic files will be entirely duplicative of the hard copy

8    documents previously produced, to assuage Warner's concerns, and in an

9    abundance of caution, the Tolkien Parties have agreed to collect, review and

10   produce electronic files for Ms. Blackburn and Ms. Maier from MaierBlackburn.

11   This is in process currently.  *Id.*

12             2.    The Tolkien Parties have made diligent efforts to collect Ms.

13                   Blackburn's and Mr. Maier's electronic files from Manches.

14         Going above and beyond the obligations imposed by the F.R.C.P., the

15   Tolkien Parties have made diligent efforts to collect Ms. Blackburn's and Mr.

16   Maier's relevant, non-privileged files from their former law firm, Manches.

17   Manches' ESI, however, is stored, and only available, on backup tapes.  As

18   plaintiffs repeatedly explained during the meet and confer process, it was Manches'

19   firm policy to print and file all email communications and other documents.  Under

20   this "print to file" policy, any information contained on the backup tapes has likely

21   already been collected, reviewed, and produced as part of the Tolkien Parties'

22   review of hard copy Manches documents.  Haye Decl. ¶ 10, Ex. I.

23         Furthermore, as Mr. Maier explained in his deposition, available electronic

24   information relating to "active matters," including matters relating to the Tolkien

25   Estate, was transferred from Manches to MaierBlackburn when Ms. Blackburn and

26   Mr. Maier left Manches.  *Id.*  To the extent responsive Manches electronic files

27   were transferred to MaierBlackburn, those files will be included in our collection

28   and review of Ms. Blackburn's and Mr. Maier's MaierBlackburn electronic files.

*Id.* For this reason also, Manches electronic files are likely duplicative of the hard copy documents already collected, reviewed and produced by the Tolkien Parties.

Moreover, Manches is, of course, a third party. Notwithstanding that Manches is not under the control of the Tolkien Parties, the Tolkien Parties have made diligent efforts to collect electronic files from Manches. As explained to Warner in detail during the meet and confer process, beginning in September, Greenberg Glusker contacted Manches to ascertain the accessibility of Tolkien electronic files and to arrange for their collection. *Id.* Over the past four months, Greenberg Glusker has exchanged numerous communications with Manches regarding the accessibility of Tolkien electronic files. *Id.* However, it is the Tolkien Parties' understanding that Manches has been in administration (the equivalent, we understand, of an insolvency proceeding) and, consequently, Manches has been preoccupied with its own difficulties. *Id.* For these reasons, representatives of Manches have been extremely slow to respond despite Greenberg Glusker's repeated follow-up communications. It is the Tolkien Parties' further understanding that Manches is now coming out of that proceeding and has been acquired by or merged with another firm. After Greenberg Glusker's repeated attempts to obtain information regarding Tolkien electronic files, on December 30, 2013, Greenberg Glusker was informed for the first time that the Tolkien electronic files are stored, and are only available, on backup tapes. *Id.*

Given the cost, expense and difficulty that will be incurred in any attempt to restore numerous backup tapes, particularly given that they are likely duplicative of the tens of thousands of pages of hard copy documents previously produced from the Manches files, Manches electronic files (to the extent responsive and not transferred) are not reasonably accessible. Warner cannot demand that the Tolkien Parties and Manches – a third party located overseas – incur the expense and burden of attempting to restore backup tapes simply because Warner desires to engage in a fishing expedition. In fact, "a party's suspicion that all responsive

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    documents have not been produced, without more, is generally insufficient to

2    warrant an order compelling production." *Swanson v. Alza Corp.*, 2013 U.S. Dist.

3    LEXIS 145493 at *10 (N.D. Cal. October 7, 2013) Warner's motion is based on

4    nothing more than its suspicion that it has not, or will not, receive documents in the

5    tens of thousands of electronic and paper files the Tolkien Parties have already

6    produced, and will produce.  That is not a legitimate justification to compel the

7    restoration of the Tolkien Parties' former law firm's electronic files, particularly

8    given the "print to file" policy in place during the relevant time frame.

9        F.R.C.P. Rule 26(b)(2)(B) states, "A party need not provide discovery of

10   electronically stored information from sources that the party identifies as not

11   reasonably accessible because of undue burden or cost."  Several district courts

12   have held that ESI stored on backup tapes is not "reasonably accessible" under Rule

13   26(b)(2)(B).  In *General Electric Co. v. Wilkins*, 2012 U.S. Dist. LEXIS 22331 at

14   *20-24 (E.D. Cal. February 21, 2012) the court, in relying on *Zublake v. UBS*

15   *Warburg LLC*, 217 F.R.D. 309, 319 (S.D.N.Y. 2003) held that "[g]enerally, backup

16   tapes are considered to be 'inaccessible," and denied the defendant's motion to

17   compel the restoration of 405 backup tapes constituting four years of data.  *See*

18   *also*, *Margolis v. The Dial Corp.*, 2012 U.S. Dist. LEXIS 92355 at *6-9 (S.D. Cal.

19   July 3, 2012) (denying request to preserve backup tapes because backup tapes are

20   not "reasonably accessible").  In this case, while we do not yet know the exact

21   number of backup tapes (discussions with the merged firm – now Penningtons

22   Manches – are continuing), any restoration would date back to 1997 (when the

23   Tolkien Parties' counsel joined Manches) and would certainly exceed the four years

24   of data the court refused to compel restoration of in *General Electric*.

25       Similarly, in *Apple Inc. v. Samsung Electronics Co. Ltd*., 2013 U.S. Dist.

26   LEXIS 116493 at *35-36 (N.D. Cal. August 14, 2013) the court refused to compel

27   Apple to produce ESI it claimed was not reasonably accessible under F.R.C.P.

28   26(b)(2)(C)(iii) which permits a court to limit discovery where "the burden or

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  expense of the proposed discovery outweighs its likely benefit."

2  For these same reasons, Warner has argued that it is not obligated to restore

3  backup tapes of its subsidiary, New Line, the Warner entity that originally acquired

4  the limited rights merchandising rights in the Tolkien Works that are at issue in this

5  litigation.  New Line became a wholly owned subsidiary of Warner in

6  approximately June of 2008.  At that time, according to Warner's counsel, certain

7  of New Line's servers and backup systems were not migrated over to Warner's

8  computer systems (even though at the time litigation was pending between, among

9  others, the Tolkien/HC Parties and New Line).  Haye Decl. ¶ 18, Exs. N, O.

10  Warner has since taken the position that it is not required to restore those servers

11  and/or backup tapes because the cost of doing so would outweigh the benefit to be

12  obtained in light of the amount of documentation already collected and preserved

13  by the Warner parties, even though New Line did not have the same "print to file"

14  policy that Manches did.  *Id.*  Accordingly, if the cost of restoring New Line's

15  servers and backup systems outweighs the need for the documents, surely the cost

16  of restoring Manches' ESI outweighs the need for that information.  Again,

17  discovery should be a two way street.

18  Furthermore, 26(b)(2)(C)(i) allows a court to limit discovery which is

19  unreasonably cumulative or duplicative.  Under the above case law, Manches

20  backup tapes are not only inaccessible due to undue burden and cost, but their

21  discovery should be denied because, under Manches' "print to file" policy,

22  electronic files contained on the backup tapes are likely duplicative of the Manches

23  hard copy email files which have already been collected, reviewed and produced.

24        3.    The Tolkien Parties have collected, or are in the process of

25                collecting hard copy and ESI documents for the Tolkien heirs

26                and Greenberg Glusker attorneys.

27  Warner questions whether the Tolkien Parties have collected hard copy and

28  electronic files for certain Greenberg Glusker attorneys, the Tolkien heirs, and the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  Tolkien Estate's former counsel Jeremy Nussbaum.  Each of Warner's concerns,

2  however, was addressed in detail during the meet and confer process.

3  Specifically, plaintiffs explained that they have collected and produced non-

4  privileged, responsive documents for the following Greenberg Glusker custodians

5  identified in Warner's Motion: Bonnie Eskenazi, Elisabeth Moriarty, Aaron Moss,

6  Ricardo Cestero, Candace Carlo, and Rachel Valadez.  Haye Decl. ¶ 10, Ex. I.

7  Warner offers no explanation as to why they believe that the Tolkien Parties have

8  failed to collect, review and produce Greenberg Glusker electronic documents.  Nor

9  can they.

10  Similarly, plaintiffs also explained during the meet and confer that Mr.

11  Nussbaum's files were collected by the Tolkien/HC Parties' prior counsel in

12  connection with the prior litigation which began in 2008.  *Id.*  Plaintiffs obtained

13  those files from prior counsel and are in the process of reviewing and producing

14  non-privileged, responsive documents.  *Id.*  Mr. Nussbaum did not perform any

15  work for the Tolkien Parties after 2008, and on or about June 12, 2012, Mr.

16  Nussbaum passed away.  *Id.*  Plaintiffs have collected any available files for Mr.

17  Nussbaum.

18  Regarding the Tolkien Heirs, to avoid any confusion, plaintiffs provided

19  Warner a detailed summary regarding the status of their collection and production

20  of hard copy and electronic files for each of the Tolkien heirs.  Specifically,

21  plaintiffs explained that they have collected, reviewed and produced non-privileged,

22  responsive hard copy and electronic files for Christopher Tolkien and Baillie

23  Tolkien; that they have collected, reviewed and produced non-privileged,

24  responsive hard copy documents for Priscilla Tolkien (Ms. Tolkien does not use,

25  and has not used, email or a computer); and that they have collected, reviewed and

26  produced some of the hard copy documents for Michael Tolkien and Simon

27  Tolkien, and are in the process of collecting and reviewing additional hard copy

28  documents and electronic documents for these custodians.  *Id.*  Warner's feigned

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

confusion regarding whether plaintiffs' "have actually collected or produced documents from any of these individuals" is disingenuous.  Motion, at 8:14-16.

### 4.   The HC Parties have diligently searched for electronic and hard copy files.

Without articulating any purported deficiencies, Warner also accuses plaintiffs of failing to collect and produce the HC Parties' electronic and hard copy documents.  During the meet and confer process, plaintiffs explained in detail their efforts to collect electronic and hard copy documents from the HC Parties, including identifying all custodians for which a search was made, which custodians had, or did not have, accessible ESI, and the years in which each of the former employee-custodians left HarperCollins.  Haye Decl. ¶ 10, Ex. I.

Regarding the HC Parties' hard copy documents, plaintiffs explained that HarperCollins does not maintain these documents by custodian; they are instead stored in central files.  This applies to both former and current employees.  All relevant files have been collected, reviewed and/or produced or are in the process of being produced in accordance with our meet and confer agreements.  *Id.*

Regarding the HC Parties' ESI, for current employees  (David Brawn, Simon Dowson-Collins, Jane Johnson and Chris Smith), the HC Parties' have collected their accessible, relevant ESI and plaintiffs' review and production of these documents is nearly complete.  *Id.*  Plaintiffs explained that the ESI of certain former employees Mary Butler (left in 1995), Adrian Laing (left 2001), Adrian Bourne (left 2002), David Daley (left 2009), David Marshall (left 2003), Peter Winslow (left 1994) and David Young (left 2003) is stored on inaccessible, unindexed back-up tapes.  *Id.*  Furthermore, the HC Parties collected accessible, relevant documents from network shared files, and have produced  responsive, non-privileged documents.  *Id.*  Accordingly, plaintiffs' disclosures are neither "inconsistent" nor "opaque."

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO COMPEL
DOCUMENTS AND PRIVILEGE LOG

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**F.**   **Warner Misrepresentation No. 5:  The Tolkien/HC Parties "have not been diligent" in their search for hard copy documents.**

Warner contends that plaintiffs did not "diligently" search all sources of hard copy documents.  Warner purportedly relies on the testimony of the Tolkien Parties' English counsel regarding the manner in which the Tolkien Parties' documents were collected.  Warner's characterization of plaintiffs' collection of Mr. Maier's and Mr. Blackburn's hard copy files, however, is entirely inaccurate.

Plaintiffs did not simply select hard copy files to review from an index, as Warner argues.  Haye Decl. ¶ 10, Ex. I.  Rather, Ms. Blackburn and Mr. Maier sent all Tolkien film, merchandising and trademark related files to Greenberg Glusker for review.  *Id.*  These documents also included hard copy files from Manches (custody of which was transferred to MaierBlackburn.)  *Id.*  Greenberg Glusker reviewed these voluminous documents which consisted of hundreds of thousands of pages, and produced responsive, non-privileged documents.   Haye Decl. ¶¶ 10-11, Ex. I.  In addition, Mr. Maier and Ms. Blackburn sent Greenberg Glusker an index of all Manches/MaierBlackburn Tolkien files.  *Id.*  Greenberg Glusker chose any and all additional files it believed could be even remotely relevant to the matters at issue in this case, to cross-check against the files provided.  *Id.*  Those additional files were also provided to Greenberg Glusker for review and production.  *Id.*

Warner's argument that the Tolkien Parties' collection was somehow insufficient simply because no Greenberg Glusker attorney traveled to England to examine files onsite, or at the storage facility, is unfounded.  Not only is there no law imposing such a ministerial obligation, Warner cannot possibly explain how such a visit to England would have resulted in a more comprehensive document collection.  Instead, it appears Warner simply seeks to require plaintiffs' counsel to literally review every single page of the Tolkien Parties' documents, regardless of their potential relevancy.  Yet Warner has not, and cannot, identify a single category of documents that it thinks should have been produced, but are missing

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  from the Tolkien Parties' production.  There are none.

2  Further, Warner does not even attempt to argue that collection of the HC

3  Parties' documents was insufficient, but rather appears to make the unfounded

4  assumption that HarperCollins documents were not properly collected based on its

5  faulty assumptions regarding collection of the Tolkien Parties' documents.  As to

6  the HC Parties, Warner's assertions are baseless and should be rejected.

7  **III.  THE COURT SHOULD SANCTION WARNER AND ITS COUNSEL**

8  **IN THE AMOUNT OF $9,525 FOR FILING A PREMATURE AND**

9  **IMPROPER MOTION**

10  Sanctions should be awarded against Warner and its counsel for forcing the

11  Tolkien/HC Parties to oppose a moot and procedurally improper Motion.  Under

12  F.R.C.P. Rule 37(a)(5)(B), upon denial of a discovery motion, the Court "must

13  require the movant, the attorney filing the motion, or both to pay the party or

14  deponent who opposed the motion its reasonable expenses incurred in opposing the

15  motion, including attorney's fees," unless the "motion was substantially justified or

16  other circumstances make an award of expenses unjust."

17  Warner's Motion is not substantially justified and is precisely the type of

18  frivolous, improper discovery motion Rule 37(a)(5)(B) was designed to address.

19  As explained above, Warner's Motion was brought without conducting a good

20  faith, meaningful "meet and confer" conference as required by Local Rule 37-1.

21  Haye Decl., ¶ 7, Ex. F.  Moreover, two days after the Tolkien/HC Parties' counsel

22  received the Motion, the parties conducted their previously scheduled meet and

23  confer, and those discussions are continuing.  On no less than four occasions, the

24  Tolkien/HC Parties' counsel requested that Warner withdraw its procedurally

25  improper Motion, and each time Warner refused.  Haye Decl., ¶¶ 7, 10, 11, 13, Exs.

26  F, I, K.  Warner's insistence on going forward with a premature (if not entirely

27  obsolete) motion, as well as its bad faith meet and confer proposals, demonstrate

28  Warner's improper purpose in bringing this frivolous Motion in the first place.

1    Warner's Motion is nothing more than gamesmanship and an attempt to

2    unnecessarily increase the costs of this litigation. Rather than wasting the time and

3    resources of the parties and the Court with premature and/or moot issues, Warner

4    should be focused on completing discovery and advancing this case towards trial.

5    Frivolous motions, ones that have absolutely no merit, and those which are filed

6    solely for the purpose of increasing costs, should not be countenanced by the Court.

7    As detailed in the attached Declaration of Julia R. Haye, the Tolkien/HC

8    Parties have and will incur attorneys' fees in excess of $9,525 in opposing Warner's

9    Motion. Haye Decl. ¶ 19. The Tolkien/HC Parties respectfully submit that

10   sanctions in not less than amount be imposed against Warner and its counsel.

## IV.   CONCLUSION

12   For each of the reasons set forth above, Warner's Motion is inaccurate,

13   procedurally improperly and premature. Each of the issues raised by Warner in its

14   Motion either have been resolved or narrowed by the parties, or are the subject of

15   ongoing meet and confer discussions. Warner's Motion is an improper attempt to

16   burden and harass the plaintiffs, to improperly require to the Tolkien/HC Parties to

17   meet onerous discovery standards which defendants themselves refuse to abide by,

18   and to unnecessarily increase the costs of this litigation. Plaintiffs respectfully

19   request that the Court deny Warner's Motion in its entirety.

21   DATED: February 3, 2014          GREENBERG GLUSKER FIELDS
22                                    CLAMAN & MACHTINGER LLP

24                                    By: /s. Bonnie E. Eskenazi
                                          BONNIE E. ESKENAZI (SBN 119401)

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590