# EXHIBIT A



## O'MELVENY & MYERS LLP

| | 1999 Avenue of the Stars | |
|---|---|---|
| BEIJING | Los Angeles, California  90067-6035 | SAN FRANCISCO |
| BRUSSELS | | SEOUL |
| HONG KONG | TELEPHONE  (310) 553-6700 | SHANGHAI |
| JAKARTA† | FACSIMILE  (310) 246-6779 | SILICON VALLEY |
| LONDON | www.omm.com | SINGAPORE |
| LOS ANGELES | | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |
| NEW YORK | | |

January 7, 2014

WRITER'S DIRECT DIAL
(310) 246-8593

Rachel Valadez
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067

WRITER'S E-MAIL ADDRESS
mlens@omm.com

Re:   *Fourth Age Ltd. v. Warner Bros. Digital Distribution*

Dear Rachel:

As you know, Warner has been asking for clarification on the scope of the Tolkien/HC Parties' collection efforts for the better part of a year.  Cathleen Blackburn's and Steven Maier's deposition testimony, coupled with your recent correspondence, confirm the Tolkien/HC Parties' complete failure to meet their discovery obligations.  Accordingly, pursuant to Local Rule 37-1, please let us know when you are available to meet and confer on the issues below.

A.  Ms. Blackburn's and Mr. Maier's Files

As an initial matter, the Tolkien Parties must immediately collect and produce Cathleen Blackburn's and Steven Maier's electronic files both from Manches LLP and Maier Blackburn LLP.  Your assertion that "Manches is a third-party" and that your clients therefore have no obligation to produce Manches' files is, quite frankly, preposterous.  As Manches' files are your own clients' files, they are unquestionably within the Tolkien Parties' possession, custody, or control.  Moreover, the Tolkien Parties' attempt to rely on a purported "print to file" policy does not excuse their obligations under the Federal Rules of Civil Procedure to produce electronically stored information ("ESI").  Mr. Maier's testimony, and the Tolkien Parties' incomplete document production, underscore the inadequacy of this approach.  *See, e.g.*, Maier Rough Tr. 92:12-14 (stating that he could not be certain that the policy was always followed); 94:20-21 (admitting that he could not guarantee that he had printed all emails for the file).  Please confirm your agreement to collect and produce Ms. Blackburn's and Mr. Maier's ESI.

Further, your evasive and changing representations with respect to Ms. Blackburn's and Mr. Maier's ESI is deeply troubling.  During the preliminary meet and confer on July 1, Ricardo told us that Ms. Blackburn and Mr. Maier did not transfer any of their ESI from Manches to Maier Blackburn LLP.  During his deposition, however, Mr. Maier revealed that electronic information relating to "active matters," including matters for The Tolkien Estate, was

† In association with Tumbuan & Partners

O'MELVENY & MYERS LLP
January 7, 2014 - Page 2

transferred to Maier Blackburn when he and Ms. Blackburn departed Manches. *See* Maier Rough Tr. 183:14-186:24. Was Mr. Cestero or Mr. Maier correct? And, if the latter, what was the scope of the information transferred to Maier Blackburn? You will note that the transfer of data from Manches to Maier Blackburn is included among the topics in the supplemental notice of Rule 30(b)(6) topics to Fourth Age Ltd., which is being served today.

During the July 1 meet and confer, Ricardo also informed us that he believed that Ms. Blackburn and/or Mr. Maier had made an inquiry to Manches about their files and were informed that their data from their tenure with Manches no longer existed. Despite Warner's and Zaentz's repeated follow-up efforts, you consistently dodged—for many months—our inquiries or provided placeholder responses. *See, e.g.,* Sept. 9 letter to J. Ulin (stating that you were "in the process of inquiring as to the status of Steven Maier's and Cathleen Blackburn's Manches-related electronic files"). Today, over five months after we requested confirmation that you would be producing this information, you apparently have made no progress, other than to suggest that your clients failed to preserve this information. *See* Dec. 4, 2013 letter from R. Valadez (stating that you have been "corresponding with Manches in an effort to obtain any relevant electronic files which remain in their possession"). Accordingly, we must disagree with your statement that you "have been more than willing to share information with [us] as [you] receive it." *Id.* Given our inability to obtain this information from you, we have again included this topics in the supplemental Rule 30(b)(6) notice.

Finally, Ms. Blackburn's deposition revealed that the collection of Ms. Blackburn's and Mr. Maier's hard copy files was similarly inadequate. As Ms. Blackburn testified, she simply provided a preexisting index of hard copy files and, on that basis, responsiveness determinations were made by your firm. *See* Blackburn Rough Tr. 221:5-14. Mr. Maier further testified that no Greenberg lawyer has even set foot in Maier Blackburn's offices. *See* Maier Rough Tr. 197:3-198:25. How were responsiveness determinations made? To get to the bottom of this, the scope of the Tolkien parties' collection efforts are included in the supplemental Rule 30(b)(6) notice.

B. Document Preservation Notices

Mr. Maier's testimony raised grave concerns about whether documents have been adequately preserved. *See* Maier Rough Tr. 190:22-191:3 (testifying that he did not know whether Manches' electronic files had been preserved); Tr. 182:15-22 (testifying that he "did nothing personally" to have Manches files obtained); Tr. 195:1-196:5 (testifying that he did not know if anyone had done anything to prevent relevant ESI from being deleted at Manches). Please immediately confirm, with respect to both the Tolkien and HC parties, which entity or individuals have been issued document preservation notices and the date(s) of any such notice(s). We are additionally requesting Rule 30(b)(6) deposition testimony on whether any information relevant to this dispute, which was available on September 7, 2010, was not preserved and, if so, which such information.

O'MELVENY & MYERS LLP
January 7, 2014 - Page 3

    C. Ms. Blackburn's and Mr. Maier's Depositions

As we informed you when we requested (and noticed) their depositions, Warner anticipated needing more than seven hours with Ms. Blackburn and Mr. Maier. In response to our request, you suggested that "the parties simply reserve their rights to seek additional deposition time for any witness once the initial seven hour period has been exhausted, at which point the parties can properly meet and confer on the matter." *See* Oct. 16 email from R. Cestero. Warner hereby confirms that it requires additional time with both Ms. Blackburn and Mr. Maier. For example, as discussed in this letter, critical files for these individuals remain outstanding. Further, seven hours was insufficient for Warner (and Zaentz) to depose Ms. Blackburn and Ms. Maier on the pertinent documents produced to date. Please confirm that you will make them both available for a second day.

    D. Custodian Metadata

Back on July 9, you agreed to produce "custodian" metadata for email, electronic files, and hard copy files. You now claim that this agreement does not require you to provide "custodian" information and that "custodian" means "company," which is, of course, a separate and distinct metadata field that you also agreed to produce. Your position is untenable. Even without your agreement, custodial information is a requisite part of a production of ESI. *See, e.g.*, *Nat'l Day Laborer Org. Network v. United States Immigration and Customs Enforcement Agency*, 2011 WL 381625 at *21 (S.D.N.Y. Feb. 7, 2011) (withdrawn on other grounds) (stating that custodial information, meaning "the name of the custodian or source system from which the item was collected," is a metadata field that should be included with every production of ESI). Your refusal to provide this information is a transparent attempt to obscure which custodian had which documents and/or otherwise mask the incompleteness of your production. Please immediately provide an overlay for all files produced to date with complete custodial information and confirm that you will include such information for your future productions.

    E. HarperCollins

Your disclosures to date about HarperCollins' ESI and your collection thereof have been dilatory, inconsistent, and opaque. From what we can piece together, in contrast to your earlier position, you are no longer claiming that any potentially relevant (and non-duplicative) ESI became inaccessible or unavailable since September 2010. Based on your disclosures, we further believe that you have agreed to collect—and produce—David Brawn's, Simon Dowson-Collins', Jane Johnson's, and Chris Smith's hard copy, email, and other electronic files (such as loose Word, PDF, and Excel files) as well as hard copy and electronic documents from central sources. For the former employees, including Mary Butler, Adrian Laing, and any other individual for whom you contend may have had responsive data but for which their electronic documents are only available on an inaccessible source, please tell us when each individual left HarperCollins' (or one of its affiliates') employ. Finally, for these former employees, what happened to their hard copy files when they left HarperCollins' employ?

O'MELVENY & MYERS LLP
January 7, 2014 - Page 4

F. <u>Assertions of Privilege</u>

During Ms. Blackburn's and Mr. Maeir's depositions, we were, to put it mildly, astonished at the claims of privilege. Specifically, it appears that, despite her dual role as both an attorney and business manager, you have seemingly withheld all of Ms. Blackburn's communications with her clients as privileged. Similarly, even though Mr. Maier functions as a director of The Tolkien Estate Ltd., so as to maintain a blanket claim of privilege over all his communications, Mr. Maier claims that he has never uttered a single word in that capacity. *See* Maier Rough Tr. 172:13-15. Further, we learned for the first time during Ms. Blackburn's deposition that you are claiming some sort of common interest privilege between the Tolkien Estate and HarperCollins. We additionally learned—this time during Mr. Maier's deposition—that you are purporting to withhold documents between the Tolkien Estate and SZC on matters relevant to the current litigation, claiming that the communications remain protected even though your clients have sued SZC.

Needless to say, we disagree with the validity of all of the above positions. As an initial step, please immediately confirm whether we have misunderstood your position on any of the above assertions of privilege. Additionally, please specify, with respect to the two claims of common interest, the time period(s) allegedly covered by the common interest, the subject matter(s) of the withheld documents, and the individuals included on such communications.

In light of these untenable claims of privilege, Warner hereby insists that the Tolkien/HC Parties provide a privilege log for any documents withheld under an assertion of privilege.

G. <u>Engagement Letter</u>

In contrast to your prior representation that no engagement letters existed prior to 2012, Mr. Maier testified that "he was sure Manches would have had an engagement letter." *See* Maier Rough Tr. 175:3-4. We further object to your assertion that every single sentence of Ms. Blackburn's 2012 engagement letter with the Tolkien Parties is privileged.

H. <u>Simon Dowson-Collins</u>

In light of Ms. Blackburn's and Mr. Maier's testimony that they generally communicate with Simon Dowson-Collins at HarperCollins about Tolkien matters, Warner requests that you make him available in Los Angeles for a deposition. Please promptly provide dates when Mr. Dowson-Collins is available.

Mr. Maier also identified Karly Last as an attorney at HarperCollins with whom he dealt on Tolkien matters. *See* Maier Rough Tr. 277:12-13. Please confirm whether you have collected Ms. Last's files and, if not, why not.

O'MELVENY & MYERS LLP
January 7, 2014 - Page 5

    I.    <u>Tolkien Heirs</u>

During the July 1 meet and confer, we asked that you to confirm that your discovery responses included information from the directors of the Tolkien entities, and you assured us that they did. Cathleen Blackburn, however, testified that both Michael Tolkien and Steven Maier are directors of The Tolkien Estate Ltd. but neither of them appear on your list of custodians. Please confirm your willingness to include both Mr. Tolkien and Mr. Maier as custodians.

    J.    <u>Jeremy Nussbaum's Files</u>

Your December 4 letter states that "it is [y]our understanding that [Jeremy Nussbaum's] files were collected by the Tolkien/HC Parties' prior counsel (and/or their predecessors) in connection with the audit that prompted the prior lawsuit." What is the basis for this assertion? What was the scope of that collection? Have you taken any steps to preserve or collect Mr. Nussbaum's files after the audit that proceeded the prior lawsuit in 2008? Finally, please confirm when Mr. Nussbaum passed away.

    Sincerely,

    Molly M. Lens
    of O'MELVENY & MYERS LLP

cc:    John UIin