1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  VICTOR JIH (S.B. #186515)
   vjih@omm.com
3  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, California  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for the Warner Parties

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10  FOURTH AGE LTD., *et al*,                  Case No. 12-9912-ABC (SHx)

11              Plaintiffs,                    **<u>DISCOVERY MATTER</u>**

12       v.                                    **REPLY IN SUPPORT OF
                                               WARNER'S MOTION TO**
13  WARNER BROS. DIGITAL                       **COMPEL DOCUMENTS AND**
    DISTRIBUTION, *et al*,                     **PRIVILEGE LOG**
14
                                               [Declaration of Victor Jih Filed
15              Defendants.                    Concurrently Herewith]

16                                             **Judge**: Hon. Audrey B. Collins
17                                             **Magistrate**: Hon. Stephen J. Hillman

18  WARNER BROS. DIGITAL
    DISTRIBUTION INC., *et al*,                **Hearing Date**:   February 24, 2014
19                                             **Hearing Time**:   2:00 p.m.
                Counterclaim
    Plaintiffs,                                **Discovery Cutoff**:  April 15, 2014
20
21       v.

22  FOURTH AGE LTD., *et al*,

23              Counterclaim
    Defendants.
24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3   I.    INTRODUCTION ................................................................. 1

4   II.   THE TOLKIEN/HC PARTIES FAILED TO TIMELY CONFER ............... 2

5   III.  THE TOLKIEN/HC PARTIES MUST COMPLETE THEIR
       DOCUMENT PRODUCTION BY A DATE CERTAIN ............................ 4

6
7         A.   The Tolkien/HC Parties Must Complete Their Production of
                Electronic Documents by a Date Certain .............................. 5

8         B.   The Tolkien/HC Parties Must Complete Their Production of
9                Hard-Copy Documents By a Date Certain ........................... 7

10        C.   The Tolkien/HC Parties' Qualified Agreement to Produce
                Custodian Information is Improper ..................................... 8

11        D.   The Tolkien/HC Parties Have Not Mooted Warner's Concern
                About Document Preservation ........................................... 9

12
13  IV.   THE TOLKIEN/HC PARTIES MUST PRODUCE A MEANINGFUL
       PRIVILEGE LOG ............................................................... 10

14  V.    CONCLUSION ................................................................. 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bortex Indus. Co. v. Fiber Optic Designs, Inc.*,
  2013 WL 6228978 (E.D. Pa. Dec. 2, 2013) .......................................................... 8

*Cory v. Aztec Steel Bldg., Inc.*,
  225 F.R.D. 667 (D. Kan. 2005) ............................................................................ 6

*Dexia Credit Local v. Rogan*,
  231 F.R.D. 287 (N.D. Ill. 2005) ......................................................................... 12

*In re eBay Seller Antitrust Litigation*,
  2007 WL 2852364 (N.D. Cal. Oct. 2, 2007) ...................................................... 10

*Major Tours, Inc. v. Colorel*,
  2009 WL 2413631 (D. N.J. Aug. 4, 2009) .......................................................... 10

*MTB Bank v. Fed. Armored Exp., Inc.*,
  1998 WL 43125 (S.D.N.Y. Feb. 2, 1998) ............................................................ 5

*Wingnut Films v. Katja Motion Pictures*,
  2007 WL2758571 (C.D. Cal. Sept. 18, 2007) ...................................................... 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 34 ....................................................................................................... 5

## I.    __INTRODUCTION__

The Tolkien/HC Parties seek to excuse themselves from basic discovery obligations because they and their primary counsel are located in the United Kingdom.  They oppose this motion and the entry of an order compelling compliance with their discovery obligations based on unsworn accounts of what unnamed third parties abroad may have done to collect responsive documents; they make vague promises to produce documents by some undefined future date; they claim that documents retained by their former law firm should be treated as if held by a "third party located overseas"; they make unsubstantiated claims of burden to avoid collecting critical electronic documents; they refuse to live up to their prior agreement to provide custodian information; they agree to provide a truncated log that they have admitted would be meaningless to evaluate their baseless claims of privilege; and they point to preservation notices issued in a different case to block further inquiry into their apparent failures to adequately preserve documents in this one.  Having elected to file suit against Warner (and Zaentz) in the Central District of California, the Tolkien/HC Parties must be held to comply with their discovery obligations just like any litigant.

The Tolkien/HC Parties represent to the Court that the issues in Warner's motion are "moot."  But, if the issues in Warner's Motion are truly "moot" as the Tolkien/HC Parties state, then they should have no objection to the Court's entry of the proposed order.  The Tolkien/HC Parties themselves insisted that all parties be "substantially complete" with their document productions by November 4, 2013.  Three months later, however, their document production remains plainly deficient.  To avoid any further delays, the Court should order the Tolkien/HC Parties to complete their production, with accompanying custodian information, and to produce a meaningful privilege log—all within thirty days.

## II.     THE TOLKIEN/HC PARTIES FAILED TO TIMELY CONFER

The Local Rules are clear that "unless relieved by written order of the Court upon good cause shown, counsel for the opposing party shall confer with counsel for the moving party *within ten (10) days after the moving party serves a letter requesting such conference.*"  L.R. 37-1.  (emphasis added).  The Tolkien/HC Parties now suggest that despite their own failure to confer within *twenty* days—twice the time provided by the rules—they have somehow complied with their obligations under the rules.   A party does not satisfy its obligations to timely confer, however, where it fails to respond until prompted, promises to meet and confer at a later date, and then makes repeated requests to postpone.

Warner served The Tolkien/HC Parties with a letter requesting a meet-and-confer conference pursuant to Local Rule 37-1 on January 7, 2014.  Lens Decl., Ex. 1.[1]  The Tolkien/HC Parties did not respond, orally or in writing.  On the ninth day, Warner reached out again to the Tolkien/HC Parties to request a meet and confer.  Lens Decl., Ex. 2.  Then, and only then, did the Tolkien/HC Parties reply.

There was no reason why the Tolkien/HC Parties should have been unable to substantively meet and confer during the ten-day period provided by the Local Rules.  During this time, the Tolkien/HC Parties took only one deposition—in Los Angeles, at their own counsel's office, and with the attendance of only a single lawyer on behalf of the Tolkien/HC Parties.  Nevertheless, when the Tolkien/HC Parties requested that Warner accommodate a delay of six days, Warner agreed.  *Id*. The day before the parties were scheduled to meet and confer, however, the Tolkien/HC Parties abruptly canceled and asked that the parties' conference be pushed back an additional week—more than *three weeks* after Warner served its initial letter requesting such a meeting.  *Id*.  Although Warner remained willing to

---

[1] All references to the Lens Declaration are to Docket No. 99-1.

1    meet and confer, Warner made clear that it would not tolerate efforts by the

2    Tolkien/HC Parties to indefinitely delay resolution of these discovery issues.  *Id*.

3           Tellingly, it was only *after* Warner filed its Motion that the Tolkien/HC

4    Parties confirmed a meet and confer.  Haye Decl., Ex. G.  Similarly, it was only

5    *after* Warner filed its Motion that Warner received substantive responses from the

6    Tolkien/HC Parties to *any* of the questions posed in Warner's January 7 letter.

7           The Tolkien/HC Parties now suggest that a conference between the parties on

8    January 30 resolved or narrowed all of the issues raised in Warner's Motion.  Opp.

9    at 1.  Not so.  That conference was filled with nothing more than vague assurances

10   about the completeness of the Tolkien/HC Parties' collection efforts.  If anything,

11   the conference confirmed that these assurances were not based on personal

12   knowledge, but rather on what the Tolkien/HC Parties' counsel "understood" had

13   been collected in light of information relayed to them by unidentified overseas

14   lawyers.  For instance, when pressed for details about who had gathered the

15   universe of potentially responsive hard-copy documents from the Tolkien Parties,

16   or how that universe had been assembled, counsel for the Tolkien/HC Parties

17   admitted that they could only provide answers based on how "they think" those

18   documents had been collected.  Jih Decl., ¶ 12.  Similarly, they could only relay to

19   Warner what they "had been told" HarperCollins' in-house lawyers in the UK did

20   to collect responsive hard-copy documents from their custodians.  *Id*. at ¶ 13.

21          Warner offered to withdraw its Motion on January 31 if the Tolkien/HC

22   Parties would stipulate to provide the documents and information that Warner

23   requested by a date certain (with the exception of allegedly "inaccessible" Manches

24   and HarperCollins backup tapes).  Haye Decl., Ex. J.  The Tolkien/HC Parties

25   refused.  *Id*., Ex. K.  Although unhappy with the date Warner proposed in its draft

26   stipulation, the Tolkien/HC Parties never offered an alternative.  *Id*.  They also

27   suggested that it would be "impossible" to obtain their clients' approval to sign

28

- 3 -

1   such a stipulation before filing their opposition to Warner's Motion,

2   notwithstanding the fact that (1) they claimed even before the parties' conference

3   the day before that the issues in Warner's Motion were "moot," suggesting that

4   there should have been no approval left to seek; and (2) they still had three full days

5   before their opposition was due in which to obtain their client's approval.  The fact

6   that the Tolkien/HC Parties would not agree, by *any* date certain, to the stipulation

7   confirms that the issues raised in Warner's Motion are not actually moot.

8   **III.    THE TOLKIEN/HC PARTIES MUST COMPLETE THEIR**

9   **DOCUMENT PRODUCTION BY A DATE CERTAIN**

10       Warner has served three sets of Requests for Production on the Tolkien/HC

11   Parties—the first on March 20, 2013, the second on September 11, 2013, and the

12   third on October 29, 2013.  The Tolkien/HC Parties do not dispute that they insisted

13   that all parties be "substantially complete" with their productions by November 4,

14   2013, or that they unilaterally demanded that depositions be held off until all parties

15   had met that standard.  It turns out now, however, that despite pressing forward

16   with depositions, the Tolkien/HC Parties are far from "substantially complete" with

17   their own document productions.  For example, the Tolkien/HC Parties have only

18   recently agreed to produce electronic documents from some sources, and now make

19   unsubstantiated claims of burden in maintaining that they need not collect ESI from

20   others.  They continue to assure Warner based on representations from third parties

21   that their collection of hard-copy documents is substantially underway, but they still

22   refuse to confirm that their collections will be completed by a date certain.  They

23   still refuse to provide meaningful custodian information, notwithstanding their

24   previous agreement.  And, they insist that there are no open issues with respect to

25   their document preservation notices despite failing to provide answers to many of

26   Warner's questions.  These positions underscore the necessity for the Court's order.

27

28

REPLY IN SUPPORT OF
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1

2

**A.    The Tolkien/HC Parties Must Complete Their Production of**
**Electronic Documents by a Date Certain**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

The Tolkien/HC Parties represent that they have already undertaken a comprehensive collection and production of electronic documents.  To date, however, the Tolkien/HC Parties' production is comprised of less than 9% electronic documents.[2]  This is not by accident—the Tolkien/HC Parties have deliberately refrained from collecting ESI from the Tolkien Parties in reliance upon the fiction that Steven Maier and Cathleen Blackburn, the Tolkien Parties' long-standing outside counsel who function in both a legal and business capacity, followed a "print-to-file" policy that would, in their view, render the entirety of these witnesses' electronic files duplicative.  This is an inadequate basis on which to refuse the collection of ESI, and the Tolkien/HC Parties no longer even try to defend this practice.  Now, with one exception, the Tolkien/HC Parties claim that their production of electronic documents is underway.  Aside from this exception, however, the Tolkien/HC Parties offer no reason why they should not be compelled to complete their production of electronic documents within 30 days.

17

18

19

20

21

22

23

24

25

26

The Tolkien/HC Parties' only objection concerns the backup tapes for Manches and HarperCollins.  But this objection has no merit.  As a threshold matter, the Tolkien Parties try to escape their obligation to collect ESI from their former law firm by relying on a characterization of Manches as a "third party located overseas."  Opp. at 14.  But Manches is not a third party.  *See, e.g., MTB Bank v. Fed. Armored Exp., Inc*., 1998 WL 43125 (S.D.N.Y. Feb. 2, 1998) ("Under Fed. R. Civ. P. 34 … the clear rule is that documents in the possession of a party's current *or former counsel* are deemed to be within that party's "possession, custody and control.") (emphasis added).  Nor does it matter that Manches is located overseas.  *See, e.g., Wingnut Films v. Katja Motion Pictures*, 2007 WL2758571,

27

28

---

[2] The Tolkien/HC Parties have produced only 195 electronic documents from HarperCollins, which represents only 2% of their total document production.

REPLY IN SUPPORT OF
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1    *19 (C.D. Cal. Sept. 18, 2007) (Hillman, Mag., opinion) (ordering defendant to

2    instruct its foreign outside counsel to produce responsive, non-privileged

3    documents).  The fact that documents are located abroad does not diminish the

4    Tolkien/HC Parties' discovery obligations to review and to produce them.  The fact

5    that Manches has until now been slow to respond to Greenberg's "repeated follow-

6    up communications," Opp. at 14, moreover, only confirms the need for a Court

7    order compelling the production of all electronic documents by a date certain.

8         The Tolkien/HC Parties' ultimate argument regarding the backup tapes is

9    based on the unfounded assertion that the "cost, expense, and difficulty that will be

10   incurred in any attempt to restore numerous backup tapes" is a valid reason not to

11   restore or search them.  Opp. at 14.  But, the Tolkien/HC Parties have offered no

12   evidence to support this supposed burden.  Indeed, when Warner asked the

13   Tolkien/HC Parties' counsel on January 30 about whether they had asked anyone at

14   Manches how expensive or burdensome it would be to restore the Manches backup

15   tapes, they admitted that they had not.  Jih Decl., ¶ 9.  The same is true for

16   HarperCollins.  When pressed, counsel for the Tolkien/HC Parties admitted that

17   they have not asked HarperCollins about the actual costs, monetary or otherwise, of

18   restoring and searching their backup tapes.  *Id.* A party cannot merely claim burden

19   as a means to avoid its discovery obligations; it must prove that such a burden

20   would actually exist.  *See, e.g., Cory v. Aztec Steel Bldg., Inc*., 225 F.R.D. 667, 672

21   (D. Kan. 2005) (the party claiming burden has "an obligation to provide sufficient

22   detail in terms of time, money and procedure required to produce the requested

23   documents").  Given their failure to substantiate their claim of burden, the

24   Tolkien/HC Parties have provided no reason why the Court should not enter an

25   order requiring them to search the Manches and HarperCollins backup tapes.[3]

26

27   _____

     [3] Warner, by contrast, has already provided the Tolkien/HC Parties with a cost
28   estimate for restoring the New Line backup tapes.  The Tolkien/HC Parties
     implicitly conceded that it would be unduly burdensome for Warner to bear these

**B.**     **The Tolkien/HC Parties Must Complete Their Production of Hard-Copy Documents By a Date Certain**

The Tolkien/HC Parties insist that they have already completed a thorough collection of hard-copy documents and expect Warner—and the Court—to take them at their word.  The Tolkien/HC Parties provide no evidentiary support for their statement of compliance.  Instead, the Tolkien/HC Parties rely entirely on Ms. Haye's meet-and-confer letter, which is itself based on nothing but inadmissible hearsay.  Haye Decl., Ex. I.  The Tolkien/HC Parties' unsworn "understanding" of what some unnamed individuals may have done to search for and collect hard-copy documents is insufficient to assuage Warner's concerns about the incompleteness of the Tolkien/HC Parties' production, nor is it a basis for opposing Warner's Motion.

Warner has good reason to be concerned about unsworn representations from lawyers about what others may have done.  For example, the Tolkien/HC Parties have "repeatedly explained" that HarperCollins does not maintain hard-copy documents by custodian, but stores them in "central files" instead.  *Id.*  Just this past Friday, however, David Brawn, the Publisher of Estates at HarperCollins with responsibility for the Tolkien Works since 1995, testified that he does in fact maintain his own paper files related to the Tolkien Works, and that he stores them in and around his office.  Jih Decl., Ex. 3 at 26:25-29:4.  He further testified that his staff maintains files of their own.  *Id.*  The Tolkien/HC Parties cannot avoid the imposition of a court order through such unsworn (and inaccurate) representations.

The parties' January 30 meeting confirmed that the Tolkien/HC Parties' counsel lack any personal knowledge about the collection of hard-copy documents. For instance, although the Tolkien/HC Parties have represented to Warner that Mr. Maier and Ms. Blackburn sent "all Tolkien film, merchandising and trademark related files to Greenberg Glusker for review,"  Haye Decl., Ex. I,  they could not

---

costs, as, prior to Warner's Motion, they said nothing about New Line's tapes in the two months after Warner provided this information.

REPLY IN SUPPORT OF
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1   confirm who had collected such "film, merchandising, and trademark files," nor

2   could they provide any information about how these files were segregated from

3   other Tolkien-related documents.  Jih Decl., ¶ 12.  The Tolkien/HC Parties' outside

4   counsel likewise lack firsthand knowledge of how hard-copy documents were

5   collected from HarperCollins.  *Id.*, ¶ 13.  Even if documents are stored in England,

6   this does not excuse the responsibility of the Tolkien/HC Parties' counsel to

7   personally ensure that all responsive documents have been collected and produced.

8   *See, e.g., Bortex Indus. Co. v. Fiber Optic Designs, Inc.*, 2013 WL 6228978, at *8,

9   *14 (E.D. Pa. Dec. 2, 2013).

10      The Tolkien/HC Parties reassure the Court that there is not "a single category

11   of documents that … should have been produced, but are missing from the Tolkien

12   Parties' production."  Opp. at 19-20.  Warner hopes this is true.  If it is, the

13   Tolkien/HC Parties have no reason to object to an order requiring that they

14   complete their production of hard-copy documents by a date certain.

15      **C.**      **The Tolkien/HC Parties' Qualified Agreement to Produce**

16              **Custodian Information is Improper**

17      The Tolkien/HC Parties' continued insistence that they have already

18   provided "sufficient" custodian information is unacceptable.  It is also clearly at

19   odds with their previous agreement.  On June 22, 2013, Warner and Zaentz

20   proposed that the parties exchange certain "metadata" for both their electronic and

21   hard-copy documents.  Lens Decl., Ex. 8.  This proposal included the exchange of

22   custodian information for all documents.  *Id.*  On July 9, 2013, the Tolkien/HC

23   Parties agreed to "provide all requested data regarding hard copy documents,"

24   including custodian information.  *Id.*, Ex. 7.  The Tolkien/HC Parties also agreed in

25   their July 9 letter to exchange custodian metadata for electronic documents.  *Id.*

26   The Tolkien/HC Parties now take the position that their agreement to provide

27   "custodian" information requires only that they specify the "company" from which

28

- 8 -

a document was collected. This distortion of the parties' agreement overlooks the fact that "company" is a separate and distinct category of information that the Tolkien/HC Parties agreed to produce on August 7, 2013. Jih Decl., Ex. 2.

The Tolkien/HC Parties make no effort to hide their failure to provide true "custodian" metadata for the electronic documents they have produced to date. Their only excuse is their argument that Zaentz has produced custodian information in a manner similar to the Tolkien/HC Parties. Opp. at 10. This is irrelevant. The Tolkien/HC Parties cannot condition their own compliance on the agreement of a party whose discovery practices are not even before the Court.

The Tolkien/HC Parties also continue to refuse to produce custodian information for hard-copy documents. They feign confusion about how they can be expected to provide custodian "metadata" for hard-copy documents, but this, too, is disingenuous. When the Tolkien/HC Parties agreed to provide hard copy "metadata" on July 9, they never questioned what this meant. Now, however, they refuse to provide custodian information for hard-copy documents merely because they claim that Warner and Zaentz have not yet agreed to do the same. But Warner *has* agreed. Haye Decl., Ex. J. (Warner "will, of course, continue to provide custodian information with our productions…."). Warner asked the Tolkien/HC Parties on January 30 to identify any missing custodian information from Warner's hard-copy productions. Jih Decl., ¶ 14. The Tolkien/HC Parties have not yet done so. *Id*. As for Zaentz, their discovery practices are immaterial to Warner's Motion. Zaentz's practice to date has no bearing on whether Warner is entitled to evaluate the completeness of the Tolkien/HC Parties' production.

## D.    The Tolkien/HC Parties Have Not Mooted Warner's Concern About Document Preservation

The Tolkien/HC Parties suggest that any concerns about their efforts to preserve documents in this litigation have been mooted because "plaintiffs have

- 9 -

1   provided the information Warner requested." Opp. at 9. But, as the conference
2   between the parties on January 30 made clear, the information the Tolkien/HC
3   Parties have provided to date is incomplete and disconcerting.

4          The Tolkien/HC Parties purport to rely on a document preservation notice
5   that was issued in 2008—in a separate lawsuit. The Tolkien/HC Parties have yet to
6   identify who at the Tolkien/HC Parties received that notice, what categories of
7   documents were preserved pursuant to the hold, precisely what steps the
8   Tolkien/HC Parties took to ensure that documents relevant to this dispute were
9   preserved, or why they believe a preservation notice for a different case could
10  satisfy their obligations in this one. The Tolkien/HC Parties also claim that their
11  document preservation notices are privileged, but that privilege does not survive
12  where there is evidence of spoliation. *See Major Tours, Inc. v. Colorel*, 2009 WL
13  2413631, at *2 (D. N.J. Aug. 4, 2009). In any event, the Tolkien/HC Parties can
14  cite no reason why they should not be ordered to provide the information Warner
15  seeks in its Motion. *See, e.g., In re eBay Seller Antitrust Litigation*, 2007 WL
16  2852364, at *2 (N.D. Cal. Oct. 2, 2007).

17  **IV.    THE TOLKIEN/HC PARTIES MUST PRODUCE A MEANINGFUL**
18  **        PRIVILEGE LOG**

19         The Tolkien/HC Parties premise their entire response to Warner's request for
20  a privilege log on the falsehood that Warner has not agreed to a reciprocal
21  exchange. This is demonstrably false—indeed, an exhibit the Tolkien/HC Parties
22  attach to their opposition contains a clear statement by Warner that it is already "in
23  the process of preparing [a] privilege log." Haye Decl. Ex. J. In any event, this
24  argument continues to miss the point entirely. Warner needs a log specifically to
25  evaluate the Tolkien/HC Parties' groundless claims of privilege. While the parties
26  did previously agree to forgo the mutual exchange of privilege logs, Warner's
27  Motion is not based merely on some change of heart. Nor is it Warner's burden to
28

- 10 -

1    show "good cause" in order to obtain a log from the Tolkien/HC Parties.  Warner

2    specifically reserved its right to demand the production of a privilege log from the

3    Tolkien/HC Parties.  Lens Decl., Ex. 7.  It did so to protect its ability to challenge

4    the types of baseless privilege claims the Tolkien/HC Parties now try to assert.

5           The Tolkien/HC Parties suggest that the propriety of their privilege claims is

6    not before the court.  Again, this is not true.  If it were, the Tolkien/HC Parties

7    should have no problem agreeing to provide the log requested by Warner in its

8    Motion.  Instead, the log the Tolkien/HC Parties have conditionally agreed to

9    provide, *see* Opp. at 8, would deliberately omit the detail Warner seeks.

10          The parties' January 30 conference underscored the need for the Tolkien/HC

11   Parties to provide a privilege log:

12          •     The Tolkien/HC Parties confirmed again during this conference that

13                they are withholding *all* non-third-party communications involving Ms.

14                Blackburn or Mr. Maier on the basis of the attorney-client privilege.  Jih

15                Decl., ¶ 10.  This is plainly inconsistent with both witness's testimony that

16                each serves in a non-legal role—Ms. Blackburn as the  company secretary for

17                The Tolkien Estate and The Tolkien Trust, and Mr. Maier as a director of

18                The Tolkien Estate.  Lens Decl., Ex. 4.  Ms. Blackburn's CV even admits

19                that she manages the *business* of the Tolkien Estate.  Lens Decl., Ex. 6.

20          •     The Tolkien/HC Parties did not dispute that only a common *legal*

21                interest can justify the application of the common interest privilege.

22                Nevertheless, the Tolkien/HC Parties confirmed once again during the

23                parties' January 30 conference that they are withholding every

24                communication between the Tolkien Parties and HarperCollins Parties on the

25                basis of some purported joint defense.  Jih Decl., ¶ 11.  It defies belief,

26                however, that *every* communication between the Tolkien Parties and

27                HarperCollins Parties over the course of more than forty years reflects a

28

- 11 -

shared understanding of the division of rights between both sets of entities.  It is also patently unreasonable to suggest that each and every communication between the Tolkien Parties and HarperCollins Parties reflects a common legal, as opposed to commercial, purpose.

- The Tolkien/HC Parties did not dispute that they are asserting a broad common interest privilege over communications between themselves and Zaentz.  Their suggestion that any such privilege—to the extent it existed initially—has survived the Tolkien/HC Parties' filing of this lawsuit against Zaentz, and that it prevents Zaentz's co-defendant from viewing such purportedly privileged documents, has no support in law or reason. *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 295 (N.D. Ill. 2005).

In light of these confirmations, the Tolkien/HC Parties' qualified agreement to provide a privilege log is meaningless.  The Tolkien/HC Parties have made clear that whatever log they intend to provide will only seek to mask their unfounded claims of privilege.  Because the Tolkien/HC Parties have not agreed to provide the specific information that Warner has requested in its Motion, this issue can only be resolved by entry of a court order.

## V.  **CONCLUSION**

For all the foregoing reasons, as well as the reasons cited in Warner's Motion, Warner respectfully requests that the Court grant Warner's Motion.

Dated:  February 10, 2014

DANIEL M. PETROCELLI
VICTOR JIH
MOLLY M. LENS
O'MELVENY & MYERS LLP

By:  _____
        Daniel M. Petrocelli

Attorneys for the Warner Parties

- 12 -