1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  VICTOR JIH (S.B. #186515)
   vjih@omm.com
3  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, California 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for the Warner Parties

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10 FOURTH AGE LTD., *et al*,                    Case No. 12-9912-ABC (SHx)

11         Plaintiffs,                          **<u>DISCOVERY MATTER</u>**

12      v.                                      **JOINT STIPULATION REGARDING WARNER'S MOTION TO COMPEL ADDITIONAL DEPOSITIONS**
13 WARNER BROS. DIGITAL
   DISTRIBUTION, *et al*,
14                                              DECLARATIONS OF MOLLY M. LENS AND JULIA R. HAYE, AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH
15         Defendants.

16

17                                             **Judge**: Hon. Audrey B. Collins
                                               **Magistrate**: Hon. Stephen J. Hillman
18
   WARNER BROS. DIGITAL
19 DISTRIBUTION INC., *et al*,                  **Hearing Date**:   March 17, 2014
                                               **Hearing Time**:   2:00 p.m.
20         Counterclaim
           Plaintiffs,                          **Discovery Cut-Off**:  April 15, 2014
21
        v.
22
   FOURTH AGE LTD., *et al*,
23
           Counterclaim
24         Defendants.

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTORY STATEMENTS ................................................................ 1

    A.   Warner's Statement................................................................................ 1

    B.   The Tolkien/HC Parties' Statement ...................................................... 3

II.  ISSUE NO. 1: THE TOLKIEN/HC PARTIES MUST MAKE CATHLEEN BLACKBURN AND STEVEN MAIER AVAILABLE FOR ADDITIONAL DEPOSITION QUESTIONING ................................. 6

    A.   Warner's Position Regarding Issue No. 1 .............................................. 6

        1.   Factual Background ................................................................. 6

        2.   Argument ................................................................................. 8

        3.   Request for Relief ................................................................. 10

    B.   The Tolkien/HC Parties' Position Regarding Issue No. 1 .................. 10

        1.   Summary of the Deposition Testimony of Ms. Blackburn and Mr. Maier ............................................... 11

        2.   Warner's Status as a Co-Defendant and Co-Counterclaim Plaintiff Does Not Establish Good Cause to Extend the Depositions of Ms. Blackburn and Mr. Maier ..................................................................................... 14

        3.   Plaintiffs' Document Production Does Not Justify Extending the Depositions of Ms. Blackburn and Mr. Maier ..................................................................................... 17

        4.   Warner Mischaracterizes Plaintiffs' Claims in This Action ...................................................................................... 20

        5.   Warner Misrepresents Mr. Maier's Involvement in Matters for the Tolkien Parties .......................................... 22

III. ISSUE NO. 2: WARNER SHOULD NOT BE LIMITED TO TEN DEPOSITIONS ................................................................................. 24

    A.   Warner's Position Regarding Issue No. 2 ............................................ 24

    B.   The Tolkien/HC Parties' Position regarding Issue No. 2 ................... 26

## JOINT STIPULATION

Defendants and counterclaim plaintiffs Warner Bros. Home Entertainment Inc., Warner Bros. Entertainment Inc., Warner Bros. Consumer Products Inc. and New Line Productions, Inc. (collectively, "Warner") and plaintiffs and counterclaim defendants Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as Trustee of The Tolkien Trust, The J.R.R. Tolkien Estate Ltd., HarperCollins Publishers, Ltd., Unwin Hyman Ltd. and George Allen & Unwin (Publishers), Ltd. (collectively, the "Tolkien/HC Parties") submit this Joint Stipulation pursuant to Central District Local Rule 37-2.

## I.   INTRODUCTORY STATEMENTS

### A.   Warner's Statement

By this motion, Warner seeks relief from the default deposition limits set forth in Rule 30 of the Federal Rules of Civil Procedure.  Specifically, Warner seeks to compel an additional day of deposition for two key witnesses—Cathleen Blackburn and Steven Maier.  Warner also seeks five additional fact depositions. The Tolkien/HC Parties rely on statutory default limits to prevent Warner's discovery efforts.  But these limits were never intended to impair discovery in complex cases such as this, where there are twelve named parties; the relevant facts span over forty years; there are at least twenty-three witnesses with relevant knowledge (as identified by the Tolkien/HC Parties); and there are tens of millions of dollars at stake.  Precedent is clear that good cause for additional depositions is construed broadly to promote discovery in these types of cases, not hinder it.

This case arises from the Tolkien/HC Parties' repudiation of rights to *The Lord of the Rings* and *The Hobbit* (collectively, the "Tolkien Works") that they granted to Warner's predecessors-in-interest over forty years ago.  Prior to 2010, the Tolkien/HC Parties never challenged or objected to the exploitation of online games, despite the fact that they were aware of such activity, approved it, and

profited from it.  Instead, the Tolkien/HC Parties' representatives, including Ms. Blackburn and Mr. Maier, have expressly represented over the course of several decades that the Tolkien/HC Parties' previous grants of rights to Warner's predecessors-in-interest covered such activity.  The Tolkien/HC Parties also did not, until 2010, challenge or object to the exploitation of gambling.

The Tolkien/HC Parties' knowledge regarding the exploitation of online games and gambling is a central issue in this case.  Testimony regarding the parties' course of dealing is essential to both the proper interpretation of the agreements at issue, as well as Warner's affirmative defenses of estoppel, waiver, and laches. Ms. Blackburn and Mr. Maier are particularly important witnesses as they have not only served for decades as the Tolkien Parties' representatives with primary responsiblity for handling all matters relating to the Tolkien Estate, but they also both currently act as either a director or officer for the Tolkien Parties.

But the Tolkien/HC Parties' knowledge is not limited to these two witnesses. The Tolkien Parties alone have five more directors.  The Tolkien/HC Parties cannot hide behind the default limit of ten depositions per side to shield the knowledge of these directors and other party witnesses.  Strict adherence to the default rules cannot be used to prevent meaningful discovery.  Warner must be given the opportunity to thoroughly question the Tolkien/HC Parties' representatives about what they knew and precisely when they knew it.

Accordingly, Warner respectfully requests that the Court issue an order: (1) permitting Warner to depose Cathleen Blackburn and Steven Maier for an additional day of seven hours each; and (2) granting Warner five additional fact depositions, for a total (shared with The Saul Zaentz Company ("Zaentz") of 15 fact witnesses.

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

## B.   The Tolkien/HC Parties' Statement

Warner's request for relief from the deposition limits set forth in Rule 30 of the Federal Rules of Civil Procedure is the latest in a series of unduly burdensome and harassing "scorched earth" discovery tactics.  Warner's motion is premised on a series of misrepresentations regarding the nature of the action and the scope of relevant testimony, all of which are designed to make this case seem more complicated than it is.

First, Warner grossly misrepresents the central issue in this case.  Warner claims that plaintiffs' "entire theory" is that "while they approved of Warner's exploitation of online games for decades, they thought that all online games necessarily required a disk or some other physical object."  This is completely false.  The Tolkien/HC Parties' knowledge of the exploitation of downloadable-only online video games and gambling is neither part of the plaintiffs' theory of the case nor a critical issue to be determined.  To the contrary, plaintiffs' claims are based simply on the plain language of the parties' agreements:  the Tolkien/HC Parties contend that the gambling and downloadable-only video games licensed by Warner and Zaentz exceed defendants' contractual rights to sell or license "articles of tangible personal property."   Recognizing that the language of the relevant contracts fully supports the Tolkien/HC Parties' claims, defendants seek to divert attention from the real issues and make the case appear more complicated than it is.  The baseless theory that the plaintiffs in some way acquiesced in the unauthorized licensing – and that their lawyers' personal knowledge of the video games market is in some way relevant – is defendants' own invention.

Second, Warner disingenuously states that there are "twelve parties" in this action.  This is misleading in the extreme.  There are two plaintiffs in this action (the Tolkien-related Parties and the HarperCollins-related Parties) and two defendants (Warner and its various subsidiaries, and Zaentz).  The interests of the

Tolkien and HC Parties are completely aligned – they are joint rights holders in and to *The Lord of the Rings* and *The Hobbit* (collectively, the "Tolkien Works"). Likewise, the interests of Warner and Zaentz are aligned.  This action involves the interpretation of two virtually identical license agreements whereby plaintiffs' predecessors-in-interest granted to Zaentz's predecessor-in-interest certain limited merchandising rights in and to the Tolkien Works.  Zaentz, in turn, sublicensed certain of those rights to Warner.  All of Warner's rights are derived from the agreements entered into between the Tolkien/HC Parties and Zaentz.  Warner's defenses and counterclaims are based on the interpretation of the same agreements and the same facts which are relevant to Zaentz's defenses and counterclaims.

Third, Warner disingenuously argues that there are purportedly twenty-three witnesses with relevant knowledge.  Warner's list of purportedly relevant witnesses includes the Tolkien Parties' former counsel Jeremy Nussbaum – who passed away in 2012, six current or former Greenberg Glusker lawyers, and two witnesses consulted by plaintiffs as potential expert witnesses (one of whom is old, in ill-heath and no longer mentally capable of giving a deposition).  Regardless, <u>none</u> of the witnesses listed by Warner is new.  Each of the witnesses (save for Bill Bernstein) were identified in one or more of the parties' initial disclosures, yet all parties chose to adhere to the ten deposition limit, the entire purpose of which is to "emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case." Fed. R. Civ. P. 30(a) Advisory Committee Note (1993).  Simply identifying potential witnesses is insufficient grounds to grant Warner an additional five depositions.  Warner offers no explanation as to why it will be unable to obtain the evidence needed through the ten permitted depositions.

Fourth, Warner offers no evidence demonstrating that each of the directors of the Tolkien Parties possess relevant knowledge concerning the issues in dispute.  They do not.  In fact, plaintiffs specifically did not include certain of the directors in

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

their witness disclosure precisely because those witnesses do not possess any relevant knowledge regarding the disputed issues.  Warner offers no evidence to the contrary.  And, Warner is already scheduled to take the deposition of four of the seven Tolkien directors, including Christopher Tolkien who is nearly 90 years old.  Warner has not demonstrated that the depositions of the remaining three directors will result in relevant, non-duplicative and non-cumulative evidence.

Fifth, contrary to Warner's assertions, Warner has already extensively and exhaustively deposed Cathleen Blackburn and Steven Maier on the subject which Warner contends is the key issue in the case – their knowledge of the state of the video games market at particular times.  There is simply no further examination necessary of the areas which Warner deems critical.  To the extent Warner contends it needs additional time, it only has itself to blame for wasting its time on topics extensively covered in Zaentz's examination, covering the same topics repeatedly, and examining the witnesses on irrelevant matters.  Moreover, even if Warner can legitimately demonstrate that it did not cover certain issues, it will have ample opportunity to obtain the discovery it seeks through the upcoming seven depositions it intends to take, two of which are depositions pursuant to Rule 30(b)(6) which list dozens of topics for examination, including those covered in the depositions of Ms. Blackburn and Mr. Maier.

Finally, Warner cannot credibly represent to the Court that the additional five, unidentified fact depositions it seeks are necessary and will not be cumulative or duplicative when, to date, it has only completed three depositions, has yet to take seven of the ten depositions allotted under the Federal Rules, and has not even identified the witnesses it contends are critical.  Warner has not made, and cannot make, the required showing necessary to exceed either the deposition time limit or ten-deposition limit imposed by the Federal Rules.

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

**II.    ISSUE NO. 1: THE TOLKIEN/HC PARTIES MUST MAKE CATHLEEN BLACKBURN AND STEVEN MAIER AVAILABLE FOR ADDITIONAL DEPOSITION QUESTIONING.**

### A.    Warner's Position Regarding Issue No. 1

The Tolkien/HC Parties are refusing to allow Warner additional time to depose Cathleen Blackburn and Steven Maier.  They are two of the key witnesses in the case.  They have served as the primary lawyers for the Tolkien Parties for decades.  In addition, they also serve as officers (secretary and director, respectively) of some of the Tolkien entities.  Both devote between 30-50% of their work to Tolkien matters.  Warner, as a co-defendant and co-counterclaim plaintiff with Zaentz, had less than three and a half hours with each witness.  Further, Warner discovered that few, if any, electronic files had been collected or produced for either witness, and production of their hard-copy documents was incomplete at best.  Warner must be given a fair opportunity to depose these witnesses.

### 1.    Factual Background

Cathleen Blackburn has been a lawyer on behalf of the Tolkien Parties since 1990.  In 1992, she assumed the role of counsel with "principal responsibility" for matters pertaining to the Tolkien Estate.  Lens Decl. Ex. 5 at 23:7-9; 24:17-24.  In addition, Ms. Blackburn serves as company secretary for two of the Tolkien entities.  Lens Decl. Ex. 5 at 34:25-35:8.  Given her multiple roles, she devotes over half of her time to matters pertaining to the Tolkien Estate.  Lens Decl. Ex. 5 at 39:7-22.  Accordingly, it is no surprise that almost two thousand documents—more than twenty percent of the Tolkien/HC Parties' production—bear Ms. Blackburn's name, including key documents that show the Tolkien/HC Parties were aware and approved of Warner's exploitation of online games.  Lens Decl. ¶ 15.

Steven Maier, Ms. Blackburn's law partner, is also a crucial witness.  Mr. Maier has been involved in matters on behalf of the Tolkien/HC Parties for over a decade.  Lens Decl. Ex. 6 at 23:17-20.  Like Ms. Blackburn, he not only acts

as a legal representative for the Tolkien Parties, but also serves as a director of the Tolkien Estate Limited.  Lens Decl. Ex. 6 at 37:14-19.  Mr. Maier testified that he spends approximately thirty percent of his time on matters for the Tolkien Parties.  The Tolkien/HC Parties have produced 749 documents bearing Mr. Maier's name, again including key documents that show the Tolkien/HC Parties were aware and approved of Warner's exploitation of online games.  Lens Decl. ¶ 16.

Early in the discovery process, Warner informed the Tolkien/HC Parties that, in light of their extensive involvement and knowledge, Warner anticipated needing more than seven hours with both Ms. Blackburn and Mr. Maier.  Lens Decl. ¶ 2.  The Tolkien/HC Parties suggested that the depositions be scheduled for one day and that the parties meet and confer in good faith regarding any requests for additional time by defendants upon the completion of Ms. Blackburn's and Mr. Maier's depositions.  Lens Decl. Ex. 1.

Warner and Zaentz deposed Ms. Blackburn and Mr. Maier in Los Angeles on December 10 and 13, 2013, respectively.  Because Warner and Zaentz had to split time for questioning, Warner had less than three and a half hours with each witness.  During its limited time, Warner learned that few, if any, of the witnesses' electronic documents had been produced.  Warner also learned that there were serious concerns about the collection of the witnesses' hard-copy documents.  These discovery deficiencies are the subject of Warner's separately filed Motion to Compel Documents and Privilege Log.  *See* Docket No. 99.  At the end of each day of deposition questioning, neither Warner nor Zaentz had finished their examinations of either witness and both parties reserved their rights to seek additional time.

Following Ms. Blackburn's and Mr. Maier's depositions, Warner sent a letter to the Tolkien/HC Parties pursuant to Local Rule 37-1 in which Warner asked the Tolkien/HC Parties to make Ms. Blackburn and Mr. Maier available for further

1   questioning.  Lens Decl. Ex. 2.  The Tolkien/HC Parties did not respond for several

2   weeks, during which time they pressed forward with the depositions of four defense

3   witnesses.  When they did respond, the Tolkien/HC Parties refused to make Mr.

4   Maier available for any further questioning, and conditioned their willingness to

5   make Ms. Blackburn available—for just an additional half day—on Warner's

6   agreement not to seek further time with Mr. Maier.  Lens Decl. Ex. 3.

7              **2.     Argument**

8          Rule 30 should not be applied to prevent a full examination of Ms. Blackburn

9   and Mr. Maier.  Rule 30 sets a default limit of one deposition per deponent of seven

10  hours.  Fed. R. Civ. P. 30(a)(2)(A)(ii).  While a party must seek leave of court to

11  depose a person for a second time, the court "*must allow additional time* … if

12  needed to fairly examine the deponent or if the deponent, another person, or any

13  other circumstance impedes … the examination …."  Fed. R. Civ. P. 30(d)(1)

14  (emphasis added); *see* Fed. R. Civ. P. 26(b).  The moving party need only show

15  "good cause" for additional time, and most requests are granted.  *See* W. Schwarzer

16  et al., Federal Civil Procedure Before Trial § 11:1374 (Rutter 2011) ("Rutter");

17  *Perry v. Kelly-Springfield Tire Co., Inc*., 117 F.R.D. 425, 426 (N.D. Ind. 1987).

18         Such good cause exists here.  The Notes of the Advisory Committee on the

19  2000 Amendments list numerous examples of good cause that warrant additional

20  time, including: the deposition covers events over an extended period of time; the

21  examination reveals that documents have not been produced; or it is a multi-party

22  case, where the co-parties have to split time.  *See* FED. R. CIV. P. 30 Advisory

23  Committee Note.  *Each* of these reasons alone is sufficient to justify additional

24  time.  *See, e.g., Burket v. Hyman Lippitt, P.C.,* 2007 WL 4201141, at *1-2 (E.D.

25  Mich. Nov. 28, 2007) (additional time because it was a "complex, multi-party case,

26  the parties have produced voluminous documents during discovery, [the witness] is

27  a central figure in the case, and several parties seek time to question the witness");

28

- 8 -

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1   *U.S. v. City of Evansville*, 2012 WL 3867134, at *1 (S.D. Ind. Sept. 5, 2012)

2   (additional time where deponent was a "material witness"); *All Star Seed v.*

3   *Nationwide Agribusiness Ins. Co.*, 2013 WL 1882260, at *6-7 (S.D. Cal. May 3,

4   2013) ("good need" to justify reopening depositions of two witnesses because of

5   the late production of documents).

6        All of those reasons are present here.  *First*, this case concerns rights that

7   were granted by the Tolkien Parties over forty years ago.  Cathleen Blackburn and

8   Steven Maier have both managed the rights of the Tolkien Estate for decades—

9   Ms. Blackburn for over twenty-three years and Mr. Maier for over twelve.  The

10  documents show that the Tolkien/HC Parties—and in particular Ms. Blackburn and

11  Mr. Maier—were aware and approved of, for over a decade, the very conduct they

12  now challenge.  *Second*, Warner discovered during its depositions that the

13  Tolkien/HC Parties had not searched for or produced critical documents from Ms.

14  Blackburn or Mr. Maier.  *Third*, Warner was required to share its time during each

15  deposition with Zaentz, its co-defendant and co-counterclaim plaintiff, limiting

16  Warner to less than three and a half hours per witness.  Good cause exists to allow

17  Warner additional time to thoroughly question both Ms. Blackburn and Mr. Maier.

18       Ms. Blackburn's and Mr. Maier's knowledge and awareness of Warner's and

19  Zaentz's exploitation of gambling and online video games is of central importance

20  in this case.  The Tolkien/HC Parties' entire theory is that while they approved of

21  Warner's exploitation of online games for decades, they thought that all online

22  games necessarily required a disk or some other physical object.  But even with the

23  limited time it had, Warner was able to establish that this position is absurd as Mr.

24  Maier admitted that he has played online poker for years.  *See* Lens Decl. Ex. 6.

25  The Tolkien/HC Parties cannot shield their witnesses from further cross-

26  examination on their understanding of the agreements, and on document after

27  document that shows what they knew at the time.  Warner must be given the

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1    opportunity to further question both Ms. Blackburn and Mr. Maier on the scope of

2    the grant of rights and with the benefit of all their documents.

3                            **3.      Request for Relief**

4           In light of the foregoing, Warner respectfully requests that it be permitted to

5    depose both Ms. Blackburn and Mr. Maier for an additional day.  Warner requests

6    that it be granted such additional time without prejudice to its ability to seek leave

7    for additional time should it prove necessary for Warner to fairly examine either

8    deponent given the documents the Tolkien/HC Parties have yet to produce (or for

9    other good cause).

10          **B.      The Tolkien/HC Parties' Position Regarding Issue No. 1**

11          Warner pretends that the deposition limits set forth in Rule 30 of the Federal

12   Rules of Civil Procedure are general guidelines which must be extended upon the

13   mere request of a party.  The limitations set forth in Rule 30 are not simply

14   advisory, but serve to control abusive discovery tactics, increase efficiency by

15   limiting duplicative and cumulative discovery, and prevent the waste of time and

16   resources.  For these reasons, a party seeking a court order to extend the deposition

17   examination of a witness "is expected to show good cause to justify such an order."

18   FED. R. CIV. P. § 30 Advisory Committee Note (2000); WRIGHT & ARTHUR R.

19   MILLER, FEDERAL PRACTICE & PROCEDURE § 2104.1(2010).  Warner does not, and

20   cannot, provide any legitimate justification to extend the depositions of either Ms.

21   Blackburn or Mr. Maier, let alone demonstrate the requisite good cause for the

22   relief it seeks.

23          Warner contends that it is entitled to more time and more depositions without

24   providing any analysis of how it spent its time and how it intends to use its

25   remaining seven depositions.  Before Warner should be granted either additional

26   time or additional depositions, it must demonstrate that it has not, and will not, have

27   an opportunity to obtain needed discovery through all of the available depositions

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

and other discovery means available to it.  Warner has not done so.  The below analysis of the deposition examination of Ms. Blackburn and Mr. Maier demonstrates that Warner has had a sufficient opportunity to examine, and in fact has examined, both witnesses regarding the topics it deems critical to this action.

### 1. Summary of the Deposition Testimony of Ms. Blackburn and Mr. Maier.

Warner and Zaentz deposed Ms. Blackburn on December 10, 2013. Declaration of Julia R. Haye ("Haye Decl.") ¶ 2.[1]  That deposition lasted seven hours and eight minutes.  *Id.*, Exh. A, at p. 372:9-10.  During the course of the deposition, counsel for both Warner and Zaentz had the opportunity to question Ms. Blackburn at length.

As stated by counsel on the record, pursuant to an agreement between Zaentz and Warner, Zaentz questioned Ms. Blackburn for four (4) hours, leaving Warner with three (3) hours (which turned out to be three hours and two minutes) for its questioning.  *Id.*, Exh. A, at p. 191:24-192:3.  Zaentz's counsel, John Ulin, covered many of the central issues in the case with Ms. Blackburn.  For example, Mr. Ulin spent more than 2 hours and 10 minutes (2:10) and 113 pages questioning Ms. Blackburn regarding her position on computer games.  *Id.*, Exh. A, at pp. 41-154. Among other things, Mr. Ulin questioned Ms. Blackburn regarding her knowledge of online video games and downloadable-only video games.  *Id.*

Mr. Ulin also questioned Ms. Blackburn at some length regarding her background, her relationship and role with the Tolkien/HC Parties and the structure of the Tolkien Parties.  *Id.*, Exhs. A-B, at pp. 20-39.  Mr. Ulin then went on to cover other key issues in the case such as Zaentz's alleged right to license services based on the Tolkien Works (Exh. A, at pp. 154-179) and issues related to the registration

---

[1] For the Court's convenience, Ms. Blackburn's complete deposition transcript is attached as Exhibits "A" (non-confidential portion) and "B" (confidential portion) to the accompanying Haye Decl.  Mr. Maier's complete deposition transcript is attached as Exhibits "C" (non-confidential portion) and "D" (confidential portion) to the accompanying Haye Decl.

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1    of trademarks based on the Tolkien Works (Exh. A, at pp. 179-191).

2         Following Mr. Ulin's examination, Warner's counsel, Daniel M. Petrocelli,

3    wasted well in excess of two thirds of his time questioning Ms. Blackburn about

4    subjects that had previously been covered at length by Mr. Ulin.  The most glaring

5    example of this duplicative and harassing questioning was Mr. Petrocelli's decision

6    to spend approximately 78 pages and one hour and seventeen minutes (1:17)

7    questioning Ms. Blackburn regarding computer games.  *See, id.*, Exh. A, at

8    pp. 261-272, 277-334, 362-372.  Tellingly, the vast majority of this time was spent

9    badgering Ms. Blackburn with innumerable different versions of the exact same

10   question, i.e., when she first became aware of the fact that video games could be

11   purchased and played without a disk, cartridge or other physical media.  *Id.*, Exh.

12   A, at pp. 277-334.  The Tolkien/HC Parties request that the Court pay particular

13   attention to this line of questioning as it represents bad faith badgering of the

14   witness and a gross waste of valuable deposition time.

15        Mr. Petrocelli's wasting of time went far beyond badgering Ms. Blackburn

16   over computer games.  Mr. Petrocelli spent more than thirty-seven minutes asking

17   Ms. Blackburn repetitive and irrelevant questions regarding her relationship with

18   the Tolkien/HC Parties (including her representation of individual members of the

19   Tolkien family on unrelated personal matters), her professional background, the

20   structure of the Tolkien Parties and other matters extensively covered by Mr. Ulin.

21   *Id.*, Exh. A-B, at pp. 194-201, 228-247, 256-261, 273-277, 354-360.  Mr. Petrocelli

22   also spent ten minutes questioning Ms. Blackburn about her deposition preparation,

23   a subject completely covered by Mr. Ulin.  *Id.*, Exh. A, at 223-228, 250-256.

24   Accordingly, in total, Mr. Petrocelli spent more than 2 hours and 5 minutes of his

25   deposition time rehashing topics exhaustively covered by Mr. Ulin.

26        In addition to his duplicative and harassing questioning on subjects already

27   covered by Mr. Ulin, Mr. Petrocelli spent time asking Ms. Blackburn about

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1   irrelevancies such as how the Tolkien/HC Parties' counsel were authorized to file

2   this lawsuit (Exh. A, at pp. 201-208, 221, 247-249) and statements Ms. Blackburn

3   made to the press about the Tolkien Parties (Exh. B, at pp. 335-353). Although

4   these subjects may be within the scope of deposition questioning, the fact that Mr.

5   Petrocelli chose to explore these subjects rather than issues of importance to the

6   parties' claims is telling.

7        The questioning of Mr. Maier was similarly duplicative and wasteful. As

8   with Ms. Blackburn, Mr. Ulin started the questioning. Zaentz and Warner deposed

9   Mr. Maier for approximately 7 hours and 5 minutes. Haye Decl. ¶¶ 3-4, Exhs. C-D.

10  Mr. Ulin questioned Mr. Maier for approximately 3 hours and 42 minutes. Id., at

11  Exhs. C-D, at pp. 12-182. At the conclusion of his questioning he clearly stated

12  that he had completed his examination of Mr. Maier. Haye Decl., Exh. C, at p.

13  183:19-20.

14       In his examination, Mr. Ulin spent approximately 31 pages and 38 minutes

15  examining Mr. Maier regarding his relationship with the Tolkien Parties, his

16  background and his responsibilities with respect to the Tolkien Parties. *Id*., Exhs.

17  C-D, pp. 22-29, 29-53. Mr. Ulin also spent approximately 12 pages and 15 minutes

18  examining Mr. Maier about his deposition preparation and document collection.

19  *Id*., Exh. C, at pp. 18-21, 108-117. The bulk of Mr. Ulin's time related to the

20  dispute between the parties over the registration of trademarks in International

21  Class 16. *Id*., Exh. C-D, pp. 54-107, 117-134, 139-142, 143-154. Mr. Ulin did,

22  however, cover other substantive areas, such as computer games (Exh. C, pp. 154-

23  163) and gambling games (Exh. C, at pp. 175-181).

24       Mr. Petrocelli then proceeded to again waste time on matters covered by Mr.

25  Ulin. Mr. Petrocelli spent approximately 17 pages and 21 minutes asking Mr.

26  Maier about document collection. *Id*., Exh. C, at pp. 207-222, 224-226. He also

27  spent approximately 23 pages and 27 minutes going over Mr. Maier's background,

28

- 13 -

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1  relationship with the Tolkien/HC Parties, his role with respect to the Tolkien Parties

2  and his relationship with Ms. Blackburn.  *Id.*, Exhs. C-D, at pp. 186-191, 200-206,

3  222-224, 228-232, 290-294.  In total, Mr. Petrocelli spent approximately 48

4  minutes of his 3 hours and 23 minutes rehashing these subjects that had been

5  covered by Mr. Ulin.

6       As he did with Ms. Blackburn, the bulk of Mr. Petrocelli's questioning of

7  Mr. Maier related to computer games (including online gambling games).  *Id.*, Exh.

8  C, at pp. 192-194, 232-246, 270-290, 310-386.  In total, Mr. Petrocelli spent

9  approximately 128 pages and 2 hours and 14 minutes on this subject.  *Id.*

10       The foregoing summary demonstrates that Warner had ample opportunity to

11  examine both Ms. Blackburn and Mr. Maier regarding the subject matter of this

12  lawsuit and that Warner's alleged failure to cover important areas resulted from

13  nothing more than its own wasteful questioning tactics.

14      **2.    Warner's Status as a Co-Defendant and Co-Counterclaim**

15               **Plaintiff Does Not Establish Good Cause to Extend the Depositions of Ms. Blackburn and Mr. Maier.**

16       Warner first attempts to justify its request to depose Ms. Blackburn and Mr.

17  Maier for an additional day by arguing that, as a co-defendant and co-counterclaim

18  plaintiff with Zaentz, it "had less than three and a half hours with each witness."

19  Warner's feigned lack of time is purposely misleading and contradicted by the

20  deposition transcripts themselves.

21       Warner contends that it needs more time to question Ms. Blackburn and Mr.

22  Maier regarding the supposedly "critical" issue on which it contends this case

23  hinges:  the Tolkien/HC Parties' knowledge of Warner's and Zaentz's exploitation

24  of downloadable-only online video games and gambling, and the witnesses'

25  personal knowledge regarding downloadable-only video online games and

26  gambling prior to September 2010.  Yet the simple fact is that Warner spent hours

27  questioning these witnesses about these issues (as did Zaentz).  Specifically,

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1    Warner's counsel spent approximately one hour and 17 minutes asking

2    Ms. Blackburn essentially the same question dozens of times, i.e., whether

3    Ms. Blackburn was aware prior to September 2010 that it was possible to download

4    a game from the Internet onto a computer without a physical item.  Haye Decl.,

5    Exh. A, at pp. 261-272, 277-334, 362-372.  Similarly, Warner spent approximately

6    2 hours and 14 minutes discussing the computer games questions with Mr. Maier

7    and asking him this same exact question over and over again.  *Id.*, Exh. C, at pp.

8    1920194, 232-246, 270-290, 310-386.  Warner has already had a more than

9    sufficient opportunity to obtain, and has obtained, testimony on this purportedly

10   "critical" topic.

11         Warner also chose to use its allotted time to cover the same topics and

12   questions previously covered by Zaentz's counsel.  For example, Warner spent

13   nearly an hour with each of Ms. Blackburn and Mr. Maier rehashing deposition

14   preparation questions, background information and other irrelevancies that had

15   already been asked by counsel for Zaentz.  *Id.*, Exhs. A-B, at pp. 194-201, 223-228,

16   228-247, 273-277, 354-360; Exhs. C-D, at pp. 186-191, 200-206, 222-224, 228-

17   232, 290-294.  Warner cannot now claim that it is entitled to additional time simply

18   because it chose to spend its time questioning the witnesses on the same matters,

19   time and again, which had already been exhaustively covered by its co-defendant.

20         Indeed, in a multi-party case, the Federal Rules require co-parties to

21   efficiently coordinate their deposition taking to avoid duplication.  *See* FED. R. CIV.

22   P. § 30 Advisory Committee Note (2000) (in a multi-party case, "duplicative

23   questioning should be avoided and parties with similar interest should strive to

24   designate one lawyer to question about areas of common interest").  This is

25   particularly true where, as here, Zaentz's and Warner's interests are aligned.  As

26   detailed above, all of Warner's rights are derived from the rights plaintiffs licensed

27   to Zaentz.  Warner's defenses and counterclaims are therefore based on the

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1    interpretation of the same agreements and same facts which are relevant to Zaentz's

2    defenses and counterclaims.  As demonstrated by their own statements, actions and

3    claims of a joint defense/common interest privilege, Warner and Zaentz also

4    believe their interests are aligned in this case.  Haye Decl. ¶ 6.  Under these

5    circumstances, the division of time between the deposition examination conducted

6    by Zaentz's counsel and Warner's counsel is irrelevant.  Given that their interests

7    are dependent on interpretation of the same agreements and same facts, Warner and

8    Zaentz should be required to efficiently coordinate their deposition taking to avoid

9    duplication, which they have failed to do.

10           Warner also spent a significant portion of its examination on completely

11   irrelevant topics, such as the relationship between Mr. Maier and Ms. Blackburn,

12   Ms. Blackburn's representation of members of the Tolkien family on personal

13   matters, the decision to authorize the filing of this lawsuit and Ms. Blackburn's

14   alleged statements to the press regarding the Tolkien Parties.  *Id.*, Exh. A, at pp.

15   201-208, 221, 247-249, 335-353; Exh. C, at pp. 186-191.  Plaintiffs should not be

16   penalized by Warner's decision to use its allotted time to question Ms. Blackburn

17   and Mr. Maier regarding irrelevant matters.

18           Even if defendants could demonstrate that they did not have sufficient time to

19   cover relevant topics in the depositions of Ms. Blackburn and Mr. Maier (which

20   they cannot), defendants have an additional seven depositions scheduled, including

21   two Rule 30(b)(6) depositions covering dozens of topics.  To the extent Warner

22   believes that any critical issues were not covered in the depositions of Ms.

23   Blackburn and Mr. Maier, it will have an opportunity to address those topics in the

24   two upcoming Rule 30(b)(6) depositions.  Indeed, the parties have been discussing

25   a stipulation to allow plaintiffs to designate Ms. Blackburn as the witness to testify

26   regarding many, if not most, of the topics requested.

27           Warner's conduct during the meet and confer process evidences that its true

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

intention is to unreasonably burden and harass plaintiffs by continuing its campaign of "scorched earth" discovery.  Although plaintiffs believe that additional time is unwarranted for either Ms. Blackburn or Mr. Maier, solely as a matter of compromise, plaintiffs offered to produce Ms. Blackburn for an additional one-half day of deposition, provided that defendants forego any further time with Mr. Maier (whose limited involvement on Tolkien-relates matters does not justify additional time).  Defendants refused, insisting on an dditional full day with each.  Haye Decl. Exh. E.

### 3.    Plaintiffs' Document Production Does Not Justify Extending the Depositions of Ms. Blackburn and Mr. Maier.

Warner also attempts to justify its request to continue the examinations of Ms. Blackburn and Mr. Maier on the basis that Ms. Blackburn and Mr. Maier are in the process of completing their production of limited electronic files, which are likely duplicative of the voluminous hard copy files previously produced.  Warner's argument is contradicted by its own positions taken in this action.

From the beginning of discovery, plaintiffs suggested that the parties complete their respective document productions before taking depositions. Warner's current position that the depositions are somehow tied to the production of documents is demonstrably in bad faith; it was Warner who has insisted for months that depositions go forward irrespective of whether document production has been completed.  Specifically, Warner's counsel demanded that in the "event that any party's document production remains substantially incomplete at the end of November, it is Warner's position that depositions must nonetheless proceed at that time."  Haye Decl., Exh. F.  Earlier in this action, Warner also insisted that:

> We [Warner] have never agreed to your mandate that all
> document productions must be completed before
> depositions can commence.  As you are aware, the

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1       Federal Rules expressly contemplate that depositions can

2       commence following the Rule 26(f) conference, which

3       happened months ago, and that the discovery vehicles

4       may be used in any sequence.  At this point, we have no

5       objection to your not scheduling any of Warner's

6       witnesses until the parties have completed their document

7       productions, but you cannot unilaterally refuse to produce

8       your witnesses for depositions.  To the extent that you

9       continue to insist on this condition, we will simply start

10      noticing the depositions rather than waste our time trying

11      to negotiate convenient dates.

12  Haye Decl. Exh. G.  And indeed, Warner did choose to notice and proceed with its

13  depositions.  Having chosen to go forward with its depositions knowing that all of

14  the parties' document productions were not yet complete, Warner cannot now

15  reverse course and claim the plaintiffs' limited, follow-up production of certain of

16  Ms. Blackburn's and Mr. Maier's electronic files justifies additional deposition

17  examination.  Warner's current about-face is disingenuous in the extreme.

18       Second, Warner's claim that it discovered during its depositions that there

19  were "serious concerns" regarding plaintiffs' production of documents from Mr.

20  Maier and Ms. Blackburn which warrant further examination is demonstrably false.

21  As explained in plaintiffs' opposition to Warner's motion to compel regarding

22  plaintiffs' document production, the Tolkien/HC Parties have collected and

23  reviewed all hard copy documents from MaierBlackburn, including hard copy files

24  from Manches, the Tolkien Parties' former counsel (custody of which was

25  transferred to MaierBlackburn), that were in any way remotely or potentially

26  relevant to the issues in dispute.  Haye Decl., Exh. E.  Greenberg Glusker reviewed

27  these voluminous documents which consisted of hundreds of thousands of pages,

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1    and produced responsive, non-privileged documents.  *Id*.  In addition, Mr. Maier

2    and Ms. Blackburn sent Greenberg Glusker an index of all

3    Manches/MaierBlackburn Tolkien files.  *Id.*  Greenberg Glusker chose any and all

4    additional files it believed could be even remotely relevant to the matters at issue in

5    this case, to cross-check against the files provided.  *Id.*  Those additional files were

6    also provided to Greenberg Glusker for review and production.  *Id.*

7            With respect to the collection of ESI for Ms. Blackburn and Mr. Maier, as

8    explained to Warner during the meet and confer, most of Ms. Blackburn's and Mr.

9    Maier's documents are hard copy files.  Although the Tolkien Parties believe that

10   the limited amount of non-privileged, responsive documents stored electronically

11   will be entirely duplicative of the hard copy documents previously produced, the

12   Tolkien Parties are already in the process of collecting, reviewing and producing

13   non-privileged, responsive ESI files from Ms. Blackburn and Mr. Maier.  *Id.*

14           Third, Warner greatly exaggerates the scope of Ms. Blackburn's and Mr.

15   Maier's relevant knowledge by citing to raw document counts "bearing" their

16   names.  Warner attempts to justify its request for additional time by arguing that

17   approximately 2,000 documents "bear" Ms. Blackburn's name and approximately

18   749 documents "bear" Mr. Maier's name.  Warner's representation is misleading

19   for several reasons.

20           Warner's argument is premised solely on the amount of documents "bearing"

21   a witness's name without regard to their relevance to the disputed issues or whether

22   the document count contains multiple copies of the same documents.   As such, the

23   document count numbers proffered by Warner are totally irrelevant.  Indeed,

24   hundreds of documents produced by both sides contain the firm name

25   "MaierBlackburn," and for many years during the relevant time period, the names

26   of all partners were listed on the master heading of every Manches letter.  A simple

27   search for the names of Ms. Blackburn and Mr. Maier would bring up all Manches

28

- 19 -

letters containing their names in the default letterhead.  For these reasons, a simplistic search for any documents bearing the name "Maier" or "Blackburn" would pick up hundreds of documents that have no bearing on either Mr. Maier's or Ms. Blackburn's substantive knowledge of the issues in dispute.

Warner also makes no representation that its document count represents unique, separate documents.  Because of the fact that many of the documents in this case were copied to numerous people, multiple custodians have produced copies of the same document.  In addition, the filing practices at the law firms that have represented the Tolkien Parties during the relevant time period required that copies of the same documents be filed in multiple different files.  Accordingly, the Tolkien/HC Parties' document production is filled with numerous duplicate copies of the same documents.  Haye Decl., Exh. E.

If the sheer volume of documents were sufficient to justify extending a witness's examination, then plaintiffs would be entitled to additional time to examine virtually all of defendants' witnesses.  For example, defendants produced approximately 4,636 documents bearing the name of Laurie Battle; approximately 2,300 documents bearing the name of Al Bendich; approximately 1,846 documents bearing the name of Tom Magnani; and approximately 582 documents bearing the name of Benjamin Zinkin.   Haye Decl. ¶ 11.  Although plaintiffs contend that the mere volume of documents produced in this action is insufficient grounds to grant additional deposition time, if the Court were inclined to grant Warner additional time to examine Ms. Blackburn and Mr. Maier based on the volume of documents produced in this action, then plaintiffs should likewise be granted additional time for the examination of each of defendants' witnesses.

### 4.     Warner Mischaracterizes Plaintiffs' Claims in This Action.

Warner attempts to justify its request for additional time by mischaracterizing plaintiffs' claims and the issues in dispute.  Warner incorrectly argues that

- 20 -

1   plaintiffs' "entire theory" is that "while they approved of Warner's exploitation of

2   online games for decades, they thought that all online games necessarily required a

3   disk or some other physical object."  Warner's statement is entirely false.  This is a

4   straightforward breach of contract case.  The Tolkien/HC Parties' knowledge of

5   whether it was possible to purchase an online video game without a disk or physical

6   object, and their attorney's knowledge of the existence of online gambling, forms

7   no portion of plaintiffs' case.  Rather, plaintiffs' contend that the gambling and

8   downloadable-only online video games licensed by defendants exceed defendants'

9   contractual rights to sell or license "articles of tangible personal property."   Unable

10  to escape this plain language, defendants attempt to make the case appear more

11  complicated than it is by claiming that plaintiffs somehow acquiesced in

12  defendants' unauthorized licensing, and that the knowledge of plaintiffs' counsel

13  regarding whether, prior to September 2010, it was possible to purchase a video

14  game by downloading it off the Internet without a physical disc or cartridge is

15  somehow "critical."  These matters are entirely irrelevant to plaintiffs' claim that

16  defendants' licensing of downloadable-only video games and gambling exceeded

17  the scope of the limited license granted to defendants.

18        In any event, even accepting plaintiffs' contention that knowledge of the

19  methods available to purchase video games is somehow relevant, as detailed above,

20  Warner has already extensively and exhaustively questioned Ms. Blackburn and

21  Mr. Maier regarding their personal knowledge of the video game market, including

22  when they became aware that video games were available for purchase by way of

23  download only.  Haye Decl., Exh. A, at pp. 261-272, 277-334, 362-372; Exh. C, at

24  pp. 192-194, 236-246, 270-290, 310-386.  *See, e.g., Stevens v. City of Red Bluff*,

25  2007 WL 184816, at *1 (E.D. Cal. Jan. 19, 2007) (denying defendant's motion to

26  extend the duration of plaintiff's deposition where defendant failed to demonstrate

27  that the complexity of the case warranted additional time to conduct a fair

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

examination of the witness).

Warner also offers no evidence to demonstrate that the complexity of issues in this case warrants additional time. Indeed, the case cited by Warner, *Burket v. Hyman Lippitt, P.C.*, 2007 WL 4201141, at *1-2 (E.D. Mich. Nov. 28, 2007), belies its own position. *Burket* was not a simple breach of contract case between private parties. Rather, that case involved securities fraud, an SEC investigation, multiple parties, and the recovery of funds from numerous offshore bank accounts. Clearly, this action is not the type of "complex, multi-party case" confronted by the court in *Burket*.

Finally, Warner's assertion that Mr. Maier's testimony that he has played poker online somehow justifies further deposition questioning is laughable. Mr. Maier's testimony that he has occasionally played poker online has no bearing whatsoever on his knowledge of the methods of purchasing video games (as online poker is neither a video game nor available for purchase), nor on the specific video games licensed by Warner and Zaentz, which are at issue here. And, to the extent Warner wanted to waste time asking questions on this irrelevant topic, it has already done so at length. *Id.*, Exhs. C-D, at pp. 186-191, 200-206, 222-224, 228-232, 290-294. Warner's arguments regarding the purported factual significance of this testimony do not provide a factual basis to extend the seven-hour deposition time limit.

### 5. Warner Misrepresents Mr. Maier's Involvement in Matters for the Tolkien Parties.

In an attempt to justify its request for additional time to depose Mr. Maier, Warner purposely conflates the activities of Ms. Blackburn and Mr. Maier. Warner's assertion that Mr. Maier has been a "primary lawyer" for the Tolkien Estate "for decades" is demonstrably untrue.

Mr. Maier is not a "primary lawyer" for the Tolkien Parties. Mr. Maier is a litigator who serves a limited role for the Tolkien Parties. He does not regularly

1    advise the Tolkien Parties, but rather is brought in from time to time to deal with

2    specific litigation matters.  Haye Decl., Exh. C, at pp. 30:1-14.  Mr. Maier

3    commenced working on Tolkien matters in 2002, not "decades" ago.  Mr. Maier

4    estimated that only 30% of his work in recent years was for the Tolkien Parties

5    which, ironically, primarily relates to this action and the previous litigation between

6    the Tolkien Parties and Warner concerning Warner's failure to pay the amounts due

7    to the Tolkien Parties in respect of the exploitation of the Lord of the Rings films.

8    *Id.*, Exh. D, at pp. 28:9-13.  Mr. Maier's limited role as a litigator for the Tolkien

9    Parties is an insufficient basis to extend his deposition.

10         Warner's argument that additional time is necessary because Mr. Maier also

11   serves as a director of The Tolkien Estate is yet again based on a misrepresentation

12   of the facts.  Mr. Maier testified that he had been appointed as a director of The

13   Tolkien Estate in 2011 – a year after this dispute arose – in a nominal capacity only

14   and with no executive responsibility.  *Id.*, Exh. C, at pp. 37:24-39:2.  He further

15   testified that he spent no substantial time in connection with this role and that he

16   had never been called upon to exercise any positive or executive function.  *Id.*  Both

17   Zaentz and Warner questioned Mr. Maier about these matters, challenged his

18   testimony and completed their questioning on this topic.  In fact, Zaentz expressly

19   stated that it had completed its examination of Mr. Maier.  *Id.*, Exh. C, at pp.

20   183:19-20.  There is simply no reason to permit Warner to repeat questions that

21   have already been asked and answered.

22         For these reasons and solely as a matter of compromise, plaintiffs offered to

23   make Ms. Blackburn available for an additional one-half day of examination,

24   provided that defendants agreed to forego their request for additional time with

25   respect to Mr. Maier.  Defendants refused, thereby demonstrating that their true

26   intention is to burden and harass plaintiffs and to continue their impermissible

27   fishing expedition.

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

For each of the reasons detailed above, Warner has not demonstrated good cause to continue the deposition examinations of either Ms. Blackburn or Mr. Maier.

## III.   ISSUE NO. 2: WARNER SHOULD NOT BE LIMITED TO TEN DEPOSITIONS

### A.   Warner's Position Regarding Issue No. 2

Warner should also be permitted to take five additional fact depositions.  The Tolkien/HC Parties insist on limiting Warner and Zaentz to the default ten deposition limit per side.  This position is unreasonable given the complexity of this case.  There are twelve parties to this lawsuit. The relevant facts span over 40 years. And the Tolkien/HC Parties have identified at least twenty-three witnesses with relevant knowledge of the underlying issues.  The Tolkien/HC Parties cannot use the default limits to prevent Warner from obtaining relevant discovery.

When confronted with a motion to exceed the default limit on the number of depositions, the Court "*must* grant leave to the extent consistent with Rule 26(b)(2)."  Fed. R. Civ. P. 30(a)(2)(A)(i).  Rule 26(b)(2) only limits additional depositions if the Court determines they would be (i) unreasonably cumulative; (ii) the party has already had ample opportunity to obtain the discovery; or (iii) the burden or expense of the additional depositions outweighs the likely benefit, "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  *See* Fed. R. Civ. P. 26(b)(2)(C). The default limit is not intended to prevent parties from obtaining relevant discovery in complex cases.  The Federal Rules make that clear.  Rather, the scope of discovery and the right to take depositions is broad.  *See C & C Jewelry Mfg., Inc. v. West*, 2011 WL 767839, at *2 (N.D. Cal. Feb. 28, 2011).  It is not surprising, then, that "courts are reluctant to second guess counsel's good faith assertion of the

1   need for more than 10 depositions."  *See* Rutter at § 11:1373.

2   Warner must be permitted to take additional depositions.  This case may turn

3   on the knowledge of the Tolkien/HC Parties' representatives—particularly the

4   people designated to act on each entity's behalf.  The testimony of these

5   representatives regarding the parties' course of dealing over the past forty years is

6   essential to both the interpretation of the agreements at issue, as well as to Warner's

7   affirmative defenses of estoppel, waiver, and laches.  The Tolkien/HC Parties

8   cannot simply put forth its lawyers and a few representatives and act as if the

9   knowledge of its other principals does not exist.

10   The Tolkien Parties *alone* have seven directors and officers, each of whom,

11   as a party witness, is a critical source of potential testimony: Cathleen Blackburn,

12   Steven Maier, Christopher Tolkien, Simon Tolkien, Priscilla Tolkien, Michael

13   Tolkien, and Ballie Tolkien.  Lens Decl. Ex. 5.  In addition, the Tolkien/HC Parties

14   have identified at least *sixteen* more individuals with relevant information about this

15   dispute: David Brawn, Simon Dowson-Collins, Jane Johnson, Chris Smith, Bonnie

16   Eskenazi, Elisabeth Moriarty, Ricardo Cestero, Candace Carlo, Aaron Moss,

17   Rachel Valadez, Jeremy Nussbaum, Richard Williamson, Mary Butler, Adrian

18   Laing, Alan Benjamin, and William Bernstein.  Lens Decl. Exs. 7-9.

19   The Tolkien/HC Parties cannot use the default rule of ten depositions per side

20   to prevent Warner from taking the depositions of these admittedly relevant

21   witnesses.  Warner must be given the opportunity to thoroughly question these

22   witnesses about what they knew and when they knew it.  *See, e.g., Del Campo v.*

23   *American Corrective Counseling Servs., Inc*., 2007 WL 3306496, at *6 (N.D. Cal.,

24   Nov. 6, 2007) (allowing defendants to take twenty-three depositions due to "the

25   breadth and complexity" of the case); *C & C Jewelry*, 2011 WL 767839, at *2

26   (granting additional percipient witness depositions because witnesses had relevant

27   information and would not be unreasonable cumulative).

28

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

In light of the foregoing, Warner respectfully requests that it be granted leave to take five additional depositions.  Warner requests that it be granted such depositions without prejudice to its ability to seek leave for additional depositions since the Tolkien/HC Parties have yet to complete their document production.

### B.    The Tolkien/HC Parties' Position regarding Issue No. 2

A party seeking to exceed the ten-deposition limit "must make a particularized showing of the need for additional discovery." *Authentec, Inc. v. Atrua Technologies, Inc.*, 2008 WL 5120767, at *2 (N.D. Cal. Dec. 4, 2008).  The entire purpose of the ten-deposition limit is to "emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case." FED. R. CIV. P. 30(a) Advisory Committee Note (1993).  This is particularly true in multi-party cases, where "the parties on any side are expected to confer and agree as to which depositions are most needed." *Id.*; *see* MOORE, *supra*, at ¶ 30.05[1][b].

In determining whether to grant additional depositions, the court must apply the principles set forth in Rule 26(b)(2)(C), which require a Court to limit the requested discovery if it is (1) unreasonably cumulative or duplicative, or can be obtained from some other sources that are more convenient, less burdensome, or less expensive (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(c); JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 30.05[1][b] (3d ed. 1997).  Warner has not made, and cannot make, the required showing necessary to justify exceeding the ten deposition limit.

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

First, to date, defendants have only taken <u>three</u> of the permitted ten depositions.  Defendants cannot credibly represent to the Court that the additional five depositions it seeks meet the requirements of Rule 26(b)(2)(c) and will not be unreasonably cumulative or duplicative, that Warner has not had the opportunity to obtain the information, or that the burden and expense justify the additional depositions.  "[C]ourts will generally not grant leave to expand the number of depositions <u>until the moving party has exhausted the ten depositions</u> permitted as of right under Rule 30(a)(2)."  *Authentec, supra*, 2008 WL 5120767, at *2 (denied request for additional depositions where party failed to make a particularized showing as to why the depositions are necessary and where the moving party had not yet taken all ten depositions) (emphasis added); *see also Guthrey v. Cal. Dep't of Corrections & Rehabilitation*, 2012 WL 3249554, at *6-7 (E.D. Cal. Aug. 7, 2012) ("courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2)") *Moyle v. Liberty Mutual Retirement Benefit Plan*, 2012 WL 5373421, at *4 (S.D. Cal. Oct. 30, 2012) (requiring a party to take the allotted ten depositions before moving for leave to take additional depositions).

The fact that Warner boldly seeks five additional depositions without first exhausting available discovery and ascertaining whether there is any justifiable basis for the additional depositions demonstrates that the sole purpose of Warner's request is to unnecessarily burden and harass plaintiffs and increase the costs of this already extremely expensive litigation.  For this reason alone, Warner's motion should be denied in its entirety.

Second, Warner fails to identify the additional witnesses it seeks to depose.  It is axiomatic that "a motion for leave of court to take additional depositions must be specific as to the number of additional depositions sought <u>and the identity of the deponents</u>."  MOORE, *supra*, at ¶ 30.05[1][b] (emphasis added).  Instead of even

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1   attempting to make a particularized showing demonstrating the need to depose
2   specific witnesses, Warner disingenuously argues that there are purportedly "at
3   least" twenty-three witnesses with purportedly relevant knowledge.  Notably, this
4   list includes the Tolkien Parties' former counsel Jeremy Nussbaum – who passed
5   away in 2012, six current or former Greenberg Glusker attorneys, and two
6   witnesses consulted by plaintiffs as potential expert witnesses.  And, Warner argues
7   that there are seven directors and officers of the Tolkien Parties, yet offers no
8   evidence to suggest that each of these individuals has unique knowledge and that
9   deposing each of them would not be duplicative or cumulative.  Warner's list of any
10  person even remotely connected to plaintiffs – without any attempt to specify which
11  of these witnesses it seeks to depose and the reasons that a deposition of that
12  particular person is necessary – does not constitute a particularized showing that
13  "the benefits of obtaining additional depositions outweighs the burden imposed" on
14  plaintiffs and that proposed additional depositions would not be "unreasonably
15  cumulative and duplicative."  *Guthrey, supra,* 2012 WL 3249554, at *6-7.

16          Furthermore, all of the witnesses (with the exception of Bill Bernstein) were
17  listed by one of the parties in their initial disclosures.  Haye Decl., Exhs. H-J.  No
18  new information has been discovered.  Permitting Warner to expand the number of
19  depositions simply because it has identified twenty-three potential witnesses
20  contradicts the fundamental purpose of the ten-deposition limit and eviscerates
21  Warner's obligation to limit depositions to those that are most needed and are not
22  duplicative or cumulative.

23          Third, instead of making a concerted effort to take the depositions which are
24  most needed, Warner and Zaentz have chosen to waste their depositions on
25  individuals who possess no relevant knowledge regarding the disputed issues and
26  who plaintiffs did not even identify as potential witnesses in this action, including
27  Christopher Tolkien (who is nearly 90 years old) and Simon Tolkien.  Warner

28

- 28 -

JOINT STIPULATION REGARDING
WARNER'S MOTION TO COMPEL
CASE NO. 12-9912-ABC (SHX)

1   should not be given additional depositions simply because it has chosen to pursue a

2   "leave no stone unturned" discovery strategy and to ignore its professional

3   obligation to narrow depositions to those that are most needed.

4         In conclusion, each of Warner's arguments for extra time and extra witnesses

5   – including the purported complexity of issues in dispute, the length of the relevant

6   time period, and extensive document production – applies equally to all parties and

7   all witnesses in the case.  Accordingly, to the extent Warner has made a

8   particularized showing warranting  additional time and additional depositions

9   (which plaintiffs dispute), that showing necessarily means that all parties are

10  entitled to more time with all witnesses and are entitled to extra depositions.

11   Warner's position would render the limitations imposed by the Federal Rules

12  meaningless.

13

14  Dated:  February 19, 2014

                                Respectfully Submitted,

                                O'MELVENY & MYERS LLP

                                By:_____
                                      Daniel M. Petrocelli
                                   Attorneys for Warner Defendants
                                   and Counterclaim Plaintiffs

20  Dated:  February 20, 2014

                                GREENBERG GLUSKER FIELDS
                                CLAMAN & MACHTINGER LLP

                                By:_____
                                      Bonnie E. Eskenazi
                                   Attorneys for Plaintiffs and
                                   Counterclaim Defendants

28

                                                    JOINT STIPULATION REGARDING
                         - 29 -                     WARNER'S MOTION TO COMPEL
                                                    CASE NO. 12-9912-ABC (SHX)