ARNOLD & PORTER LLP
MARTIN R. GLICK (No. 40187)
marty.glick@aporter.com
JOHN C. ULIN (No. 165524)
john.ulin@aporter.com
SEAN M. CALLAGY (No. 255230)
sean.callagy@aporter.com
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:  415.471.3100
Facsimile:   415.471.3400

Attorneys for Defendant and Counterclaim Plaintiff
THE SAUL ZAENTZ COMPANY d/b/a Middle-earth Enterprises, a Delaware corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LIMITED, a United Kingdom corporation; PRISCILLA MARY ANNE REUEL TOLKIEN, as TRUSTEE OF THE TOLKIEN TRUST, a United Kingdom Charitable Trust; THE J.R.R. TOLKIEN ESTATE LIMITED, a United Kingdom corporation; HARPERCOLLINS PUBLISHERS, LTD., a United Kingdom corporation; UNWIN HYMAN LTD., a United Kingdom corporation; and GEORGE ALLEN & UNWIN (PUBLISHERS) LTD., a United Kingdom corporation, | Case No.: 12-9912-ABC (SHx) |
| | *Hon. Audrey B. Collins* |
| | *Hon. Mag. Stephen J. Hillman* |
| | **DISCOVERY MATTER** |
| | **DECLARATION OF SEAN M. CALLAGY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE SAUL ZAENTZ COMPANY TO PRODUCE ONE PRIVILEGED DOCUMENT** |
| Plaintiffs, | **Hearing Date:** April 14, 2014 |
| v. | **Hearing Time:** 2:00 p.m. |
| WARNER BROS. DIGITAL DISTRIBUTION, INC., a division of WARNER BROS. HOME ENTERTAINMENT, INC., a Delaware corporation; WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation, as successor-in-interest to New Line Cinema Corp.; WARNER BROS. CONSUMER PRODUCTS, INC., a Delaware corporation; WARNER BROS. INTERACTIVE ENTERTAINMENT, INC., a division of WARNER BROS. HOME ENTERTAINMENT, INC., a Delaware corporation; NEW LINE PRODUCTIONS, INC., a California corporation, THE SAUL ZAENTZ | **Discovery Cut-Off:** April 15, 2014 |

COMPANY d/b/a Middle-earth
Enterprises, a Delaware corporation; and
DOES 1-10, inclusive,

               Defendants.

THE SAUL ZAENTZ COMPANY d/b/a
Middle-earth Enterprises, a Delaware
corporation,

               Counterclaim Plaintiff,

v.

FOURTH AGE LIMITED, a United
Kingdom corporation; PRISCILLA
MARY ANNE REUEL TOLKIEN, as
TRUSTEE OF THE TOLKIEN TRUST,
a United Kingdom Charitable Trust; THE
J.R.R. TOLKIEN ESTATE LIMITED, a
United Kingdom corporation;
HARPERCOLLINS PUBLISHERS,
LTD., a United Kingdom corporation;
UNWIN HYMAN LTD., a United
Kingdom corporation; and GEORGE
ALLEN & UNWIN (PUBLISHERS)
LTD., a United Kingdom corporation,

               Counterclaim
               Defendants,

## DECLARATION OF SEAN M. CALLAGY

I, Sean M. Callagy, declare as follows:

1.     I am an attorney at law duly admitted to practice in the State of

California and before this Court.  I am an attorney in the law firm of Arnold & Porter

LLP and one of the counsel of record for Defendant and Counterclaim Plaintiff The

Saul Zaentz Company ("Zaentz").  I submit this declaration in opposition to a motion

by Plaintiffs and Counterclaim-Defendants Fourth Age Limited *et al.* (collectively,

the "Tolkien/HC Parties") to compel the production of a document that is protected

by the attorney-client privilege and the work-product doctrine.  The facts set forth

herein are of my own personal knowledge, and if called to testify, I could and would

testify competently thereto.

2.      As set forth in the declaration of my colleague John Ulin, Zaentz recalled certain privileged documents before the January 17, 2014 deposition of former Zaentz employee Laurie Battle.  The privileged nature of these documents did not become apparent to Zaentz until it met with Ms. Battle in advance of her deposition on January 16.  Once Zaentz recognized the privileged nature of the documents, it promptly notified all parties of this fact and requested that the privileged documents be returned or destroyed.  Among these is a document that was bates numbered SZC0028286, which contained annotations by Ms. Battle reflecting privileged and confidential communications with counsel that Ms. Battle made for the purpose of seeking legal advice.  This document was initially marked as Exhibit 92, but removed from the record immediately once Mr. Ulin recognized that it was a privileged document.  In its place, a clean version of the same document (*i.e.*, without Ms. Battle's privileged annotations) was marked as Exhibit 92.  For the avoidance of confusion, I refer to the recalled document herein as "the Privileged Document."

3.      On January 24, 2014, I sent all parties an email memorializing Zaentz's assertion of privilege over documents recalled at Ms. Battle's deposition, including the Privileged Document.

4.      On Monday, March 10 at 7:28 p.m., Julia Haye, counsel for the Tolkien/HC Parties sent a letter by email to Mr. Ulin concerning three documents that had been recalled during Ms. Battle's January 17 deposition, including the Privileged Document.  I received a courtesy-copy of Ms. Haye's letter, a copy of which has been appended as Exhibit C to Ms. Haye's declaration in support of the Tolkien/HC Parties' motion to compel.  I was quite surprised by Ms. Haye's letter, as the Tolkien/HC Parties had never specifically challenged Zaentz's assertion of privilege over these three documents.  The last we had heard of this was in a letter from Rachel Valadez, counsel for the Tolkien/HC Parties, who briefly indicated in a letter dated February 7 that the Tolkien/HC Parties were considering seeking information concerning the documents recalled as Ms. Battle's deposition.  A true and correct

copy of Ms. Valadez's February 7 letter is attached as Exhibit 1 hereto. Notwithstanding this letter, the Tolkien/HC Parties never followed up about these documents during the parties' numerous meet-and-confer discussions. Because the Tolkien/HC Parties had elected not to seek additional information, file a motion, or otherwise pursue the issue in the fifty-two (52) intervening days since Ms. Battle's deposition, we had long since concluded that the issue had been dropped and would not be pursued.

5.     Notwithstanding my surprise at Ms. Haye's belated March 10 letter, I undertook to respond to it promptly on behalf of Zaentz. A copy of my letter to Ms. Haye, sent on the afternoon of Wednesday, March 12, has been attached as Exhibit D to Ms. Haye's declaration. I noted that the Protective Order provides that if a party wishes to challenge another party's assertion of privilege with respect to a recalled document, it may do so and keep a single paper copy of the document for that purpose, but it is only permitted to file such a motion within 30 days of the privilege being asserted. *See* ECF 87, at 11-12. In addition, I explained in general terms the basis of privilege in the three documents.

6.     Ms. Haye wrote to me on the morning of March 13 to disagree that the thirty-day time limit imposed by the protective order applied due to statements made at Ms. Battle's deposition and in Ms. Valadez's February 7 letter. A copy of that letter has been attached as Exhibit E to Ms. Haye's declaration. As the Court can see, Ms. Haye's March 13 letter did not request additional details concerning Zaentz's assertions of privilege.

7.     On the afternoon of March 13, I participated on behalf of Zaentz in a two-hour meet-and-confer discussion with the Tolkien/HC Parties and Warner that covered many discovery topics. On the call on behalf of the Tolkien/HC Parties were Ms. Haye, Ms. Valadez, and Ricardo Cestero. During the portion of the call in which we discussed Zaentz's privileged documents, I again explained that, by failing to move for relief within 30 days of the January 17 deposition as required by the

Protective Order, the Tolkien/HC Parties had forfeited the opportunity to retain the three recalled documents.  Mr. Cestero took the position that the Protective Order did not impose a time limit on the Tolkien/HC Parties' ability to make a motion.  Mr. Cestero and I agreed to disagree on this point.

8.    I then explained to the Tolkien/HC Parties once more why the three documents were privileged.  I specifically noted that with regard to the Privileged Document, Ms. Battle had made annotations in the course of ongoing consultations with outside counsel and in order to seek legal advice from outside counsel.  Thus, the Privileged Document was subject to the attorney-client privilege.  I also noted that the annotations were prepared (1) by a party (2) in anticipation of litigation, and therefore the Privileged Document was work-product.  Mr. Cestero disagreed on this point and asserted that work-product only attached to materials prepared by an attorney or at an attorney's express instruction.  I disagreed and informed Mr. Cestero that Federal Rule of Civil Procedure 26(b)(3) stated otherwise, and further, that I was aware at least of relevant Third Circuit authority confirming this rule.

9.    To understand the basis of Zaentz's assertions of privilege, Mr. Cestero asked me to provide additional details relating to all three recalled documents.  Mr. Cestero specifically asked for additional information about the sequence of Ms. Battle's communications with outside counsel in connection the notes she made on the Privileged Document.  Mr. Cestero indicated that the Tolkien/HC Parties would consider such information in deciding whether to challenge these documents as privileged.  I agreed to provide this information.  Mr. Cestero also asked that I provide the citation to the Third Circuit authority I had mentioned.  I agreed to do this as well.  At no point did Mr. Cestero or other counsel for the Tolkien/HC Parties inform me that they would submit a joint stipulation if *all* such information was not provided within 24 hours.

10.   At the conclusion of the meet-and-confer call, which ended around 4 p.m., I confirmed the relevant details concerning two of the three recalled

documents.  I then drafted a letter to Ms. Haye setting forth those details, as the Tolkien/HC Parties had requested.  Regarding the work-product doctrine, I referred the Tolkien/HC Parties to Federal Rule of Civil Procedure 26(b)(3) and *In re Cendant Corp. Securities Litig.*, 343 F.3d 658 (3d Cir. 2003).  I sent this letter, a copy of which has been attached as Exhibit F to Ms. Haye's declaration, on the evening of March 13.  I specifically noted that I would follow up with additional information about the Privileged Document.  Apparently the information contained in my March 13 letter persuaded the Tolkien/HC Parties that the other two documents are privileged, as the Tolkien/HC Parties did not file a motion to compel production of those documents.

11.    On Friday, March 14, I began preparing a letter to Ms. Haye concerning the Privileged Document and describing the sequence of Ms. Battle's communications with counsel, as the Tolkien/HC Parties had requested.  Because there were numerous privileged communications among Ms. Battle and/or in-house counsel Al Bendich on the one hand, and outside counsel Howard Lasky and Paul Rogers of the Howard Rice firm on the other hand, it took some time to summarize Ms. Battle's extensive communications.  In addition, to confirm the accuracy of the sequence of events, I requested from Arnold & Porter's finance department copies of the Howard Rice firm's confidential billing records from September and October of 1997.  (Howard Rice and Arnold & Porter combined effective January 1, 2012.) These records were not readily available and took some time to locate.  While I endeavored to complete my letter to Ms. Haye and provide the requested information and supporting legal authority as quickly as possible, it was not feasible to turn this around in under 24 hours.

12.    I was therefore surprised when, on Friday, March 14, at 6:54 p.m., before I had the opportunity to provide the requested information, I received an email from Ms. Valadez attaching the Tolkien/HC Parties' portion of a joint stipulation for a motion to compel production of the Privileged Document.  While the Tolkien/HC

Parties had initially waited 52 days to raise a challenge to Zaentz's assertion of privilege, they proceeded to prepare and circulate a stipulation less than 4 days later—barely 24 hours after the Tolkien/HC Parties requested, and Zaentz agreed to provide, substantial additional information about the Privileged Document.  I was also quite dismayed that Ms. Valadez had, in contravention of the Protective Order's requirement that recalled documents not be copied, included a scan of the Privileged Document and emailed it to a dozen different recipients.

13.     On Saturday, March 15, I wrote to the Tolkien/HC Parties to express my surprise at having received the draft stipulation before the parties had concluded meeting and conferring, and to request that all unauthorized copies of the Privileged Document be destroyed.  I informed the Tolkien/HC Parties that additional information concerning the Privileged Document would be forthcoming which would help them to understand that the document was indeed privileged and that a motion to compel would not be well-taken.  A true and correct copy of my email is attached as Exhibit 2 hereto.  On Sunday, March 16, Mr. Cestero responded to my email, in which he agreed, conditionally, to destroy the extra copies of the Privileged Document.  A true and correct copy of Mr. Cestero's response is attached as Exhibit 3 hereto.

14.     On Monday, March 17, I completed my letter summarizing the facts underlying Ms. Battle's efforts from September and October of 1997 to obtain the advice of counsel concerning Zaentz's rights to license video games based on the Tolkien Works.  I explained that Ms. Battle and Mr. Bendich communicated very frequently with outside counsel at the Howard Rice firm concerning Zaentz's video game rights in the month prior to Ms. Battle receiving and annotating the Privileged Document.  In fact, representatives of Zaentz and attorneys from Howard Rice met, telephoned, faxed and emailed at least 24 times in a one-month span.  To summarize these communications, I prepared the following table, which was incorporated into

my letter to Ms. Haye:

| Date | Communication | Client | Attorney | Subject Matter |
|------|---------------|--------|----------|----------------|
| 9/11/97 | Fax | Laurie Battle | Howard Lasky | Computer game rights |
| 9/11/97 | Telephone call | Al Bendich, Laurie Battle | Paul Rogers, Howard Lasky | Computer game rights |
| 9/11/97 | Voicemail | Laurie Battle | Paul Rogers | Computer game rights |
| 9/12/97 | Fax | Laurie Battle | Paul Rogers | Computer game rights |
| 9/12/97 | Telephone call | Laurie Battle | Paul Rogers | Computer game rights |
| 9/17/97 | Telephone call | Laurie Battle | Howard Lasky | Unstated |
| 9/22/97 | Fax | Laurie Battle | Paul Rogers | Computer game rights |
| 9/22/97 | Fax | Laurie Battle | Paul Rogers | Computer game rights; 1969 Agreements |
| 9/22/97 | Telephone call | Laurie Battle | Paul Rogers | 1969 Agreements |
| 9/24/97 | Fax | Laurie Battle | Paul Rogers | Computer game rights & copyright issues; 1969 Agreements |
| 9/25/97 | Meeting | Al Bendich, Laurie Battle | Paul Rogers | Sierra Online proposal |
| 9/29/97 | Fax & draft letter | Laurie Battle | Paul Rogers | Computer game rights |
| 9/29/97 | Fax & draft letter | Laurie Battle | Paul Rogers | Computer game rights |
| 9/29/97 | Fax & attachments | Al Bendich, Laurie Battle | Paul Rogers | Computer game rights; 1969 Agreements |
| 9/29/97 | Telephone call | Laurie Battle | Paul Rogers | Sierra Online proposal |
| 10/1/97 | Fax & attachment | Laurie Battle | Paul Rogers | Computer game proposal from Sierra Online |
| 10/1/97 | Fax; draft letter to HarperCollins | Al Bendich; Laurie Battle | Howard Lasky | Computer game rights; 1969 Agreements |
| 10/1/97 | Fax; draft letter to C. Blackburn | Laurie Battle | Paul Rogers | Computer game rights; 1969 Agreements |
| 10/1/97 | Telephone call | Laurie Battle | Paul Rogers | Computer game rights |
| 10/2/97 | Telephone call | Laurie Battle | Paul Rogers | Computer game rights & draft letter to HarperCollins |

| Date | Communication | Client | Attorney | Subject Matter |
|------|---------------|--------|----------|----------------|
| 10/3/97 | Fax | Al Bendich | Paul Rogers | Film exploitation; negotiations re computer games; letter to C. Blackburn |
| 10/6/97 | Voicemail | Laurie Battle | Paul Rogers | Computer game rights |
| 10/6/97 | Email | Laurie Battle | Paul Rogers | Computer game rights & license proposals |
| 10/8/97 | Fax | Laurie Battle | Paul Rogers | Computer game proposals |
| 10/10/97 | Meeting | Al Bendich, Laurie Battle | Paul Rogers | Sierra Online proposal |

15.     This record shows that in September and October of 1997, Ms. Battle was engaged in extensive discussions in order to seek the advice of outside counsel concerning Zaentz's rights under the 1969 Agreements to license video games on various platforms.  Should the Court so request, Zaentz will submit for review *in camera* representative documents that illustrate this fact, such as: (1) a transcription of a September 11, 1997 voicemail from Ms. Battle to Mr. Rogers requesting legal advice concerning Zaentz's rights to license video games; (2) a September 22, 1997 fax from Ms. Battle to Mr. Rogers seeking legal advice concerning Zaentz's right to license video games under the 1969 Agreements ; and (3) an October 6, 1997 email from Ms. Battle to Mr. Rogers seeking advice on computer game licensing proposals.[1]  While the Tolkien/HC Parties assume that Ms. Battle's annotations to the Privileged Document are unrelated to the advice she had been seeking from outside counsel, and only reflect Ms. Battle's thoughts, the aforementioned documents, specifically the October 6 email, prove that this is not so.  In fact, Ms. Battle used many of the same terms in her privileged and confidential discussions with counsel that are reflected in her annotations to the Privileged Document.

---

[1] If the Court believes it will be of assistance, Zaentz will also submit for *in camera* review the confidential records of Messrs. Lasky's and Rogers' time entries.

16.    In light of the foregoing, I completed and sent to the Tolkien/HC Parties on the afternoon of March 17 a detailed, seven-page letter providing a recitation of these facts, the table reproduced above, other relevant background information concerning the creation of the Privileged Document (including the fact that it was generated and sent at the request of outside counsel Paul Rogers), as well as legal authority establishing that the document is protected by the attorney-client privilege and is also immune from discovery as work-product.  A true and correct copy of my March 17 letter is attached as Exhibit 4 hereto.

17.    On Tuesday, March 18, Ms. Haye wrote to me, stating that notwithstanding the foregoing, the Tolkien/HC Parties would not withdraw or revise their joint stipulation and motion to compel production of the Privileged Document. A true and correct copy of Ms. Haye's letter is attached as Exhibit 5 hereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in San Francisco, California on March 21, 2014.

/s/ Sean. M. Callagy
Sean M. Callagy

34624633v2

DECL. OF SEAN CALLAGY IN OPPOSITION TO PLS.' TO MOTION TO COMPEL

EXHIBIT 1

Rachel Valadez
D: 310.785.6862
F: 310.201.2331
RValadez@GreenbergGlusker.com
File Number: 84971-00003



February 7, 2014

**Via E-Mail and U.S. Mail**

John C. Ulin, Esq.
ARNOLD & PORTER, LLP
777 S. Figueroa Street
Los Angeles, CA 90017-5844

Molly Lens, Esq.
O'MELVENY & MEYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *Fourth Age Limited, et al. v. Warner Bros. Digital Distribution, Inc., et al.*
       (Case No. CV 12-09912 ABC (SHx))

Dear Counsel:

The Tolkien/HC Parties have become increasingly concerned with Warner's and Zaentz's lack of candidness and unreasonable, one-sided approach to discovery and, in particular, document production, in this case. Pursuant to Local Rule 37-1, the Tolkien/HC Parties hereby formally request a meet and confer conference to discuss the following issues with respect to defendants' respective document productions. Please provide a written response to the below by no later than Wednesday, February 12, 2014 and provide your availability for a meet and confer conference on either Tuesday, February 18, 2014 or Wednesday, February 19, 2014. If we are unable to resolve the issues raised herein, we intend to bring Warner's and Zaentz's deficiencies to the Court's attention.

1.    Electronically Stored Information ("ESI") Custodians and Central Files

On October 25, 2013, each of you wrote to me to provide some additional information with regard to your document collection efforts. Recent discovery and meet and confer discussions have, however, raised additional questions with regard to Zaentz's and Warner's ESI collection efforts.

As an initial matter, both Zaentz and Warner have identified certain custodial and non-custodial (central) files collected and reviewed in connection with this matter. Please explain how these files are maintained and the manner in which you went about selecting which files to collect and review. For example, are files maintained both on a custodian's local computer and on some form of shared drive? Is there more than one type of shared drive? If so, what are they? Are there any other locations where relevant ESI may reside? Were individual company laptops and mobile devices searched? Did you collect loose Word, PDF, Excel and other files, or was your collection limited to email files? For all files collected, please describe how all such files are stored, for how

**Greenberg Glusker Fields Claman & Machtinger LLP**
1900 Avenue of the Stars, 21st Floor, Los Angeles, California, 90067
T: 310.553.3610  |  F: 310.553.0687

**GreenbergGlusker.com**

84971-00003/2117560.4

ARNOLD & PORTER, LLP
O'MELVENY & MEYERS LLP
February 7, 2014
Page 2

long and for what times periods were files collected, and what you did to ensure that all relevant files were preserved, collected and reviewed.

Finally, we continue to be concerned by Warner's and Zaentz's practice of producing large volumes of documents on the eve of depositions, including documents directly relevant to the testimony of the individual about to be deposed. Such conduct is blatantly improper and we are confident the Magistrate will not tolerate such gamesmanship. Accordingly, please provide an update as to the status of each of your collection, review and production efforts, including, without limitation, whether there are any additional custodians or sources that remain for you to collect from and/or review, and when you expect your productions to be complete.

Furthermore, we have several additional concerns regarding Warner's ESI collection efforts. First, it is unclear why the files of Gary Stutman and Mark Helm – two individuals included in Warner's initial disclosures under Rule 26, were not included in your list of custodians. Please explain why you believe these individuals' files should not have been collected and reviewed in this case.

Second, as to the parties' ongoing discussions regarding New Line ESI, we remain unclear about the nature and extent of the information you have failed to collect and review due to Warner's claims that such information is not reasonably accessible. (See Molly Lens' November 25, 2013 email to Ricardo Cestero). As to Ben Zinkin and David Imhoff, you stated that their "email, home shares, and documents stored locally on their computers were collected in 2008 during the prior litigation and [you] have collected this ESI." When in 2008 was this collected, what was done to collect this information and was this collection ever updated?

As to David Imhoff, although we understand that he is no longer an employee of the Warner Parties, we understand, based on testimony he provided at his deposition, that he continued to act as a consultant for the Warner Parties in connection with Lord of the Rings related matters for about a year, from the spring of 2008 to mid-2009 (See Imhoff Rough Tr. 14:2-15:5). What, if anything, has been done to collect Mr. Imhoff's ESI from this period when he was working "Primarily as a consultant...in the general Lord of the Rings business?" *Id.* at 21:13-16. Mr. Imhoff also testified that while working on Lord of the Rings related merchandising, no less than eight individuals reported directly to him – "Randi Goodman, John Mayo, Chris Rap(ph), Hardy Hellburn(ph), Mary Ann Doogan(ph), Amy Hankammer(ph), Lourdes Aroshow(ph), Kim Reese(ph)." *Id.* at 18:17-21. Are these and/or any other individuals that worked with Mr. Imhoff on Lord of the Rings related matters still employed by Warner? What if anything was done to collect their relevant ESI? Were any other individuals with ESI relevant to this case terminated when New Line became a part of Warner? What was done to preserve and collect their information, if anything?

Additionally, Warner has repeatedly represented that New Line ESI was collected in connection with the prior litigation. (See Lens' November 25th email to Ricardo Cestero and October 25th letter to me). However, was relevant merchandising ESI collected during that period? As you know, merchandising was not at issue in the prior case. Please explain how relevant ESI was

**GreenbergGlusker.com**

ARNOLD & PORTER, LLP
O'MELVENY & MEYERS LLP
February 7, 2014
Page 3

collected in the prior action and what you or prior counsel did or have done to ensure that relevant merchandising-related ESI was preserved, collected and reviewed in connection with this action. Please provide answers both generally and as to the specific custodians you have identified in both your initial disclosures and your meet and confer correspondence on October 25th and November 25th.

 2. <u>Hardcopy Files</u>

 In Zaentz's and Warner's respective October 25th letters, you represented that Zaentz and Warner were also collecting hardcopy files relevant to this case. Please explain the process you went through in connection with collection from both individual custodians and from shared or central files. For example, how did you determine where relevant files may be stored? Who was in charge of finding out where relevant files may be kept and gathering such files for review? Given Warner's position in its motion to compel, did members of your firms physically travel to Zaentz's and Warner's offices to locate and collect relevant files? If not, on what basis did you assure yourself that all relevant files were collected? Were files collected from the individual custodians' offices or work spaces? Finally, as requested above in connection with ESI, please provide a status update as to your collection, review and production efforts.

 3. <u>Custodian "Metadata"</u>

 As explained in Julia Haye's January 30, 2014 letter and plaintiffs' opposition to Warner's motion to compel production of documents and a privilege log (the "Opposition"), discovery is a two-way street. If the Tolkien/HC Parties are required to provide individual custodian metadata, so should Warner and Zaentz. With respect to ESI, to date, Zaentz has provided custodian data in a manner similar to the Tolkien/HC Parties. Specifically, 5079 documents identify the custodian as "SZC," 685 identify Carole Barrett, 585 identify Tom Magnani, and 8113 documents contain no custodian metadata whatsoever. To the extent defendants continue to request specific custodian information from the Tolkien/HC Parties, please confirm that both Warner and Zaentz will do the same.

 With respect to hard copy documents, Warner has failed to provide custodian data as to 421 hardcopy documents; Zaentz, for its part, listed the custodian of its hard copy documents as "SZC." As explained in the Opposition, the Tolkien/HC Parties believe that the parties do not have an obligation to create file designations for their hard copy documents. However, given that Warner now seeks to require the Tolkien/HC Parties to provide specific custodian designations for their hard copy documents, please specify your position as to how all parties should populate custodian data with respect to hard copy documents, and confirm that Zaentz and Warner will provide reciprocal information.

 4. <u>Prior Counsel's Files</u>

 We have yet to receive the information requested in Ms. Haye's January 30th letter regarding your collection and review of hardcopy and electronic files from Zaentz's and Warner's prior

**GreenbergGlusker.com**

ARNOLD & PORTER, LLP
O'MELVENY & MEYERS LLP
February 7, 2014
Page 4

counsel.  Given Warner's and Zaentz's insistence that plaintiffs collect documents from Manches and Jeremy Nussbaum, please confirm that you have taken steps to collect relevant documents from all prior firms who possess information that may be relevant to this case.  As to Zaentz, these firms include, without limitation, Howard Rice; Kegan, Kegan & Berkman (Kegan & Kegan Ltd.); Arent Fox LLP; Slaff, Mosk & Rudman; Burnstein & Walker; and Bendich & Burnstein.  As to Warner, such firms include, without limitation Munger Tolles & Olson LLP.  To the extent you have already taken steps to collect and review this information (and we assume you have given your positions during the meet and confer leading up to Warner's motion to compel), please describe precisely what you have done to collect, preserve and review both ESI and hard copy documents from these sources, and specify the types of ESI and hard copy files collected.

     5.    Document Preservation Notices

Despite our repeated requests, we have also not received any information with regard to Zaentz's and Warner's documented efforts to preserve any and all information that may be relevant to this case.  In response to Warner's request, the Tolkien/HC Parties have already provided detailed information regarding document preservation notices issued to or by the Tolkien/HC Parties.  As requested in both Ms. Haye's January 30th letter and the Opposition, please immediately confirm which entities or individuals have been issued document preservation notices, including, without limitation, the prior counsel listed above, and the date(s) of any such notice(s).

     7.    Privilege Log Stipulation

As explained in the Opposition, the Tolkien/HC Parties continue to believe that given the enormous scope of document production in this case, the burden of preparing privilege logs likely outweigh their benefit.  As such, we believe the parties should adhere to their original agreement to forego privilege logs altogether.  The Tolkien/HC Parties have articulated this position to the Court and have requested that the Court affirm the parties' original agreement.

However, pending a ruling by the Court in connection with Warner's motion to compel, to the extent Warner continues to seek a privilege log on the part of the Tolkien/HC Parties, please immediately confirm both Zaentz's and Warner's agreement to produce a reciprocal privilege log, identifying as to each communication withheld: (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.

     8.    Zaentz's and Warner's Assertions of Privilege/Redactions

As repeatedly explained during the course of the parties' meet and confer discussions, at the depositions of Laurie Battle, David Imhoff and Ben Zinkin, and most recently in plaintiffs' Opposition, the Tolkien/HC Parties have many questions regarding the privilege assertions made by Zaentz and Warner during the course of this case.

**GreenbergGlusker.com**

ARNOLD & PORTER, LLP
O'MELVENY & MEYERS LLP
February 7, 2014
Page 5

For example, at Ben Zinkin's deposition, Warner made numerous unfounded privilege assertions with respect to his communications with other New Line and/or Warner employees. As you are well aware, Mr. Zinkin, although an attorney, acted in both a legal and business capacity. Is it Warner's position that all communications between Zinkin and any Warner employee are necessarily privileged? If so, please explain on what basis Warner contends as such. If not, please explain how you are distinguishing between legal and non-legal communications and the basis on which any communications are being withheld.

Similarly, Zaentz has seemingly asserted that all communications between Al Bendich, an attorney who worked primarily in a business capacity, and any Zaentz employees are privileged, and has clawed back documents that, on their face, contradict Zaentz's purported privilege claims – even while questions were pending of Laurie Battle at her deposition regarding such documents. Although we intend to address the specific documents at issue in Ms. Battle's deposition under separate cover, including, without limitation, certain documents containing directly relevant handwritten notes of Ms. Battle which were improperly clawed back, please explain whether it is Zaentz's contention that all communications between Mr. Bendich and any Zaentz employee are necessarily privileged, and if so, on what basis Zaentz makes this contention. To the extent Zaentz is distinguishing between different types of Bendich communications with Zaentz employees on privilege grounds, please explain the basis for that distinction and for any communications withheld.

Furthermore, Warner has taken several untenable positions with respect to redactions of plainly unprotected communications as between non-lawyer employees of Warner and as between non-lawyer employees of Zaentz and Warner. For example, Warner has redacted communications between David Imhoff and John Mayo (See WARNER0039359) two non-lawyer Warner Party employees, and as between John Mayo, Fredrica Drotos, Sam Benson and Joe Mandragona – non-lawyer employees of Warner and Zaentz (See WARNER0039442). These are mere examples. Warner has no basis whatsoever for redacting these plainly non-privileged documents. The Tolkien/HC Parties hereby reiterate their demand that unredacted versions of all such non-lawyer communications (including, but not limited to the foregoing examples) be produced immediately. Indeed, the impropriety of Warner's conduct is demonstrated by the fact that at David Imhoff's deposition, Warner's counsel brought with them unredacted, not previously produced versions of some of the previously improperly redacted non-lawyer to non-lawyer communications and provided them to plaintiffs' counsel.

Finally, it is unclear to what extent Zaentz and Warner are taking the position that communications between Zaentz's and Warner's counsel may be protected by some sort of common interest privilege. For example, Warner has redacted some communications between Jeremy Williams and Tom Magnani (See WARNER0039477). As to Warner, please explain on what basis you are redacting any communications as between counsel for Warner and Zaentz. Similarly, as to Zaentz, please explain to what extent, if any, Zaentz contends such communications are protected from disclosure from the attorney client privilege. To the extent that Warner and/or Zaentz are taking such a position, please further explain the timeframe(s) during which you contend any such privileges attach.

**GreenbergGlusker.com**

ARNOLD & PORTER, LLP
O'MELVENY & MEYERS LLP
February 7, 2014
Page 6

8.    Other Problems with Zaentz's and Warner's Productions to Date

We have also observed several other issues with Zaentz's and Warner's productions.

As to Zaentz, we have noticed that multiple emails appear to be incomplete and or produced in a defective manner.  (See e.g., SZC0048952 (missing second page), SZC0048978 (cutoff text at bottom suggesting missing second page) SZC0035179 (missing attachment), SCZ0046224 (indicating attachment was removed) SZC0047924 (missing attachment)).  These are merely examples.  Many of your documents appear to be missing pages and/or attachments.  Please explain why these documents have been produced in this defective manner, provide any missing information in your possession, and explain whether you believe these represent isolated incidents or if there is some more global explanation for these defects.  Of course, it is Zaentz's obligation to ensure accurate and complete versions of all responsive documents are produced.

Furthermore, we have additional concerns with regard to Zaentz's collection and production of Laurie Battle's email.  It is our understanding that the abundance of missing date information and inappropriate text is not a result of the way the emails were archived (as Sean Callagy indicated in his August 8, 2013 email), but rather, as a result of the conversion process during collection.  To that extent, it is Zaentz's obligation to either recollect and reprocess this data; or provide us with an appropriate overlay file.

Warner has also produced several documents that appear to be missing attachments.  (See e.g. WARNER0004893, WARNER0004894, WARNER0042929, WARNER0042930-WARNER0042931, WARNER0027145- WARNER0027147).  As with Zaentz, these are mere examples.  Please similarly explain why these documents have been produced in this defective manner, provide any missing information in your possession, and explain whether you believe these represent isolated incidents or if there is some more global explanation for these deficiencies.  Accurate and complete versions of all responsive documents must be produced.

9.    Warner Chain of Title Analysis

In Ben Zinkin's deposition, he testified that New Line had hired Don Gordon at Leopold Petrich & Smith to perform a chain of title analysis at the time New Line acquired its rights in the Tolkien Works.  Mr. Zinkin explained that Mr. Gordon was responsible for analyzing what rights had been conveyed to Zaentz, and, by extension, Miramax.  According to Mr. Zinkin, Mr. Gordon's report was provided to MGM during negotiations of an agreement between MGM and New Line related to financing and producing the Hobbit movies.  Given that Mr. Gordon's report was provided to an adversary in negotiations, any privilege that may have attached to that report has been waived.  *See Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  Accordingly, we hereby demand that Warner produce a copy of Mr. Gordon's report and any related correspondence with MGM forthwith.

**GreenbergGlusker.com**

ARNOLD & PORTER, LLP
O'MELVENY & MEYERS LLP
February 7, 2014
Page 7

       10.    <u>Response to Winthrop Letter</u>

     During Tom Magnani's deposition, he testified extensively regarding a September 1, 2004
letter from Douglas Winthrop to Ben Zinkin regarding New Line's breach of various merchandising
agreements as a result of New Line's licensing of gambling-related activities (the "Winthrop Letter").
Despite Mr. Magnani's testimony that New Line "vehemently denied all of the accusations that were
made in this letter," and that the parties thereafter "negotiated around this issue for quite some time,"
neither Warner or Zaentz have produced New Line's response to the Winthrop Letter, or the
inevitable correspondence reflecting the resulting negotiations. (Rough Tr. 294:10-13). It is
unfathomable that New Line would fail to provide a written response to such a detailed piece of
correspondence. The response to the Winthrop Letter and related communications are
unquestionably relevant to one of the key issues in this case. Copies of the responsive letter and
related communications must be produced immediately.

     We look forward to your confirmation of your availability to attend a meet and confer on
either 2/18 or 2/19.

                               Best,

                               Rachel Valadez

RV/RV

cc:   Sean M. Callagy
      Martin R. Glick
      Robert D. Hallman
      Victor Jih
      Daniel Petrocelli
      Nikolas A. Primack

**GreenbergGlusker.com**

EXHIBIT 2

**Callally, Sean M.**

| | |
|---|---|
| **From:** | Callagy, Sean M. |
| **Sent:** | Saturday, March 15, 2014 10:59 AM |
| **To:** | 'Valadez, Rachel' |
| **Cc:** | 'Lens, Molly' (mlens@omm.com); Jih, Victor (vjih@omm.com); Petrocelli, Daniel (dpetrocelli@omm.com); Primack, Nikolas A. (nprimack@omm.com); Hallman, Robert D.; Glick, Martin R.; Ulin, John C.; Eskenazi, Bonnie; Moriarty, Elisabeth; Cestero, Ricardo; Haye, Julia |
| **Subject:** | RE: Fourth Age Ltd. |

Rachel (and Molly):

First, we demand that all parties delete the Exhibits to the Haye Declaration circulated yesterday evening. That document improperly contains a scan of the document recalled by SZC at the January 17 deposition of Laurie Battle.  The protective order does not permit you to scan and email around privileged documents for the purpose of making your motion.  Rather, the protective order provides that, if you timely move to challenge the privilege designation (a matter about which we will continue to disagree), you "shall be permitted to keep only one copy of the Privileged Document for the sole purpose of filing such copy with the Court under seal when making its motion."  ECF 87, at 12.  Emailing the documents creates many additional copies.  I ask that someone confirm on behalf of the Warner and Tolkien/HC parties **today** that this will be done.  Rachel, you may then circulate a new version of the Exhibits **without** the recalled document.

Second, we were surprised to see your email circulating a joint stipulation.  In my letter sent the evening of March 13, which followed our lengthy meet and confer call that afternoon, I provided you with information about two of the recalled documents (which information apparently persuaded you that the documents are indeed privileged).  I told you that we were still investigating Exhibit 92 and would write again soon.  Only 24 hours later you sent us the stipulation.  How can you conclude that we are at an impasse when there are relevant facts that are still unknown to you?  I anticipate providing those to you by letter on Monday.  Once you are apprised of the facts, you will see that the document initially marked as Exhibit 92 is privileged.  At the very least, that information will need to be accounted for in your portion of the joint stipulation and will require edits to Ms. Haye's declaration.  If you continue to disagree as to the privilege, well *then* you can send us a new joint stipulation.  Otherwise, you will be disregarding the Magistrate's clear instruction to abide by the procedures of Local Rule 37-1.

Have a pleasant rest of your weekend,
Sean

**From:** Valadez, Rachel [mailto:rvaladez@greenbergglusker.com]
**Sent:** Friday, March 14, 2014 6:54 PM
**To:** Callagy, Sean M.
**Cc:** 'Lens, Molly' (mlens@omm.com); Jih, Victor (vjih@omm.com); Petrocelli, Daniel (dpetrocelli@omm.com); Primack, Nikolas A. (nprimack@omm.com); Hallman, Robert D.; Glick, Martin R.; Ulin, John C.; Eskenazi, Bonnie; Moriarty, Elisabeth; Cestero, Ricardo; Haye, Julia
**Subject:** Fourth Age Ltd.

Sean,

Attached please find the Tolkien/HC Parties' portion of a Joint Stipulation re: Motion to Compel Zaentz to Produce Improperly Clawed Back Document, along with Julia Haye's supporting declaration, a proposed order and Ricardo Cestero's cover letter.

Best,

Rachel

**Rachel Valadez** | **Attorney at Law** | Biography
D: 310.785.6862 | F: 310.201.2331 | RValadez@greenbergglusker.com

**Greenberg Glusker Fields Claman & Machtinger LLP**
1900 Avenue of the Stars, 21st Floor, Los Angeles, CA 90067
O: 310.553.3610 | GreenbergGlusker.com

**IRS Circular 230 Disclosure:**
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax related penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

EXHIBIT 3

## Callagy, Sean M.

| | |
|---|---|
| **From:** | Cestero, Ricardo [rcestero@greenbergglusker.com] |
| **Sent:** | Sunday, March 16, 2014 10:40 AM |
| **To:** | Callagy, Sean M.; Valadez, Rachel |
| **Cc:** | 'Lens, Molly' (mlens@omm.com); Jih, Victor (vjih@omm.com); Petrocelli, Daniel (dpetrocelli@omm.com); Primack, Nikolas A. (nprimack@omm.com); Hallman, Robert D.; Glick, Martin R.; Ulin, John C.; Eskenazi, Bonnie; Moriarty, Elisabeth; Haye, Julia |
| **Subject:** | RE: Fourth Age Ltd. |

Sean-

We do not believe the protective order prohibits us from serving you with copies of what we intend to submit to the Court. We included the exhibit with the declaration because we are required under Local Rule 37 to give you notice of everything we're relying on as support for our portion of the Joint Stipulation, which includes the items being filed under seal. If, as you suggest, the protective order were read to prohibit parties from serving copies of the disputed document with a motion challenging a privilege assertion, none of the parties could ever comply with both Local Rule 37 and the protective order. Accordingly, we believe the provision of the protective order allowing a party to keep a copy of the document in order to make a motion must be read to allow full compliance with Local Rule 37. However, if SZC and Warner will stipulate that, where an exhibit to a declaration is going to be filed under seal, we are permitted to serve incomplete copies of the supporting declaration which excludes the document to filed under seal without violating the terms of Local Rule 37, then we will delete the scan we emailed to you on Friday and send you a redacted version as a replacement.

As for your assertions regarding the parties' meet and confer efforts, we believe we've reached an impasse. As we discussed the on the on Thursday, Laurie Battle's notes and highlighting do not possibly qualify as either attorney work product or attorney client communications. To be clear, given Ms. Battle's testimony and the information you have provided to us, it is absolutely clear that the notes and highlight on this document do not reflect communications between an attorney and a regarding legal advice. All of the evidence demonstrates that Ms. Battle made these notes and highlighting on her own, before she discussed this letter with counsel. As for your work product contention, the authority you sent on Thursday only confirms our position that Ms. Battle's notes and highlighting cannot possibly be protected as attorney work product. In light of all of this, we simply do not believe your privilege assertion is at all tenable. However, as I said in my cover letter, if you have additional information which you believe will affect this analysis, we of course will review and consider it in good faith.

In any event, if we are unable to resolve this issue informally during the week, we expect to receive your portion of the joint stipulation on Friday.

Regards,
Ricardo

---

**From:** Callagy, Sean M. [mailto:Sean.Callagy@aporter.com]
**Sent:** Saturday, March 15, 2014 10:59 AM
**To:** Valadez, Rachel
**Cc:** 'Lens, Molly' (mlens@omm.com); Jih, Victor (vjih@omm.com); Petrocelli, Daniel (dpetrocelli@omm.com); Primack, Nikolas A. (nprimack@omm.com); Hallman, Robert D.; Glick, Martin R.; Ulin, John C.; Eskenazi, Bonnie; Moriarty, Elisabeth; Cestero, Ricardo; Haye, Julia
**Subject:** RE: Fourth Age Ltd.

Rachel (and Molly):

First, we demand that all parties delete the Exhibits to the Haye Declaration circulated yesterday evening. That document improperly contains a scan of the document recalled by SZC at the January 17 deposition of Laurie Battle.  The protective order does not permit you to scan and email around privileged documents for the purpose of making your motion.  Rather, the protective order provides that, if you timely move to challenge the privilege designation (a matter about which we will continue to disagree), you "shall be permitted to keep only one copy of the Privileged Document for the sole purpose of filing such copy with the Court under seal when making its motion."  ECF 87, at 12.  Emailing the documents creates many additional copies.  I ask that someone confirm on behalf of the Warner and Tolkien/HC parties **today** that this will be done.  Rachel, you may then circulate a new version of the Exhibits **without** the recalled document.

Second, we were surprised to see your email circulating a joint stipulation.  In my letter sent the evening of March 13, which followed our lengthy meet and confer call that afternoon, I provided you with information about two of the recalled documents (which information apparently persuaded you that the documents are indeed privileged).  I told you that we were still investigating Exhibit 92 and would write again soon.  Only 24 hours later you sent us the stipulation.  How can you conclude that we are at an impasse when there are relevant facts that are still unknown to you?  I anticipate providing those to you by letter on Monday.  Once you are apprised of the facts, you will see that the document initially marked as Exhibit 92 is privileged.  At the very least, that information will need to be accounted for in your portion of the joint stipulation and will require edits to Ms. Haye's declaration.  If you continue to disagree as to the privilege, well *then* you can send us a new joint stipulation.  Otherwise, you will be disregarding the Magistrate's clear instruction to abide by the procedures of Local Rule 37-1.

Have a pleasant rest of your weekend,
Sean

**From:** Valadez, Rachel [mailto:rvaladez@greenbergglusker.com]
**Sent:** Friday, March 14, 2014 6:54 PM
**To:** Callagy, Sean M.
**Cc:** 'Lens, Molly' (mlens@omm.com); Jih, Victor (vjih@omm.com); Petrocelli, Daniel (dpetrocelli@omm.com); Primack, Nikolas A. (nprimack@omm.com); Hallman, Robert D.; Glick, Martin R.; Ulin, John C.; Eskenazi, Bonnie; Moriarty, Elisabeth; Cestero, Ricardo; Haye, Julia
**Subject:** Fourth Age Ltd.

Sean,

Attached please find the Tolkien/HC Parties' portion of a Joint Stipulation re: Motion to Compel Zaentz to Produce Improperly Clawed Back Document, along with Julia Haye's supporting declaration, a proposed order and Ricardo Cestero's cover letter.

Best,

Rachel

**Rachel Valadez  |  Attorney at Law |** Biography
D: 310.785.6862 **|** F: 310.201.2331  **|**  RValadez@greenbergglusker.com

**Greenberg Glusker Fields Claman & Machtinger LLP**
1900 Avenue of the Stars, 21st Floor, Los Angeles, CA 90067

O: 310.553.3610 **|** GreenbergGlusker.com

**IRS Circular 230 Disclosure:**
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax related penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

-------------------------------------------------------------------------
For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com

EXHIBIT 4

# ARNOLD & PORTER LLP

**Sean M. Callagy**
Sean.Callagy@aporter.com

+1 415.471.3107
+1 415.471.3400 Fax

10th Floor
Three Embarcadero Center
San Francisco, CA 94111-4024

March 17, 2014

**VIA EMAIL**

Julia Haye
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA  90067

> Re:   *Fourth Age Limited et al. v. Warner Bros. Digital Distribution et al.*, Case No. CV 12-09912 ABC (SHx)

Dear Julia:

This letter concerns the privileged document initially marked as Exhibit 92 and recalled by Mr. Ulin at the January 17 deposition of Laurie Battle.  You prematurely circulated a stipulation on March 14, barely 24 hours after you requested—and I agreed to provide—additional information about the document.  As a result, your stipulation rests entirely on guesswork.  The information in this letter refutes those guesses and undermines the basis of your proposed motion.

We first reiterate that by waiting 52 days to formally object to SZC's assertion of privilege, you have forfeited your ability to retain the document for the purpose of submitting it to the Court under seal and are in violation of your obligations under the Protective Order.[1]  We demand an answer by the close of business on tomorrow to my question of how many of SZC's recalled documents you continue to retain.  This is a very simple question.  SZC has long since complied with the protective order and has destroyed all documents recalled by the Tolkien/HC Parties.

Your motion relies on assumptions Ms. Battle made concerning her annotations to Exhibit 92, and unwarranted conclusions you strain to draw from those assumptions.  Ms. Battle speculated about events that took place over 16 years before her deposition.  Based

---

[1] You violated the protective order a second time by scanning the document and emailing it to everyone involved in this case on the evening of March 14.  We appreciate Mr. Cestero's agreement to have those unauthorized copies deleted.

ARNOLD & PORTER LLP

Julia Haye
March 17, 2014
Page 2

upon this alone, you assert that Ms. Battle's annotations were made prior to discussing these issues with counsel and independent of any advice counsel had provided. The record refutes these premises. However, we must correct your misrepresentations of Ms. Battle's deposition testimony. In your letter of March 10 (and again in your proposed joint stipulation), you described and selectively quoted Ms. Battle's testimony as follows:

> Ms. Battle further testified that she had no recollection of discussing the document with a lawyer before annotating it and no recollection of any lawyer directing her to annotate it. Rather, Ms. Battle testified that it was "probably something [she] did for her own thought purposes."

Letter from J. Haye, 3/10/14 (citing Battle Depo. at 171:14-172:14); *see also* Joint Stipulation at 4:22-26. Your letter conspicuously omits both the first part of the sentence, where Ms. Battle explains that she is making an assumption about what she did, and the final words of the same sentence, where Ms. Battle explains the *purpose* of the annotations. The full question and answer read as follows:

Q.    Uh-huh. Was there any lawyer who directed you to annotate this document?

A.    **If you have a copy that's marked up in my hand, that's** probably something that I did for my own thought purposes **of then discussing things with legal counsel**.

Battle Depo. at 171:14-19 (emphasis added to portions omitted by you). You have also failed to note that Ms. Battle testified that she consulted with Mr. Bendich (SZC's in-house counsel) concerning the document, and likely consulted with outside counsel as well. *Id.* 170:15-171:6.

As opposed to Ms. Battle's guesswork about events that took place sometime during the Clinton administration, the actual documentary record illustrates that Ms. Battle did receive the advice of counsel prior to, upon, and after receiving the document that was marked as Exhibit 92. In order to investigate the background of this document, we reviewed all relevant contemporaneous correspondence, the bulk of which is

# ARNOLD & PORTER LLP

Julia Haye
March 17, 2014
Page 3

privileged and confidential.  We also examined Howard Rice's privileged and
confidential time records from that time period.  As these records make clear, Ms.
Battle's annotations on Exhibit 92 reflect extensive and ongoing privileged and
confidential communications and advice of outside counsel.  Below is a table of such
communications from approximately mid-September to mid-October of 1997:

| Date | Communication | Client | Attorney | Subject Matter |
|------|---------------|--------|----------|----------------|
| 9/11/97 | Fax | Laurie Battle | Howard Lasky | Computer game rights |
| 9/11/97 | Telephone call | Al Bendich, Laurie Battle | Paul Rogers, Howard Lasky | Computer game rights |
| 9/11/97 | Voicemail | Laurie Battle | Paul Rogers | Computer game rights |
| 9/12/97 | Fax | Laurie Battle | Paul Rogers | Computer game rights |
| 9/12/97 | Telephone call | Laurie Battle | Paul Rogers | Computer game rights |
| 9/17/97 | Telephone call | Laurie Battle | Howard Lasky | Unstated |
| 9/22/97 | Fax | Laurie Battle | Paul Rogers | Computer game rights |
| 9/22/97 | Fax | Laurie Battle | Paul Rogers | Computer game rights; 1969 Agreements |
| 9/22/97 | Telephone call | Laurie Battle | Paul Rogers | 1969 Agreements |
| 9/24/97 | Fax | Laurie Battle | Paul Rogers | Computer game rights & copyright issues; 1969 Agreements |
| 9/25/97 | Meeting | Laurie Battle, Al Bendich | Paul Rogers | Sierra Online proposal |
| 9/29/97 | Fax & draft letter | Laurie Battle | Paul Rogers | Computer game rights |
| 9/29/97 | Fax & draft letter | Laurie Battle | Paul Rogers | Computer game rights |
| 9/29/97 | Fax & attachments | Laurie Battle, Al Bendich | Paul Rogers | Computer game rights; 1969 Agreements |
| 9/29/97 | Telephone call | Laurie Battle | Paul Rogers | Sierra Online proposal |
| 10/1/97 | Fax & attachment | Laurie Battle | Paul Rogers | Computer game proposal from Sierra Online |
| 10/1/97 | Fax; draft letter to HarperCollins | Al Bendich; Laurie Battle | Howard Lasky | Computer game rights; 1969 Agreements |

# ARNOLD & PORTER LLP

Julia Haye
March 17, 2014
Page 4

| Date | Communication | Client | Attorney | Subject Matter |
|------|---------------|--------|----------|----------------|
| 10/1/97 | Fax; draft letter to C. Blackburn | Laurie Battle | Paul Rogers | Computer game rights; 1969 Agreements |
| 10/1/97 | Telephone call | Laurie Battle | Paul Rogers | Computer game rights |
| 10/2/97 | Telephone call | Laurie Battle | Paul Rogers | Computer game rights & draft letter to HarperCollins |
| 10/3/97 | Fax | Al Bendich | Paul Rogers | Film exploitation; negotiations re computer games; letter to C. Blackburn |
| 10/6/97 | Voicemail | Laurie Battle | Paul Rogers | Computer game rights |
| 10/6/97 | Email | Laurie Battle | Paul Rogers | Computer game rights & license proposals |
| 10/8/97 | Fax | Laurie Battle | Paul Rogers | Computer game proposals |
| 10/10/97 | Meeting | Laurie Battle, Al Bendich | Paul Rogers | Sierra Online proposal |

The foregoing record illustrates what Ms. Battle was unable to recall in 2014: that prior to receiving the October 8, 1997 fax, Ms. Battle was in near-constant communication with outside counsel concerning SZC's video game rights under the 1969 Agreements and proposals by Sierra Online and others to license and exploit those rights. Based on our review of these privileged records, it appears that outside counsel was directly involved in discussions with Sierra Online concerning its proposal, and that Mr. Bock actually sent the October 8 fax *at the request of Mr. Rogers*. Mr. Rogers' time entries show that he reviewed the proposal on October 8—the day it was sent. Mr. Bock sent an email on Thursday, October 9, 1997 to both Ms. Battle and Mr. Rogers to provide clarification of certain figures. *See* SZC0028314. These only prove that outside counsel was involved at every stage of this process.

After Ms. Battle received the fax from Mr. Bock late in the afternoon of October 8, 1997, she discussed its contents at an in-person meeting with outside counsel Paul

# ARNOLD & PORTER LLP

Julia Haye
March 17, 2014
Page 5


Rogers and in-house counsel Al Bendich.  This meeting was held on Friday, October 10, 1997, at 11:00 a.m. at SZC's offices in Berkeley and lasted approximately one hour.  The most likely conclusion that can be drawn is that Ms. Battle made the annotations at that meeting and therefore the annotations reflect privileged communications of in-house and outside counsel.  However, even if Ms. Battle's guess is correct—that she made the annotations prior to meeting with counsel—it cannot be doubted that she made those annotations in connection with ongoing, privileged discussions and for the sole purpose of continuing to seek outside counsel's legal advice at the meeting.

In sum, Ms. Battle's annotations reflect confidential communications and advice of outside counsel.  The annotations were made for the ongoing purpose of seeking legal advice and discussing the document with counsel.  The document is privileged.

In addition, Ms. Battle's annotations to the document relate to a matter for which SZC and HarperCollins had recently expressed sharp disagreement—the scope of the respective parties' video game rights.  Malcolm Burnstein, outside counsel for SZC, wrote to HC in May of 1996 to put HC on notice that it had been violating SZC's rights in computer games for several years.  Adrian Laing, counsel for HC, wrote back two months later to concede that HC had overstepped its rights in some respects.  However, Mr. Laing disagreed with Mr. Burnstein in other regards concerning the scope of SZC's rights.  Thus, there was a significant probability that, whatever SZC authorized Sierra Online to do, HC would initiate litigation.  For this very reason, SZC was actively seeking the advice of counsel when discussing proposals from Sierra Online and others.  It is precisely this advice that is reflected in Ms. Battle's annotations.  The likelihood that litigation would ensue remained in place throughout this time period, and did not dissipate until sometime later, when Ms. Blackburn conceded that SZC's license to Sierra was "validly granted."  The fact that the Tolkien and HC Parties failed to initiate a lawsuit for well over a decade, despite their knowledge of SZC's licensing activities, does not undermine the fact that at the time the document was generated, litigation was imminent.

You seem to think that because Ms. Battle didn't recall if an attorney instructed her to annotate the document, it cannot be privileged.  This gets the attorney-client privilege backwards: the privilege exists to protect the *client's* efforts to seek the advice

# ARNOLD & PORTER LLP

Julia Haye
March 17, 2014
Page 6

of counsel, which was Ms. Battle's stated purpose here.  Numerous legal authorities show that the document is protected by both the attorney-client privilege and the work-product doctrine.  As explained by a leading treatise:

> [N]otes which a client makes to tell his attorney or to ask him regarding certain matters as to which he may be seeking legal advice would retain an attorney-client privilege aspect, even if taken before an attorney was actually retained or possibly even if never communicated to an attorney directly.  It should be sufficient if their purpose and intent was an *aide memoire* for the client when meeting with the attorney.  Under the express wording of Rule 26(b)(3), namely "by or for a party" such note would also qualify as work-product protected.

Edna Selan Epstein, *The Attorney-Client Privilege & The Work-Product Doctrine* 130-131 (5th ed. 2007).

Courts widely recognize that notes taken by a client that reflect the advice of counsel or are made for the purpose of seeking legal advice, especially during ongoing discussions with counsel, are privileged.  *See, e.g.*, *United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006) (per curiam) ("Certainly, an outline of what a client wishes to discuss with counsel—and which is subsequently discussed with one's counsel—would seem to fit squarely within our understanding of the privilege"); *Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93, 96 (W.D.N.Y. 1999) (notes made for purpose of seeking legal advice from an attorney were protected); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2009 WL 2905898, at *2 (N.D. Cal. Sept. 10, 2009) (notes taken by non-attorney employee to "remember things [he] wanted to discuss with the attorneys" protected as privileged); *Bernbach v. Timex Corp.*, 174 F.R.D. 9, 10 (D. Conn. 1997) ("The court finds that Mrs. Sundholm's notebooks satisfy the elements of the attorney-client privilege.  The notes contained in the notebooks were made for the purpose of informing Mrs. Sundholm's attorneys about events and conditions Mrs. Sundholm felt her attorney needed to know in order to represent her in this action.  The notes were therefore made by Mrs. Sundholm for the purpose of seeking legal advice for her attorney.  The notes also constitute a communication from Mrs. Sundholm to her attorney.  The fact that Attorney Renehan did not read the notes contemporaneously with their creation does not change

ARNOLD & PORTER LLP

Julia Haye
March 17, 2014
Page 7

the fact that the notes were created by the client to communicate with her attorney to get legal advice.").

The foregoing facts and law show that the document in issue is both privileged and protected by the work-product doctrine.  We ask that you confirm you will destroy all copies of this and all other privileged documents that you have improperly retained. Should you nevertheless wish to raise this issue with the Magistrate, you will need to take account of the foregoing information in any motion you submit.  We must know if we will need to respond to the prematurely circulated stipulation of March 14, or whether you will prepare a new stipulation.  Please inform us of your intentions no later than the close of business on March 18.  If you fail to do so, we will seek to recover our fees for time spent unnecessarily responding to a moot stipulation.

Sincerely,

Sean M. Callagy

Cc: Molly Lens

EXHIBIT 5



**Julia R. Haye**
D:  310.201.7432
F:  310.201.2370
JHaye@GreenbergGlusker.com
File Number: 84971-00003

March 18, 2014

**Via E-Mail and U.S. Mail**

Sean M. Callagy
Arnold & Porter LLP
7th Floor
Three Embarcadero Center
San Francisco CA 94111-4024

Re:   *Fourth Age Limited, et al. v. Warner Bros. Digital Distribution, Inc., et al.* (Case No. CV 12-09912 ABC (SHx))

Dear Sean:

I write in response to your March 17, 2014 letter regarding the document marked as Exhibit 92 at the January 17 deposition of Laurie Battle, which was improperly clawed back by Zaentz on purported privilege grounds.  Your letter only confirms that Exhibit 92 is not privileged, and that Zaentz's privilege assertions are based on sheer speculation and unfounded assumptions.  For each of the reasons explained below, plaintiffs will not withdraw their Joint Stipulation.

As a preliminary matter, your March 17 letter appears intentionally designed to sandbag plaintiffs and preclude us from seeking relief from the Magistrate prior to the April 15 discovery cut-off.  Given that there is nothing on the face of Exhibit 92 to indicate that Ms. Battle's annotations were in any way privileged (which they are not), you had an obligation to perform the investigation described in your letter <u>before</u> clawing back the document.  You also were obliged to disclose this investigation, and the basis of your privilege assertions, during our March 13 meet and confer call, as we had put you on notice that we intended to discuss the subject during the call and to raise the issue with the Magistrate if we were unable to reach agreement.  Instead, you withheld the information until March 17, knowing full well that the deadline for plaintiffs to serve a Joint Stipulation in time to be heard prior to the discovery cut-off was March 14.  Your suggestion that plaintiffs should have waited until after this deadline to file their Joint Stipulation – which would likely preclude the hearing of their motion – is absurd.

In any event, nothing contained in your March 17 letter changes our analysis of the issue or suggests in any way that the Joint Stipulation served on Friday is improper or moot.  To the contrary, your investigation and the discussion contained in your letter only serve to emphasize that Exhibit 92 is not privileged and should not be withheld.  You suggest that in her deposition, Ms. Battle "speculated" about her own intentions and annotations.  The only person who is speculating and reaching wholly unfounded conclusions, however, is you. You assume the "most likely conclusion" is that Ms. Battle annotated the document two days after receiving it during a

**Greenberg Glusker Fields Claman & Machtinger LLP**
1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067
T:  310.553.3610  |  F:  310.553.0687

**GreenbergGlusker.com**

84971-00003/2142004.2

Sean M. Callagy
March 18, 2014
Page 2

meeting with counsel – a conclusion which is directly contrary to Ms. Battle's own recollection concerning when she took her notes.

The rest of your analysis is likewise sheer speculation.  There is no evidence whatsoever that counsel directed Ms. Battle to make the annotations, that Ms. Battle discussed these annotations with counsel or that the notes were made contemporaneously with a discussion with counsel.  Indeed, your letter confirms that Ms. Battle did not even discuss the Sierra Online proposal with counsel for two days after receiving it.  Nor have you established that those later discussions with counsel even touched on the "tangibility" issue noted by Ms. Battle days earlier. If anything, it appears that Ms. Battle's later discussions with counsel addressed the financial terms and viability of the proposal being made by Sierra.  The Sierra fax itself is a business proposal containing a profit analysis; there is no discussion in the proposal about scope of rights or the limits on what Sierra could or could not do, nor is there any indication that Ms. Battle was seeking legal advice concerning the subject of scope of rights or "tangibility."

Even if we were to accept your speculative theory that the "most likely conclusion" is that Ms. Battle made her annotations two days later during a meeting with outside counsel, Ms. Battle's testimony makes manifestly clear that her handwritten "tangibility" notation was not intended to be a confidential attorney-client communication.  Rather, Ms. Battle testified that she expressly discussed the "tangibility" requirement with Mr. Bock.   Specifically, Ms. Battle testified:

> Q:	And did you discuss with Mr. Bock that – that it was required that he did have a boxed element or a tangible physical element of – of the online multi – Massively Multiplayer game?
>
> A:	Multiplayer role playing, if I remember right.
>
> [Objections omitted.]
>
> A:	I believe so.
>
> Q:	And what did you tell him?
>
> A:	That the game needed to have a box with it.
>
> Q:	And he said that's fine?
>
> A:	That's what they do, yeah.

Deposition of Laurie Battle, at 172:16-173:6.

GreenbergGlusker.com

Sean M. Callagy
March 18, 2014
Page 3

The foregoing testimony underscores that Ms. Battle intended to communicate, and did in fact communicate, the so-called "privileged" tangibility note with a third party.  For this additional reason, Zaentz's privilege claim fails.

As for your unfounded accusations that we have allegedly violated the Protective Order, as Mr. Cestero explained in detail during our March 13 meet and confer call, you have misconstrued and misinterpreted the provisions of the Protective Order.  As previously explained, the Protective Order clearly permits a party to keep a copy of the allegedly privileged document for the purpose of filing such copy with the Court under seal – which is precisely what plaintiffs have done.  The permissive language of the Protective Order does not require that a motion be filed within 30 days in order to permit a party to retain a copy of the document.  And, in any event, we told you – on no less than three occasions – that we would be retaining a single copy of the document for purposes of challenging Zaentz's privilege assertions, to which Zaentz never previously objected.  Your position is entirely without merit.

Finally, your "demand" that we inform you if we continue to retain any additional documents which have been clawed back by Zaentz appears to completely ignore Mr. Cestero's March 14 letter.  Mr. Cestero explained that we would not be challenging Zaentz's designations to Exhibit 108 or SZC0009178, that we would destroy those documents, and that we would also double-check to confirm that no additional recalled documents have been inadvertently retained anywhere on our system.  We have now confirmed that, other than a copy of Exhibit 92, we have deleted all copies of all other documents recalled by Zaentz, with the exception of Exhibit 108, which was attached as an exhibit to Ms. Battle's deposition transcript by the Court Reporter.  A copy of this document is contained in Ms. Battle's deposition transcript, which we assume is the same for all parties.  Provided that all parties agree to delete Exhibit 108 and remove it from their copies of Ms. Battle's deposition transcript (hard copy and/or electronic), we will do the same.

We expect to receive your portion of the Joint Stipulation by Friday.  We have not yet served a version of the Haye Declaration which omits Exhibit 92 because we are awaiting Warner's agreement to the stipulation proposed by Mr. Cestero in his March 16 email that service of incomplete copies of the supporting declaration which excludes Exhibit 92 will not violate Local Rule 37.  As soon Warner confirms its agreement, we will do so immediately.

Sincerely,

Julia R. Haye

JRH/rm

Sean M. Callagy
March 18, 2014
Page 4


cc:     John C. Ulin
        Martin R. Glick
        Robert D. Hallman
        Victor Jih
        Daniel Petrocelli
        Nikolas A. Primack

GreenbergGlusker.com