BONNIE E. ESKENAZI (SBN 119401)
BEskenazi@ggfirm.com
ELISABETH A. MORIARTY (SBN 156569)
EMoriarty@ggfirm.com
RICARDO P. CESTERO (SBN 203230)
RCestero@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiffs and Counterclaim Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, INC., et al.,<br><br>Defendants.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, INC., et al.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>FOURTH AGE LIMITED, et al.,<br><br>Counterclaim Defendants. | Case No. CV 12-09912 ABC (SHx)<br><br>*Hon. Audrey B. Collins*<br>*Hon. Stephen J. Hillman*<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORNADUM IN SUPPORT OF MOTION TO COMPEL THE SAUL ZAENTZ COMPANY TO PRODUCE IMPROPERLY CLAWED BACK DOCUMENT**<br><br>[Fed. R. Civ. P. 37(a) and Central Dist. Local Rule 37-2]<br><br>**[SUPPLEMENTAL DECLARATION OF JULIA R. HAYE FILED CONCURRENTLY HEREWITH]**<br><br>**Hearing Date**: April 16, 2014<br>**Hearing Time**: 2:00 p.m.<br>**Hearing Place**: Ctrm. 550, Roybal Building<br>**Discovery Cut-Off**: April 15, 2014<br>**Action Filed**: November 19, 2012<br>**Trial, Pretrial Conf., and Motion Cutoff**: Vacated |

1. <u>Zaentz mischaracterizes the parties' discussions both before and after plaintiffs served their portion of the Joint Stipulation and the underlying facts concerning the Document.</u>[1] Immediately after plaintiffs served their Joint Stipulation, Zaentz wrote to plaintiffs purporting to justify its privilege assertions. Supplemental Declaration of Julia R. Haye ("Supp. Haye Decl.") ¶ 2. Zaentz suggests that its purported explanation mooted plaintiffs' motion. Zaentz's March 17 letter only serves to emphasize that the Document is not privileged.[2]

Ms. Battle testified that she wrote the subject handwritten notes without discussing the Document with counsel and without being directed to annotate the Document by counsel. Zaentz glibly dismisses Ms. Battle's testimony, suggesting that she "speculated" about her own intentions and annotations. Callagy Decl., Exh. 4. Zaentz then offers two entirely different theories of when and for what purpose Ms. Battle allegedly made her notes, both of which are sheer speculation.

Zaentz initially speculated that the "most likely conclusion" is that Ms. Battle annotated the Document <u>two days after</u> receiving it during a meeting with counsel – a conclusion which is not only <u>unlikely</u>, but contrary to Ms. Battle's own testimony. *Id*. Apparently recognizing the absurdity of its argument, Zaentz now argues that Ms. Battle allegedly made her notes for the purpose of discussing them with counsel. Zaentz's new theory misconstrues Ms. Battle's testimony and the law.

When Ms. Battle testified that she "probably" made the notes "**for [her] own thought purposes** of then discussing things with legal counsel," Ms. Battle did not have the Document in front of her – Zaentz <u>refused</u> to allow Ms. Battle to examine a copy of her own notes. Although Zaentz – who bears the burden of proof to establish privilege (*U.S. v. Richey*, 632 F. 3d 559, 566 (9th Cir. 2011)) – could have easily allowed Ms. Battle to examine the document and provide accurate testimony

---

[1] Capitalized terms refer to the defined terms in the parties' Joint Stipulation.
[2] Zaentz was obligated to perform its investigation into the purported privilege before clawing back the Document and to disclose its findings at the March 13 meet and confer. Zaentz waited until March 17, knowing that the deadline to serve a Joint Stipulation in time to be heard prior to the discovery cut-off was March 14.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

regarding her notes, it chose not to allow Ms. Battle to examine the Document or to allow counsel to question her about it. Instead, Zaentz speculates that Ms. Battle's notes were either "likely" made two days later during a meeting with counsel, *or* for purposes of discussing them with counsel in a later meeting, depending on which theory it chooses to assert. Zaentz could have questioned Ms. Battle regarding her notes or submitted a declaration from her regarding her intentions; it chose to do neither. Zaentz has not met its burden to establish that the Document is privileged.[3]

Furthermore, Ms. Battle did not specifically say that she made her notes for the purposes of discussing those *notes* (as opposed to the Sierra proposal generally) with counsel. Nor is there any evidence that Ms. Battle actually discussed her allegedly privileged notes with counsel. The entire basis of Zaentz's privilege assertion appears to be that Ms. Battle generally had been discussing the topic of video game rights with counsel during the time period surrounding her receipt and annotation of the Document.[4] This is absurd; if Zaentz were correct, once a topic was discussed with counsel, any and all documents created by its employees after that date which touched on the topic would be immune from disclosure, whether or not they actually contain a privileged communication or reflect work product. To withhold a document, a party would simply have to confirm that the author generally discussed with counsel the topics reflected in the document at some point in time surrounding the creation of the document. Under such a rule, a party could deem virtually every damaging document privileged. That is not the law.

---

[3] In one of the cases cited by Zaentz, *Clark v. Buffalo Wire Works Co.*, the party claiming privilege presented extensive evidence – both deposition testimony and a subsequent declaration – that "the entire purpose of keeping notes…was to provide these notes to [] counsel to assist" in a subsequent lawsuit and that the non-attorney provided the notes to counsel with the expectation that they "would be subject to the attorney-client privilege" and would assist counsel in "their pursuit of [his] legal remedies." *Id*. at 94-95. Zaentz offers no evidence that Ms. Battle annotated the Document solely for the purpose of seeking legal advice, nor that she had any expectation that the annotations would be protected from disclosure.

[4] The entire basis of Zaentz's privilege assertion is a series of additional privileged documents which plaintiffs have not seen. To the extent Zaentz relies on those documents to support its privilege assertion with respect to the Document, plaintiffs should be permitted to examine the documents on which Zaentz relies.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  The cases relied on by Zaentz are readily distinguishable. In both *TFT-LCD Antitrust Litigation* and *Bernbach v. Timex Corp*., the finding that the attorney-client privilege applied to prevent the disclosure of non-attorney notes was expressly based on the fact that the notes in question were prepared <u>at the direction of counsel</u>. *TFT-LCD*, *supra*, at *9; *Bernbach*, *supra*, at *9. There is no evidence whatsoever that counsel directed Ms. Battle to make the annotations, that Ms. Battle discussed her annotations with counsel or that the notes were made contemporaneously with a discussion with counsel. Ms. Battle testified that she read the Document prior to speaking with counsel and that it was not uncommon for her to write notes as she read. Haye Decl. Exh. A, at 170:7-172:14. Indeed, Zaentz admits that Ms. Battle did not even discuss the Sierra proposal with counsel until several days after receiving it. Callagy Decl. Exh. 4.[5]

The rest of Zaentz's analysis is likewise sheer conjecture. Zaentz has not established that Ms. Battle's later discussions with counsel even touched on the issues noted by Ms. Battle days earlier on the Document. If anything, it appears that Ms. Battle's later discussions with counsel addressed the financial terms and viability of the proposal being made by Sierra, not the subject of the scope of rights or the nature of the game being produced. On its face, the Sierra fax is a business proposal containing a profit analysis; there is no discussion in the proposal about scope of rights or the limits on what Sierra could or could not do. There is simply no evidence that Ms. Battle was seeking legal advice when she made her notes.

2. <u>Ms. Battle's annotations were not made in anticipation of litigation</u>.

Zaentz argues that in 1997, when the Document and annotations were created,

---

[5] The remaining cases cited by Zaentz are inapposite. In *United States v. Defonte*, the Court did not even reach the issue of whether the prison inmate's notes in question were privileged. The court merely reversed the district court's ruling that there had been a *per se* waiver of the privilege due to the inmate's lack of a reasonable expectation of privacy in her jail cell. *Id*. at 94. The language Zaentz cites from *United States v. Chevron Texaco Corp*. regarding non-attorney notes is dicta. In *Chevron Texaco*, the court ultimately found that only those notes which reflected actual communications between lawyers (or their representatives) and client were protected by the attorney-client privilege. *Id*. at 178-180.

Zaentz and HarperCollins had a "sharp disagreement" over the scope of Zaentz's video game rights, such that the annotations were thus created in anticipation of "foreseeable" litigation. Tellingly, Zaentz cites <u>no evidence whatsoever</u> to support its contention. And, this argument is surprising, given that Zaentz has repeatedly argued – and indeed alleged in its Amended Counterclaims – that for years, and with the Tolkien and HC Parties' knowledge and agreement, Zaentz and Warner have exploited online video games. Supp. Haye Decl. Exh. J., at ¶¶ 3, 4, 23-27.

Specifically, Zaentz alleges that in <u>1996</u>, Zaentz told HarperCollins "in the strongest terms possible, that [HarperCollins and the Estate] ha[d] no rights to any computer games" and that HarperCollins "conceded the correctness of Zaentz's position." *Id.*, Exh. B, at ¶ 25. Zaentz further alleges that in <u>1998</u>, the Tolkien Estate "confirmed Zaentz's online video game rights" and declared that "the rights granted to Sierra" (the same "Sierra" that is the subject of the Document at issue in this motion) were "rights granted [to Zaentz's predecessor in interest] under the 1969 merchandising agreements." *Id.*, Exh. B, at ¶ 26. Certainly, Ms. Battle did not testify that she made her notes in anticipation of litigation.

Zaentz's argument that the parties were poised on the brink of litigation in 1997 regarding video game rights is belied by and directly contrary to Zaentz's own counterclaim allegations concerning events in 1996 and 1998. Zaentz's own allegations prove that the Document could not fairly be said to have been prepared because of the prospect of litigation. *In re Grand Jury* is thus inapposite.

3. <u>Even if Ms. Battle's notes reflected a privileged communication, she shared her notes with Sierra Online – the party against whom Zaentz was negotiating</u>. Even accepting one of Zaentz's two wildly speculative theories about the context in which she made her annotations, Ms. Battle's testimony makes manifestly clear that her handwritten notations were not intended to be a confidential attorney-client communication. Ms. Battle testified that she expressly discussed her understanding of the limitations on computer games with Mr. Bock:

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

```
Q:   And did you discuss with Mr. Bock that – that it
     was required that he did have a boxed element or a
     tangible physical element of – of the online multi –
     Massively Multiplayer game?
A:   Multiplayer role playing, if I remember right.
     [Objections omitted.]
A:   I believe so.
Q:   And what did you tell him?
A:   That the game needed to have a box with it.
Q:   And he said that's fine?
A:   That's what they do, yeah.
```

Haye Decl. Exh. B, at 172:16-173:6. The foregoing testimony underscores that Ms. Battle intended to communicate, and did in fact communicate, the so-called "privileged" note to a third party, and that the Document must be produced.

4. *Plaintiffs' motion is not untimely*. Zaentz misconstrues the provisions of the Protective Order. The permissive language of the Protective Order does not require that a motion be filed within 30 days to challenge a party's privilege designation. In fact, during the parties' meet and confer discussions, Zaentz's counsel admitted that no such limitation existed and that plaintiffs could challenge the privilege designation at any time. Supp. Haye Decl. ¶ 4. Rather, Zaentz simply argued that plaintiffs were not entitled to retain a copy of the Document because they did not bring their challenge within 30 days. *Id.* By Zaentz's own admission, plaintiffs challenge to Zaentz's privilege designations is not untimely.

In any event, the Protective Order permits a party to keep a copy of the allegedly privileged document for the purpose of filing such copy with the Court under seal – which is precisely what plaintiffs have done. Plaintiffs' counsel informed Zaentz's counsel – on no less than three occasions, including during Ms. Battle's deposition – that plaintiffs would be retaining a single copy of the document, to which Zaentz never previously objected. Plaintiffs' retention of the Document does not invalidate their challenge to Zaentz's privilege assertions.

DATED: April 2, 2014               GREENBERG GLUSKER FIELDS
                                   CLAMAN & MACHTINGER LLP

                                   By: /s/ Bonnie E. Eskenazi
                                   BONNIE E. ESKENAZI (SBN 119401)

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590