DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Attorneys for the Warner Parties

MARTIN R. GLICK (No. 40187)
marty.glick@aporter.com
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

Attorneys for The Saul Zaentz Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| FOURTH AGE LTD., *et al*, | Case No. 12-9912-ABC (SHx) |
|---|---|
| Plaintiffs, | **NOTICE OF MOTION AND MOTION BY WARNER AND ZAENTZ TO DISQUALIFY GREENBERG GLUSKER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| WARNER BROS. DIGITAL DISTRIBUTION, *et al*, | |
| Defendants. | |
| WARNER BROS. DIGITAL DISTRIBUTION INC., *et al*, | LENS DECLARATION FILED CONCURRENTLY HEREWITH |
| Counterclaim Plaintiffs, | **Judge**: Hon. Audrey B. Collins |
| | **Magistrate**: Hon. Stephen J. Hillman |
| v. | **Hearing Date**:   July 7, 2014 |
| FOURTH AGE LTD., *et al*, | **Hearing Time**:   10:00 a.m. |
| Counterclaim Defendants. | **Discovery Cut-Off**:  July 29, 2014 |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 7, 2014 at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled court, located at 255 East Temple Street, Los Angeles, California, in Courtroom 680, defendants and counterclaim plaintiffs Warner Bros. Home Entertainment Inc., Warner Bros. Entertainment Inc., Warner Bros. Consumer Products Inc., and New Line Productions, Inc. (collectively, "Warner") and The Saul Zaentz Company ("Zaentz") will and hereby do move the Court for an order (i) disqualifying forthwith Greenberg Glusker Fields Claman & Machtinger LLP ("Greenberg") as counsel in this action for plaintiffs and counterclaim defendants Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as Trustee of the Tolkien Trust, The J.R.R. Tolkien Estate Ltd., Harper Collins Publishers, Ltd., Unwin Hyman Ltd. and George Allen & Unwin (Publishers), Ltd. (collectively, the "Tolkien/HC Parties"); (ii) barring the Tolkien/HC Parties from calling Alan Benjamin or William Bernstein as witnesses at deposition or at trial; and (iii) requiring new or separate counsel to examine Benjamin or Bernstein free from any information from Greenberg, if Warner or Zaentz choose to call them as witnesses.  Alternatively, to the extent Greenberg is not disqualified now, Warner and Zaentz seek an order (iv) requiring Greenberg to fully disclose its communications with Benjamin and Bernstein, its records, and its notes thereof to the Court for *in camera* review, as well as to MGM (as defined below); (v) ordering the deposition of Bonnie Eskenazi on these matters; and (vi) granting all such other and further relief this Court deems just and proper.

This motion is made pursuant to Rule 83-3 of the Local Rules of this Court, Rules 3-310(c), 3-310(e), and 1-120 of the California Rules of Professional Conduct, Canon 9 of the Model Code, and the inherent authority of this Court, on

1   the grounds that Greenberg has violated its ethical and professional obligations and

2   compromised the integrity of this litigation to the prejudice of Warner and Zaentz.

3         Pursuant to Local Rule 7-3, the parties attempted to resolve this dispute

4   without the Court's intervention.  As explained in the accompanying Declaration of

5   Molly M. Lens, the parties have met and conferred for months in an attempt to

6   resolve the issues in this motion, including two conferences on April 24, 2014 and

7   April 30, 2014, but the parties were unable to reach a resolution.

8         This motion is based on this Notice of Motion and Motion; the

9   accompanying Memorandum of Points and Authorities; the concurrently-filed

10  Declaration of Molly M. Lens; the Joinder to be filed by non-parties Metro-

11  Goldwyn-Mayer Inc., Metro-Goldwyn-Mayer Studios Inc., Metro-Goldwyn-Mayer

12  Pictures Inc. and United Artists Corporation; any additional briefing that may be

13  filed; all exhibits, files, and records on file in this action; matters of which judicial

14  notice may be taken; and such additional submissions and argument as may be

15  presented at or before the hearing on this motion.

16

17        Dated:  June 9, 2014

18                                        O'MELVENY & MYERS LLP

19                                        By:_____

20                                             Daniel M. Petrocelli
                                          Attorneys for the Warner Parties

21

22                                        ARNOLD & PORTER LLP

23                                        By: Martin R. Glick / NAP

24                                        _____
                                              Martin R. Glick

25                                        Attorneys for The Saul Zaentz Company

26

27

28

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS .................................................................. 4

      A.    Benjamin and Bernstein Negotiated, Drafted, and Implemented
            The Agreements at Issue in This Case. ................................... 4

      B.    Greenberg Invades MGM's Privilege and MGM Objects ................... 5

      C.    Greenberg Refuses to Stop its Misconduct or to Disclose the
            Full Extent of its Communications. ........................................ 6

III.  GREENBERG HAS VIOLATED ITS ETHICAL OBLIGATIONS,
      COMPROMISING THE INTEGRITY OF THE PROCEEDINGS ............. 10

      A.    Greenberg Violated Rule 3-310(c) ........................................... 11

      B.    Greenberg Violated Rule 1-120 and 3-310. ............................... 12

      C.    Greenberg Violated Canon 9. ................................................ 14

IV.   PROTECTIVE ACTION BY THIS COURT IS NECESSARY TO
      PRESERVE THE INTEGRITY OF THESE PROCEEDINGS ................... 18

      A.    Greenberg Has Gained an Unfair Advantage. ............................ 19

      B.    Greenberg Has Not Been Candid about Its Communications
            with Benjamin and Bernstein. ............................................. 22

      C.    Greenberg's Continued Involvement Will Irreparably Taint the
            Integrity of the Proceedings. ............................................... 23

V.    CONCLUSION ............................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*,
  2008 WL 5484552 (N.D. Cal. Dec. 18, 2008) ................................................... 24

*Am. Prot. Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc.*,
  1986 WL 57464 (D. Nev. Mar. 11, 1986) ........................................................ 15

*Anticancer, Inc. v. Xenogen Corp.*,
  No. 05-00448 (S.D. Cal. Aug. 10, 2006) ........................................................ 14

*Biocore Med. Techs., Inc. v. Khosrowshahi*,
  181 F.R.D. 660 (D. Ka. 1998) ...................................................................... 16

*Cargill, Inc. v. Budine*,
  2007 WL 1813762 (E.D. Cal. June 22, 2007) ........................................*passim*

*City Nat. Bank v. Adams*,
  96 Cal. App. 4th 315 (2002) ........................................................................ 22

*Columbia Pictures, Inc. v. Bunnell*,
  2007 WL 4877701 (C.D. Cal. Dec. 13, 2007) ................................................ 18

*Colyer v. Smith*,
  50 F. Supp. 2d 966 (C.D. Cal. 1999) ............................................................ 19

*Conn v. Superior Court*,
  196 Cal. App. 3d 774 (1987) ....................................................................... 25

*Davis v. Los Angeles W. Travelodge*,
  2010 WL 623657 (C.D. Cal. Feb. 3, 2010) ................................................... 11

*Decaview Distribution Co., Inc. v. Decaview Asia Corp.*,
  2000 WL 1175583 (N.D. Cal. Aug. 14, 2000) .............................................. 18

*Employers Ins. of Wausau v. Albert D. Seeno Const. Co.*,
  692 F. Supp. 1150 (N.D. Cal. 1988) ............................................................. 23

*Erickson v. Newmar Corp.*,
  87 F.3d 298 (9th Cir. 1996) .................................................................*passim*

*Flatt v. Superior Court,*
9 Cal. 4th 275 (1994) ........................................................................ 2

*FMC Techs., Inc. v. Edwards,*
420 F. Supp. 2d 1153 (W.D. Wash. 2006) ......................................... 18

*Holm v. City of Barstow,*
2008 WL 4290857 (C.D. Cal. Sept. 16, 2008) .................................. 14

*Huston v. Imperial Credit Commercial Mortg. Inv. Corp.,*
179 F. Supp. 2d 1157 (C.D. Cal. 2001) ............................................. 12

*In re A.C.,*
80 Cal. App. 4th 994 (2000) .............................................................. 19

*In re AFI Holding, Inc.,*
355 B.R. 139 (B.A.P. 9th Cir. 2006) ................................................. 14

*In re Bell Helicopter Textron, Inc.,*
87 S.W.3d 139 (Ct. App. Tex. 2002) ................................................. 17

*In re Complex Asbestos Litig.,*
232 Cal. App. 3d 572 (1991) ....................................................*passim*

*In re Coordinated Proc. Petroleum Prods. Antitrust Litig.,*
658 F.2d 1355 (9th Cir. 1981) ........................................................... 14

*Kennedy v. Eldridge,*
201 Cal. App. 4th 1197 (2011) .......................................................... 19

*Leon v. IDX Sys. Corp.,*
464 F.3d 951 (9th Cir. 2006) ............................................................. 18

*MWR/Wallace Power & Indus., Inc. v. Thames Associates,*
764 F. Supp. 712 (D. Conn. 1991) .................................................... 24

*Packard Bell NEC, Inc. v. Aztech Systems LTD.,*
2001 WL 880957 (C.D. Cal. Jan. 22, 2001) .................................*passim*

*Patriot Scientific Corp. v. Moore,*
178 Fed. Appx. 18 (Fed. Cir. 2006) .................................................. 13

*Pound v. Demera Demera Cameron,*
135 Cal. App. 4th 70 (2005) .......................................................... 2, 24

*Rentclub, Inc. v. Transamerica Rental Fin. Corp.*,
    811 F. Supp. 651 (M.D. Fla. 1992) ................................................................ 15, 17

*San Francisco v. Cobra Solutions, Inc.*,
    38 Cal. 4th 839 (2006) ................................................................................... 24

*Shadow Traffic Network v. Superior Court*,
    24 Cal. App. 4th 1067 (1994) ................................................................... 13, 21

*Trone v. Smith*,
    621 F.2d 994 (9th Cir. 1980) ....................................................................... 10

*U.S. v. SAE Civil Const.*,
    1996 WL 148521 (D. Neb 1996) ................................................................... 17

**OTHER AUTHORITIES**

California Rule of Professional Conduct 3-310(c) ................................. 1, 11, 12

California Rule of Professional Conduct 3-310(e) ................................. 2, 12, 13

California Rule of Professional Conduct 1-120 ..................................... 2, 12, 13

Canon 9 of the ABA Model Rules of Professional Conduct .................. 2, 14, 15

Local Rule 83-3 ................................................................................... 1, 11, 14

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    Warner and Zaentz bring this motion to disqualify Greenberg as counsel of

4    record for the Tolkien/HC Parties in this litigation and for other relief, because the

5    firm impermissibly gained access to privileged information in violation of Rules of

6    Professional Conduct.  This case turns on the interpretation of the 1969 Agreements

7    (the "Agreements") by which rights to *The Lord of the Rings* and *The Hobbit* were

8    granted to United Artists Corporation ("UA"), which later granted them to Warner

9    and Zaentz.  The negotiation, drafting, and meaning of various provisions in the

10    1969 Agreements are at the heart of this case.  With full knowledge that Alan

11    Benjamin and William Bernstein are the former in-house lawyers for UA who

12    represented UA in negotiating and drafting the 1969 Agreements *against* the

13    Tolkien/HC Parties (actually, their prior entities and representatives)—and are the

14    *only living percipient witnesses* on the UA side of the contract, Greenberg contacted

15    them to serve as expert witnesses in this case, offered and undertook to represent

16    them for free as percipient witnesses, and had direct communications with them.

17    Furthermore, Greenberg hired Benjamin as an "expert" and paid him $10,000.

18    Greenberg thereby placed itself in the position of representing not only the

19    key witnesses on *both—and opposite*—sides of the contracts at issue, but also its

20    adversaries' former counsel who worked on the very contracts at issue.  In doing so,

21    Greenberg invaded the attorney-client privilege now held by MGM, which controls

22    UA, positioning UA's former lawyers to be adverse to the interests of MGM and

23    UA's successors-in-interest, Warner and Zaentz.

24    Greenberg's actions infringe important Rules of Professional Conduct:

25    *First*, Greenberg violated the prohibition against representing conflicting

26    interests under California Rule of Professional Conduct 3-310(c).  This precise

27    circumstance was addressed in *Packard Bell NEC, Inc. v. Aztech Systems LTD.*,

28

2001 WL 880957 (C.D. Cal. Jan. 22, 2001), which held that such dual representation creates the "potential" that confidential information was improperly disclosed and warrants disqualification. *See id.* at *10.

*Second*, Greenberg solicited UA's former in-house attorneys to violate their own duties of loyalty and confidentiality by switching sides and testifying adversely to their former client and its parent company, MGM.  In so doing, Greenberg violated California Rules of Professional Conduct 1-120 and 3-310(e).  As the matter is substantially—indeed, directly—related to the attorneys' prior work for UA, the law presumes Greenberg obtained UA's confidential information, requiring disqualification. *See Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994) ("Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated . . . disqualification of the attorney's representation of the second client is mandatory."); *Pound v. Demera Demera Cameron*, 135 Cal. App. 4th 70, 77-78 (2005) (disqualification extends to all members of any firm).

*Third*, Greenberg has "created the appearance of professional impropriety" in violation of Canon 9 of the ABA Model Code of Professional Conduct when it created a mechanism for unfair discovery into confidential information. *See Cargill, Inc. v. Budine*, 2007 WL 1813762, at *14 (E.D. Cal. June 22, 2007).  Indeed, by paying "expert" fees to Benjamin in addition to representing Benjamin and Bernstein free of charge as fact witnesses, Greenberg improperly incentivized the disclosure of privileged information.  It is immaterial that Greenberg insists no privileged or confidential information was actually disclosed.  Greenberg's undisputed representation and retention of Benjamin and Bernstein establish a conclusive presumption that privileged and confidential information was disclosed and warrant disqualification of the firm from further involvement in this action.

1    Compounding these violations, when MGM objected to Greenberg's
2    representation of and contact with Benjamin and Bernstein, Greenberg did not
3    immediately cease its engagement, nor did it make a full and candid disclosure of
4    its contacts.  For the next five months, Greenberg continued to assert it was entitled
5    to represent Benjamin and Bernstein and to maintain as privileged the substance
6    and details of its communications with them.  In response to inquiries from Warner
7    and Zaentz, Greenberg provided misleading accounts of its interactions with both
8    lawyers.  Although Greenberg eventually agreed to withdraw from representing the
9    witnesses and terminate the expert engagement, it has insisted on reserving the right
10   to seek the Court's permission to examine the witnesses at trial and has refused to
11   turn over its notes of its discussions with the witnesses.

12       In view of these positions and what has come to light about Greenberg's
13   communications with the lawyers, this motion is necessary.  Disqualification is
14   warranted because Greenberg's retention and use of information disclosed by
15   Benjamin and Bernstein—in witness examination or otherwise—give the
16   Tolkien/HC Parties an impermissible advantage and compromise the integrity of
17   the litigation.  Greenberg cannot unlearn the information it has wrongfully obtained
18   or erase the taint of representing former counsel of its adversaries.

19       Alternatively, disqualification should be deferred pending further discovery,
20   and in the meantime, Greenberg should be ordered to turn over its notes and
21   communications involving Benjamin and Bernstein to MGM and the Court for *in*
22   *camera* review to determine whether any substantive issues in the case—*e.g.*,
23   online video games, gambling, the meaning of the Agreements—were discussed
24   with the lawyers.  The Court should also order Bonnie Eskenazi, the Greenberg
25   lawyer who communicated with Benjamin and Bernstein, to sit for deposition on
26   these matters.  Furthermore, in all events, the Tolkien/HC Parties should not be
27   permitted to call Benjamin or Bernstein at deposition or at trial, and if called by

28

- 3 -

Warner or Zaentz, must be examined by new or separate counsel retained by the Tolkien/HC Parties, without access to Greenberg's knowledge or information.

The clear violations of the ethics rules require action by the Court. As the Ninth Circuit explained:

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.

*Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996).

## II.   STATEMENT OF FACTS

### A.   Benjamin and Bernstein Negotiated, Drafted, and Implemented The Agreements at Issue in This Case.

In 1968, UA charged Alan Benjamin and Bill Bernstein, two of its in-house attorneys, with the task of acquiring the film and merchandising rights in and to *The Lord of the Rings* and *The Hobbit*. *See, e.g.*, Declaration of Molly M. Lens ("Lens Decl."), Exs. 1-7. UA did not retain outside counsel. Rather, Benjamin and Bernstein performed the legal work.

Benjamin and Bernstein's work culminated in four agreements, referred to by the parties as the 1969 Agreements. Following the execution of the contracts, UA tasked Benjamin and Bernstein with dealing with the day-to-day legal issues arising out of the implementation of the Agreements. *Id.* at Exs. 4-7. This role included advising UA about the scope of rights granted under the Agreements. *Id.*

As a result of various sale and reorganization transactions, Metro-Goldwyn-Mayer Inc., Metro-Goldwyn-Mayer Studios Inc., and Metro-Goldwyn-Mayer Pictures Inc. (collectively, "MGM") are the corporate successors to UA's interests

in the properties at issue in this case and UA is a subsidiary of Metro-Goldwyn-Mayer Studios Inc.  Through subsequent agreements, Warner, Zaentz, and MGM collectively hold the substantive rights under the 1969 Agreements that UA acquired:  UA assigned its rights to Zaentz, which, in turn, licensed certain rights to Warner Bros; and for its part, MGM, reacquired certain rights in and to *The Hobbit* from Zaentz and therefore has a financial interest in the outcome of this action.[1]

The Tolkien/HC Parties initiated this action claiming that certain of Warner's and Zaentz's merchandising activities exceed the scope of the rights conveyed in the 1969 Agreements.  Warner and Zaentz contend such activities are fully within the scope of their rights, and have counterclaimed.

## B.   Greenberg Invades MGM's Privilege and MGM Objects.

Greenberg has long known about Benjamin's and Bernstein's direct involvement in the 1969 Agreements on behalf of UA.  Indeed, that is precisely why Greenberg reached out to the lawyers in the first place.  In Greenberg's own words, it contacted Benjamin and Bernstein because of their "*personal experience with these issues in 1969.*"  *Id.* at Ex. 18.  It solicited both Benjamin and Bernstein to testify as experts on "film-related merchandising activity in the late 1960s and early 1970s" and it offered at no charge to represent both lawyers as percipient witnesses.  *Id.*

As Greenberg fully appreciated, in representing both witnesses, working with them, and developing their percipient and expert testimony, Greenberg would be delving into matters that directly implicated the witnesses' privileged work for UA.  Even in their role as putative experts, any inquiry into their "expertise" and opinions about the customs, usage, and meaning of film licenses and related merchandising rights in 1969 could hardly be divorced from what Benjamin and Bernstein actually did, believed, intended, and communicated to their client UA at

---

[1] MGM is a 50% joint copyright owner in *The Hobbit* films and has a financial interest in the ability to monetize the rights at issue in this action.

the time.  Benjamin and Bernstein were the lawyers and direct negotiators in the transaction at issue in this case—*opposite* the Tolkien/HC Parties.  Their expertise—*i.e.*, their understanding and subjective views as to what was meant by the language in the contracts at issue here in light of industry practices—were formed in the course of their privileged work for their client, UA.

On December 27, 2013, within days of learning that Greenberg claimed to represent Benjamin and Bernstein, MGM objected to Greenberg's contact with UA's prior in-house counsel.  *Id*. at Ex. 14.  MGM demanded that Greenberg (1) cease and desist from any further communications with UA's former attorneys; (2) turn over all communications, including engagement letters and notes from its conversations; and (3) detail every communication it had had with Benjamin and Bernstein.  *Id*.

## C.    Greenberg Refuses to Stop its Misconduct or to Disclose the Full Extent of its Communications.

A week after receiving MGM's letter, on January 2, 2014, Greenberg wrote to recognize "the seriousness of the issues raised" and promised a substantive response "shortly."  *Id*. at Ex. 15.  Greenberg assured MGM that it would not have any contact with Benjamin or Bernstein until "these issues are resolved."  *Id*.  MGM then waited.  After a few weeks, MGM sent a follow-up email.  MGM then waited another week and sent another follow-up email.  *Id*. at Exs. 16-17.  Only then—a full month after MGM's demand—did Greenberg respond on January 27.

The January 27 response revealed that Bonnie Eskenazi, plaintiffs' lead counsel, had spoken with Benjamin and Bernstein a number of times.  *Id*. at Ex. 18.  Greenberg disclosed *four* conversations between Ms. Eskenazi and Benjamin and *three* conversations with Bernstein.  *Id*.  Greenberg insisted that Ms. Eskenazi's calls with Benjamin were "limited."  *Id*.  The January 27 letter further disclosed that Greenberg had retained Benjamin as an expert in February 2013, and that

Greenberg offered to represent both Benjamin and Bernstein in connection with their percipient witness testimony free of charge. *Id*.

MGM responded on February 13, 2014, reiterating its objection to Greenberg's conduct and repeating its demand for the details of Greenberg's contacts and any written communications. *Id*. at Ex. 19.

In its March 12 response, Greenberg continued to assert that its contact with Benjamin and Bernstein was not improper. *Id*. at Ex. 21.  In that letter, Greenberg disclosed that it had contacted Benjamin again, despite its representation in January that it would not have any contact with Benjamin or Bernstein until "these issues are resolved." *Compare id*. and Ex. 15.  Greenberg stated the additional call took place after MGM's February 13 letter, was for the purpose of informing Benjamin that his percipient deposition was not going forward, and was "brief." *Id*.

On April 4, 2014, MGM sent a response to Greenberg's March 12 letter in which MGM repeated its concern that Greenberg's conduct had tainted its continued involvement in this action. *Id*. at Ex. 22.  MGM rejected Greenberg's offer to retain separate counsel to participate in any of Greenberg's future meetings with Mr. Benjamin. *Id*.  Instead, MGM renewed its insistence that Greenberg immediately cease its representation of Benjamin and Bernstein, that it have no further contact with either witness, that Greenberg not use either witness as an expert in this action, and that Greenberg not examine either witness if called to testify during deposition or trial. *Id*.  MGM again asked for copies of all retainer agreements, notes of discussions, and all communications Greenberg had with Benjamin and Bernstein. *Id*.  MGM also reserved its right to seek additional relief, including disqualification, depending on what the facts ultimately revealed. *Id.*[2]

---

[2] MGM made these proposals in light of Greenberg's representations that any calls were limited and did not involve any substantive discussions, which representations were not true as later learned.

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

On April 8, 2014, Greenberg said it would terminate its representation of Benjamin and Bernstein as percipient witnesses and cease using Benjamin as an expert. *Id*. at Ex. 23.  Greenberg stated that it would "no longer use Benjamin as an expert consultant or witness nor will we continue to represent either Benjamin or Bernstein in connection with their roles as potential percipient witnesses in this case." *Id*.  Greenberg, however, reserved the right to seek Court approval to question Benjamin and Bernstein during a deposition or at trial.  *Id*.

In letters sent on April 11 and April 14, 2014, MGM, Warner, and Zaentz objected to Greenberg's refusal to refrain altogether from questioning Benjamin or Bernstein during deposition or trial.  *Id*. at Exs. 24-25.  In addition, Warner and Zaentz's April 14 letter pointed out that Greenberg's April 8 letter revealed that Greenberg had not been forthcoming with key information about its relationship with Benjamin and Bernstein—namely, that Greenberg had paid Mr. Benjamin a retainer for his services and expected testimony in this case.  *Id*. at Ex. 25.

On April 16, 2014, Greenberg changed its position.  Though previously indicating its representation of Benjamin and Bernstein would end, Greenberg now suggested that MGM's and Warner's "additional demands" were "unsupported by any legal or ethical rule," and advised that Greenberg's "representation of these witnesses has not actually ended as they have not been advised by us of any termination." *Id.* at Ex. 26.

In light of the parties' stalemate, MGM, Warner, and Zaentz participated in two telephonic meet-and-confer conferences with Greenberg on April 24 and April 30, 2014.  During these calls, Greenberg stated that it was no longer willing to cease its representation of Benjamin and Bernstein unless MGM, Warner, and Zaentz agreed to drop their objection to Greenberg's conduct. *Id*. at ¶ 31.  MGM, Zaentz, and Warner refused to agree to this condition, reiterating their position that Greenberg should terminate its representation.  *Id*.  In response to direct inquiries,

1  Greenberg also revealed for the first time that it had two to three pages of notes

2  from its conversations with Benjamin and that he had signed a written retainer

3  agreement. *Id*. Greenberg refused to produce the notes, but promised to look into

4  the existence of a call log and consider whether to produce its retainer. *Id*.[3]

5  　　After the conferences, Greenberg provided no update on these requests for

6  weeks, despite a follow-up from Zaentz on May 5, 2014. *Id*. at Ex. 27. On May

7  20, 2014, Greenberg agreed to cease its representation of Benjamin and Bernstein.

8  *Id*. at Ex. 28. However, Greenberg refused to produce the notes of its

9  communications with Benjamin to MGM on the basis that such notes are

10  "privileged attorney work product"[4] and continued to reserve the right to seek

11  approval to examine the witnesses at trial. *Id*. Greenberg also provided a copy of

12  its retainer agreement with Benjamin and a log of its outgoing calls to Benjamin.

13  The agreement revealed that Greenberg paid Benjamin (at least) $10,000. *Id*.

14  　　The call log revealed information inconsistent with Greenberg's previous

15  representations. First, it showed that Greenberg's first two calls with Benjamin—

16  calls Greenberg had previously described as "limited" discussions—were over 30

17  minutes *each*. *Id*. Second, it showed that, collectively, the four calls with

18  Benjamin alone totaled over an hour and a half. *Id*. Third, it showed that

19  Greenberg's description of its February call with Benjamin was not accurate.

20  Greenberg had claimed that this call took place after MGM's February 13 letter,

21  that it was for the purpose of informing Benjamin that his percipient deposition was

22  not going forward, and that it was "brief." *Id*. at Ex. 19. The log, however,

23  revealed that the conversation actually took place on February 10—three days *prior*

24

25  [3] Although Greenberg admitted that Ms. Eskenazi is the only Greenberg lawyer
who communicated with Benjamin and Bernstein and who authored the notes of the

26  conversations, Ms. Eskenazi has not been made available to discuss these matters
directly or respond to our inquiries.

27  4 Greenberg has also refused to provide these documents in response to discovery

28  requests, taking the position that such documents are, *inter alia*, "irrelevant."

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

to MGM's February 13 letter and three days *before* Greenberg asked whether the deposition was happening—and that this supposedly "brief" call lasted nearly 43 minutes—bringing the total duration of Ms. Eskenazi's calls with Benjamin to over two hours.[5]  *Id.* at Ex. 28.

In view of these new disclosures and the impasse between the parties, Warner and Zaentz wrote to Greenberg on May 30, 2014 asking the firm to withdraw as counsel in this action in order to avoid any further litigation of this issue and taint to the integrity of these proceedings.  *Id.* at Ex. 19.  Warner and Zaentz detailed the material inconsistencies in Greenberg's accounts of its conduct to date.  *Id.*

Greenberg refused to withdraw, indicated there was "nothing further to discuss," and accused Warner and Zaentz of engaging in a "frivolous tactic brought solely for strategic purposes only."  *Id.* at Ex. 32.  Greenberg also claimed it had "bent over backwards to try and accommodate" MGM's prior demands.  *Id.* Warner and Zaentz, joined by non-party MGM, now seek the Court's intervention.

## III.   <u>GREENBERG HAS VIOLATED ITS ETHICAL OBLIGATIONS, COMPROMISING THE INTEGRITY OF THE PROCEEDINGS</u>

All "attorneys share certain basic obligations of professional conduct, obligations that are essential to the integrity and function of our legal system."  *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 603 (1991).  These obligations include maintaining the duties of loyalty and confidentiality to current and former clients, as well avoiding even the appearance of impropriety.  *See Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996); *Trone v. Smith*, 621 F.2d 994, 998-99 (9th Cir. 1980).  To ensure the integrity of the judicial system, the Central

---

[5] This excludes Ms. Eskenazi's conversations with Bernstein, as Greenberg has not provided a call log for its outgoing calls to Bernstein.  Greenberg claims that no such records exist because Bernstein lives locally and Greenberg has represented that it does not keep records of outgoing local calls.  Greenberg, however, has also refused to produce Ms. Eskenazi's billing entries, which presumably would evidence the timing, duration, and subject matter of her calls.

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

District requires that all attorneys comply with their ethical obligations, including the California Rules of Professional Conduct and all decisions applicable thereto. L.R. 83-3.1.2; *Davis v. Los Angeles W. Travelodge*, 2010 WL 623657, at *2 (C.D. Cal. Feb. 3, 2010).  As set forth below, Greenberg's conduct has violated several rules of attorney conduct, each of which, standing alone, suffices to require Greenberg's disqualification.

### A.     Greenberg Violated Rule 3-310(c).

Greenberg entered into conflicting representations.  California Rule of Professional Conduct 3-310(c) precludes an attorney from accepting or continuing a representation in which the interests of the clients potentially or actually conflict. Here, Greenberg represented and undertook privileged relationships with *both* sides to the 1969 Agreements: it represented, on the one hand, UA's former attorneys who worked on the agreements on behalf of UA and against the Tolkien/HC Parties; and, on the other, it simultaneously represented the Tolkien/HC Parties in this suit for breach of the agreements against MGM's interests and assignees. Greenberg claimed there is no conflict because it did not represent MGM, the corporate entity (of which UA is a subsidiary).  Lens Decl. at Ex. 18.  That is immaterial.  Courts have uniformly held that Rule 3-310(c) applies not only to conflicts with the corporate client, but also to conflicts with its former employees.

*Packard Bell NEC, Inc. v. Aztech Systems LTD*., 2001 WL 880957 (C.D. Cal. Jan. 22, 2001), is dispositive on this point.  In *Packard Bell*, the court disqualified defense counsel who agreed to represent a former executive of the plaintiff as a witness in the litigation.  *Id.* at *5.  The court recognized that Rule 3-310(c) did not "literally apply" since defense counsel was representing a former executive of the plaintiff and not the plaintiff itself.  *Id.* at *8.  However, the court explained that the ethical mandate in 3-310(c) could not be evaded based on such technicalities.  The court reasoned that the former executive, as an agent of the company, owed a

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

continuing duty to protect plaintiff's privileged and confidential information.  The

representation of the witness created a conflicting representation—defense counsel

would be required to simultaneously represent the defendant (in terms of prevailing

in the case) and the plaintiff (in terms of protecting plaintiff's privilege).  The court

held the conflict between the executive's continuing obligation to protect plaintiff's

privileged information and defendant's interest in winning the lawsuit created an

unacceptable "potential for disclosure" of privileged information.  In disqualifying

defendant's counsel for violating 3-310(c), the *Packard Bell* court observed that

even if counsel in such circumstances takes steps to preserve the privilege of the

former employer—and indeed in *Packard Bell*, counsel proffered multiple

declarations stating that no privileged or confidential information was disclosed—

disqualification is still required in light of the "potential" or the "reasonable

probability" of such disclosure.  *Id*. at *9.

The potential for improper disclosure of privileged or confidential

information is much higher—if not inevitable—where the former employee was not

a business executive (as in *Packard Bell*) but, like Benjamin and Bernstein, the

actual attorneys who negotiated and drafted the contracts at issue here.  *See Huston

v. Imperial Credit Commercial Mortg. Inv. Corp.*, 179 F. Supp. 2d 1157, 1180

(C.D. Cal. 2001) (holding law firm's misconduct in engaging former attorney of

defendant was worse than misconduct in *Packard Bell*).  As in-house attorneys,

both Benjamin and Bernstein, by definition, possessed privileged and confidential

information of their employer, UA.

## B.   Greenberg Violated Rule 1-120 and 3-310.

Greenberg specifically contracted with Benjamin to be adverse to his former

client, UA, by engaging him as an expert witness to testify against the interests of

UA's successors about the work he did as a lawyer for UA.  Rule 3-310(e) prohibits

an attorney from "accept[ing] employment adverse to the client or former client

where, by reason of the representation of the client or former client, the member has obtained confidential information."  Knowing that Benjamin negotiated and worked on the Agreements at issue, Greenberg engaged him to serve as an expert witness about those Agreements against the interests of his former client.  In doing so, Greenberg violated Rule 1-120, which precludes an attorney from "knowingly assist[ing] in, solicit[ing], or induc[ing]" a violation of the Rules.  *See Patriot Scientific Corp. v. Moore*, 178 Fed. Appx. 18 (Fed. Cir. 2006) (attorney violated Rule 3-310(e) by accepting consulting engagement against former client and plaintiff's counsel violated Rule 1-120 by inducing and assisting the violation).

Greenberg's conduct also violated Rule 3-310(e) as Benjamin's conflict is imputed to Greenberg.  For instance, in *Shadow Traffic Network v. Superior Court*, the court disqualified defendant's counsel because the counsel retained an expert previously interviewed by plaintiffs.  24 Cal. App. 4th 1067, 1085 (1994).  The court imputed the expert's conflict to defendant's law firm and held it was improper to hire an expert with confidential information about the opposing party.  *Id.*; *see also Complex Asbestos Litig.*, 232 Cal. App. 3d at 597-98 (disqualifying plaintiffs' law firm that hired paralegal from defense counsel's firm).  Even though the attorney claimed to have only spoken with the tainted consultant for about 15 minutes, mostly about the consultant's knowledge of the industry and his ability to respond to the other side's damages theory, the court ordered that counsel be disqualified.  *Shadow Traffic*, 24 Cal. App. 4th at 1087.  Here, Greenberg's discussions with Benjamin spanned at least 2 hours and would have necessarily included, at a very minimum, his knowledge of the issues and his ability to testify favorable to the Tolkien/HC Parties, since Greenberg hired him as an expert and paid him a retainer of $10,000.  Lens Decl. at Ex. 28.  Courts have uniformly recognized that disqualification of the offending law firm is necessary in improper engagements because the law firm has gained improper access to privileged

information.  *See, e.g., Anticancer, Inc. v. Xenogen Corp.*, No. 05-00448 (S.D. Cal. Aug. 10, 2006) (disqualifying entire firm when adverse party's former lawyer was engaged as a "consultant" expert) (Lens Decl. Ex. 33).

### C.    Greenberg Violated Canon 9.

Canon 9 of the Model Code provides that a "lawyer should avoid even the appearance of professional impropriety."  The Ninth Circuit has made clear that federal courts have the inherent power to apply the Model Code in regulating the behavior of lawyers.  *See In re AFI Holding, Inc.*, 355 B.R. 139, 153 n.15 (B.A.P. 9th Cir. 2006).  The Ninth Circuit has also made clear that Canon 9 is not mere rhetoric, but is a real mandate, such that a violation of Canon 9 alone can be sufficient grounds for disqualification of an attorney.  *See In re Coordinated Proc. Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1360 (9th Cir. 1981) ("If Canon 9 were not separately enforceable, it would be stripped of its meaning and significance."); *see also Holm v. City of Barstow*, 2008 WL 4290857, at *7 (C.D. Cal. Sept. 16, 2008) (applying Canon 9 as consistent with Local Rule 83-3 and holding that counsel's violation of Canon 9 militated in favor of disqualification).

Greenberg has violated Canon 9 by creating a mechanism for impermissible access to and discovery of privileged information.  This Court has the duty to "guard against the inadvertent use of confidential information."  *Cargill, Inc. v. Budine*, 2007 WL 1813762, at *14 (E.D. Cal. June 22, 2007) (citing *Ceramco, Inc. v. Lee Pharms.*, 510 F.2d 268, 271 (2d Cir. 1975)).  In *Cargill*, a lawyer tried to represent a former executive of a company in one action while being adverse to the same company in a different action.  The court held that the dual representation created the "potential for unfair discovery" and the "potential for disclosure of confidential information," which created a clear "appearance of impropriety" in violation of Canon 9.  *Id*. at *14.  As in *Packard Bell, supra*, counsel's assertions concerning intentions or efforts to preserve privilege were not relevant given the

real *potential* for abuse.  *Cargill,* 2007 WL 1813762, at *8, *11 (observing "presumption" that former employee "did impart confidential information").

Here, as in *Cargill*, Greenberg's decision to represent and retain UA's former attorneys to be adverse to MGM's interests in this lawsuit creates an obvious "potential for unfair discovery" and "potential for disclosure of confidential information" in violation of Canon 9.  Greenberg intentionally—and strategically— put itself in a position to discover privileged and confidential information to which it otherwise would have no access. And in undertaking to represent both witnesses, Greenberg shielded them from its adversaries, precluding UA, the holder of the attorney-client privilege, from being able to speak with its own former lawyers about the issues in this lawsuit or to protect the disclosure of privileged information during conversations with Greenberg.  UA has no means of safeguarding its privileged information or even knowing whether it had been disclosed, advertently or inadvertently.  Even if Greenberg claims no privileged information was disclosed—an assertion Greenberg will not allow to be tested—the arrangement created an appearance of impropriety that violates Canon 9.

Greenberg's actions are especially fraught with abuse.  By offering to retain Benjamin and Bernstein, both percipient witnesses, as "experts," Greenberg incentivized the wrongful disclosure of privileged information.  *See Am. Prot. Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc.*, 1986 WL 57464, at *6 (D. Nev. Mar. 11, 1986) (disqualification of defense attorney because engagement of fact witness as a trial consultant created an apparent inducement to disclose confidential matters and payment to a fact witness); *Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811 F. Supp. 651, 655 (M.D. Fla. 1992) ("appearance of impropriety" arises from "inference that an attorney had induced another to breach a confidence" and from the fact that the "trial consultant" is "actually a fact witness").  Greenberg created additional incentives to disclose privileged information by offering free legal

services to Benjamin and Bernstein.  *See Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 670 (D. Ka. 1998) (an attorney "can provide an inducement by providing free legal service" to an adversary's former employees).

Greenberg knew its actions were ethically improper and would taint these proceedings.  At the same time that Greenberg was representing and communicating with Benjamin and Bernstein, Greenberg wrongly accused Zaentz and Warner of having improper contact with a former in-house counsel to the HC Parties, Adrian Laing.  Lens Decl. at Ex. 11.  Zaentz and Warner's counsel had asked Greenberg whether it represented Laing.  *Id*. at Ex. 9.  Greenberg indicated it did not represent Laing and would not contact him in connection with arranging his deposition, leaving it up to Zaentz and Warner to do so if they wished to depose him.  *Id*.  An attorney for Zaentz then contacted Laing to ask if he would be willing to be deposed without the necessity for international service of process.  *Id*. at Ex. 10.  Laing responded that he would if paid for his time, and he contacted Greenberg to inform them of the inquiry.  *Id*.  Apparently forgetting that they had told Zaentz and Warner that it was up to them to arrange the deposition of Laing, and misunderstanding the nature of the correspondence, Greenberg wrote:

- "The suggestion that you would meet privately with Mr. Laing to 'prepare him for his deposition' raises serious concerns about a possible invasion of HarperCollins' attorney-client privilege."
- "[B]y nature of Mr. Laing's role of in-house counsel, virtually all of his knowledge or information relevant to this case is likely to be privileged or confidential."
- "If you or your clients are permitted to meet with Mr. Laing without HarperCollins present, there is no way to ensure that HarperCollins' rights will be protected."

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

- • Any agreement to compensate Laing "raises significant conflict of interest problems and ethical concerns."

- • Cases "throughout the United States have disqualified law firms that agreed to pay an adversary's former employee for both percipient and expert testimony. *See, e.g., U.S. v. SAE Civil Const.*, 1996 WL 148521, *2 (D. Neb 1996) (holding that paying opposing party's former president as a trial consultant has a natural tendency to induce the former president to reveal privileged information); *Transamerica Rental Finance Corp. v. Rentclub, Inc.*, 811 F.Supp. 651, 655 (M.D. Fl. 1992) (law firm disqualified for paying former CFO of opposing party as a fact witness and trial consultant); *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d 139, 151 (Ct. App. Tex. 2002)."

- • "[T]he payment of money to an adversary's former employee creates a strong incentive for the witness to provide any helpful information, even if that information is confidential or privileged."

- • "Of course, the risks of disclosure of confidential and privileged information are far greater when dealing with an attorney than when dealing with a CFO or other employee."

*Id.* at Ex. 11.

Greenberg's position evinces its understanding of the importance of the very ethical issues involved in this motion.  Indeed, it took this position even though counsel for Zaentz only contacted Laing because Greenberg had told Warner and Zaentz to coordinate deposition arrangements with him, did not agree or intend to otherwise meet with Laing, did not agree to compensate Laing, and instead deferred setting his deposition until the parties discussed and resolved jointly how to

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

proceed.  *Id.* at Exs. 9-13.[6]  Zaentz also disclosed all of its communications with Laing.  *Id.*  Upon reviewing the correspondence, Greenberg conceded there was nothing improper about Zaentz's actions.  *Id.*

All of this occurred, of course, while Greenberg was actually engaged in the very ethical impropriety that it wrongly asserted against Zaentz and Warner and that it insisted warranted disqualification.  Compounding its misconduct, rather than provide a full and accurate accounting of its conduct, Greenberg denied any wrongdoing and misled MGM, Warner, and Zaentz about the nature and extent of its relationship and communications with Benjamin and Bernstein.

## IV.   PROTECTIVE ACTION BY THIS COURT IS NECESSARY TO PRESERVE THE INTEGRITY OF THESE PROCEEDINGS

Courts have "a responsibility to maintain public confidence in the legal profession."  *Erickson*, 87 F.3d at 300.  To ensure the integrity of the proceedings, courts are invested with the "the inherent power … to levy sanctions in response to abusive litigation practices."  *Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701, at *5 (C.D. Cal. Dec. 13, 2007); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Even though Greenberg has now agreed to terminate its representation and engagement of UA's former lawyers, Greenberg has not disclosed the full extent of its misconduct and still seeks to maintain its unfair advantage.  Greenberg's continued involvement denies Warner's and Zaentz's right to a just and lawful determination of the claims.  It does not matter that Warner and Zaentz are not the holder of the privilege at issue.  *See Decaview Distribution Co., Inc. v. Decaview Asia Corp.*, 2000 WL 1175583 (N.D. Cal. Aug. 14, 2000) (non-client has standing to move for disqualification if opposing attorney's misconduct threatens to prejudice the moving party); *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153 (W.D. Wash. 2006) (permitting non-client party to move for

---

6 The parties have since agreed to split Mr. Laing's per diem three ways.

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

disqualification because the conflict was "so intertwined with the current litigation" that it would impede the "just and lawful determination" of claims).[7]  Furthermore, MGM is affirmatively joining the motion.

### A.    Greenberg Has Gained an Unfair Advantage.

Greenberg has gained an unfair advantage by invading UA's attorney-client privilege.  Greenberg knew that Benjamin and Bernstein were in-house counsel for UA, knew they had negotiated the 1969 Agreements, and knew they had privileged information relevant to this case.  Greenberg targeted the former lawyers, had at least eight conversations lasting more than two hours, and paid Benjamin a $10,000 retainer to testify against the interests of UA and its parent, MGM.

Not surprisingly, Greenberg claims it never acquired any privileged information.  Since Greenberg has refused to turn over to MGM the notes of its communications with Benjamin, there is no way to know how much of MGM's privileged and confidential information has been disclosed.  Greenberg's self-serving assurances, however, are neither persuasive nor sufficient.

In its January 27 letter, for example, Greenberg insisted that Ms. Eskenazi had "not had any substantive conversations with Mr. Benjamin regarding his knowledge as a percipient witness in the case" and had "only limited discussions regarding his potential expert witness testimony."  Lens Dec. at Ex. 18.  The call log that Greenberg provided nearly four months later tells a different story.  Two of

---

[7] The law permits non-client parties to assert conflicts if they have a "personal stake in the motion."  *Colyer v. Smith*, 50 F. Supp. 2d 966, 971-72 (C.D. Cal. 1999).  Courts recognize that a non-client party has standing to seek relief when an ethical violation "impacts the [non-client] party's interest in a just and lawful determination of [its] claims."  *Id.* at 971-72; *see also Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1205 (2011) (holding non-client party has standing where conflict causes "cognizable injury or would undermine the integrity of the judicial process").  UA, as the holder of the privilege in question, has also joined in this motion.  Further, in addition to MGM's, Warner's, and Zaentz's interest, the Court itself has "an independent interest in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them."  *In re A.C.*, 80 Cal. App. 4th 994, 1001 (2000); *see also Coyler*, 50 F. Supp. 2d at 971-72.

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

1    those "limited" discussions lasted over 30 minutes each, and collectively, Ms.

2    Eskenazi's calls as of January 27, 2014 lasted over an hour and a half. *Id*. at Ex. 28.

3        Further, Greenberg's claim that it did not discuss the substance of this case is

4    not credible.  Greenberg admitted that Ms. Eskenazi told Benjamin and Bernstein

5    during their first conversations that Zaentz or Warner may call each of them as a

6    percipient witness given their "personal experience" with the 1969 Agreements. *Id*.

7    at Ex. 18.  Greenberg also would not have disclosed Benjamin in its initial

8    disclosures had it not first satisfied itself that Benjamin had knowledge relevant to

9    the issues in this case.  Nor would Greenberg have retained Benjamin as an

10   expert—and agreed to pay him a $10,000 retainer—without having had more than

11   "limited" discussions concerning the substance of this case with him and becoming

12   satisfied that he would provide favorable testimony.  Finally, Greenberg would

13   not—and could not—claim attorney-client privilege and work product over the

14   notes Ms. Eskenazi took of her conversations if nothing of substance was discussed.

15       Greenberg's account of Ms. Eskenazi's February 2014 call with Benjamin is

16   illustrative.  By then, MGM had already objected to any contact between Greenberg

17   and its former lawyers.  Greenberg claimed that the call was merely a "brief"

18   discussion to inform Benjamin that his deposition would not be going forward and

19   that the only subject discussed was Benjamin's employment history.  However, as

20   the log now reveals, the call was not brief: it lasted almost 43 minutes.  Further, the

21   purpose of the call could not have been to inform Benjamin that his deposition

22   would not be going forward as Greenberg did not even ask Warner and Zaentz

23   whether the deposition was going forward until three days later.  Lens Decl. at Ex.

24   20.  It is also implausible that Ms. Eskenazi discussed Benjamin's employment

25   history for 43 minutes—almost a year after Greenberg had already retained

26   Benjamin as an expert, presumably on the basis of his qualifications.

27

28

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

1    In any event, the law does not expect the parties, or the Court, to accept

2    Greenberg's assurances.  *See Cargill*, 2007 WL 1813762, at *11 ("Statements from

3    counsel or former employees to the effect that they attempted to preserve any

4    attorney-client privilege of the [former employer] while undoubtedly true, are

5    unavailing."); *Packard Bell*, 2001 WL 880957, at *9.  To the contrary, the law

6    *presumes* that Greenberg acquired privileged and confidential information.  *See*

7    *Complex Asbestos Litig.*, 232 Cal. App. 3d at 596 ("The presumption is a rule by

8    necessity because the party seeking disqualification will be at a loss to prove what

9    is known.").  The presumption arises because "no matter how well intentioned

10   counsel and the witnesses may be, the potential for abuse and mischief is great."

11   *Cargill*, 2007 WL 1813762, at *8.

12         The presumption is particularly strong where, as here, there is substantial

13   factual overlap between the work the former lawyers did and the subject of this

14   lawsuit.  *See Shadow Traffic Network*, 24 Cal. App. 4th at 1051.  When this overlap

15   exists, it becomes nearly impossible to rebut the presumption because either (a) the

16   former agent's knowledge of unprotected matters is necessarily "intermingled with"

17   knowledge protected by the attorney-client privilege such that the court cannot be

18   sure the parties will "segregate out only those matters that may be disclosed,"

19   *Cargill*, 2007 WL 1813762, at *8, or (b) the privileged information is likely to be

20   indirectly disclosed, giving the attorney the benefit of the privileged information

21   and eviscerating the privilege, *see Shadow Traffic Network*, 24 Cal. App. 4th at

22   1085 (even if former employee did not expressly disclose information, the attorney

23   could nevertheless "obtain the benefit of the information" as it could "consciously

24   or unconsciously … shape or effect the [person's] analysis and advice").

25         Greenberg undertook to represent both Benjamin and Bernstein with full

26   knowledge of their prior work as UA's attorneys on the very contract at issue—

27   indeed, *because* of that prior work.  It agreed to represent both lawyers for free.  It

28

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

also retained Benjamin as an expert, and paid him $10,000 up front.  The "very nature of [the attorney-client] relationship is such that confidences should be exchanged freely between attorney and client."  *Cargill*, 2007 WL 1813762, at *8. Accordingly, in instances where an attorney enters into an attorney-client relationship with a former employee, "courts will <u>conclusively</u> presume [privileged matters] were exchanged."  *City Nat. Bank v. Adams*, 96 Cal. App. 4th 315, 327 (2002) (emphasis added); *Cargill*, 2007 WL 1813762, at *8.  Thus, regardless of what Greenberg may now claim was disclosed, the Court must presume that Greenberg impermissibly acquired UA's privileged information.

**B.   <u>Greenberg Has Not Been Candid about Its Communications with Benjamin and Bernstein</u>**.

Once the parties objected to Greenberg's misconduct, Greenberg did not provide a straightforward explanation of its interactions with Benjamin and Bernstein:

- Greenberg said nothing about Ms. Eskenazi's notes of her calls with Benjamin for nearly four months, and only disclosed their existence in response to direct inquiries from MGM, Warner, and Zaentz.  It then refused to produce the notes, claiming they are "privileged attorney work product," even though Greenberg represented nothing of substance was discussed during the calls between Ms. Eskenazi and Benjamin.

- Greenberg refused to disclose the existence of its retainer with Benjamin—or the fact that Greenberg had already paid him—for over three months, even though MGM requested such information when it first objected to Greenberg's conduct.  When the agreement was later provided in response to repeated requests, it showed Greenberg had already paid Benjamin at least $10,000.

- As detailed above, Greenberg described its conversations with Benjamin as "limited" and "brief," when, in fact, Greenberg's call log revealed that these conversations were anything but. Further, Greenberg's assurances that its communications with Benjamin have not covered the substance of this case are not credible.

- Finally, in an attempt to rewrite the record, Greenberg now contends—or will no longer "concede"—that it represented Benjamin and Bernstein as percipient witnesses, contrary to its prior statements to MGM, Zaentz, and Warner. Lens Dec. ¶¶ 9, 11; Exs. 8, 23, & 26.

Although Greenberg's wrongful contact with, and representation of, Benjamin and Bernstein are more than sufficient to warrant its disqualification, Greenberg's lack of full candor only underscores the need for such a remedy.

**C.      Greenberg's Continued Involvement Will Irreparably Taint the Integrity of the Proceedings.**

This Court has the authority—indeed, the duty—to disqualify Greenberg from this case. *See Employers Ins. of Wausau v. Albert D. Seeno Const. Co.*, 692 F. Supp. 1150, 1153 (N.D. Cal. 1988) (court has "the duty of supervising the conduct of attorneys practicing before it, and part of that duty is to disqualify counsel"); *Erickson*, 87 F.3d at 300 ("It is the duty of the district court to examine [allegations of unethical behavior]" and the "court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety").

Disqualification is warranted for several reasons. First, there is no way to ascertain the full extent of Greenberg's invasion into UA's privilege. Greenberg has already invoked the attorney-client privilege and work-product doctrines to block inquiry into what it discussed with Benjamin. As a result, there is no way to guarantee that any advantage has been neutralized. *See Cargill*, 2007 WL 1813762, at *13. Indeed, this is why courts presume that attorney-client information has been

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

1  transmitted in such circumstances.  *See Complex Asbestos Litig.*, 232 Cal. App. 3d

2  at 596; *Cargill*, 2007 WL 1813762, at *11; *Packard Bell*, 2001 WL 880957, at *9.

3  Second, Greenberg cannot "unlearn" information it wrongfully acquired.  *See id.*

4  Greenberg "would have the improperly obtained facts instantly available [] in

5  questioning witnesses, making and responding to objections and addressing the

6  court and jury."  *Id.* (quoting *Chronometrics, Inc. v. Sysgen, Inc.*, 110 Cal. App. 3d

7  597, 607 (1980)).  Disqualification thus "serves the useful purpose of eliminating

8  from the case the attorney who could most effectively exploit the unfair advantage."

9  *Packard Bell*, 2001 WL 880957, at *10.  Disqualification of the entire firm is

10  necessary to eliminate that advantage.  *See Pound v. Demera Demera Cameron*,

11  135 Cal. App. 4th 70, 77-78 (2005).  Finally, without disqualification, there will

12  always remain a "nagging suspicion" that Greenberg can exploit the wrongfully

13  acquired information to its advantage.  *MWR/Wallace Power & Indus., Inc. v.*

14  *Thames Associates*, 764 F. Supp. 712, 726-27 (D. Conn. 1991).

15        Greenberg's continued participation inherently taints the fairness of this

16  proceeding and requires disqualification.  While disqualification has serious

17  consequences and a party has a right to choose its own counsel, those

18  considerations yield to the Court's "paramount concern [in] the preservation of

19  public trust in the scrupulous administration of justice and the integrity of the bar."

20  *All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, 2008 WL 5484552, at

21  *11 (N.D. Cal. Dec. 18, 2008); *San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th

22  839, 846 (2006).  Thus, Greenberg should be disqualified immediately.

23        Alternatively, if the Court is not prepared to disqualify Greenberg based on

24  the current record, the Court should order Greenberg to turn over its notes, records,

25  and all documents pertaining to its communications with Benjamin and Bernstein to

26  MGM and the Court for *in camera* review to determine whether the conversations

27  did concern the substantive issues in this case—*e.g.*, reference to online rights,

28

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

1  video games, gambling, or the meaning of the rights grants in the Agreements.  If

2  so, Greenberg's representations that nothing of substance was ever discussed would

3  be proven false, and the firm should then be immediately disqualified.  Disclosure

4  of the notes is eminently reasonable.  Because Greenberg had no right to MGM's

5  privileged information in the first instance, it has no right to retain the "fruits" of

6  that information, including "any notes, records, summaries or descriptions." *Conn*

7  *v. Superior Court*, 196 Cal. App. 3d 774, 785 (1987).

8      In addition, Ms. Eskenazi should be made available for deposition regarding

9  her interactions with Benjamin and Bernstein.  The Tolkien/HC Parties should also

10 be barred from calling the lawyers at either deposition or at trial, and if called by

11 Warner or Zaentz, they can be cross-examined by new counsel or separate counsel.

12 **V.      CONCLUSION**

13     Greenberg has violated the basic rules of professional conduct by invading

14 UA's attorney-client privilege and obtaining an unfair advantage in this action

15 against Warner and Zaentz.  Greenberg's continued participation will compromise

16 the integrity of these proceedings. The Court must neutralize the unfair advantage

17 Greenberg has gained for the Tolkien/HC Parties. Warner and Zaentz respectfully

18 request that Greenberg be disqualified as counsel of record in this action.

19     Dated:  June 9, 2014                    O'MELVENY & MYERS LLP

20

21                                          By:_____

22                                              Daniel M. Petrocelli
                                            Attorneys for the Warner Parties

23

24                                          ARNOLD & PORTER LLP

25                                          By: *Martin R. Glick* /NAP
                                            _____

26                                              Martin R. Glick
                                            Attorneys for The Saul Zaentz Company

27

28

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)

1    Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other
2  signatories listed, and on whose behalf the filing is submitted, concur in the filing's
3  content and have authorized the filing.

4
5       Dated:  June 9, 2014

        O'MELVENY & MYERS LLP
6
7       By:_____
8             Daniel M. Petrocelli
        Attorneys for the Warner Parties
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISQUALIFY
GREENBERG GLUSKER
CASE NO. 12-9912-ABC (SHX)