BONNIE E. ESKENAZI (SBN 119401)
BEskenazi@ggfirm.com
ELISABETH A. MORIARTY (SBN 156569)
EMoriarty@ggfirm.com
RICARDO P. CESTERO (SBN 203230)
RCestero@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiffs and Counterclaim Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, INC., et al.,<br><br>Defendants.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, INC., et al.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>FOURTH AGE LIMITED, et al.,<br><br>Counterclaim Defendants. | Case No.  CV 12-09912 ABC (SHx)<br><br>*Hon. Audrey B. Collins*<br>*Hon. Stephen J. Hillman*<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER MAINTAINING CONFIDENTIALITY OF PORTIONS OF TRANSCRIPT OF DEPOSITION OF PRISCILLA TOLKIEN**<br><br>**[Supplemental Declaration of Rachel Valadez filed concurrently herewith]**<br><br>[Fed. R. Civ. P. 37(a) and Central Dist. Local Rule 37-2]<br><br>**Hearing Date**: June 30, 2014<br>**Hearing Time**: 2:00 p.m.<br>**Hearing Place**: Ctrm. 550, Roybal Building<br>**Discovery Cut-Off**: July 29, 2014<br>**Action Filed**: November 19, 2012<br>**Trial, Pretrial Conf., and Motion Cutoff**: Vacated |

84971-00003/2192456.4

SUPP. MEMO ISO MOTION FOR PROTECTIVE
ORDER MAINTAINING CONFIDENTIALITY OF
PORTIONS OF TRANSCRIPT

Warner's challenge to the Tolkien Parties' confidentiality Designations with respect to Priscilla Tolkien's deposition testimony is yet another improper attempt by Warner to create an uneven playing field in this litigation.[1] On the one hand, Warner marked virtually every single document it produced in this action as "confidential" or "highly confidential attorneys' eyes only" (including newspaper articles and other publicly available documents).[2] Yet Warner brazenly contends that "not a single one of the purportedly 'specific' designations at issue are confidential," even though much of the subject testimony discusses and concerns the <u>exact same documents</u> Warner and its co-defendant deemed confidential. To make matters worse, Warner disputes the confidentiality of testimony that Warner's own counsel expressly acknowledged would remain confidential during the course of the deposition. Joint Stip., at 10:26-11:13; Declaration of Rachel Valadez ("Valadez Decl."), ¶ 3, Ex. B, at 158:8-23. Warner is arguing out of both sides of its mouth. Merely by way of example:

- Warner complains that, before the Protective Order was finalized, the Tolkien/HC Parties threatened to file publicly "a number of highly confidential agreements between and among the parties," including "settlement agreements which, in addition to containing sensitive financial information, also include specifically negotiated confidentiality provisions of their own." Joint Stip., at 14:21-25. These documents included the 2010 "Hobbit Binding Term Sheet" and the 2010 "Revocation and Regrant Agreement" – documents which both Zaentz and Warner marked as "confidential" during document production. Supplemental Declaration of Rachel Valadez ("Supp. Valadez Decl."), ¶ 2. Warner previously demanded that these documents be filed under seal because of their "highly

---

[1] Capitalized terms are as defined in the Tolkien/HC Parties' portion of the Joint Stipulation (Docket Entry #181) (the "Joint Stip.").

[2] Warner admits it has marked all but 15 of the 9626 documents it has produced in this case as confidential under the terms of the parties' Protective Order. Joint Stip., at 23:22-23.

confidential" and "sensitive" nature (Lens Decl. Ex. 1). Now that it suits Warner to argue otherwise, however, Warner contends that Ms. Tolkien's testimony about the 2010 Revocation and Regrant Agreement is <u>not</u> confidential after all. Valadez Decl., ¶ 3, Ex. B, at 278:3-279:11. Similarly, Warner disputes the confidentiality of Ms. Tolkien's deposition testimony concerning the Hobbit Binding Term Sheet – another of the agreements that Warner contends is "highly confidential," which Warner and Zaentz both marked as confidential, and which Warner forced the Tolkien/HC Parties to file under seal. Supp. Valadez Decl., ¶ 2; Valadez Decl., ¶ 3, Ex. B, at 279:12-282:15. Warner cannot legitimately claim that these documents are highly confidential, but that Ms. Tolkien's testimony regarding the documents is not. Warner cannot have it both ways.

- Warner challenges the confidentiality of Ms. Tolkien's deposition testimony concerning an October 12, 2010 letter from Bonnie Eskenazi, counsel for the Tolkien Parties, to Mark Helm, counsel for Warner – a document which Zaentz marked as "Highly Confidential Attorneys' Eyes Only" (SZC0057347) and Warner marked as confidential (WARNER0003880). Supp. Valadez Decl., ¶ 3; Valadez Decl., ¶ 3, Ex. B, at 226:11-232:8. Warner cannot now credibly contend that Ms. Tolkien's testimony concerning this document is not entitled to similar protection.

- Warner disputes the confidentiality of Ms. Tolkien's testimony concerning a November 12, 1998 letter from Cathleen Blackburn, counsel for the Tolkien Parties, to Laurie Battle, Director of Licensing at Zaentz – a document which Zaentz marked as confidential (SZC0016630) (Warner did not produce it). Supp. Valadez Decl., ¶ 4; Valadez Decl., ¶ 3, Ex. B, at 193:2-205:4. Warner's attorney, Victor Jih, extensively quotes this document verbatim in his questions to Mr. Tolkien. Warner cannot argue with a straight face that Ms. Tolkien's testimony regarding a document its co-defendant marked confidential is not also confidential.

- Warner disputes the confidentiality of Ms. Tolkien's testimony concerning an August 4, 2000 memorandum from Cathleen Blackburn to Al

1   Bendich, a Zaentz key executive. Both Warner and Zaentz marked this document
2   confidential (WARNER0055301, SZC0033150). Supp. Valadez Decl., ¶ 5;
3   Valadez Decl., ¶ 3, Ex. B, at 232:9-237:24. Once again, Mr. Jih quotes directly
4   from this document designated as confidential by both defendants, and questions
5   Ms. Tolkien in detail regarding the specific contents of the document.

6   • Warner disputes the confidentiality of Ms. Tolkien's testimony
7   regarding an email from Ian Pare at Silicon Magic to Cathleen Blackburn regarding
8   mobile games. Supp. Valadez Decl., ¶ 6; Valadez Decl., ¶ 3, Ex. B, at 237:25-
9   249:11. Zaentz marked this document as confidential (SZC0009687); Warner did
10  not produce it. Supp. Valadez Decl., ¶ 6. Mr. Jih again quotes this document
11  extensively and questions Ms. Tolkien regarding the confidential material contained
12  in this document.

13  • Warner argues that certain of the subject testimony is not substantive
14  and thus cannot be confidential. E.g. Joint Stip., at 4, 20. Both Warner and Zaentz,
15  however, repeatedly designated the testimony of their own witnesses as confidential
16  even when it consisted of "I don't know," "I don't recall" and even an instruction
17  not to answer. E.g. Supp. Valadez Decl., ¶ 6 Ex. D (Deposition of Benjamin
18  Zinkin at 65:20-71:16, 237:2-241:11) and ¶ 7, Ex. E (Deposition of Laurie Battle at
19  367:17-25, 340:18-344:21).

20  These are merely examples. Warner's challenge to the confidentiality of Ms.
21  Tolkien's testimony regarding the very same documents which defendants
22  themselves have marked as confidential (and even highly confidential – attorneys'
23  eyes only) further demonstrates that Warner's true intention can only be to burden,
24  harass and embarrass Ms. Tolkien. Warner offers no legitimate basis for treating
25  Ms. Tolkien's testimony any differently than the documents about which the
26  testimony relates.

27  Furthermore, despite Warner's contentions to the contrary, all of the
28  Designations contain private, personal information related to the Tolkien family

and/or proprietary information regarding the plaintiffs' business dealings. *See* Joint Stip., at 11:17-12:2. Significantly, Warner's counsel, Mr. Jih, expressly acknowledged to plaintiffs' counsel, and directly to Ms. Tolkien herself, the confidential nature of the Tolkien familial relationships on which he intended to question her. Valadez Decl., ¶ 3, Ex. B at 158:8-23, see also *Id.*, at 148:19-161:11. Indeed, when Ms. Tolkien and her counsel objected to Mr. Jih's questions in this area, he went so far as to repeatedly "reassure" Ms. Tolkien that all parties acknowledged that "there are a lot of issues in this case that are confidential," and that she should rest assured that such confidential information could be protected from public disclosure. *Id.* It was based on these assurances that Ms. Tolkien (and her counsel) reluctantly agreed to answer Mr. Jih's irrelevant and personal questions. Warner's refusal to maintain the confidentiality of this testimony after its false promises to Ms. Tolkien is the epitome of litigation gamesmanship.

Under these circumstances, the only logical explanation for Warner's refusal to maintain the confidentiality of the Designations is so that it can use Ms. Tolkien's testimony for inappropriate strategic purposes. Warner repeatedly chastises Ms. Tolkien for her supposed lack of knowledge about the claims in this lawsuit, calling her testimony "shocking[]," "unfavorable," and – on at least two occasions – "embarrassing." Joint Stip., at 4:23-28, 5:20. While Plaintiffs disagree with this characterization, Warner's rhetoric makes clear that Warner's true intent is to publicly embarrass an 84 year old woman by attempting publicly to portray her testimony as somehow foolish or misinformed. Of course, if Warner wanted to use Ms. Tolkien's testimony for a legitimate purpose in this litigation, it could do so by filing the testimony under seal, as the parties have done repeatedly during the pendency of the case.

Warner accuses the Tolkien/HC Parties of "fail[ing] to disclose to the Court that Warner specifically told the Tolkien/HC Parties that they had no [] intent" to use the Designations for some improper purpose; what Warner actually stated is

that Warner has no "current" intention to publicly embarrass Ms. Tolkien – not that it will refrain from doing so. Declaration of Molly M. Lens ("Lens Decl."), ¶ 5. Warner's self-serving assurances ring hollow. Warner's attempt to extract and mischaracterize small excerpts of Ms. Tolkien's testimony only demonstrates their inclination to present Ms. Tolkien's testimony in a misleading manner whenever it suits their strategic purposes. *See* Joint Stip., at 18:19-21:5; 22:3-11.

Defendants will suffer no prejudice by maintaining the confidentiality of the Designations. The only potential impact on defendants is that they may be required to file some portions of Ms. Tolkien's Transcript under seal, a task which they have required the Tolkien/HC Parties to do, and which they have done themselves, on multiple occasions without any incident. The potential harm to the Tolkien/HC Parties (and in particular Ms. Tolkien), however, is significant, and outweighs the minimal procedural inconvenience of filing the Designations under seal.

Accordingly, the Tolkien/HC Parties respectfully request that the Court grant the Motion and issue a protective order requiring that the all of the Designations remain confidential under the terms of the Protective Order.

DATED: June 16, 2014

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: /s/ Bonnie E. Eskenazi
BONNIE E. ESKENAZI (SBN 119401)