1   BONNIE E. ESKENAZI (SBN 119401)
    BEskenazi@ggfirm.com
2   ELISABETH A. MORIARTY (SBN 156569)
    EMoriarty@ggfirm.com
3   RICARDO P. CESTERO (SBN 203230)
    RCestero@ggfirm.com
4   GREENBERG GLUSKER FIELDS CLAMAN &
    MACHTINGER LLP
5   1900 Avenue of the Stars, 21st Floor
    Los Angeles, California  90067-4590
6   Telephone:  310.553.3610
    Fax:  310.553.0687
7
    Attorneys for Plaintiffs and Counterclaim Defendants
8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10
11   FOURTH AGE LIMITED, et al.,              Case No.  CV 12-09912 ABC (SHx)

12                      Plaintiffs,           *Hon. Audrey B. Collins*
                                              *Hon. Magistrate Stephen J. Hillman*
13   v.
                                              **PLAINTIFFS' MEMORANDUM
14   WARNER BROS. DIGITAL                     OF POINTS AND AUTHORITIES
     DISTRIBUTION, INC., et al.,              IN OPPOSITION TO MOTION
15                                            TO DISQUALIFY GREENBERG
                        Defendants.           GLUSKER**
16
17   WARNER BROS. DIGITAL                     [Declarations of Bonnie E. Eskenazi,
     DISTRIBUTION, INC., et al.,              Alan Benjamin and Rachel Valadez
18                                            and Opposition to Joinder by MGM
                  Counterclaim Plaintiffs,    filed concurrently herewith]
19
     v.
20                                            Hearing Date: July 22, 2014
     FOURTH AGE LIMITED, et al.,              Hearing Time: 10:00 a.m.
21
                  Counterclaim Defendants.    Discovery Cut-Off: July 29, 2014
22
23
24
25
26
27
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

2192350.8

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION................................................................................0

II.   STATEMENT OF FACTS....................................................................5

   A.   Benjamin's and Bernstein's Roles in the 1969 Agreements. ...............5

   B.   MGM Is Not a Party, Nor is it Adverse to the Tolkien/HC
      Parties. ............................................................................................6

   C.   Greenberg's Proper Communications with Benjamin and
      Bernstein. .......................................................................................6

   D.   Defendants'/MGM's 14 Month Delay in Bringing This Motion. ........7

   E.   Defendants Bring this Motion for Improper Tactical Reasons.............8

III.   ARGUMENT .....................................................................................9

   A.   Defendants Lack Standing to Disqualify Greenberg .........................10

   B.   Defendants Have Unreasonably Delayed in Bringing This
      Motion. .........................................................................................12

   C.   Greenberg Has Not Violated Any Ethical Rule................................13

      1.   California law Recognizes Greenberg's Right to
         Communicate with Benjamin and Bernstein.........................14

      2.   Greenberg's Statements That It Would Represent
         Benjamin and Bernstein at Deposition Does Not Change
         the Analysis. .................................................................16

      3.   The Fact that Greenberg Retained Benjamin as an Expert
         Does Not Justify Disqualification. ......................................21

      4.   The "Appearance of Impropriety" Standard Does Not
         Apply in California, But Would, in Any Event, Be
         Inapposite......................................................................23

   D.   This Motion Was Brought For Purely Tactical Reasons. ...................24

   E.   Defendants' Request for Alternative Relief Should be Denied..........25

IV.   CONCLUSION .................................................................................25

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

i

OPPOSITION TO MOTION TO
DISQUALIFY

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Cargill, Inc. v. Budine,*
  2007 WL 1813762 (E.D. Cal. June 22, 2007) ..................................................... 23

*Colyer v. Smith,*
  50 F.Supp.2d 966 (C.D. Cal. 1999) ....................................................... 10, 11, 12

*Corns v. Laborers Int'l Union of N. Am.,*
  2014 WL 1319306 (N.D. Cal. Mar. 31, 2014,) ................................................. 11

*In re County of Los Angeles,*
  223 F.3d 990 (9th Cir. 2000) ......................................................................... 10, 21

*In re McKinney Ranch Associates,*
  62 B.R. 249 (Bkrtcy. C.D. Cal. 1986) ............................................................ 3, 24

*In re Petroleum Products Antitrust Litigation,*
  658 F.2d 1355 (9th Cir. 1981) ............................................................................ 24

*Kasza v. Browner,*
  133 F.3d 1159 (9th Cir. 1998) ............................................................................ 10

*Layer2 Communications, Inc. v. Flexera Software, LLC,*
  2014 WL 2536993 (N.D. Cal. June 5, 2014) ..................................................... 20

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.,*
  2004 U.S. Dist. LEXIS 30734 (E.D. Cal. 2004) ............................................... 21

*North Pacifica, LLC v. City of Pacifica,*
  335 F. Supp.2d 1045 (N.D. Cal. 2004)..............................................2, 21, 22, 23

*O'Shea v. Epson Am., Inc.,*
  2010 U.S. Dist. LEXIS 62809 (C.D. Cal. 2010) ............................................... 21

*Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.,*
  760 F.2d 1045 (9th Cir. 1985) ................................................................. 9, 11, 16

*Packard Bell NEC, Inc. v. Aztech Systems LTD.,*
  2001 WL 880957 (C.D. Cal. Jan. 22, 2001)..........................................19, 20, 21

*Patriot Scientific Corp. v. Moore,*
  178 Fed.Appx. 18 (Fed. Cir. 2006) .................................................................... 21

*S.E.C. v. King Chuen Tang,*
  831 F.Supp.2d 1130 (N.D. Cal. 2011)................................................................ 12

*TRC & Associates v. NuScience Corporation,*
  2013 WL 6044315 (C.D. Cal. Nov. 14, 2013) ................................................... 20

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

ii

OPPOSITION TO MOTION TO
DISQUALIFY

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3   S<small>TATE</small> C<small>ASES</small>

4   *Ark. Valley State Bank v. Phillips*,
5     2007 OK 78, 171 P.3d 899 (2007) .................................................. 24

    *Castro v. Los Angeles Board of Supervisors*,
6     232 Cal.App.3d 1432 (1991) ......................................................... 10

7   *Continental Ins. Co. v. Superior Court*,
8     32 Cal.App.4th 94 (1995) ....................................................... 15, 19

    *Cooke v. Superior Court*,
9     83 Cal.App.3d 582 (1978) ............................................................ 17

10  *Elliot v. McFarland Unified School Dist.*,
11    165 Cal.App.3d 562 (1985) ................................................ 9, 10, 14

12  *Fox Searchlight v. Paladino*,
      89 Cal.App 4th 294 (2001) .......................................................... 17

13  *Frazier v. Superior Court*,
14    97 Cal.App.4th 23 (2002) ............................................................ 22

15  *Great Lakes Const., Inc. v. Burman*,
      186 Cal.App.4th 1347 (2010) ....................................................... 11

16  *In re Marriage of Zimmerman*,
17    16 Cal.App.4th 556 (1993) ............................................................ 9

18  *Koo v. Rubio's Restaurants, Inc.*,
      109 Cal. App. 4th 719 (2003) .................................................. 18, 19

19  *La Jolla Cove Motel and Hotel Apartments, Inc. v. Superior Court*,
20    121 Cal.App.4th 773 (2004) ......................................................... 16

21  *Maruman Integrated Circuits, Inc. v. The Consortium Company*,
      166 Cal.App.3d 443 (1985) ............................... 16, 17, 18, 19, 21

22  *Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp.*,
23    6 Cal.App.4th 1256 (1992) .......................................................... 15

24  *Neal v. Health Net, Inc.*,
      100 Cal.App.4th 831 (2002) ........................................................ 17

25  *Oaks Management Corp. v. Superior Court*,
26    145 Cal.App.4th 453 (2006) ..................................................... 3, 23

27  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*,
      20 Cal.4th 1135 (1999) ................................................................. 9

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO
DISQUALIFY

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*River West, Inc. v. Nickel,*
188 Cal.App.3d 1297 (1987) ................................................................ 12

4

*Roush v. Seagate Technology, LLC,*
150 Cal.App.4th 210 (2007) ................................................................ 23

5

6

*Shadow Traffic Network v. Superior Court,*
24 Cal.App.4th 1067 (1994) ..........................................................22, 23

7

*State Farm Fire & Cas. Co. v. Superior Court,*
54 Cal.App.4th 625 (1997) ........................................................2, 15, 19

8

9

*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.,*
69 Cal.App.4th 1399 (1999) ...........................................................9, 10

10

*Triple A Machine Shop, Inc. v. State of California*
213 Cal.App.3d 131 (1989) ................................................................ 15

11

*Western Cont'l Operating Co. v. Natural Gas Corp. of Cal.,*
212 Cal.App.3d 752 (1989) ................................................................ 12

12

13

*Zador Corp. v. Kwan,*
31 Cal.App.4th 1285 (1995) .............................................................4, 9

14

**RULES**

15

CRPC Rule 1-120 ................................................................................ 21

16

CRPC Rule 2-100 ................................................................................ 16

17

18

CRPC Rule 2-100(B) .......................................................................2, 15

19

CRPC Rule 3-310 ...........................................................................18, 19

Fed.R.App.P. 32.1 ............................................................................... 21

20

Local Rule 32.1 ................................................................................... 21

21

**OTHER AUTHORITIES**

22

ABA Model Code, Canon 9 ................................................................ 23

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

iv

OPPOSITION TO MOTION TO
DISQUALIFY

## I.        **INTRODUCTION**

Seeking to put the Tolkien/HC Parties at a severe disadvantage, Warner and Zaentz[1] (collectively "Defendants") ask this Court to disqualify the Tolkien/HC Parties' long-time counsel, Greenberg Glusker Fields Claman & Machtinger LLP ("Greenberg").  They do this because Greenberg sought to retain two non-party witnesses as experts on industry custom and practice.  Defendants argue this was improper because the witnesses participated in negotiating the relevant contracts *forty-five years ago*.  To support this motion, Defendants misstate the facts and law.

The following ten facts (all either ignored or misrepresented by Defendants), among others, demonstrate that Greenberg has handled this matter ethically at all times and the motion should be denied in its entirety.

First, there is no attorney-client relationship between Greenberg and any of the Defendants.  Instead, this motion is based on Greenberg's communications with **two third-party witnesses** – Alan Benjamin and William Bernstein –that are demonstrably permissible under California law.   Second, Benjamin and Bernstein worked *for UA* decades ago.  They did not work for any of the Defendants and there is no relationship between Defendants and UA.  There is not even any evidence explaining any purported relationship between UA and MGM.  Third, neither UA nor MGM is a party to this action, nor is there any evidence that either of them has any interest in this case.  Fourth, the primary agreements at issue in this case were negotiated and executed *forty-five years ago*.  There is no evidence that the two witnesses have any recollection of relevant communications, if there were any, from that long ago.  Fifth, *no confidential information was discussed with or disclosed to Greenberg at any time by either witness*.  Sixth, neither Defendant appears to believe that Messrs. Benjamin and Bernstein have material, relevant knowledge of the contract negotiations decades ago, because neither listed them in

---

[1] For ease of reference, unless otherwise noted, the Tolkien/HC Parties will use the same defined terms used in the moving papers.

OPPOSITION TO MOTION TO
DISQUALIFY

its Initial Disclosures.  Seventh, on March 28, 2013, more than *14 months* before the Motion was filed, the Tolkien/HC Parties disclosed that Benjamin should be contacted through Greenberg – thereby notifying all parties (including MGM) that Greenberg had been in contact with Benjamin.  No one objected to this disclosure. Eighth, on July 1, 2013, eleven months before the Motion was filed, Greenberg confirmed that it would be representing Messrs. Benjamin and Bernstein should their depositions be taken. Again, no one objected.  Ninth, in the more than *14 months* between March 28, 2013 and the date Defendants filed this Motion, Greenberg spent more than 10,000 hours litigating the case.  Tenth, despite having violated no ethical rule, to try to avoid this unnecessary Motion, Greenberg agreed not to further communicate directly with Benjamin or Bernstein about this case.

Based on the foregoing facts, there is absolutely no basis on which to disqualify Greenberg.  Defendants cite three ethical rules which they contend Greenberg violated.  Defendants are wrong on all three counts.  Greenberg did not violate California Rule of Professional Conduct ("CRPC") 3-310(C) because, quite simply, it has not accepted the representation of two clients with conflicting interests.  Rather, it contacted <u>third-party</u> witnesses about providing expert testimony.  California law explicitly permits Greenberg to communicate with these witnesses.  *See North Pacifica, LLC v. City of Pacifica*, 335 F. Supp.2d 1045 (N.D. Cal. 2004) (refusing to disqualify lawyers who retained former adversary's attorneys as expert witnesses); *State Farm Fire & Cas. Co. v. Superior Court,* 54 Cal.App.4th 625, 652 (1997) (attorneys are entitled to contact former employees of the adverse party to discuss potential testimony); Rule 2-100(B), CRPC.

Second, Greenberg has not violated CRPC 1-120 or 3-310(E).  Defendants accuse Greenberg of inducing Benjamin to violate his ethical duties.  This is nonsense.  Benjamin's agreement to provide expert testimony in this case is not employment "adverse to" his former client, UA, which is not a party to this case. Moreover, Benjamin disclosed no confidential information to Greenberg.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO
DISQUALIFY

Declaration of Alan Benjamin ("Benjamin Decl."), ¶ 4.  It is outrageous to suggest, without any evidence, that Benjamin would violate the attorney-client privilege, or that Greenberg would encourage him to do so.  There has been absolutely no showing that Benjamin's agreement to provide expert testimony would adversely affect whatever rights in the Tolkien Works MGM supposedly "reacquired."

Third, the so-called "appearance of impropriety" test no longer appears in the ABA Model Code, *In re McKinney Ranch Associates*, 62 B.R. 249 n.12 (Bkrtcy. C.D. Cal. 1986), and it never applied in California.  California Courts and the Central District have rejected its application. *See Id.*; *Oaks Management Corp. v. Superior Court,* 145 Cal.App.4th 453, 471 (2006).  Even if this concept did apply, there is no impropriety – or appearance of it.

Recognizing the grave weaknesses in their legal position, Defendants distort the facts in order to paint Greenberg as unethical.  Here are just a few examples:

- Defendants claim that Benjamin and Bernstein were solely responsible for negotiating the 1969 Agreements.  Motion, p. 4.  Not true.  UA was represented by a team of people, including outside counsel Herbert Schrank.  Declaration of Rachel Valadez ("Valadez Decl."), ¶ 2-3, Exs. A-B.

- Defendants represent that Greenberg inaccurately described its conversations with Benjamin as "limited" and "brief," when in fact the phone calls were lengthy.  Motion, p.4.  False.  Greenberg said nothing about the total length of the calls.  Greenberg accurately stated that those conversations included "limited discussions regarding [Benjamin's] potential expert witness testimony" and "briefly discuss[ed] Mr. Benjamin's employment history."

- Defendants claim that MGM objected to Greenberg's contact with Benjamin "within days of learning that Greenberg claimed to represent" him.  False.  Defendants provided MGM with copies of the

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

3

OPPOSITION TO MOTION TO DISQUALIFY

Tolkien/HC Parties' Initial Disclosures **on March 29, 2013**, which clearly indicated that Benjamin should be contacted through Greenberg, but MGM did not object until December 27, 2013.

- Defendants claim Greenberg admitted that it contacted Benjamin and Bernstein because of their "direct involvement in the 1969 Agreements on behalf of UA." Again, false. Greenberg clearly stated that it contacted these witnesses because they had previously served as experts in other matters and both of them had experience "on the subject of film-related merchandising activity in the late 1960s and early 1970s…." Lens Decl., Ex. 18.

The true facts are that Greenberg contacted these two third-party witnesses to explore whether they could provide expert testimony on industry custom and practice in the late 1960s and early 1970s. Greenberg agreed to retain one of those witnesses as an expert, and agreed to represent both in the event their depositions were taken. Those depositions never occurred, and Greenberg never provided any legal advice or engaged in any substantive conversations with either witness about possible percipient testimony. Most importantly, no confidential information was sought or disclosed. None of these facts was ever kept secret from Defendants.

Knowing all of these facts for many months, Defendants lay in wait while Greenberg spent thousands of hours and enormous resources litigating the case, taking and defending depositions, engaging in comprehensive document production, written discovery and trial preparation. Now, on the eve of the twice-continued discovery cutoff, Defendants have brought this motion to try to obtain a critical and unfair advantage by disqualifying Greenberg.

As courts frequently observe, disqualification motions are fraught with the potential for abuse, and this motion is a textbook example of that abuse. *Zador Corp. v. Kwan*, 31 Cal.App.4th 1285, 1303 (1995). The Court should deny the motion in its entirety, with prejudice.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISQUALIFY

**II.   STATEMENT OF FACTS**

As the Court is well aware, this case arises out of a dispute over the scope of merchandising rights in and to the Tolkien Works granted by a series of agreements entered into between the Tolkien/HC Parties' predecessors and UA in July, 1969. These are the so-called "1969 Agreements."  The Tolkien/HC Parties contend Defendants have exploited rights not granted to UA under the 1969 Agreements.

**A.   Benjamin's and Bernstein's Roles in the 1969 Agreements.**

The negotiations leading up to the 1969 Agreements began in 1967 and continued intermittently for the next two years.  Defendants falsely state that Bernstein and Benjamin were the only two UA executives involved in the negotiation and drafting of the 1969 Agreements.  Motion, p. 4.  In truth, UA had a team of people involved in negotiating and drafting the 1969 Agreements, including Sam Gelfman, Gabe Katzka, Joe Adelman, and Herb Schrank.  *See* Valadez Decl., ¶¶ 4-6, Exs. C-D.  Mr. Schrank was outside counsel and was involved from the beginning of the negotiations performing legal work for UA drafting and documenting the deal.  *Id.*, Exs. B-C.  There is no evidence that Benjamin or Bernstein performed any legal work in connection with the 1969 Agreements, as opposed to participating in negotiations from a business perspective.

During the negotiations, Bernstein sent at least two letters to UA's lawyer, Mr. Schrank, which were disclosed to the Tolkien/HC Parties' predecessors at the time.  *Id.*, Exs. A-B.  Both of these letters discussed various open points in negotiations, including certain merchandising issues.  *Id.*

Although Benjamin and Bernstein had some involvement in the negotiation of the 1969 Agreements, it is unclear whether, after *45 years,* either would actually remember anything that was discussed.  In fact, neither of these two witnesses was deposed in the prior profit participation case brought by the Tolkien/HC Parties' and/or their predecessors against New Line Cinema, which also involved interpretation of the 1969 Agreements.  Declaration of Bonnie E. Eskenazi

OPPOSITION TO MOTION TO
DISQUALIFY

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   ("Eskenazi Decl."), ¶ 25.  Moreover, neither Warner nor Zaentz identified either

2   Benjamin or Bernstein as a potential witness in its Initial Disclosures despite

3   identifying nearly 60 witnesses between them.

**B.      MGM Is Not a Party, Nor is it Adverse to the Tolkien/HC Parties.**

5   MGM admits in its Notice of Joinder that it is not a party to this lawsuit.  As

6   discussed in the concurrently filed Opposition to MGM's Notice of Joinder, MGM

7   has failed to prove that it has any interest whatsoever in this case and its failure to

8   intervene strips it of any standing on this motion or in this case.

**C.      Greenberg's Proper Communications with Benjamin and**

10   **Bernstein.**

11   Early in this action, Greenberg began exploring potential expert testimony

12   about customs and practices in the film-related merchandising industry in the late

13   1960s and early 1970s.  Eskenazi Decl., ¶ 2.  Because Bonnie Eskenazi, lead

14   counsel for the Tolkien/HC Parties, as well as others at Greenberg, had previously

15   used both witnesses as experts on other matters, Ms. Eskenazi called them to

16   discuss serving as experts in this case.  *Id.*

17   Bernstein advised Ms. Eskenazi that he was in failing health and declined to

18   serve as an expert.  Eskenazi Decl., ¶ 4.  The discussions between Ms. Eskenazi and

19   Bernstein were brief and non-substantive.  *Id.*, ¶¶ 3-7.  At the beginning of their

20   first conversation, Ms. Eskenazi reminded Bernstein to be careful not to disclose

21   any privileged information during their discussions.  *Id.*, ¶ 3.  No such information

22   was sought or disclosed.  *Id.*, ¶¶ 3-7

23   Several months later, after defendants sought Bernstein's percipient witness

24   deposition, Ms. Eskenazi contacted him again solely to see if he would be able to

25   provide a deposition.  Due to his health, Bernstein asked that he not be deposed.

26   *Id.*, ¶ 5.  Greenberg advised Defendants of Bernstein's fragile health and requested

27   that he not be deposed.  *Id.*  Although Ms. Eskenazi offered to represent Bernstein

28   at his deposition, Defendants never made any further attempts to depose him.  *Id.*

Ms. Eskenazi also contacted Benjamin about potentially serving as an expert witness. *Id.*, ¶ 8; Benjamin Decl. ¶ 3. Unlike Bernstein, Benjamin was interested in doing so. *Id.* As with Bernstein, Ms. Eskenazi explained to Benjamin that she would not ask about, nor should he disclose, any attorney-client privileged or confidential communications. Eskenazi Decl., ¶ 8. Ms. Eskenazi and Benjamin then discussed what opinions he might be able to provide, his prior experience as an expert witness, his employment history, and logistics involving his retention as an expert, including having to give a deposition in California. Eskenazi Decl., ¶¶ 8 & 11. They did not discuss his potential percipient witness testimony. *Id.*, ¶ 9.

After Defendants sought Benjamin's percipient witness deposition, Ms. Eskenazi called Benjamin and discussed the logistics of where and when his deposition would take place, *Id.*, ¶ 14, and Benjamin asked Ms. Ezkenazi to represent him if the deposition took place. Benjamin Decl. ¶ 5. Because Defendants ultimately chose not to proceed with Benjamin's deposition, Ms. Eskenazi never discussed the substance of his potential testimony with him. *Id.*, ¶ 24. No confidential or privileged information was sought by Ms. Eskenazi or disclosed by Benjamin in any of their conversations. *Id.*; Benjamin Decl., ¶ 4.

**D.    Defendants'/MGM's 14 Month Delay in Bringing This Motion.**

The Tolkien/HC Parties disclosed Benjamin as a potential, percipient witness in their Initial Disclosures served on March 28, 2013. Valadez Decl., ¶ 7, Ex. F. The Initial Disclosures stated that Benjamin was a former business affairs executive at UA and that he could be contacted through Greenberg. *Id.*

In late June 2013, Defendants requested the depositions of Benjamin and Bernstein and asked if Greenberg would be representing them. Valadez Decl., ¶ 9. As early as July 1, 2013, Greenberg informed Defendants it would represent both witnesses in connection with their percipient depositions should they occur. *Id.* As set forth above, neither deposition happened, and Greenberg never represented either witness in deposition. Eskenazi Decl., ¶ 5 & 24.

OPPOSITION TO MOTION TO
DISQUALIFY

1   Notwithstanding that they had known about the issues in this motion for
2   almost a year, Defendants waited until February 13, 2014 to raise any concern
3   whatsoever about Greenberg's relationship with Benjamin and Bernstein.  Eskenazi
4   Decl., ¶ 23   Defendants then waited another four months to bring this Motion.

5   During the more than 14 months Defendants waited to bring this motion –
6   from March 28, 2013 to June 9, 2014 – Greenberg attorneys and paralegals spent at
7   least 10,080 hours litigating the case.  Eskenazi Decl., ¶ 26.  Greenberg has
8   engaged in extensive discovery, reviewed hundreds of thousands of pages of
9   documents, taken and defended numerous depositions, made and opposed several
10   motions and prepared the entire litigation strategy for this case.  *Id*.  Given the size
11   of the document production and volume of written discovery conducted, it would
12   likely take new counsel thousands of hours to get up to speed.  *Id*.

13   **E.**     **Defendants Bring this Motion for Improper Tactical Reasons.**

14   Since receiving MGM's first letter complaining about its communications
15   with Benjamin and Bernstein, Greenberg has bent over backwards to try to resolve
16   the dispute.  Even though Greenberg was legally and ethically in the right, and
17   although it had no obligation to do so, Greenberg provided MGM with a complete
18   description of its communications with Benjamin and Bernstein in order to
19   demonstrate that no confidential information had been disclosed.  Valadez Decl., ¶
20   10.  When that did not satisfy Defendants, Greenberg offered to hire independent
21   counsel to participate in any discussions between Greenberg and the witnesses in
22   order to protect against any disclosure of any confidential information.  Lens Decl.,
23   Ex. 21.

24   But that wasn't good enough for MGM or the Defendants.  So, Greenberg
25   decided, at substantial expense, to acquiesce in MGM's demand that Greenberg not
26   have any further contact with the witnesses.  Valadez Decl., ¶ 11.  The Tolkien/HC
27   Parties hired separate counsel to handle the percipient depositions of these
28   witnesses and Greenberg provided Defendants with the expert retainer agreement

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO
DISQUALIFY

between it and Benjamin.  *Id.*  Greenberg made these concessions in order to resolve this dispute, so it could focus on completing discovery by the (twice-extended) discovery cutoff of July 29, 2014.  Even though this was substantially what had been requested, Defendants and MGM brought this motion anyway.

## III.   **ARGUMENT**

Motions to disqualify are often used to harass opposing counsel, delay litigation, or intimidate an adversary into accepting an unfavorable settlement.  Indeed, "it is widely understood by judges that 'attorneys now commonly use disqualification motions *for purely strategic purposes*.'"  *Zador Corp.,* 31 Cal.App.4th at 1303 (internal citations omitted and emphasis added).  Because of the potential for abuse, courts faced with a disqualification motion must engage in a cautious balance of competing interests, including "a client's right to chosen counsel, an attorney's interest in representing a client, . . . and the possibility that tactical abuse underlies the disqualification motion."  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1145 (1999).

For this reason, "disqualification motions should be subjected to 'particularly strict judicial scrutiny.'"  *Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal citations omitted).  "Conclusory statements" by a party seeking disqualification "are insufficient."  *Elliot v. McFarland Unified School Dist.*, 165 Cal.App.3d 562, 572 (1985) (refusing to disqualify in light of school district's failure to offer substantial evidence that it had imparted confidential information to attorneys); *In re Marriage of Zimmerman*, 16 Cal.App.4th 556, 565 (1993) (movant's conclusory declaration that she "outlined the case" for attorney during consultation found insufficient); *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.*, 69 Cal.App.4th 1399, 1407 (1999) (conclusory statements that lawyer "advised" the putative client, without "particulars," are "flimsy evidence" which cannot support disqualification).  The party seeking disqualification must make a concrete "showing of the nature of the

communications or a statement of how they relate to the current representation." *Elliott*, *supra*, at 562.  "Speculative contentions of conflict of interest cannot justify disqualification."  *See Castro v. Los Angeles Board of Supervisors*, 232 Cal.App.3d 1432, 1442 (1991).

Defendants' motion utterly fails on all of these grounds.  Defendants deliberately misconstrue the facts, ignore binding legal precedent and offer absolutely no evidence that justifies disqualification.  The motion is without basis.

## A.   <u>Defendants Lack Standing to Disqualify Greenberg</u>[2]

None of the parties seeking to disqualify Greenberg are clients of Greenberg. There is no assertion that Greenberg owes any duties of loyalty or confidentiality to any of them.  Accordingly, none of Defendants or MGM has standing to disqualify Greenberg.  The motion should be denied on this basis alone.

The Ninth Circuit recognizes the "general rule" that "courts do not disqualify an attorney on the grounds of conflict of interest ***unless the former client moves for disqualification***."  *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998) (emphasis added).  "The majority view is that only ***a current or former client of an attorney has standing*** to complain of that attorney's representation of interests adverse to that current or former client."  *Colyer v. Smith*, 50 F.Supp.2d 966, 971 (C.D. Cal. 1999)(emphasis added); *see also, Strasbourger Pearson, supra*, at 1404.[3]

Some jurisdictions recognize a "narrow exception" to this rule, which arises only when the ethical basis for the motion "so infects the litigation…that it impacts the moving party's interest in a just and lawful determination of [the moving party's] claims.'"  *Colyer* denied a motion to disqualify, finding that the minority rule does not apply in California or in the Central District, and would not require

---

[2] MGM, a non-party to this action, has filed a separate "joinder" in this motion.  The Tolkien/HC Parties have concurrently filed a separate opposition to that "joinder."
[3] Although state law governs motions to disqualify, *see In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000), "to the extent the question is one of standing, the issue must be resolved under federal law."  *Colyer*, 50 F.Supp.2d at 971 n.2.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO
DISQUALIFY

1  disqualification even if it did apply.  No California case has adopted the rule

2  discussed (but not adopted) in *Colyer*, and California has expressly rejected that

3  view.  *Great Lakes Const., Inc. v. Burman*, 186 Cal.App.4th 1347, 1356–1359

4  (2010); *see Corns v. Laborers Int'l Union of N. Am.,* 2014 WL 1319306, at *2 n.3

5  (N.D. Cal. Mar. 31, 2014,) quoting *Colyer*, 50 F.Supp.2d at 971.

6      Indeed, in rejecting standing by non-parties, *Colyer* noted "[t]he standing

7  requirement protects against the strategic exploitation of the rules of ethics long

8  disfavored by the Courts."  *See Optyl Eyewear*, 760 F.2d at 1050 ("'The cost and

9  inconvenience to clients and the judicial system from misuse of the rules for tactical

10  purposes is significant. Because of this potential for abuse, disqualification motions

11  should be subjected to `particularly strict judicial scrutiny'").

12      Even if the exception applied in California, at a minimum, "a non[-]client

13  litigant must establish a personal stake in the motion to disqualify sufficient to

14  satisfy the 'irreducible constitutional minimum' of Article III." *Colyer*, 50

15  F.Supp.2d at 971.  Here, Defendants utterly fail to meet this standard.

16      Defendants argue that they have standing to bring this motion because

17  Greenberg's purported *access to* UA's privileged or confidential information will

18  negatively impact the integrity of the judicial process.  *See* Motion, p. 19, n. 7.  This

19  argument not only ignores the undisputed fact that Greenberg did not seek or obtain

20  privileged and confidential information, it is a gross misstatement of the law.

21      In order to fall within the exception (if it applied), Defendants would have

22  to prove that Greenberg somehow invaded "a legally protected interest which is (a)

23  concrete and particularized, and (b) actual or imminent, not conjectural or

24  hypothetical."  *Colyer,* 50 F.Supp.2d at 973.  A "broad interest in the administration

25  of justice is insufficiently concrete and particularized to support a finding of

26  standing."  *Id.*  The assertion that Greenberg might have obtained UA's confidential

27  information is likewise insufficient "because the only injury that results from the

28  breach of confidentially is personal to [UA]."  *Id.*  Simply put, under any rule,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO
DISQUALIFY

Defendants have "no standing to complain that information obtained during the commission of a wrong against a third party will be used against [them]." *Id.* Finally, any assertion that, by talking to Benjamin and Bernstein, Greenberg has obtained an unfair "advantage" (Motion, p. 3) is also insufficient to give Defendants standing to bring this motion. *Id.*  Accordingly, Defendants have no standing to complain about Greenberg's alleged ethical violations and the motion should be denied on this basis alone.

### B.   Defendants Have Unreasonably Delayed in Bringing This Motion.

Because of the potential for abuse, an attempt to disqualify an attorney will be denied if there has been "unreasonable delay . . . in making the motion and resulting prejudice." *River West, Inc. v. Nickel,* 188 Cal.App.3d 1297, 1309 (1987). For delay to be "unreasonable" it must be "extreme in terms of time and consequence." *Id.* at 1311.  If the party opposing the motion can demonstrate prima facie evidence of such unreasonable delay, the "burden then shifts back to the party seeking disqualification to justify the delay." *Western Cont'l Operating Co. v. Natural Gas Corp. of Cal.*, 212 Cal.App.3d 752, 755-56, 763 (1989).

Courts consider the following factors in deciding whether a party has unreasonably delayed in seeking disqualification: "(1) how long it has known of the potential conflict; (2) whether it has been represented by counsel since it has known of the potential conflict; (3) whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile and why." *River West*, 188 Cal.App.3d at 1309; *see S.E.C. v. King Chuen Tang*, 831 F.Supp.2d 1130, 1144 (N.D. Cal. 2011).  Here, all of these factors weigh in favor of finding that Defendants (and MGM) unreasonably delayed in bringing this motion.

First, Defendants have known the facts supposedly giving rise to this conflict ***for more than a year*** – since March 28, 2013, when the Tolkien/HC Parties served their Initial Disclosures stating that Benjamin ***could be contacted through***

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

*Greenberg*.  Valadez Decl., ¶ 7, Ex. F.  MGM received these disclosures the next day.  *Id*., ¶ 8, Ex. G.  From that moment, Defendants and MGM knew that Greenberg had been in contact with Benjamin and was acting on his behalf.  This was confirmed on July 1, 2013 and multiple times thereafter.  *Id*.  Second, Defendants have been represented by counsel throughout this case.  Third, nothing prevented Defendants from bringing this motion earlier.  As Defendants admit, from the very first moment MGM raised this issue, Greenberg has made clear that no conflict existed, and no one could possibly have thought that Greenberg intended to resign as counsel in response to the baseless claims of misconduct.  If Defendants seriously believed those facts provided grounds to disqualify Greenberg, they were certainly able to bring the motion at that time.  Finally, there is no reason to think that this motion would have been any more futile or inappropriate at an earlier juncture than it is now.  The facts as they exist today are the same as they have been since March 28, 2013.  Defendants could have brought the exact same motion long before any discovery had been completed.

The delay in bringing this motion creates extreme prejudice for the Tolkien/HC Parties.  Greenberg has dedicated more than 12,000 hours to this case since the dispute first arose.  Of those 12,000 hours, approximately 10,000 have been spent since Greenberg served the Tolkien/HC Parties' Initial Disclosures which put Defendants on notice of Greenberg's contact with Benjamin.  Accordingly, the Court should deny the motion because of this extraordinary and unreasonable delay.

## C.    Greenberg Has Not Violated Any Ethical Rule.

Defendants argue that Greenberg has entered into "conflicting representations," has induced Benjamin to enter into a conflicting representation, and has otherwise created an "appearance of impropriety."  Defendants' entire analysis obscures the legal principles which must be applied.  Defendants do this intentionally, because when properly applied, the law and the facts demonstrate that

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  Greenberg did nothing wrong.

2      Defendants' entire argument is based on the assertion that MGM is adverse

3  to the Tolkien/HC Parties *in this case*.[4]  But, it is not.  ***MGM is not a party to this***

4  ***case***.  Defendants' motion states that MGM is adverse to the Tolkien/HC Parties

5  because it supposedly "reacquired certain rights in and to *The Hobbit* from Zaentz

6  and therefore has a financial interest in the outcome of this action," (Motion, p. 5)

7  but there is no evidence to support this claim, nor any explanation of what that

8  interest is.[5]  The failure to provide any evidence of MGM's supposedly adverse

9  interest is alone grounds to deny the motion.  *Elliot*, 165 Cal.App.3d at 573.

10     Given that MGM is not a party, Defendants cannot complain about a

11 supposed conflict of interest.  Defendants are really complaining about Greenberg's

12 communications with former employees of non-party UA.  The legal principles

13 governing contact with former employees make it clear that (1) Greenberg had the

14 right to communicate with these witnesses; (2) there is no "conflicting

15 representation," (3) Greenberg did not induce either witness to do anything wrong,

16 and (4) there is no "appearance of impropriety."

17     **1.    California law Recognizes Greenberg's Right to**

18            **Communicate with Benjamin and Bernstein.**

19     Both California case law and ethical standards articulate a bright-line rule

20 which allows lawyers to communicate directly with former employees of an

21

22 [4]  As explained in more detail below, even if MGM could prove an interest in the
Tolkien Works, there is still no basis to disqualify Greenberg.

23 [5]  The statement does not even explain whether the "certain rights" MGM

24 supposedly "reacquired" have anything to do with the merchandising rights at issue.
Notably, Defendants claim that MGM is supposedly a 50% copyright owner in *The*

25 *Hobbit* films, which indicates that MGM has film rights, not merchandising rights.
The statement does not even suggest that MGM reacquired any interest in *The Lord*

26 *of the Rings*.  Moreover, the statement provides no information as to when or how

27 MGM supposedly acquired these rights.  All of this evidence is necessary to even
begin the analysis of whether MGM is, in fact, adverse to the Tolkien/HC Parties.

28

adverse party, *See State Farm*, 54 Cal.App.4th at 652; *Continental Ins. Co. v. Superior Court,* 32 Cal.App.4th 94, 119–121 (1995).  This is true even if the former employee might possess confidential information.  *Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp.*, 6 Cal.App.4th 1256, 1262 (1992).

CRPC 2-100 states: "While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."  Although Rule 2-100(B) provides that a "party," includes "officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership," the Comments to the Rule set forth that "Paragraph (B) is intended to apply only to persons employed ***at the time of the communication***. (*See Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d 131.)"

"[A] bright line test is essential. As a practical matter, ***an attorney must be able to determine beforehand whether particular conduct is permissible***; otherwise, an attorney would be uncertain whether the rules had been violated until, as in the case at bench, he or she is disqualified. Unclear rules risk blunting an advocate's zealous representation of a client."  *Nalian Truck Lines*, 6 Cal.App.4th at 1264 (emphasis added).  Moreover, "a rule whose violation could result in disqualification and possible disciplinary action should be narrowly construed when it impinges upon a lawyer's duty of zealous representation."  *Continental Ins. Co.,* 32 Cal.App.4th at 119.

Thus, even if Benjamin and Bernstein had been former employees of an adverse party – they are not – Greenberg was fully entitled to contact and speak with them.  Ethical rules cannot be more stringent when dealing with former employees of third-parties than when dealing with former employees of a party.

This is the beginning and end of the analysis.  Greenberg communicated with third-party witnesses who are former employees of a non-party to this case.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISQUALIFY

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   California law allows Greenberg to do so.  There can be no basis to disqualify

2   Greenberg for doing something it was absolutely entitled to do.  *See Optyl*

3   *Eyewear*, 760 F.2d at 1049.[6]

4       **2.    Greenberg's Statements That It Would Represent Benjamin**

5           **and Bernstein at Deposition Does Not Change the Analysis.**

6       Defendants argue that Greenberg crossed the line of permissible conduct

7   when it stated it would represent Benjamin and Bernstein in their depositions.

8   According to Defendants, by making that offer, Greenberg "entered into conflicting

9   representations."  Motion, p. 11.  The premise of this argument, that by doing so

10  Greenberg was representing adverse interests, is false.  Even if MGM were adverse

11  to the Tolkien/HC Parties, no authority would establish that Benjamin and

12  Bernstein are adverse to the Tolkien/HC Parties for purposes of disqualification

13  rules.  Whether either of them still has percipient knowledge and whether such

14  knowledge is helpful to one side to this litigation or the other (or to both), they are

15  not *adverse parties,* they are simply third-party witnesses, and Defendants cannot

16  point to any law which precludes an attorney from representing a witness,

17  regardless of whom that witness' testimony helps or hurts.  Moreover, this entire

18  argument is based on the erroneous assumption that Greenberg obtained

19  confidential information, which it did not.

20      In *Maruman Integrated Circuits, Inc. v. The Consortium Company*, 166

21  Cal.App.3d 443 (1985), the Court rejected the argument advanced by Defendants

22  here.  In *Maruman* plaintiff sued defendant for declaratory relief.  *Id.* at 445.

23  Shortly after the suit was filed, one of plaintiff's employees, Canty, who had been

24  privy to numerous attorney-client communications between plaintiff and its lawyers

---

25  [6] *Cf, La Jolla Cove Motel and Hotel Apartments, Inc. v. Superior Court,* 121

26  Cal.App.4th 773, 790 (2004) (Even where counsel violated Rule 2-100,

27  disqualification is not required when "there is no evidence that any confidential

28  information was disclosed to their counsel, and disqualification is not otherwise necessary to preserve the integrity of the judicial process").

1   resigned and went to work for defendant.  *Id*. at 446.  When Canty was deposed in

2   the lawsuit, she was represented by defendant's lawyers.  *Id*.  She testified that she

3   met with defendant's lawyers several times and provided them with confidential,

4   attorney-client privileged information.  *Id.*  Plaintiff then moved to disqualify

5   defendant's lawyer.  *Id*.

6         The trial court denied the motion and the Court of Appeal affirmed.  Writing

7   for the Court of Appeal, Justice Panelli explained that in order for the ethical rules

8   prohibiting the use of confidential information to be "invoked to disqualify an

9   attorney, there must have been an attorney-client relationship between the

10  complaining party and the attorney during which the confidential information was

11  imparted."  *Id*. at 447.  Relying on *Cooke v. Superior Court*, 83 Cal.App.3d 582

12  (1978), Justice Panelli went on to explain that where an attorney receives

13  confidential information from a third party, disqualification is not required.  166

14  Cal.App.3d at 448.  The Court concluded that only confidences acquired ***during an***

15  ***attorney-client relationship with the complaining party*** can give rise to

16  disqualification.  *Id*. at 449.  *See also Fox Searchlight v. Paladino*, 89 Cal.App 4th

17  294, 303 (2001) (denying motion to disqualify plaintiff's lawyer even though

18  lawyer received confidential information about the defendant from its client); *Neal*

19  *v. Health Net, Inc.*, 100 Cal.App.4th 831 (2002) (there is no presumption that

20  attorney possesses confidential information simply because client who may have

21  access to privileged matters retains the attorney).

22        *Maruman* is dispositive.  Just as the defense lawyer in *Maruman* had never

23  represented the plaintiff, Greenberg has never represented Defendants or MGM in

24  connection with this case.  In *Maruman*, the defense lawyer actually represented the

25  adverse party's former employee and actually obtained the adverse party's

26  confidential information, yet disqualification was denied because the lawyer owed

27  no ethical duties to the adverse party.  Here, Greenberg purportedly represented

28  former employees of ***a third-party*** (although, as discussed below, it never actually

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO
                                                                    DISQUALIFY

did) and ***did not obtain any confidential information***.  If the *Maruman* lawyer was not disqualified under the facts of that case, Greenberg cannot be disqualified here.

Moreover, contrary to Defendants' assertions, Greenberg never undertook a representation of Benjamin or Bernstein.  *Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719 (2003) is directly on point.  In *Koo*, class action plaintiffs moved to disqualify defense counsel based on declarations and other filings in which defense counsel claimed to represent both the defendant and the individual managers of the defendant.  *Id*. at 723.  Because the individual managers were part of the plaintiff class, plaintiffs argued that defense counsel was representing both sides of the same case.  *Id*.  The trial court granted the motion, and the Court of Appeal reversed, holding that the attorney's unilateral statements that he represented the managers were insufficient to create an attorney-client relationship. *Id*. at 729.  Because there was no other evidence of an attorney-client relationship between the managers and defense counsel, the Court concluded there was no attorney-client relationship which could justify disqualification.  *Id*. 732-734.

Here, the only evidence of an attorney-client relationship is that Greenberg offered to represent Benjamin and Bernstein in their depositions and informed opposing counsel that it would be doing so.  Eskenazi Decl., ¶¶ 4 & 8; Valadez Decl., ¶ 9.  But Greenberg never actually represented either witness; neither deposition ever went forward and Greenberg never discussed the witnesses' recollections or provided any legal services to them.  Eskenazi Decl., ¶¶ 5 & 24; Benjamin Decl. ¶ 5.  Moreover, the expert retainer agreement signed by Benjamin makes clear that a further agreement was required in connection with any percipient witness testimony he might provide.  Lens Decl. ¶ Ex. 28.  No such agreement ever existed.  Eskenazi Decl., ¶ 24.  As in *Koo*, the facts, and not statements taken out of context, determine whether an attorney-client relationship was created.

Even if Greenberg had entered into an attorney-client relationship with either Benjamin or Bernstein, that fact would still not support disqualification.  Rule 3-

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO
DISQUALIFY

310 only applies as between clients and former clients of the lawyer.  *Koo*, 109 Cal. App. 4th at 729; Maruman, 166 Cal.App.3d at 449.  Where, as here, a lawyer represents a party and two third-party witnesses simultaneously, there is no basis to assert that the witnesses' interests are adverse to the party's.  The witness' only "interest" is to tell the truth, and the law does not regard that as an interest "adverse" to anyone.

Defendants argue that Rule 3-310 applies because "Greenberg represented and undertook privileged relationships with both sides to the 1969 Agreements…." Motion, p. 11.  Notably, Defendants do not assert that Greenberg represents parties on both sides of this lawsuit.  At most, if the depositions had gone forward, Greenberg could be said to have represented one side to a transaction that occurred forty-five years ago in a claim against entities that were not part of that transaction, while also representing former employees of the original other side of the transaction – as witnesses – which is not a party to the lawsuit.  This is not a violation of Rule 3-310.  The Tolkien/HC Parties' attorneys therefore had the right to contact these witnesses and discuss their recollections – although they did not do – in the course of representation of their clients.  California Courts have consistently rejected attempts to limit a lawyer's right and obligation to contact third-party witnesses and thereby zealously represent his or her client.  *See State Farm*, 54 Cal.App.4th at 652; *Continental Ins. Co*., *supra,* at 119.

*Packard Bell NEC, Inc. v. Aztech Systems LTD*., 2001 WL 880957 (C.D. Cal. Jan. 22, 2001) offers no support for Defendants' position.  In *Packard Bell*, plaintiff moved to disqualify defendant's lawyer, the Levy Firm, on the grounds that the Levy Firm had previously represented one of *plaintiff's* control group employees *in the very same case*.  *Id*. at *5.  The Levy Firm had represented that employee in connection with testimony about his own conduct that led to the pending lawsuit.  *Id*. at *5-6.  After noting that the CRPC did not "neatly fit" the facts of that case, the Court disqualified the Levy Firm, concluding that there was a "reasonable

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

probability" that it had obtained information it could use improperly and advantageously, and treating the former employee as a "party" (while conceding in note 1 that this is contrary to California law) in determining that the Levy Firm as if it was effectively representing both sides of the same case. *Id*. at *9, *19, *25.

The facts of *Packard Bell* could not be further from those in this case. First and most obviously, the former employee had worked for *a party to the lawsuit,* and had worked on the very lawsuit before being terminated *for disclosing privileged information*, and the disqualified lawyer was actually engaged by him; he "was switching sides in the case." *TRC & Associates v. NuScience Corporation*, 2013 WL 6044315 at *4 (C.D. Cal. Nov. 14, 2013). The employee immediately retained the Levy firm, which represented him in connection with his testimony and then sought to represent the defendant in the very same lawsuit. The Levy firm was disqualified soon after it associated into the case, and its disqualification left defendant represented by two firms, Howrey and Arent Fox.

Here, Greenberg contacted and offered to represent two former employees of non-party UA decades after they left its employ, but never actually represented either of them. Moreover, the employee witness in *Packard Bell* had participated in meetings with counsel about the lawsuit before he left the company and "was switching sides in the case." *TRC & Associates*, 2013 WL 6044315 at *4. Benjamin and Bernstein had no involvement in this dispute – they left UA decades ago – and they certainly are not "switching sides" in this case. Disqualification would leave the Tolkien/HC Parties without their long-time, or any, counsel. [7]

_____

[7] Our case is much like *TRC & Associates*, which distinguished *Packard Bell*. There, plaintiff's lawyer had previously represented an employee of the defendant in connection with a different lawsuit involving the defendant. *Id*. at *2. Defendant moved to disqualify plaintiff's lawyer, arguing that, by virtue of the lawyer's representation of defendant's former employee, it learned confidential information about the defendant. *Id*. at *3. Judge Wright denied the motion, explaining that, because the former employee had left the defendant long before the dispute arose, the former employee did not "switch sides" in the case. *Id*. at *4. *See also* Layer2

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO
DISQUALIFY

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Moreover, *Packard Bell* is contrary to the long line of California cases which expressly hold that an attorney's representation of a former employee of the adverse party cannot justify disqualification – ***even where confidential information is admittedly disclosed***. *See Maruman*, 166 Cal. App. 3d at 449.  And it misstates the law in suggesting that a former employee is a "party," implicating the conflict rules. Because California law governs this motion (*County of Los Angeles,* 223 F.3d at 995), the Court should follow *Maruman* and the other California cases.

Accordingly, Greenberg's statement that it would represent Benjamin and Bernstein in their depositions does not justify disqualification.

### 3. The Fact that Greenberg Retained Benjamin as an Expert Does Not Justify Disqualification.

Defendants next contend that Greenberg violated CRPC 1-120 by "'knowingly assist[ing] in, soliciti[ing], or induc[ing]' a violation of" the CRPC. Motion, p. 13, citing *Patriot Scientific Corp. v. Moore*, 178 Fed.Appx. 18 (Fed. Cir. 2006), an unpublished Circuit Court decision issued before 2007, which cannot be considered precedential authority, *See* FRAP 32.1, Fed. Cir. Local Rule 32.1, but which adds nothing in any event.  This argument fares no better than the rest.[8]

*North Pacifica* is directly on point.  There, the plaintiff consulted with attorneys Skaggs and Curtin regarding the development of a particular piece of property.  *North Pacifica,* 335 F. Supp.2d at 1047.  Approximately a year later, the plaintiff sued suit the city claiming that it improperly imposed conditions on the development of the property.  *Id*. at 1049.  After the Court found for the plaintiff on

---

*Communications, Inc. v. Flexera Software, LLC*, 2014 WL 2536993 (N.D. Cal. June 5, 2014) *O'Shea v. Epson Am., Inc.,* 2010 U.S. Dist. LEXIS 62809 (C.D. Cal. 2010); *McKesson Info. Solutions, Inc. v. Bridge Med., Inc*., 2004 U.S. Dist. LEXIS 30734,*9-10  (E.D. Cal. 2004), each distinguishing *Packard Bell*.

[8] Defendants' argument incorrectly assumes that Benjamin is subject to the California Rules of Professional Conduct.  Benjamin is not, and apparently never has been, a member of the California Bar.  Valadez Decl., ¶ 12.  Rule 1-120 only applies to violations of California rules governing attorneys, and cannot apply here.

liability, the defendant city hired Skaggs and Curtin to act as damage experts. *Id*.

The plaintiff moved to disqualify Skaggs and Curtin as experts and to disqualify the City's lawyers for having retained them. *Id*.  After concluding that the experts should be disqualified, the Court ruled that disqualification of the City's lawyers was not required. *Id*. at 1052.  It rejected a rule of automatic disqualification based upon imputed knowledge of confidential information. *Id*. at 1050.  The Court noted that the rule of imputed knowledge in a law firm has no application in the context of an attorney hiring an expert. *Id*.  Instead, the Court applied the rules applicable to "side-switching experts." *Id*. at 1051.  Under those rules, the Court must determine whether confidential information was shared with the lawyer and whether the disclosure of that confidential information "threaten[s] to taint all further proceedings." *Id*.

Putting aside the fact that neither Benjamin nor Bernstein was ever a lawyer for the Defendants, if we apply this test here, there can be no basis for disqualification.  No confidential information was shared.  Eskenazi Decl., ¶ 24; Benjamin Decl., ¶ 4.  Moreover, the Court cannot presume that confidential information was shared; to the contrary, the Court must presume that Ms. Eskenazi and Benjamin *adhered* to their ethical obligations to maintain the confidences of Benjamin's former client. *Frazier v. Superior Court*, 97 Cal.App.4th 23, 31-32 (2002).  Further, the passage of **forty-five years** since the execution of the 1969 Agreements makes it questionable that Benjamin could even remember – let alone disclose – any confidential communications he might have had during the negotiations.  Because the evidence establishes that no confidential information was shared, the Court need not examine the second factor. *Id*. at 1052.

*Shadow Traffic Network v. Superior Court,* 24 Cal.App.4th 1067 (1994) does not support Defendants' position.  There, plaintiff's counsel had previously consulted with an expert who defense counsel later retained in the very same case.  Plaintiff sought to disqualify defense counsel.  The *Shadow Traffic* Court followed

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISQUALIFY

the same analysis as *North Pacifica;* it considered whether confidential information had actually been shared between plaintiff's counsel and the expert and whether defense counsel had rebutted the presumption of shared confidences. *Id* at 1086-87.

Our case is entirely dissimilar from *Shadow Traffic*. Neither defendant claims it consulted with Benjamin regarding this case. In fact, it does not appear that any of the Defendants or MGM ever tried to contact Benjamin. Accordingly, there is no risk that Greenberg could be privy to Defendants' strategy ***in this case***, which was the concern in *Shadow Traffic*. Moreover, Greenberg has demonstrated that no confidential information was shared, period. Accordingly, Greenberg's retention of Benjamin as an expert cannot be a basis for disqualification.

### 4. The "Appearance of Impropriety" Standard Does Not Apply in California, But Would, in Any Event, Be Inapposite.

Finally, Defendants seek disqualification under the "appearance of impropriety" standard of Canon 9 of the ABA Model Code. The American Bar Association eliminated the appearance of impropriety standard of Canon 9 when it enacted the Model Rules of Professional Responsibility in 1983. But, Canon 9 did not apply in California even before 1983. "California has not adopted Canon 9 in either the State Bar Rules of Professional Conduct or in the Business and Professions Code." *Oaks Management Corp.,* 145 Cal.App.4th at 471.

California Courts have explicitly rejected the notion that an attorney can be disqualified on the basis of an "appearance of impropriety." *Roush v. Seagate Technology*, *LLC*, 150 Cal.App.4th 210, 219 (2007) ("disqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety").

Defendants contend that Canon 9 applies, citing *Cargill, Inc. v. Budine*, 2007 WL 1813762, at *14 (E.D. Cal. June 22, 2007), but *Cargill* held that the standard remained viable only because "the Model Code is still in force in the Eastern District." In fact, *Cargill* observed that the standard is not in effect in the Central

OPPOSITION TO MOTION TO
DISQUALIFY

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

District, citing *In re McKinney Ranch*, 62 B.R. at 249 n.12.  Moreover, *McKinney Ranch* held that *In re Petroleum Products Antitrust Litigation*, 658 F.2d 1355, 1360 (9th Cir. 1981), the Ninth Circuit case cited by Defendants, predated the Model Rules, "was based on a prior local rule that is no longer in force," and <u>is no longer good law.</u>  *Id*.

The *McKinney Ranch* decision notes that the appearance of impropriety standard was eliminated from the Model Rules because it was "unworkable."  *Id*. at 257.  Other cases similarly note that the ABA abandoned the test because it "was deemed 'too vague' and presented 'severe problems.'" *Ark. Valley State Bank v. Phillips*, 2007 OK 78, 171 P.3d 899, 909 n.45 (2007).

Defendants argue that Greenberg knew its actions were improper because it warned Defendants' counsel about contact with HarperCollins' former general counsel, Adrian Laing.  This is a red herring.  Greenberg *was* concerned about privilege, but never claimed that Defendants were precluded from contacting Mr. Laing.  To the contrary, Greenberg recognized Defendants *could* contact Mr. Laing.  The focus of Greenberg's letter (Lens Decl., Ex. 11) was on cases disqualifying attorneys for *paying* former employees of adversaries in connection with their percipient testimony.  If anything, the fact that Defendants believed that they had the right to meet with Mr. Laing, a former employee of a party, proves their bad faith in seeking disqualification of Greenberg for meeting with former employees of a non-party.  Ultimately the parties resolved the Laing issue by mutual agreement – as they would have here if Defendants were acting in good faith.

### D.   <u>This Motion Was Brought For Purely Tactical Reasons.</u>

The foregoing discussion demonstrates that this motion was brought for purely tactical reasons, and not to vindicate any legitimate rights or concerns.  Defendants waited more than a year to bring this motion after being put on notice of the key facts.  The motion ignores controlling law and demonstrably misstates the facts.  Defendants spend pages engaging in wild speculation about what may or

1  may not have been discussed between Ms. Eskenazi and Benjamin – speculation
2  which is wholly unfounded and contradicted by the facts.

3      Bringing such a flawed motion after more than a year of contentious
4  litigation and on the eve of a twice-continued discovery cutoff demonstrates that
5  Defendants' real goal is to subject the Tolkien/HC Parties to unfair prejudice.
6  Disqualification of Greenberg at this stage would have a devastating impact on the
7  Tolkien/HC Parties.  Greenberg has been involved in this dispute since it arose in
8  September 2010, and represented the Tolkien Parties in the prior profit participation
9  case which also involved the 1969 Agreements.  Based on years of work, it is
10  intimately familiar with the 1969 Agreements and the issues in this litigation.

11      Accordingly, even if this motion had any merit, which it does not, the effect
12  of disqualification would be wholly disproportionate and the balance of equities
13  would require that the motion be denied.

14      **E.**    **Defendants' Request for Alternative Relief Should be Denied.**

15      In the alternative, Defendants request depositions of Greenberg lawyers and
16  production of Ms. Eskenazi's notes, or evidentiary sanctions prohibiting the
17  Tolkien/HC Parties from calling these two individuals as witnesses.  Defendants
18  have shown no legal or ethical violation justifying such punitive measures and the
19  request for depositions of counsel is a transparent attempt to harass.

20  **IV.**    **CONCLUSION**

21      For all the foregoing reasons, the Tolkien/HC Parties respectfully request that
22  the Court deny Defendants' Motion to Disqualify in its entirety, with prejudice.

23
24  DATED:  June 23, 2014            GREENBERG GLUSKER FIELDS
                                    CLAMAN & MACHTINGER LLP
25
26                                    By:  /s. Bonnie E. Eskenazi
27                                      BONNIE E. ESKENAZI (SBN 119401)
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

2192350.8                      25                  OPPOSITION TO MOTION TO