1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
3  Los Angeles, California  90067-6035
   Telephone:  (310) 553-6700
4  Facsimile:  (310) 246-6779

5  Attorneys for the Warner Parties

6  MARTIN R. GLICK (No. 40187)
   marty.glick@aporter.com
7  ARNOLD & PORTER LLP
   Three Embarcadero Center, 10th Floor
8  San Francisco, California 94111-4024
   Telephone: 415.471.3100
9  Facsimile: 415.471.3400

10  Attorneys for The Saul Zaentz Company

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 13  FOURTH AGE LTD., *et al*, | Case No. 12-9912-ABC (SHx) |
| 14                  Plaintiffs, | **REPLY IN SUPPORT OF WARNER AND ZAENTZ'S MOTION TO DISQUALIFY GREENBERG GLUSKER** |
| 15        v. | |
| 16  WARNER BROS. DIGITAL DISTRIBUTION, *et al*, | **JIH DECLARATION FILED CONCURRENTLY HEREWITH** |
| 17                  Defendants. | |
| 18 | |
| 19  WARNER BROS. DIGITAL DISTRIBUTION INC., *et al*, | **Judge**: Hon. Audrey B. Collins  **Magistrate**: Hon. Stephen J. Hillman |
| 20 | |
| 21                  Counterclaim Plaintiffs, | **Hearing Date**:   July 24, 2014  **Hearing Time**:   10:00 a.m. |
| 22        v. | **Discovery Cut-Off**:  July 29, 2014 |
| 23  FOURTH AGE LTD., *et al*, | |
| 24                  Counterclaim Defendants. | |
| 25 | |

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................... 1

II.  GREENBERG HAS VIOLATED ITS ETHICAL OBLIGATIONS ............. 3

    A.  Greenberg Violated Rule 3-310(c) ......................................................... 4

    B.  Greenberg Violated Rules 1-120 and 3-310(e) ................................... 8

    C.  Greenberg Violated Canon 9 ............................................................ 11

III.  DISQUALIFICATION IS NECESSARY TO REMEDY
GREENBERG'S MISCONDUCT .................................................... 14

    A.  Warner and Zaentz Have Standing To Move for Disqualification ..... 14

    B.  Greenberg's Continued Involvement Will Irreparably Taint the
Remainder of These Proceedings ...................................................... 17

    C.  The Court's Interest In Protecting These Proceedings Takes
Precedence Over Any Delay ............................................................ 21

IV.  CONCLUSION ...................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*,
   2008 WL 5484552 (N.D. Cal Dec. 18, 2008) ..................................................... 24

*Am. Prot. Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc.*,
   1986 WL 57464 (D. Nev. Mar. 11, 1986) ........................................................ 13

*Biocore Med. Techs., Inc. v. Khosrowshahi*,
   181 F.R.D. 660 (D. Ka. 1998) ........................................................................ 13

*Cargill Inc. v. Budine*,
   2007 WL 1813762 (E.D. Cal June 22, 2007) ............................................... passim

*Century Aluminum Co. v. AGCS Marine Ins. Co.*,
   285 F.R.D. 468 (N.D. Cal. 2012) .................................................................... 20

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ....................................................................... 20

*City Nat. Bank v. Adams*,
   96 Cal. App. 4th 315 (2002) .......................................................................... 19

*Columbia Pictures, Inc. v. Bunnell*,
   2007 WL 4877701 (C.D. Cal. Dec. 13, 2007) ............................................... 14

*Colyer v. Smith*,
   50 F. Supp. 2d 966 (C.D. Cal. 1999) ...................................................... 15, 16

*Decaview Distribution Co., Inc. v. Decaview Asia Corp.*,
   2000 WL 1175583 (N.D. Cal. Aug. 14, 2000) ............................................... 16

*Erickson v. Newmar Corp.*,
   87 F. 3d 298 (9th Cir. 1996) ..................................................................... 12, 14

*Flatt v. Superior Court*,
   9 Cal. 4th 275 (1994) ..................................................................................... 19

*FMC Techs., Inc. v. Edwards*,
   420 F. Supp. 2d 1153 (W.D. Wash. 2006) ............................................... 16, 17

*Halladay & Mim Mack Inc. v. Trabuco Capital Partners Inc.*,
   2009 WL 3244746 (C.D. Cal. Oct. 5, 2009) ................................................. 22

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Holm v. City of Barstow*,
  2008 WL 4290857 (C.D. Cal. Sept. 16, 2008) .................................................. 12

*Hull v. Celanese Corp.*,
  513 F.2d 568 (2d Cir. 1975) ................................................................................. 5

*Huston v. Imperial Credit Commercial Mortg. Inv. Corp.*,
  179 F. Supp. 2d 1157 (C.D. Cal. 2001) ................................................................ 5

*In re AFI Holding, Inc.*,
  355 B.R. 139 (9th Cir. 2006) ......................................................................... 11, 12

*In re Complex Asbestos Litig.*,
  232 Cal. App. 3d 572 (1991) ......................................................... 11, 19, 20, 23

*In re McKinney Ranch Assocs.*,
  62 B.R. 249 (Bkrtcy. C.D. Cal. 1986) ................................................................ 12

*Kennedy v. Eldridge*,
  201 Cal. App. 4th 1197 (2011) .......................................................................... 15

*Koo v. Rubio's Restaurants, Inc.*,
  109 Cal. App. 4th 719 (2003) .............................................................................. 7

*Laryngeal Mask Co. Ltd. v. Ambu A/S*,
  2008 WL 558561 (S.D. Cal. Feb. 25, 2008) ........................................................ 7

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ............................................................................. 14

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  2007 WL 3203056. (N.D.Cal. Oct. 29, 2007) ................................................... 22

*Maruman Integrated Circuits, Inc. v. The Consortium Company*,
  166 Cal. App. 3d 443 (1985) .................................................................. 1, 4, 5, 6

*Miller v. Alagna*,
  138 F.Supp.2d 1252 (C.D. Cal. 2000) ............................................................... 22

*MWR/Wallace Power & Indus., Inc. v. Thames Assocs.*,
  764 F. Supp. 712 (D. Conn. 1991) .................................................................... 17

*North Pacifica, LLC v. City of Pacifica*,
  335 F. Supp. 2d 1045 (N.D. Cal. 2004) .................................................... 1, 2, 8, 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
  2012 WL 393309 (S.D. Tex. Feb. 6, 2012)........................................................ 15

*Packard Bell NEC, Inc. v. Aztech Systems LTD.*,
  2001 WL 880957 (C.D. Cal. Jan. 22, 2001)................................................passim

*Patriot Scientific Corp. v. Moore*,
  178 Fed. Appx. 18 (Fed. Cir. 2006) ........................................................ 10, 11

*Pellerin v. Honeywell Int'l Inc.*,
  2012 WL 112539 (S.D. Cal Jan. 12, 2012) ........................................................ 19

*Rentclub, Inc. v. Transamerica Rental Fin.*,
  811F. Supp. 651 (M.D. Fla. 1992) ........................................................ 13

*Shadow Traffic Network v. Superior Court*,
  24 Cal. App. 4th 1067 (1994)........................................................ 9, 19

*Western Cont'l Operating Co. v. Natural Gas Corp.*,
  212 Cal. App. 3d 752 (1989)........................................................ 23, 24

### OTHER AUTHORITIES

Cal. Rules Prof. Cond., Rule 1-120 ........................................................ 4, 8, 10, 11

Cal. Rules Prof. Cond., Rule 2-100 ........................................................ 4

Cal. Rules Prof. Cond., Rule 3-310(c)........................................................ 4, 5

Cal. Rules Prof. Cond., Rule 3-310(e)........................................................ 4, 8, 10

Fed. R. Civ. P. 26(b)(3)(ii) ........................................................ 20

Cal. Local Rule 83-3.1.2........................................................ 11

N.Y. Rule Prof. Cond., Rule 1.9(c)(1)........................................................ 11

## I.      **INTRODUCTION**

Despite Greenberg's attempts to cloud the record, the essential facts here are not in dispute.  Greenberg knew Alan Benjamin and William Bernstein were lawyers for United Artists; knew they negotiated and drafted the precise Agreements at issue in this case; and knew they did so adverse to its clients.  Yet, Greenberg unilaterally contacted them; had private discussions with them on the subject matter of this case—*i.e.*, the meaning of the words both lawyers negotiated and drafted; retained Benjamin as an expert and paid him a $10,000 retainer; agreed to represent both Benjamin and Bernstein as percipient witnesses free of charge; and repeatedly told Warner and Zaentz that it was representing them.  Greenberg's actions violated the governing rules of professional ethics and gave Greenberg and its clients an impermissible advantage in this litigation.  Greenberg's disqualification is warranted and necessary in order to restore fairness and preserve the integrity of the judicial process.

There is no case or rule of professional conduct—and Greenberg cites none—that allows a firm to avoid disqualification in these circumstances. Greenberg's opposition rests principally on two cases that it claims are "dispositive" and "directly on point."  (Opp. at 17, 21.)  But these cases not only fail to support Greenberg's position, they underscore the reasons why disqualification is required in this case.  Citing to *Maruman Integrated Circuits, Inc. v. The Consortium Company,* 166 Cal. App. 3d 443 (1985), Greenberg contends it is permissible to represent an adversary's former employee, even if the employee possesses confidential information.  Greenberg misses the point. *Maruman* involved representation of a former administrative assistant—not a lawyer—and as the *Maruman* court recognized, that is a critical distinction.  Where, as here, the former employees are lawyers, disqualification is appropriate.  *Id.* at 449.  Greenberg then misreads *North Pacifica, LLC v. City of Pacifica*, 335 F.

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

Supp. 2d 1045 (N.D. Cal. 2004), to argue that a firm may retain an adversary's former lawyer as an expert witness. *North Pacifica* not only held that such retention is improper, *id*. at 1050, but also held that both the expert and the law firm itself must be disqualified if the firm engaged the expert on a subject related to his prior work. *Id*. at 1051-52. That is exactly what happened here.

Unable to identify any authority that actually supports its position or distinguish the authorities discussed in Defendants' moving papers, Greenberg now says its representation of Benjamin and Bernstein did not actually commence, because their percipient depositions have not occurred. That is specious. Greenberg repeatedly told Warner and Zaentz it was representing both witnesses; and throughout all of their dealings and private discussions, Greenberg and the witnesses had agreed Greenberg was their counsel. Equally unavailing is Greenberg's claim that Benjamin and Bernstein shared no privileged information because their discussions concerned expert—not percipient—testimony. This asserted distinction is illusory and inconsequential: the expert opinions and testimony of Benjamin relate directly to and are inextricably intertwined with his legal work as a lawyer for UA—all of which involved the meaning of the Agreements he helped to negotiate and draft. Moreover, the law *presumes* that privileged information was shared in view of the attorney-client relationship between the parties.

The balance of Greenberg's opposition reduces to the spurious proposition that any violation of the rules does not entitle Warner and Zaentz to relief. Greenberg is plainly wrong that neither party has standing to assert and seek redress for Greenberg's ethical violations—courts uniformly recognize that litigants have a right and interest in the fair and just determination of their claims. In addition, Greenberg ignores that MGM—the holder of the privilege—has joined this motion, and thus all relevant parties are before the Court seeking the same relief. Greenberg

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

is also mistaken that relief should be denied because disqualification was not sought sooner.  Greenberg points to the reference in its Initial Disclosures that Benjamin could be "contacted" through Greenberg as evidence of delay, but fails to mention that it did not disclose at that time that it was representing Benjamin and Bernstein as witnesses, had substantive discussions with Benjamin, and had retained him as an expert.  On the contrary, when the issue did come to light and was raised, rather than make a full and candid disclosure of its conduct, Greenberg instead sought to minimize, obscure, and withhold the full scope of its activities.  Even after filing its opposition, Greenberg has refused to allow Ms. Eskenazi to be examined at deposition regarding her self-serving declaration and continues to resist disclosure of its notes—even to the Court for its *in camera* review.  It has taken months for the facts to emerge—and we still do not know the full story—and several more months for the parties to attempt to resolve this issue without motion practice.  In any event, the Court's duty to preserve the integrity of these proceedings is paramount and takes precedence over any delay.

This motion is not tactical as Greenberg suggests.  It is necessary, and based solely on Greenberg's misconduct.  Warner and Zaentz have a right to a fair and just determination of their claims on the merits.  Greenberg has compromised that right.  It has gained access to privileged and confidential information of its adversary and has secured an impermissible advantage for its clients that the Rules of Professional Conduct are designed to prevent.  Disqualification is necessary to remove that advantage.

## II. <u>GREENBERG HAS VIOLATED ITS ETHICAL OBLIGATIONS.</u>

Greenberg cannot and does not dispute that all attorneys are held to the same fundamental standards of professional conduct:  they owe duties of confidentiality and loyalty to current and former clients alike and are obligated to avoid even the appearance of impropriety.  It also does not dispute that these obligations are

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1   essential to the integrity and function of our judicial system and that a violation of

2   these ethical obligations would be grounds for disqualification.  Instead, Greenberg

3   contends disqualification is not warranted here because it did not *technically* violate

4   the rules of professional conduct.  Greenberg's position misconstrues both the facts

5   and California and federal law interpreting the Rules of Professional Conduct.

6       Greenberg claims it did not violate Rule 2-100 because it "was fully entitled

7   to contact and speak" with Benjamin and Bernstein.  (Opp. at 14-16.)  But that is

8   not what this motion challenges.  Rather, Greenberg's conduct was improper

9   because it contacted two former *lawyers* and had substantive conversations with

10  them about their work as lawyers when they were adverse to Greenberg's current

11  client.  It also agreed to act as counsel for both lawyers, and retained one of them as

12  an expert to testify about matters inseparable from his work as a lawyer.  Greenberg

13  violated its ethical obligations because it (a) agreed to simultaneously represent

14  Benjamin and Bernstein and the Tolkien/HC Parties in violation of Rule 3-310(c);

15  (b) retained Benjamin as an expert to testify against MGM's interest in violation of

16  Rules 1-120 and 3-310(e); and (c) created a mechanism for invading the attorney-

17  client privilege in violation of Canon 9.

18      **A.    Greenberg Violated Rule 3-310(c).**

19      Greenberg does not dispute that Rule 3-310(c) prohibits it from accepting or

20  continuing representation if the interests of its clients potentially conflict.

21  Greenberg argues, however, relying on *Maruman Integrated Circuits, Inc. v. The*

22  *Consortium Company,* 166 Cal. App. 3d 443 (1985), that representing a former

23  employee of an adversary does not result in conflicting representations.  Greenberg

24  misreads the holding of *Maruman*.

25      In *Maruman*, an office administrator left plaintiff's corporation to work for

26  defendant and was represented by defense counsel during her deposition.  *Id.* at

27  446.  Plaintiff argued the former employee was exposed to confidential information

28

and thus defense counsel's representation was improper.  *Id*.  The court declined to disqualify defense counsel because the former employee's exposure to confidential information, without more, was not sufficient to create a conflict of interest.  *Id*. at 449.  The court was careful to point out, however, that "the former employee was *not an attorney*,"  *id*. at 449-50 (emphasis added), and citing to *Hull v. Celanese Corp*., 513 F.2d 568 (2d Cir. 1975), recognized that the representation of a former attorney, as opposed to an administrative assistant or "lay employee," would warrant a different result.  *Id*.

That is precisely the holding in *Packard Bell NEC, Inc. v. Aztech Systems LTD*., 2001 WL 880957 (C.D. Cal. Jan. 22, 2001).  In *Packard Bell*, the court disqualified defense counsel for representing the former executive of plaintiff as a witness in the litigation.  The court correctly recognized that the former executive, an agent of the company, owed a continuing duty to plaintiff to protect plaintiff's privileged and confidential information.  Defense counsel's representation of the former employee thus created an irreconcilable conflict in violation of Rule 3-310(c)—because counsel was simultaneously representing the defendant (in terms of prevailing in the case) and the plaintiff (in terms of protecting plaintiff's privilege).  *Id*. at *8-9.  This dual representation created an unacceptable "potential for disclosure" of privileged information and warranted disqualification.  *Id*. at *9.  Greenberg's opposition fails to apprehend that it is this continuing duty to protect privileged information that creates the conflict and distinguishes the representation of the former executive in *Packard Bell* from the former "lay employee" in *Maruman*.  And, as this Court has previously recognized, that continuing duty is stronger where, as here, the former employee is a lawyer.  *See Huston v. Imperial Credit Commercial Mortg. Inv. Corp.*, 179 F. Supp. 2d 1157, 1180 (C.D. Cal. 2001) (Collins, J.) (holding law firm's misconduct in engaging former attorney of defendant was worse than misconduct in *Packard Bell*).

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1    Greenberg tries to distinguish the holding of *Packard Bell* by arguing that its
2    representation of Benjamin and Bernstein is different because both lawyers left UA
3    before this lawsuit began and thus do not have privileged information about the
4    lawsuit itself.  (Opp. at 20-21.)  That is a meaningless distinction.  Benjamin and
5    Bernstein were the attorneys who negotiated the very Agreements at issue in this
6    lawsuit, they have privileged and confidential information directly relevant to this
7    case, and that is precisely why they were contacted by Greenberg in the first place.

8    Unable to escape the holdings of *Maruman* and *Packard Bell*, Greenberg also
9    contends—for the first time—that it "never actually represented" Benjamin or
10   Bernstein.  (Opp. at 18.)  Greenberg goes to great lengths to re-characterize its prior
11   statements as contingent promises of future representation, pending the depositions
12   of Benjamin or Bernstein.  Yet, even accepting this nuanced construct (which is
13   plainly incorrect), Benjamin and Bernstein accepted Greenberg's offer to represent
14   them and would have understood that their dealings with the firm were privileged.

15   Moreover, Greenberg's attempt to rewrite history contradicts both its conduct
16   and its repeated statements to Warner, Zaentz, and MGM.  Since July 1, 2013,
17   Greenberg has stated that it *was representing* both Benjamin and Bernstein.
18   Greenberg orally confirmed its representation of both witnesses during an August
19   14 meet and confer.  Lens Decl. ¶¶ 9-11.  From August 14 until it filed its
20   opposition, Greenberg never withdrew this position nor claimed that it did not
21   represent these witnesses.  To the contrary, Greenberg continued to unequivocally
22   confirm it was representing the witnesses—without any qualification that the
23   representation would not commence until some future date.  In its January 27, 2014
24   letter, Greenberg recounted the history of its representation, stating:

25       "in the summer of 2013, we informed counsel for Warner Bros. and
26       counsel for Zaentz *that we were representing Mr. Benjamin in
         connection with his testimony in this case*."
27
28   Lens Decl. Ex. 18 (emphasis added).  Then, in its April 16 letter, Greenberg stated

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

its representation of the witnesses was still ongoing:

> "*our representation of these witnesses has not actually ended* as they have not been advised by us of any termination."

*Id*. Ex. 26 (emphasis added).

Further, Greenberg's emails to Benjamin and Bernstein make clear that the representation had commenced.  For instance, in its February 7 email to Benjamin, Greenberg informed Benjamin that MGM had objected "to [its] *representation of* [Benjamin] as a percipient witness."  Jih Decl. Ex 1 (emphasis added).  Similarly, in its May 20 emails, Greenberg stated that, as a result of Warner's and Zaentz's objection to the representation, Benjamin and Bernstein would need to obtain "*other* counsel."  *Id*. at Exs. 2-3 (emphasis added).  Nothing in these statements suggests that the representation was non-existent or contingent on Benjamin's and Bernstein's depositions.

The commencement of the attorney-client relationship does not turn on such after-the-fact nuances.  Under the totality of the circumstances, an attorney-client relationship clearly commenced:  Greenberg (and the witnesses) agreed to the representation; told Warner, Zaentz, and MGM of the representation; blocked other parties from contacting the witnesses directly; had conversations with them about the upcoming depositions; handled scheduling the deposition for them; and claimed privilege over its communications with them.  Greenberg did everything a percipient witness's lawyer would do prior to a deposition.  This case is thus unlike *Koo v. Rubio's Restaurants, Inc*., 109 Cal. App. 4th 719 (2003), where the court held defense counsel's unilateral statement that it would be representing "all managers" did not, on its own, give rise to an attorney-client relationship with each manager.  *Id*. at 729, 732-33.  Conversely here, the totality of the circumstances demonstrates that an attorney-client relationship was formed.  *See Laryngeal Mask Co. Ltd. v. Ambu A/S*, 2008 WL 558561, at *6 (S.D. Cal. Feb. 25, 2008) (rejecting conclusory assertions that representation was "tentative" and that no attorney-client

1   relationship formed because circumstances, including private meetings with

2   defendant and efforts to keep communications private, suggested otherwise).

3   ## B.   Greenberg Violated Rules 1-120 and 3-310(e).

4   Rule 3-310(e) precludes an attorney from accepting employment adverse to a

5   former client, and Rule 1-120 precludes an attorney from soliciting another attorney

6   to accept such employment.  Here, there can be no *bona fide* dispute that

7   Benjamin's agreement to serve as an expert for the Tolkien/HC Parties is contrary

8   to Rule 3-310(e).  Greenberg's claim that MGM is not "adverse" to the Tolkien/HC

9   Parties in this lawsuit is indefensible.  (Opp. at 2.)  Greenberg is challenging the

10  scope of the grant made by MGM's predecessor by co-opting MGM's former

11  attorneys who negotiated and made the grant.  This is both adverse to MGM's

12  interest as a grantor, and MGM's continued merchandising and distribution interest

13  in *The Hobbit*.  The Tolkien/HC Parties have never disputed MGM's interest in this

14  case and have been well aware of MGM's interest since long before this lawsuit

15  was filed.  MGM was a party to the 2010 Regrant Agreement among the parties in

16  this case because of its continued interest and Greenberg has received and produced

17  countless documents affirming MGM's interest.  *See, e.g,* Jih Decl. Exs. 4-6.

18  To excuse its misconduct in retaining Benjamin, Greenberg relies entirely on

19  a misreading of *North Pacifica, LLC v. City of Pacifica*, 335 F. Supp. 2d 1045

20  (N.D. Cal. 2004).  In *North Pacifica*, defendant—like Greenberg—retained two

21  former lawyers of plaintiff's predecessor-in interest to testify against plaintiff.

22  Plaintiff moved to disqualify the former attorneys as experts and to disqualify

23  defendant's counsel for retaining the experts.  The court held the retention of the

24  former lawyers was improper.  *Id*. at 1050.  Given their role, the lawyers *ipso facto*

25  possessed relevant privileged information, and the court disqualified them as

26  experts.  *Id*.  The court further recognized that it was equally improper for defense

27  counsel to retain its adversary's former attorneys as experts.  *Id*. at 1051-52.  The

28

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1   court held there was a presumption that the former lawyers disclosed confidential

2   information and thus in favor of disqualification.  *Id*.  The court ultimately decided

3   against disqualification, but only because it determined the likelihood of disclosure

4   was "extremely slim" because there was no "overlap in material fact between [the]

5   earlier representation and the narrow issues on which [the experts] were asked to

6   render an opinion." *Id* at 1052.  Disqualification is required, however, if there is an

7   overlap in the representations.  Here, there is complete overlap.

8       *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067 (1994)

9   makes this clear.  In *Shadow Traffic*, the court disqualified defendant's counsel

10  because the counsel retained an expert who was previously interviewed by

11  plaintiffs.  *Id*. at 1087.  As in *North Pacifica*, the court recognized that the expert's

12  conflict was imputed to defendant's counsel and that there was a presumption that

13  confidential information was disclosed.  *Id*. at 1085.  Further, because the expert

14  had gained confidential information related to the very topic of his expert

15  testimony, the court held defendants could not rebut the presumption of disclosure

16  and disqualified defense counsel.  *Id*. at 1086.

17      *Shadow Traffic* is dispositive.  Greenberg engaged Benjamin as an expert on

18  the very issues on which he had privileged and confidential information.  While

19  Greenberg maintains it did not discuss percipient recollections with Benjamin (or

20  Bernstein), Greenberg apparently learned enough from its conversations to identify

21  Benjamin in its March 2013 Initial Disclosures as a *non-expert* witness it might call

22  to support its claims and defenses with respect to the 1969 Agreements.  Valadez

23  Decl. Ex. F.  Although Greenberg now tries to minimize Benjamin's percipient

24  knowledge because it was "forty-five years ago," that only underscores the nature

25  and gravity of the problem.  (Opp. at 1.)  Greenberg recognized how important it

26  was to secure Benjamin's testimony because he was the *only* living percipient

27

28

witness able to testify about the making of the contract at issue.[1]

At the same time (but unbeknownst to Warner, Zaentz, and MGM),[2] Greenberg retained Benjamin as an expert and paid him an initial retainer of $10,000 to testify about the meaning of the contract he negotiated and drafted opposite Greenberg's clients.  Greenberg claims to have discussed with Benjamin only expert—not percipient—matters, but here there is no meaningful distinction between the two.  Any "expert testimony" from Benjamin about the meaning of the Agreement, including the custom and practice in 1969, cannot be separated from his legal work for UA creating the Agreement at that time.  This is clear from Greenberg's own portion of the Rule 26 Joint Report (filed within weeks of Greenberg's private conversation with Benjamin), which includes, for example, the following description of just one issue on which expert testimony would expect to be proffered:

> In 1969, the custom and practice in the licensing industry required that gambling devices and services be specified as included in any grant of merchandising rights if those rights were actually being conveyed; they were not the type of rights that would be covered by a general grant of merchandising rights.  Certainly gambling rights were never intended to be included in this grant by the original negotiating parties.

Jih Decl. Ex. 7.  Any testimony about what was "intended to be included in this grant by the original negotiating parties" necessarily implicates the work Benjamin did as a lawyer for those parties.   As a result, Benjamin's violation of Rule 3-310(e) is imputed to Greenberg and Greenberg must be disqualified.

Greenberg also violated Rule 1-120 in soliciting and retaining Benjamin to testify as an expert against MGM's interest.  *Patriot Scientific Corp. v. Moore*, 178

---

[1] Greenberg also contacted and agreed to represent Bernstein, but concluded he was too ill to provide testimony.

[2] Greenberg did not disclose that it had retained Benjamin as an expert until January 27, 2014 in its response to MGM's letter objecting to Greenberg's representation of Benjamin.

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

Fed. Appx. 18 (Fed. Cir. 2006), is on point.  In *Patriot*, the court, applying California law, disqualified plaintiffs' counsel because he hired the former transactional attorney of defendant as a consultant to testify against defendant's interest.  *Id*. at *4.  The court recognized it was improper for the former attorney, who prosecuted the patents at issue for defendants, to accept employment as a consultant adverse to his former client and it was equally improper for plaintiff's law firm to have solicited the former attorney to testify on issues related to his prior representation.  *Id*. at *3-4.  The court held the solicitation and improper access to relevant privileged information violated Rule 1-120 and warranted disqualification. *Id*.  Greenberg's only response is that the Court should not consider *Patriot* because it is unpublished, but Greenberg cannot escape its reasoning or result.[3]

## C.   <u>Greenberg Violated Canon 9.</u>

Tellingly, Greenberg makes no argument that its representation of Benjamin and Bernstein and retention of Benjamin did not create an appearance of impropriety in violation of Canon 9.  Greenberg instead argues that the Court is powerless to disqualify it for failing to avoid the appearance of impropriety because the ABA removed that standard from the Model Rules of Professional Conduct in 1983.  (Opp. at 23.)  Greenberg misstates the law.

First, the law is clear that Canon 9 remains applicable after the ABA's 1983 replacement of the Model Code of Professional Responsibility with the Model Rules of Professional Responsibility.  *See In re AFI Holding, Inc*., 355 B.R. 139, 153 n.15 (9th Cir. 2006).  *AFI Holding* recognized in 2006—more than 10 years

---

[3] Greenberg claims that while it knew that Benjamin was a former attorney for UA and retained him to testify against UA's interest, it did not technically violate Rule 1-120 because Benjamin is not a member of the California bar and is not subject to the California Rules of Professional Conduct.  (Opp. at 21 n.8).  The rules of professional conduct are not so inflexible.  *See In re Complex Asbestos Litig*., 232 Cal. App. 3d 572, 587 (1991).  Further, accepting employment adverse to a former client's interest is not a California-specific ethical rule.  Such misconduct is equally improper under the New York Rules of Professional Conduct, where Benjamin is a member.  *See* N.Y. Rule Prof. Conduct 1.9(c)(1).

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

after *In re McKinney Ranch Associates*, 62 B.R. 249 (Bkrtcy. C.D. Cal. 1986), upon which Greenberg inappropriately relies—the continuing authority of the federal courts to apply Canon 9 to disqualify an attorney:

> Although the ABA Code has been replaced by the ABA Rules of Professional Conduct, which expressly eliminates the "appearance of impropriety" standard (see ABA Rule 1.9, comment), and although California has neither adopted the ABA Code or Rules nor has its own such standard, the Code and case law illustrates that federal courts have the inherent power to apply it.

*Id.* Indeed, Canon 9 is still one of the "standards, rules and decisions" governing the professional conduct of attorneys in the Central District under Local Rule 83-3.1.2. *See Holm v. City of Barstow*, 2008 WL 4290857, at *3, 7 (C.D. Cal. Sept. 16, 2008). Further, courts in both the Central District and the Ninth Circuit recognize that it supplies "*an independent basis*" for disqualification. *Id.* at *7 (emphasis added); *AFI Holding*, 355 B.R. at 153 n.15.

Second, notwithstanding Canon 9, federal courts have the "*responsibility* to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the *appearance of impropriety*." *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) (emphasis added). The Court's "inherent power to preserve the integrity of the adversarial process," and duty to exercise that authority, are not affected by whether applicable rules directly cite to or adopt Canon 9. *Cargill Inc. v. Budine*, 2007 WL 1813762, at *7, 10-11. (E.D. Cal June 22, 2007).

Greenberg cannot—and does not even *attempt* to—argue that it avoided the appearance of impropriety. There can be no doubt that the "public['s] confidence in the legal profession" would be undermined by a party improperly invading the attorney-client privilege of its adversary to secure an advantage in the litigation. *See Erickson*, 87 F.3d at 303. Here, Greenberg invaded that privilege by soliciting and having multiple, substantive communications with its adversary's former

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1  attorneys about issues in this case.  Not only did Greenberg create a mechanism for

2  the improper acquisition of privileged information, but it also improperly

3  incentivized its disclosure by paying Benjamin $10,000 as an initial retainer for his

4  "expert opinion" on the contractual provisions he negotiated and offering free legal

5  services to Benjamin and Bernstein.  As other courts have found, this payment

6  exacerbates the  appearance of impropriety.  *See Am. Prot. Ins. Co. v. MGM Grand*

7  *Hotel-Las Vegas, Inc.,* 1986 WL 57464, at *6 (D. Nev. Mar. 11, 1986); *Biocore*

8  *Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 670 (D. Ka. 1998).

9         These actions violate multiple ethical rules of conduct, *see supra* at 4-11, and

10  are manifestly improper on their face.  But, *regardless* of whether any confidential

11  information was actually exchanged, Greenberg's actions "threaten[] the integrity

12  of the trial process" by creating the "*potential* for disclosure of confidential

13  information in light of the status of the [lawyer representing both plaintiff and

14  former employee defendant]."  *Cargill*, 2007 WL 1813762, at * 13 (emphasis

15  added; brackets in original).  And *regardless* of whether Greenberg actually

16  represented Bernstein or Benjamin, Greenberg created an appearance of

17  impropriety by paying its adversary's former attorney for "expert" testimony on

18  matters on which he is a fact witness.  *See Rentclub, Inc. v. Transamerica Rental*

19  *Fin.,*811 F. Supp. 651, 655 (M.D. Fla. 1992); *Am. Prot.,* 1986 WL 57464 at *6.

20         What is perhaps most troubling about Greenberg's conduct is that it

21  proceeded in full knowledge that its actions were improper and seriously unethical.

22  At the same time that Greenberg was privately meeting with Benjamin and

23  Bernstein, Greenberg wrongly accused Zaentz and Warner of having improper

24  contact with a former in-house counsel to the HC Parties, Adrian Laing.  Although

25  Warner and Zaentz never met or agreed to meet with Laing, Greenberg wrote to

26  Warner and Zaentz warning that any private meeting with Laing would "raise[]

27  serious concerns about a possible invasion of HarperCollins' attorney-client

28

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

privilege" and could warrant disqualification.  Lens. Decl. Ex. 11.  Greenberg further recognized that the "payment of money to an adversary's former employee creates a strong incentive for the witness to provide any helpful information, even if that information is confidential or privileged."  *Id*.  While Greenberg was in error about the facts that gave rise to its letter, Greenberg's strong admonishment leaves no doubt it understood the importance of the same ethical issues involved here.

## III.   DISQUALIFICATION IS NECESSARY TO REMEDY GREENBERG'S MISCONDUCT.

Given Greenberg's ethical violations, disqualification is the only appropriate remedy.  The Court has a responsibility to ensure the integrity of the proceedings as well as inherent authority to levy sanctions to redress abusive litigation practices. *Erickson*, 87 F.3d at 300; *Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701, at *5 (C.D. Cal. Dec. 13, 2007); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Greenberg does not dispute this.  Indeed, when a court "satisfactorily establishe[s] that [an attorney] wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings," it "must not hesitate to disqualify" the attorney.  *Packard Bell*, 2001 WL 880957 at *9.  There should be no hesitation here.

### A.   Warner and Zaentz Have Standing To Move for Disqualification.

Greenberg suggests that its violations are wrongs that cannot be remedied because neither Warner and Zaentz—the litigants—nor MGM—the holder of the privilege—has standing to challenge its misconduct.  (Opp. at 10.)  While Greenberg does not dispute that MGM is the holder of the privilege in question, it argues that because MGM has not formally intervened it is "strip[ped] of any standing" to protect its privileged information.  (Opp. at 6.)  Greenberg further argues that while Warner and Zaentz are the litigants who are directly affected by the use of the privileged information in this suit, they do not have standing because

1   a non-client litigant can never have standing to move for disqualification.  (Opp. at

2   11.)  Greenberg is wrong on all counts.

3          The notion set forth in *Colyer v. Smith*, 50 F. Supp. 2d 966 (C.D. Cal. 1999),

4   that a non-client litigant ordinarily lacks standing to bring a motion for

5   disqualification motion stems from the general Article III rule that a litigant should

6   not be permitted to raise another person's legal rights.  *Id*. at 971-72.  *Colyer* and its

7   progeny are thus concerned about instances where a stranger to the attorney-client

8   relationship seeks to opportunistically take advantage of its adversaries' misconduct

9   even though the misconduct has had no effect on the non-client party.  When the

10  holder of the privilege does not object, *Colyer* suggests that courts must carefully

11  scrutinize the motion to determine whether the moving party has a personal stake in

12  the requested relief.  *Id*.

13         There is no such concern here.  MGM, the holder of the privilege, has joined

14  in the motion and the requested relief.  Dkt. 189.  Greenberg tries to artfully slip

15  between the cracks of the standing rules by challenging MGM's and Warner's and

16  Zaentz's standing separately.  But it fails to acknowledge that *all* parties with a

17  stake in the motion (*i.e.*, the holder of the privilege and the litigants) are objecting

18  to Greenberg's improper access to privileged and confidential information.  MGM

19  need not formally intervene—its joinder makes clear that MGM objects to

20  Greenberg's actions and has not waived its claim of privilege.  *See, e.g.,*

21  *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 2012 WL 393309, at *4 (S.D.

22  Tex. Feb. 6, 2012) (rejecting argument that non-client party did not have standing

23  because client "joined" in the motion).

24         Moreover, independent of MGM's joinder, Warner and Zaentz have standing

25  to move for Greenberg's disqualification.  Greenberg contends a non-client litigant

26  can *never* have standing to move for disqualification.  This is not the law in

27  California or the Central District.  *See Kennedy v. Eldridge*, 201 Cal. App. 4th

28

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1197, 1205 (2011) (holding non-client party had standing to bring motion for disqualification and stating that "no California case has held that only a client or former client may bring a disqualification motion"); *Colyer*, 50 F. Supp. 2d at 971-72. Indeed, *Colyer* recognized that the law permits non-client parties to assert conflicts as long as they have a "personal stake in the motion," such as when the conflict "impacts the [non-client] party's interest in a just and lawful determination of [its] claims." *Id*. at 971-72.

Here, Warner and Zaentz's interest is not just a "broad interest in the administration of justice." (Opp. at 11.) Rather, Warner and Zaentz have a particular interest in a fair determination of *their claims* before this Court. Greenberg's ethical violations have directly and adversely affected Warner and Zaentz's ability to have a fair trial on the merits of their claims. Greenberg improperly acquired privileged information from two key percipient witnesses. Benjamin and Bernstein have privileged and confidential information from negotiating the Agreements that form the basis of the very rights that Warner and Zaentz acquired and are now fighting to protect. And, it is only by virtue of its improper representation of Benjamin and Bernstein that Greenberg put itself in a position to acquire this information. While the privilege belongs to MGM, disclosure and use of the privileged information harm not only MGM but also Warner and Zaentz since all three parties hold merchandising rights in the Agreements at issue. Warner and Zaentz thus have the requisite personal stake to move for Greenberg's disqualification. *See, e.g., Decaview Distribution Co., Inc. v. Decaview Asia Corp.*, 2000 WL 1175583 (N.D. Cal. Aug. 14, 2000) (non-client has standing to move for disqualification if opposing attorney's misconduct threatens to prejudice the moving party); *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1157 (W.D. Wash. 2006) (permitting non-client party to move for disqualification because the conflict was "so intertwined with the current litigation" that it would

1    impede the "just and lawful determination" of the non-client party's claims).

2         **B.    Greenberg's Continued Involvement Will Irreparably Taint the**

3              **Remainder of These Proceedings.**

4         Disqualification is necessary where "as a result of a prior representation or

5    through improper means, there is a reasonable probability counsel has obtained

6    information the court believes would likely be used advantageously against an

7    adverse party during the course of the litigation." *Packard Bell*, 2001 WL 880957,

8    at *9.  Indeed, courts have held disqualification is necessary even if there is only a

9    "nagging suspicion" that an attorney has gained improper access to privileged and

10   confidential information.  *See MWR/Wallace Power & Indus., Inc. v. Thames

11   Assocs.*, 764 F. Supp. 712, 726-27 (D. Conn. 1991).  And, it is improper regardless

12   of whose privileged and confidential information the counsel has acquired.  *See

13   FMC Techs., Inc.*, 420 F. Supp. 2d at 1157.

14        Greenberg argues that it should not be disqualified because both Ms.

15   Eskenazi and Benjamin were "careful" not to discuss any privileged information

16   during their hours of conversation and ask Warner, Zaentz, MGM, and this Court to

17   take them at their word.  (Opp. at 6; Benjamin Decl. ¶ 4.)  The law recognizes that

18   such self-serving statements are insufficient.  *See Cargill*, 2007 WL 1813762, at

19   *11 ("Statements from counsel or former employees to the effect that they

20   attempted to preserve any attorney-client privilege of the [former employer] while

21   undoubtedly true, are unavailing."); *Packard Bell*, 2001 WL 880957, at *9.  As

22   stated in *Packard Bell*, "if sworn statements by the parties involved in the alleged

23   conflict that they didn't disclose any confidential information were the litmus test

24   for determining conflicts of interest, then conflicts of interest undoubtedly would be

25   nonexistent.  Instead, it is the potential for disclosure of confidential information . .

26   . which is the concern."  *Id*. at *9.

27        Greenberg's self-serving statements are particularly inappropriate in light of

28

17

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

its selective, evolving disclosures.

- In its January 27 letter, Greenberg represented that Ms. Eskenazi had "not had any substantive conversations with Mr. Benjamin regarding his knowledge as a percipient witness" and had "only limited discussions regarding his potential expert witness testimony."  Lens Decl. Ex. 18. But the call log revealed those "limited" discussions were over 30 minutes each, and collectively, Ms. Eskenazi's calls as of January 27, 2014 lasted over an hour and a half.  *Id*. Ex. 28.

- Greenberg stated its February 13, 2014 conversation with Benjamin "follow[ed] [MGM's] February 13, 2014 letter" and described it as a "brief" discussion to inform Benjamin that his deposition would not be going forward.  *Id*. Ex. 20.  However, the phone records show that the conversation occurred on February 10, three days before MGM's February 13 letter and three days before Greenberg inquired whether Mr. Benjamin's deposition was going forward.  *Id*. Ex. 28.  Further, this conversation was not "brief" but rather lasted almost 43 minutes.  *Id*.

- Despite MGM's repeated requests, Greenberg refused to disclose the existence of any notes of its calls with Benjamin for four months.  It then revealed it had two pages of notes, but refused to produce them, claiming they were privileged.  Lens Decl. Ex. 27.  Now, Greenberg reveals it has at least an additional page of notes, but still insists on withholding them under the guise of privilege.  Eskenazi Decl. ¶¶ 11, 21.

Moreover, for the first time in its opposition, Greenberg concedes they discussed *the key issues in this case*.  Greenberg now admits that its lead counsel Bonnie Eskenazi "solicited [Benjamin's] opinion" on the meaning of the contracts he negotiated, specifically on the topics of "gambling and downloadable-only computer games."  Eskenazi Decl. ¶ 8.  This contradicts Greenberg's previous

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1    assurances that it had not had "any substantive conversations with Mr. Benjamin

2    regarding his knowledge as a percipient witness in the case and [] had only limited

3    discussions regarding his potential expert witness testimony."  Lens Decl. Ex. 18.

4         Sorting through these shifting versions and self-serving statements of what

5    was or was not discussed is not necessary.  *See Complex Asbestos Litig.*, 232 Cal.

6    App. 3d at 596.  Under the circumstances here, the disclosure of privileged and

7    confidential information is presumed, and that presumption cannot be rebutted for

8    two reasons.  First, the presumption is irrebuttable where, as here, there is a

9    substantial relationship between the former lawyer's prior representation and the

10   subject of the lawsuit.  *See Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994).

11   This lawsuit concerns the meaning of the Agreement Benjamin negotiated.  Any

12   "expert opinion" Benjamin may have on this subject cannot be separated from his

13   work as an attorney.  *See, e.g., Pellerin v. Honeywell Int'l, Inc.,* 2012 WL 112539,

14   at *3 (S.D. Cal Jan. 12, 2012) (holding expert could not "parse" privileged

15   percipient knowledge from expert opinion).  Greenberg responds that because

16   Benjamin and Bernstein negotiated these Agreements years ago, it is unlikely that

17   they "could even remember . . . any confidential communications [they] might have

18   had during the negotiations."  (Opp. at 22.)  But that is the precise reason the

19   presumption is necessary.  It serves as a necessary prophylactic to guard against

20   instances where privileged information is not expressly disclosed, but the law firm

21   "obtained the benefit of the information" because it "unconsciously" affected the

22   expert's analysis.  *Shadow Traffic*, 24 Cal. App. 4th at 1085; *Cargill*, 2007 WL

23   1813762 at *8.

24        Second, the presumption of disclosure is conclusively presumed and legally

25   irrebuttable because in addition to retaining Benjamin as an expert, Greenberg also

26   agreed to an attorney-client relationship with Benjamin and Bernstein.  *See Cargill*,

27   2007 WL 1813762, at *8; *City Nat. Bank v. Adams*, 96 Cal. App. 4th 315, 327

28

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

(2002).  The presumption is necessary as the "very nature of [the attorney-client] relationship is such that confidences should be exchanged freely between attorney and client" and there is no means to scrutinize the communications because the attorney assumes duties of confidentiality and loyalty to the client.  *Cargill*, 2007 WL 1813762, at *8.

Having acquired privileged and confidential information at the heart of this case, Greenberg cannot be allowed to continue as counsel for the Tolkien/HC Parties.  Greenberg cannot "unlearn" the information it acquired.  *See Complex Asbestos Litig.*, 232 Cal. App. 3d at 596.  And, Warner and Zaentz have no way to ensure that confidential information was not shared or that the advantage Greenberg gained has been neutralized.  *See Cargill*, 2007 WL 1813762 at *13.  While Warner and Zaentz will never know the full extent of the disclosure and whether the Tolkien/HC Parties themselves will exploit the advantage gained, disqualification at least removes the "attorney[s] who could most effectively exploit the unfair advantage."  *Packard Bell*, 2001 WL 880957, at *10.

For that reason, in addition to disqualifying Greenberg, the Court should order the firm to turn over its notes and all documents pertaining to its conversations with Benjamin and Bernstein to MGM and the Court for *in camera* review.  Greenberg has no valid claim of privilege over these documents—indeed, it claims nothing of "substance" was discussed with the witnesses.  And even if it once had a claim of privilege, that privilege has been waived.  Greenberg cannot describe the substance of some portions of its conversations with Benjamin and Bernstein and argue that no privileged information was disclosed, while claiming privilege over the notes reflecting its entire conversation.  *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012).  And to the extent Greenberg is only relying on a claim of work-product, Warner and Zaentz have

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1  certainly shown good cause that such notes should be submitted for review. *See*

2  Fed. R. Civ. P. 26(b)(3)(ii) (work-product discoverable if party shows "it has

3  substantial need for the materials to prepare its case and cannot, without undue

4  hardship, obtain their substantial equivalent by other means").

5       Additionally, Ms. Eskenazi should be made available for deposition

6  regarding her conversations with Benjamin and Bernstein.  After receiving Ms.

7  Eskenazi's self-serving declaration, Warner and Zaentz promptly requested the

8  opportunity to depose her regarding her declaration, but Greenberg has ignored the

9  request and refused to make Ms. Eskenazi available.  Jih Decl. Ex. 8.  And given

10  Ms. Eskenazi's selective description of the substance of her conversations, MGM

11  reiterated its requests for the notes, which Greenberg has also ignored. *Id.* at 9.

12     **C.     The Court's Interest In Protecting These Proceedings Takes**

13            **Precedence Over Any Delay.**

14      Greenberg argues that Warner and Zaentz have unreasonably delayed in

15  bringing the motion and forfeited their right to seek disqualification, claiming

16  Warner and Zaentz have known all the facts on which this motion is based "for

17  more than a year" yet waited "more than 14 months" to bring this motion.  (Opp. at

18  8, 12.)  Greenberg contends Warner and Zaentz were put on notice by the Statement

19  in Greenberg's Initial Disclosures filed on March 28, 2013 that Benjamin "can be

20  contacted c/o the Tolkien/HC Parties' counsel."  Valadez Decl. Ex. F.  Greenberg is

21  incorrect for a number of reasons.

22      *First*, the initial disclosures revealed nothing other than that Benjamin could

23  be contacted through Greenberg.  It did not disclose any of the facts on which this

24  motion is based.  Indeed, the referenced statement did not even suggest that

25  Greenberg was representing Benjamin, since Greenberg had a practice of listing

26  individuals on its Initial Disclosures as within its control but whom the firm did not

27  represent.  And, it certainly did not reveal that Greenberg offered its legal services

28

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

to these key percipient witnesses free of charge; that the lawyers had agreed Greenberg would represent them; that Greenberg had retained Benjamin as an expert to testify against its adversary's interest; that Greenberg had paid Benjamin $10,000 for his testimony; and that Greenberg had multiple, extensive, and substantive conversations with Benjamin about key issues in this case.

Warner and Zaentz did not learn that Greenberg purported to represent Benjamin and Bernstein until July 1, 2013, and Greenberg did not confirm this fact until August 14, 2013.  Warner and Zaentz informed MGM of Greenberg's representation in December 2013, and MGM immediately objected to the representation.  Greenberg does not dispute that MGM objected immediately upon learning of the representation.  Thus, at most, Warner and Zaentz "delayed" four months—while the parties were occupied on other discovery issues, before raising the issue with MGM, while MGM—the holder of the privilege—did not delay at all.  This delay cannot be considered unreasonable under any standard.  *See, e.g., Miller v. Alagna*, 138 F. Supp. 2d 1252, 1259 (C.D. Cal. 2000) (holding delay of six months not inexcusable and granting motion to disqualify); *Halladay & Mim Mack Inc. v. Trabuco Capital Partners Inc.*, 2009 WL 3244746, at *4 (C.D. Cal. Oct. 5, 2009) (holding delay of 10 months not unreasonable); *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 2007 WL 3203056. at *4-5 (N.D.Cal. Oct. 29, 2007) (holding delay of a year and a half not unreasonable).  Further, it was only after the parties raised the conflicting representation with Greenberg that the full extent of the misconduct began to surface.

*Second*, Greenberg's argument ignores that for months it did not disclose the full extent of its misconduct and refused to be candid with Warner, Zaentz, and MGM.  Greenberg waited a month to substantively respond to MGM's initial letter objecting to Greenberg's continued representation of Benjamin and Bernstein, despite multiple follow up letters from MGM.  Lens Decl. Exs. 14-18.  When

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

Greenberg finally responded, it refused to disclose the extent of its conversations with Benjamin and Bernstein or to produce its written communications and notes of conversations with them.  Instead, Greenberg provided only self-serving, conclusory descriptions, which only prompted more follow up.  It was when pressed for more details that the extent of Greenberg's misconduct began to emerge, despite Greenberg's ever-shifting story.  Warner, Zaentz, and MGM endeavored to resolve the issues over the course of several months, but Greenberg would not agree to full disclosure and insisted on preserving the fruits of its misconduct.  Warner and Zaentz cannot be penalized in these circumstances, especially when the full extent of Greenberg's misconduct was not yet known.  *Western Continental Operating Co. v. Natural Gas Corporation*, 212 Cal. App. 3d 752 (1989)—a case *Greenberg relies on*—makes this point clear.  *Id*. at 764 (holding one year delay not "extreme or unreasonable" where in the interim party made good faith effort to negotiate attorney's voluntary withdrawal).

The only potential prejudice identified by Greenberg is that the Tolkien/HC Parties will lose the service of knowledgeable counsel.  Yet, no trial date has been set, expert discovery has not yet begun, and all dispositive motions and other proceedings on the merits remain stayed pending the Tolkien/HC Parties' Ninth Circuit appeal.  Moreover, the loss of knowledgeable counsel alone is *not* a reason to deny a motion to disqualify.  *See Complex Asbestos*, 232 Cal. App. 3d at 599 ("The only prejudice cited by the Harrison firm is that their clients lost the services of knowledgeable counsel of their choice, and were forced to retain new counsel. This is not the type of prejudice contemplated . . . Rather, the Harrison firm has simply identified those client interests implicated by any disqualification motion.").  The Tolkien/HC Parties' claim of prejudice is also overstated as much discovery, including all but two depositions, occurred after MGM objected to Greenberg's representation of Benjamin and Bernstein in December 2013.  Furthermore, had

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1  Greenberg been candid and forthright about its conduct, it could have greatly

2  alleviated  the very prejudice the Tolkien/HC Parties now claim.

3         Ultimately, the court's duty to preserve the integrity of the judicial process

4  overrides considerations of delay.  *Compare All Am. Semiconductor, Inc. v. Hynix*

5  *Semiconductor, Inc.,* 2008 WL 5484552, at *4 (N.D. Cal Dec. 18, 2008) (when

6  deciding a disqualification motion, "the paramount concern [] must be the

7  preservation of public trust in the scrupulous administration of justice and the

8  integrity of the bar"), *with Western Continental*, 212 Cal. App. 3d at 764 ("Delay

9  will not necessarily result in the denial of a disqualification motion; the delay and

10  the ensuing prejudice must be extreme.").

11  **IV.    CONCLUSION**

12        There can be no question based on the current record that Greenberg has

13  violated the basic duties of professional conduct by seeking to represent both sides

14  of the same contract and invading the attorney-client privilege of its adversary.

15  Greenberg has secured an unfair advantage for its client in this action, and its

16  continued participation will compromise the integrity of the proceedings and impair

17  Warner and Zaentz's right to a fair and just determination of their claims.

18  Disqualification is fully warranted and required.

19        Dated:  July 7, 2014

20                                             O'MELVENY & MYERS LLP

21                                             By:_____

22                                                  Daniel M. Petrocelli
                                               Attorneys for the Warner Parties

23

24                                             ARNOLD & PORTER LLP

25                                             By: Martin N. Glick / NAP
                                                  _____

26                                                  Martin R. Glick
                                               Attorneys for The Saul Zaentz Company

27

28

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)

1    Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other

2    signatories listed, and on whose behalf the filing is submitted, concur in the filing's

3    content and have authorized the filing.

4

5    Dated:  July 7, 2014

6                                                        O'MELVENY & MYERS LLP

7                                                        By:_____

8                                                              Daniel M. Petrocelli
                                                              Attorneys for the Warner Parties

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF
MOTION TO DISQUALIFY
CASE NO. 12-9912-ABC (SHX)