DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Attorneys for the Warner Parties

ARNOLD & PORTER LLP
MARTIN R. GLICK (No. 40187)
marty.glick@aporter.com
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

Attorneys for The Saul Zaentz Company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LTD., *et al*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>WARNER BROS. DIGITAL DISTRIBUTION, *et al*,<br><br>　　　　Defendants.<br><br>WARNER BROS. DIGITAL DISTRIBUTION INC., *et al*,<br><br>　　　　Counterclaim Plaintiffs,<br><br>v.<br><br>FOURTH AGE LTD., *et al*,<br><br>　　　　Counterclaim Defendants. | Case No. 12-9912-ABC (SHx)<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF WARNER AND ZAENTZ'S MOTION TO COMPEL DOCUMENTS AND SUPPLEMENTED PRIVILEGE LOG**<br><br>SUPPLEMENTAL DECLARATION OF MOLLY M. LENS FILED CONCURRENTLY HEREWITH<br><br>**Judge**: Hon. Audrey B. Collins<br>**Magistrate**: Hon. Stephen J. Hillman<br><br>**Hearing Date**: July 28, 2014<br>**Hearing Time**: 2:00 p.m.<br><br>**Discovery Cut-Off**: July 29, 2014 |

The Tolkien/HC Parties are attempting to hide behind obscure entries on a boilerplate log to prevent any scrutiny of their unwarranted privilege claims. When Warner and Zaentz moved to compel production of a privilege log, to avoid this very problem, they requested "not only a log," but one that "contains meaningful information." Lens Decl. Ex. 3 at 29:19-30:6. The Court agreed, requiring an "adequate description of the document to enable the Parties and the Court to adequately assess the claim of privilege." *Id*. Ex. 15 at 2-3.

The Tolkien/HC Parties now profess surprise that Warner and Zaentz are challenging the privilege claims, even though they raised these issues in the original motion and in the meet and confer preceding this motion. Contrary to their claim otherwise, Warner and Zaentz have repeatedly complained that the Tolkien/HC Parties were shielding Cathleen Blackburn and Steven Maier's non-privileged business communications, improperly claiming common-interest protection, and misapplying the work-product doctrine. During the telephonic discussions, the Tolkien/HC Parties did not yield on any of these positions, insisting that Warner and Zaentz were required to defer to the conclusory assertions in the privilege log.

It is the Tolkien/HC Parties' burden to establish that each of the listed documents is privileged. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010). They have not met their burden for at least three reasons:

First, the Tolkien/HC Parties are broadly claiming privilege over *business* communications. There is no dispute that Cathleen Blackburn "manag[es] the business of the Tolkien Estate" and its "day-to-day affairs." Lens Decl. Ex. 7 at 29:23-30:15; Ex. 8 at 28:5-16. In addition to serving as counsel, Ms. Blackburn also serves as secretary of both the Tolkien Estate Limited and the Tolkien Trust. *Id.*, Ex. 7 at 34:7-35:8. There is also no dispute that Stephen Maier is a director of the Tolkien Estate Limited. *Id.*, Ex. 6 at 37:14-19. However, the privilege log provides no way to differentiate between Ms. Blackburn's and Mr. Maier's legal

- 1 -

WARNER AND ZAENTZ'S
SUPPLEMENTAL MEMORANDUM
CASE NO. 12-9912-ABC (SHX)

and business roles. The Tolkien/HC Parties effectively concede this deficiency, arguing that there is no "requirement" to provide "any information to distinguish between business and legal communications involving lawyers." (Jnt. Stip. at 25.) Instead, they say the parties must accept on faith their position that each and every document on the log is privileged. Given Ms. Blackburn's and Mr. Maier's multifaceted roles for the Tolkiens and their business interests, it is indefensible and implausible for the Tolkien Estate to claim privilege over nearly every communication involving them spanning 20 years.

Second, the Tolkien/HC Parties likewise assert a common-interest privilege over every single communication between HarperCollins and the Tolkien Parties. Their opposition makes clear that they are broadly asserting this privilege to cover not only common legal interests, but common financial or commercial interests. (Jnt. Stip. at 32.) *See also* Supplemental Declaration of Molly M. Lens ("Supp. Lens Decl.") Ex. 2 at 133:25-140:4. This, too, is specious. Commercial discussions are not privileged unless they advance interests in "anticipated joint litigation," *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 79-80 (N.D. Cal. 2007), or in "avoid[ing] litigation." *Morvil Technology, LLC v. Ablation Frontiers, Inc.*, 2012 WL 760603, at *2-3 (S.D. Cal. 2012).[1] To be protected, they must not only convey *legal* advice but also "further [a] specific legal effort." *Nidec Corp.*, 249 F.R.D. at 580; *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). Again, the privilege log provides no way to differentiate between true common-interest communications and ordinary commercial discussions.

---

[1] None of the cases cited by the Tolkien/HC Parties says otherwise. *Morvil Technology* applied common interest because the communications furthered a common legal interest in avoiding litigation with third parties. 2012 WL 760603, at *2-3. *Resilient Floor*, *Pecover*, and *Cal. Sportfishing* discuss common interest over documents prepared in anticipation of litigation. *Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, 2012 WL 3062294, at *6 (N.D. Cal. July 26, 2012); *Pecover v. Electronic Arts Inc.*, 2011 WL 6020412, at *2 (N.D. Cal. Dec. 02, 2011); *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 2014 WL 641139, at *8 (E.D. Cal. Feb. 18, 2014).

1      <u>Third</u>, the Tolkien/HC Parties indiscriminately claim work-product
2  protection over almost every withheld document, spanning a 45-year period.  They
3  do not dispute that work-product protection only applies to documents created
4  because of an identifiable threat of litigation, fail to cite a single case justifying
5  their blanket assertion, and point only to "the long history of disputes, litigation and
6  potential litigation involving the Tolkien Works."  Jnt. Stip. at 42:18-43:2.  The law
7  requires more than such generic statements.  *McCaugherty v. Sifferman*, 132 F.R.D.
8  234, 246 (N.D. Cal. 1990).

9      The Tolkien/HC Parties' recent attempt to clawback a communication
10 between them vividly illustrates the overreach of the Tolkien/HC Parties.  Pursuant
11 to the Protective Order, Warner and Zaentz have lodged this document under seal
12 for the Court's review and will discuss it only generally in this brief.  Supp. Lens
13 Decl. Ex. 1.  In this document, which the Tolkien/HC Parties claim is privileged,
14 Barry Clark, a business executive for the HC Parties, asks Ms. Blackburn to
15 comment on promotional ideas for *The Hobbit* video games, even though Ms.
16 Blackburn and Mr. Clark did not occupy any attorney-client relationship and they
17 could not identify any "legal issue" that was being discussed, let alone a "common"
18 one between them.  The most the Tolkien/HC Parties can do is file a declaration of
19 Barry Clark with the conclusory statement that he was seeking "legal advice" from
20 someone else's attorney.  But a party cannot give a "veneer of privilege" to a
21 communication by simply asserting in a conclusory fashion that it was for legal
22 advice.  *B.F.G. of Illinois, Inc. v. Ameritech Corp.,* 2001 WL 1414468, at *6-7
23 (N.D. Ill., Nov. 13, 2001).  Not only does the document fail to identify any legal
24 issue, it makes clear that the ultimate decision would be made by Christopher
25 Tolkien, who is not a lawyer and could not be giving legal advice.

26     Instead of any attempt to defend their sweeping assertion of privilege, the
27 Tolkien/HC Parties urge the Court to simply trust the privilege log, which they
28

claim satisfies the minimum requirements for a log.[2] But the issue is not whether the log is minimally sufficient in the abstract. What matters is whether the log is sufficient in light of the record and the circumstances of the case. *See Ryan v. Nat'l Union Fire Ins. Co.*, 2006 U.S. Dist. LEXIS 7366, 21-22 (D. Conn. Feb. 28, 2006) (log deficient despite "technical[] compli[ance]" with rules because court could not evaluate the claims of privilege). The log's conclusory mantra that withheld documents "reflect legal advice, analysis of legal issues and mental impressions and conclusions of counsel" utterly fails to permit assessment of Ms. Blackburn's and Mr. Maier's dual business-legal roles, any common-interest claim, or the work-product assertions. *See ConAgra, Inc. v. Arkwright Mut. Ins. Co.*, 32 F. Supp. 2d 1015, 1016-17 (N.D. Ill. 1999). The log has also proven untrustworthy. *See B.F.G. of Illinois, Inc. v. Ameritech Corp.*, 2001 U.S. Dist. LEXIS 18930 (N.D. Ill. Nov. 8, 2001) ("a document-by-document objection, which is premised on the description in the privilege log, is pointless if the description is deemed untrustworthy"). Since filing this motion, the Tolkien/HC Parties have now admitted that many of the withheld email attachments "were not in fact privileged." Supp. Lens Decl. Ex. 3.

Because the Tolkien/HC Parties have not satisfied their burden, the Court should order them to produce the documents. *See ConAgra,* 32 F. Supp. 2d at 1016-17*; Coleman v. Schwarzenegger*, 2008 WL 2237046 (E.D. Cal. May 29, 2008) (ordering production where log "too conclusory to permit an adequate assessment"). Alternatively, the Court has the authority to review the documents *in camera. See In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992)

---

[2] The Tolkien/HC Parties also argue their broad privilege assertions should go unscrutinized because Warner's and Zaentz's privilege logs are similar to theirs. To create an appearance of similarity, they cherry-pick scattered entries from logs that contain thousands of entries. Even a cursory review of Warner's and Zaentz's logs shows that, unlike the Tolkien/HC Parties' log, each entry provides an individualized description and reflects a tailored privilege determination. More importantly, Warner and Zaentz are not claiming privilege over business issues nor are they claiming all communications between them are subject to the common-interest privilege. The Tolkien/HC Parties know this. If the Tolkien/HC Parties had genuine issues with Warner's or Zaentz's log, they would have filed a motion.

(*in camera* review where there is "a factual basis to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged"); *N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C., 2009). For example, the Court could order an *in camera* review of all or a sampling of the logged documents so the Court can assess whether there is a valid claim of privilege and whether more general production is warranted.

Dated: July 14, 2014                             Respectfully Submitted,

                                                 O'MELVENY & MYERS LLP

                                                 By:    /s/ Daniel M. Petrocelli
                                                        Daniel M. Petrocelli
                                                        Attorneys for Warner Defendants
                                                        and Counterclaim Plaintiffs

Dated: July 14, 2014                             ARNOLD & PORTER LLP

                                                 By:    /s/ Martin R. Glick
                                                        Martin R. Glick
                                                        Attorneys for Zaentz Defendants and
                                                        Counterclaim Plaintiffs