BONNIE E. ESKENAZI (SBN 119401)
BEskenazi@ggfirm.com
ELISABETH A. MORIARTY (SBN 156569)
EMoriarty@ggfirm.com
RICARDO P. CESTERO (SBN 203230)
RCestero@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTH AGE LIMITED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WARNER BROS. DIGITAL DISTRIBUTION, INC., et al., <br><br> Defendants. | Case No. CV 12-09912 AB (SHx) <br><br> Hon. André Birotte, Jr. <br><br> Hon. Magistrate Stephen J. Hillman <br><br> **NOTICE OF MOTION AND MOTION FOR REVIEW OF MAGISTRATE'S AUGUST 12, 2014 ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** |
| WARNER BROS. DIGITAL DISTRIBUTION, INC., et al., <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> FOURTH AGE LIMITED, et al., <br><br> Counterclaim Defendants. | [Declaration of Julia R. Haye and Proposed Order filed and/or lodged concurrently herewith] <br><br> Hearing Date: September 23, 2014 <br> Hearing Time: 10:00 a.m. <br> Courtroom 790 <br> Roybal Building <br><br> Discovery Cut-Off: July 29, 2014 |

84971-00003/2232257.2　　　　　　　　　　　　　　　　MOTION FOR REVIEW OF 8/12/14 ORDER

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 23, 2014 at 10:00 a.m. in Courtroom 790 of the above-entitled Court located at the Roybal Federal Building, 255 East Temple Street, Los Angeles, CA 90012, Plaintiffs and Counterclaim Defendants Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as Trustee of the Tolkien Trust, The J.R.R. Tolkien Estate Ltd., Harper Collins Publishers, Ltd., Unwin Hyman Ltd. and George Allen & Unwin (Publishers), Ltd. (collectively, the "Tolkien/HC Parties") will bring on for hearing their Motion for Review of the Magistrate's August 12, 2014 Order (the "Order"). The Tolkien/HC Parties' motion is based on the fact that the Order is both clearly erroneous and contrary to law in that: (1) it provides relief that was never requested and about which the Tolkien/HC Parties never had an opportunity to be heard; (2) it constitutes an invasion of the Tolkien/HC Parties' attorney-client privilege and attorney work product without good cause; and (3) it violates the July 29, 2014 discovery cut-off.

The Tolkien/HC Parties' motion is based on this notice, the attached Memorandum of Points and Authorities, the papers and pleadings filed in connection with the underlying motion, the Declaration of Julia R. Haye filed concurrently herewith, the other pleadings and files in this matter and such other and further evidence and argument as may be submitted at or before the hearing on this matter.

DATED: August 26, 2014              GREENBERG GLUSKER FIELDS
                                    CLAMAN & MACHTINGER LLP


                                    By: /s. Bonnie E. Eskenazi
                                        BONNIE E. ESKENAZI (SBN 119401)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 1
II. FACTUAL SUMMARY ........................................................................... 2
III. ARGUMENT ............................................................................................. 5
    A. Standards for Review of Magistrate's Order. ................................ 5
    B. The Order Purports to Grant Relief Which Was Never Requested and Which Warner Specifically Stated it Was Not Seeking. ............................................................................................ 6
    C. The Order is Without Legal and Factual Support. ........................ 8
    D. The Order Violates the Discovery Cutoff. ................................... 12
IV. CONCLUSION ....................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Bhan v. NME Hospitals, Inc.*,
  929 F.2d 1404 (9th Cir. 1991) ............................................................................. 5

*Days Inn Worldwide, Inc. v. Sonia Investments*,
  237 FRD 395 (ND TX 2006) ............................................................................ 13

*Diamond State Ins. v. Rebel Oil Co.*,
  157 F.R.D. 691 (D. Nev. 1994) ..................................................................... 9, 10

*Fidelity Nat. Financial, Inc. v. National Union Fire Ins. Co.*,
  2014 WL 1393743 (S.D. Cal. April 9, 2014) ..................................................... 8

*Genentech, Inc. v. Insmed Inc.*,
  234 F.R.D.667 (N.D. Cal. 2006) ....................................................................... 10

*Genentech, Inc. v. Insmed Inc.*,
  442 F.Supp.2d 838 (N.D. Cal. 2006) .................................................................. 9

*Green v. Baca*,
  219 F.R.D. 485 (C.D. Cal. 2003) .................................................................... 5, 6

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992) ..................................................................... 10, 11

*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*,
  2009 WL 2390174 (N.D. Cal. Aug. 3, 2009) ..................................................... 9

*McAdam v. State Nat. Ins. Co., Inc.*,
  --- F. Supp. 2d ---, 2014 WL 1614515 (S.D. Cal. 2014) .................................. 12

*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001) .............................................................................. 8

*Newport Pac. Inc. v. Cnty. of San Diego*,
  200 F.R.D. 628 (S.D. Cal. 2001) ................................................................... 9, 10

*Norse v. City of Santa Cruz*,
  629 F.3d 966 (9th Cir. 2010) .............................................................................. 8

*PHE, Inc. v. Dep't of Justice*,
  983 F.2d 248 (D.C. Cir. 1993) ............................................................................ 9

*United States v. Zolin*,
  491 U.S. 554 (1989) .................................................................................... 10, 12

*Vasudevan Software, Inc. v. Microstrategy Inc.*,
  2013 WL 1366041 (N.D. Cal. April 3, 2013) ................................................... 10

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATE CASES**

*Bank of America, N.A. v. Superior Court of Orange County*,
    151 Cal.Rptr.3d 526 (Cal. Ct. App. 2013) .................................................. 12

*Cornish v. Superior Court*,
    209 Cal.App.3d 467 (1989) ........................................................................ 9

*Mitchell v. Superior Court*,
    37 Cal.3d 591 (1984) .................................................................................. 8

*OXY Resources California LLC v. Superior Court*,
    115 Cal.App.4th 874 (2004) ....................................................................... 9

**RULES**

Fed. R. Civ. Proc. 72 ............................................................................................ 5

Local Rule 37-1 .................................................................................................... 6

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On August 12, 2014, Magistrate Judge Hillman issued an order (Dkt. # 294) requiring Plaintiffs and Counterclaim Defendants Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as Trustee of the Tolkien Trust, The J.R.R. Tolkien Estate Ltd., Harper Collins Publishers, Ltd., Unwin Hyman Ltd. and George Allen & Unwin (Publishers), Ltd. (collectively, the "Tolkien/HC Parties") to submit 150 privileged documents to the Court for *in camera* review (the "Order"). The Order purports to result from a motion to compel production of documents and a supplemented privilege log brought by Defendants and Counterclaim Plaintiffs Warner Bros. Digital Distribution, Inc., Warner Bros. Home Entertainment, Inc., Warner Bros. Consumer Products, Inc., Warner Bros. Interactive Entertainment, Inc., and New Line Productions, Inc. (collectively, "Warner") and The Saul Zaentz Company ("Zaentz"). The Order is both clearly erroneous and contrary to law for three reasons.

First, the Order grants relief to Warner and Zaentz that was not requested in their motion to compel and about which they never sought to meet and confer, much less litigate. The only relief requested by Warner and Zaentz was (1) an order compelling the Tolkien/HC Parties to provide a supplemental privilege log, and (2) an order deeming all of the Tolkien/HC Parties' privileges waived as a result of having provided an allegedly inadequate log. All of that relief was denied. Nevertheless, the Court, *sua sponte*, issued the Order requiring the Tolkien/HC Parties to submit 150 of their privileged documents for *in camera* review. The Tolkien/HC Parties never had the opportunity to litigate the propriety of an *in camera* review of any documents, let alone the 150 documents specified by Warner and Zaentz. For this reason alone, the Order should be reversed.

Second, the Order fails to provide any justification for requiring the Tolkien/HC Parties to reveal their privileged information. *In camera* review should

1  only be required in extraordinary circumstances where the moving party makes a
2  detailed factual showing which demonstrates good cause.  Specifically, the moving
3  party is required to show that an *in camera* review of the documents is <u>likely</u> to
4  prove that the privilege does not apply and that other factors support the resulting
5  intrusion into the privilege.  Here, the Magistrate acted *sua sponte* in ordering the *in*
6  *camera* production and neither Warner nor Zaentz ever made anything remotely
7  close to the required showing.  Moreover, the Magistrate never considered the
8  relevant factors before ordering the *in camera* submission.  Accordingly, the Order
9  is contrary to law.

10  Third, the Order violates the discovery cutoff set by the District Court in its
11  scheduling order.  The Order was issued on August 12, 2014, two full weeks after
12  the July 29, 2014 discovery cutoff.  It is generally accepted that all discovery
13  motions must be heard and decided prior to the discovery cutoff.  By issuing a
14  discovery order two weeks *after* the discovery cutoff, the Magistrate improperly
15  modified the Court's scheduling order by extending the discovery cutoff for certain
16  discovery.  For this reason as well, the Order is contrary to law.

17  Each of the foregoing reasons, standing alone, provides a sufficient basis to
18  overturn the Order.  Taken together, they present a compelling case for reversal.
19  Accordingly, the Tolkien/HC Parties respectfully request that the Court overturn the
20  Order and direct that the Magistrate evaluate their privilege claims solely based on
21  the information contained in the Tolkien/HC Parties' privilege log.

22

23  **II.   FACTUAL SUMMARY**

24  This lawsuit arises out of a dispute over the scope of merchandising rights in
25  and to Professor J.R.R. Tolkien's seminal literary works The Lord of the Rings and
26  The Hobbit (the "Tolkien Works").  In 1969, the predecessors in interest to the
27  Tolkien/HC Parties granted to certain of defendants' predecessors in interest limited
28  rights to use the Tolkien Works in connection with "articles of tangible personal

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

property." In the same 1969 agreement, the predecessors in interest to the Tolkien/HC Parties explicitly <u>reserved</u> to themselves "all rights and/or interests not herein specifically granted." In this lawsuit, the Tolkien/HC Parties contend that defendants exceeded the scope of the limited merchandise rights by, among other things, licensing and selling (1) gambling games based on the Tolkien Works, (2) "intangible" video games based on the Tolkien Works – i.e., video games that are delivered otherwise than by way of physical media such as DVD or cartridge, including (but not limited to) games delivered by way of electronic download, mobile telephone networks or social media websites (the "Intangible Video Games"), and (3) the right to use trademarks based on the Tolkien Works in connection with services, such as restaurants, hotels and theme parks.

At the outset of discovery, the parties jointly agreed that, given the enormous scope of the document production likely to occur in the case, the burden of preparing privilege logs likely outweighed the benefit to be obtained from those logs. Haye Decl. ¶ 2. Notwithstanding this agreement, after the parties had produced hundreds of thousands of pages of documents, Warner sought an order compelling the Tolkien/HC Parties to produce a privilege log. Haye Decl., ¶ 3. On March 24, 2014, the Magistrate ordered that all parties produce privilege logs by no later than April 15, 2014 – the date of the discovery cutoff at that time. Dkt. # 135; Haye Decl., ¶ 3.

On April 11, 2014, the parties stipulated to continue the discovery cutoff until July 29, 2014 and to extend the time to produce the privilege logs until April 30, 2014. Dkt. # 151; Haye Decl., ¶ 4. Pursuant to a further order of the Magistrate, the date for production of privilege logs was extended again until May 14, 2014. Dkt. # 170; Haye Decl., ¶ 5. On that date, all parties exchanged privilege logs. Haye Decl., ¶ 6.

On June 13, 2014, Warner sent a letter seeking to meet and confer regarding the sufficiency of the Tolkien/HC Parties' privilege log descriptions. Haye Decl., ¶

7; Dkt. #243, Exh. 1. Warner's meet and confer letter *only requested that a supplemental log be prepared providing certain additional information* that Warner contended was necessary to evaluate the claims of privilege. Dkt. #243, Exh. 1. Warner specifically stated that *it was not, at that time, seeking to challenge any of the privilege assertions* on the Tolkien/HC Parties' log. *Id.*, n. 1. The parties subsequently discussed the alleged deficiencies in the Tolkien/HC Parties' log over the telephone and neither Warner nor Zaentz ever challenged the propriety of any of the privilege objections. Haye Decl., ¶ 9.

On June 26, 2014, Warner and Zaentz served the Tolkien/HC Parties with a Joint Stipulation on a motion to compel a supplemental privilege log (the "Motion"). Haye Decl., ¶ 10. The Motion did not seek *in camera* review of any specified documents. Dkt. #242-1; Haye Decl., ¶ 11. Rather, the Motion simply argued that the Tolkien/HC Parties' privilege log was inadequate and should be supplemented. The Motion additionally sought an order deeming all of the Tolkien/HC Parties' privilege objections waived as a result of the inadequate log. Dkt. #242-1. The Tolkien/HC Parties opposed the Motion on the grounds that their privilege log was sufficient as a matter of law and that neither Warner nor Zaentz had ever sought to meet and confer regarding the production of privileged documents. *Id.*

On July 22, 2014, the Magistrate issued an interim order on the Motion (the "Interim Order"). Dkt. # 280. In the Interim Order, the Magistrate ruled that the Tolkien/HC Parties' privilege log "is sufficient" and therefore denied Warner and Zaentz's request for a supplemental privilege log. *Id*. The Magistrate then permitted Warner and Zaentz to each identify 75 documents on the Tolkien/HC Parties' privilege log that they wanted to Magistrate to review *in camera*. *Id*. The Interim Order did not set a deadline by which Warner and Zaentz needed to identify those documents, nor did it require that the Tolkien/HC Parties do anything. *Id*. The Magistrate indicated that after reviewing the lists submitted by Warner and

Zaentz, the Magistrate would "then rule on Issues 3[, 4] and 5." *Id.*

The discovery cutoff passed on July 29, 2014 without Warner and Zaentz providing the lists of documents permitted by the Interim Order. Thereafter, on August 4, 2014, five days after the discovery cutoff, Warner and Zaentz each submitted the lists permitted by the Interim Order. Dkt. #285. On August 5, 2014, the Tolkien/HC Parties filed a response to those lists, explaining why a further review of those documents would be improper. Dkt., # 289.

On August 12, 2014, the Magistrate issued the Order, which the Tolkien/HC Parties now challenge. In the Order, the Magistrate clarified that he intends to "substantively review in camera a sampling of documents." Dkt. #294, p. 1. The Magistrate further found, without explanation, that there "is justification for a limited in camera substantive review of the selected documents." *Id.* Accordingly, the Magistrate ordered the Tolkien/HC Parties to submit the identified documents for *in camera* review within ten (10) days. *Id.* On August 19, 2014, pursuant to the Tolkien/HC Parties' request, the Magistrate stayed the Order pending the outcome of this motion for review. Dkt. #299.

## III. ARGUMENT

### A. Standards for Review of Magistrate's Order.

A Magistrate Judge has authority to hear matters that are not dispositive of a claim or defense, including discovery motions. Fed. R. Civ. Proc. 72. A Magistrate Judge's order on non-dispositive matters, such as discovery motions, can be reversed if it is "clearly erroneous or contrary to law." *Green v. Baca*, 219 F.R.D. 485, 488-89 (C.D. Cal. 2003) (quoting 28 U.S.C. § 636(b)(1)(A)); *see Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). "The clearly erroneous standard, which applies to a magistrate judge's findings of fact, is 'significantly deferential, requiring a definite and firm conviction that a mistake has been committed.'" *Green*, 219 F.R.D. at 489 (quoting *Concrete Pipe & Prods. v.*

*Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993)). The contrary to law standard "permits independent review of purely legal determinations by the magistrate judge." *Green*, 219 F.R.D. at 489 (quoting *F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375, 378 (S.D.Cal.2000)).

Here, the Order contains no findings of fact. Instead, the Order makes a legal determination that an *in camera* inspection of specified documents contained on the Tolkien/HC Parties' privilege log is justified and orders the Tolkien/HC Parties to provide those documents. Accordingly, the Order should be reviewed under the "contrary to law" standard.

### B. The Order Purports to Grant Relief Which Was Never Requested and Which Warner Specifically Stated it Was Not Seeking.

Neither Warner nor Zaentz ever requested an *in camera* inspection of any documents contained on the Tolkien/HC Parties' privilege log. To the contrary, the Motion sought an order deeming all of the Tolkien/HC Parties' privilege claims waived with respect to: (1) the Tolkien Parties' outside counsel, Cathleen Blackburn and Steven Maier; (2) the common interest privilege between the Tolkien Parties and HarperCollins; and (3) documents protected by attorney work product. Dkt. # 242-1, Issues 3–5. The basis for these sweeping requests was that the Tolkien/HC Parties' privilege log was purportedly inadequate. *Id*. Notably, consistent with Warner's written representation during the meet and confer process, ***neither Warner nor Zaentz ever sought to challenge any individual claims of privilege***.[1] *Id*.

The Tolkien/HC Parties responded only to the relief requested in the Motion. In this regard, the Tolkien/HC Parties explained that their privilege log was

---

[1] Because Warner and Zaentz failed to meet and confer regarding any specific assertions of privilege contained in the Tolkien/HC Parties' privilege log, their request for any relief beyond a supplemented privilege log should have been denied for failure to comply with Local Rule 37-1.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

84971-00003/2232257.2　　　6　　MOTION FOR REVIEW OF 8/12/14 ORDER

1 sufficient to support the claims of privilege and that there could be no wholesale
2 waiver of privilege even if the Magistrate ordered a supplemental log. Dkt. # 242-
3 1, pp. 21-29). The Tolkien/HC Parties did not address the propriety of an *in*
4 *camera* review, nor did they address the propriety of the privilege objections with
5 respect to any particular documents.
6       The Magistrate agreed with the Tolkien/HC Parties that their log was
7 sufficient. Dkt. #280, p. 1, Issue 1. The Magistrate therefore denied the portions of
8 the Motion in which Warner and Zaentz requested a supplemental privilege log. *Id*.
9 This should have ended the analysis. The relief requested by Warner and Zaentz in
10 Issues 3, 4 and 5 in the Motion was based entirely on the assumption that the
11 Tolkien/HC Parties' privilege log was inadequate. *See e.g.*, Dkt. # 242-1 at p. 21
12 ("Given the absence of Court-ordered information 'to enable the Parties and the
13 Court to adequately assess the claim of privilege,' *see* Lens Decl. Ex. 15, Warner
14 and Zaentz respectfully request the Court to order the Tolkien/HC Parties to
15 produce all communications between the Tolkiens and Ms. Blackburn or Mr.
16 Maier."); p. 30 ("Because of this failure to adequately describe withheld
17 documents—as required by the Court in response to Warner's motion—Warner and
18 Zaentz therefore respectfully request that the Court order the Tolkien/HC Parties to
19 produce all documents subject to only a common interest claim…"); p. 39 ("The
20 Tolkien/HC Parties do not describe which prospect of litigation or specific claim
21 prompted the creation of any of the documents in the log, and thus fail to provide
22 the information required by the Court's March 24, 2014 Order [to justify the work
23 product objections]"). Given that the Tolkien/HC Parties' privilege log was
24 determined to be sufficient, all further relief sought by the Motion should have been
25 denied.
26       Notwithstanding the fact that the Magistrate denied all of the relief actually
27 sought by Warner and Zaentz in the Motion, the Magistrate *sua sponte* offered
28 Warner and Zaentz the opportunity to submit lists of documents they wanted the

Magistrate to review *in camera*. To make matters worse, even though Warner and Zaentz had never sought that relief and had never given the Tolkien/HC Parties an opportunity to address the legal merits of such a request, the Magistrate's Interim Order also failed to give the Tolkien/HC Parties an opportunity to address the merits of any contemplated *in camera* review. Notably, the Interim Order did not require the Tolkien/HC Parties to do anything at all. Then, after receiving Warner's and Zaentz's lists, the Magistrate simply ordered that the Tolkien/HC Parties disclose their privileged documents, without any further legal or factual argument. In this way, the Order deprived the Tolkien/HC Parties of notice and an opportunity to be heard regarding the propriety of an *in camera* review of their privileged documents. *See e.g., Norse v. City of Santa Cruz*, 629 F.3d 966, 971-972 (9th Cir. 2010) (Due process requires that court must give notice and an opportunity to be heard before issuing a *sua sponte* order granting summary judgment); *Navellier v. Sletten*, 262 F.3d 923, 943 (9th Cir. 2001) (Due process requires that court must give notice and an opportunity to be heard before issuing *sua sponte* discovery sanction order).

Because the Order provides relief that was never requested and about which the Tolkien/HC Parties never had an opportunity to be heard, the Order should be reversed.

### C. The Order is Without Legal and Factual Support.

"While it is perhaps somewhat of a hyperbole to refer to the attorney-client privilege as 'sacred,' it is clearly one which our judicial system has carefully safeguarded with only a few specific exceptions." *Mitchell v. Superior Court*, 37 Cal.3d 591, 600 (1984). The fundamental purpose behind the privilege "is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding legal matters." *Fidelity Nat. Financial, Inc. v. National Union Fire Ins. Co.*, 2014 WL 1393743, at *10 (S.D. Cal. April 9, 2014) (internal quotation marks omitted). As such, "the

1  importance of protecting . . . communication between attorney and client . . . should
2  not be lightly disregarded." *Genentech, Inc. v. Insmed Inc.*, 442 F.Supp.2d 838, 845
3  (N.D. Cal. 2006); *see Infor Global Solutions (Michigan), Inc. v. St. Paul Fire &*
4  *Marine Ins. Co.*, 2009 WL 2390174, at *2 (N.D. Cal. Aug. 3, 2009) ("[L]oss of the
5  attorney-client privilege in a high stakes, hard-fought litigation is a severe sanction
6  and can lead to serious prejudice.") (internal quotation marks omitted).

7      Because of this strong public policy, an *in camera* review is a "generally
8  disfavored" remedy. *Newport Pac. Inc. v. Cnty. of San Diego*, 200 F.R.D. 628, 633
9  (S.D. Cal. 2001); *see OXY Resources California LLC v. Superior Court*, 115
10 Cal.App.4th 874, 895 (2004) ("In camera review of privileged documents is
11 generally prohibited because 'the privilege is absolute and disclosure may not be
12 ordered, without regard to relevance, necessity or any particular circumstances
13 peculiar to the case'") (quoting *Gordon v. Superior Court*, 55 Cal.App.4th 1546,
14 1557 (1997)); *Diamond State Ins. v. Rebel Oil Co.*, 157 F.R.D. 691, 700 (D. Nev.
15 1994) ("*In camera* review is generally disfavored."); *PHE, Inc. v. Dep't of Justice*,
16 983 F.2d 248, 253 (D.C. Cir. 1993) ("[*I*]*n camera* review is generally disfavored").
17 This is because "it is neither customary nor necessary to review the contents of the
18 communication in order to determine whether the privilege applies as the court's
19 factual determination does not involve the nature of the communications or the
20 effect of disclosure but rather the existence of the relationship at the time the
21 communication was made, the intent of the client and whether the communication
22 emanates from the client." *Cornish v. Superior Court*, 209 Cal.App.3d 467, 480
23 (1989).

24     To this end, "a court should not conduct such a review solely because a party
25 begs it to do so." *Newport Pacific*, 200 F.R.D. at 633 (quoting *Nishika v. Fuji Photo*
26 *Film Co.*, 181 F.R.D. 465, 466 (D. Nev. 1998)); *see Diamond State*, 157 F.R.D. at
27 700 n.3 ("a district court should not conduct *in camera* review solely because a
28 party begs it to do so"). Rather, because *in camera* review is an "intrusion," a court

must make sure that undertaking such a review is "justified." *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992).

In order to determine whether an *in camera* review is "justified," the Magistrate was required to follow the two-part test established by the Supreme Court in *United States v. Zolin*, 491 U.S. 554, 572 (1989). First, to the extent they sought *in camera* review, Warner and Zaentz were required to make a threshold showing of a good-faith belief that *in camera* review of the documents in question may reveal evidence to establish their claim that the documents are not privileged. *See id*. Second, to the extent Warner and Zaentz could successfully make that showing, the court was required to consider whether it is appropriate to conduct the *in camera* review based on a number of factors, including volume of materials, relative importance to the case, and the likelihood of establishing the defense. *See id*; *Genentech, Inc. v. Insmed Inc.*, 234 F.R.D.667, 671 (N.D. Cal. 2006).[2]

Bare allegations alone will not satisfy the *Zolin* standard. Instead, the "party seeking the review must make a *factual showing* sufficient to support a reasonable good faith belief that the review will reveal evidence that is not privileged." *Newport Pacific Inc.*, 200 F.R.D. at 633 (emphasis added) (internal quotation marks omitted); *see Vasudevan Software, Inc. v. Microstrategy Inc.*, 2013 WL 1366041, at *2 (N.D. Cal. April 3, 2013) ("in camera review must have a sufficient factual basis before the court will intrude into the privacy of the party asserting the privilege"). Even then, the court "must use its sound discretion to determine whether *in camera* review is appropriate under the facts and circumstances of the particular case." *Diamond State Ins.* 157 F.R.D. at 700 n.3.

The Order demonstrably does not satisfy the *Zolin* standard. To begin with,

---

[2] Although the *Zolin* court created the two-part test in the context of the crime-fraud exception, *see* 491 U.S. at 572, the Ninth Circuit has held that "the standard established in *Zolin* for crime-fraud *in camera* review applies equally well when a party seeks *in camera* review to contest assertions of the privilege." *In re Grand Jury Investigation*, 974 F.2d at 1074.

because Warner and Zaentz never even sought *in camera* review, they certainly never made any factual showing whatsoever that *in camera* review of the documents contained in their lists are likely to establish that the privilege does not apply. To the contrary, the evidence presented in connection with the Motion demonstrated that Steven Maier and Cathleen Blackburn are outside counsel to the Tolkien Parties who provide predominantly, if not exclusively, legal advice and that the Tolkien Parties and the Harper Collins parties are joint owners of property and therefore have a common interest in obtaining common legal advice. Dkt., #s 242-3, 242-4 and 242-5. As such, there is absolutely no reasons to believe that an *in camera* review will reveal any non-privileged documents. The absence of any factual showing whatsoever that these documents are likely to not be privileged demonstrates that *in camera* review is not permitted as a matter of law.

*In re Grand Jury Investigation* is instructive on this point. In that case, the Ninth Circuit affirmed a district court's decision to reject a party's request for *in camera* review, explaining:

> In this case, the [defendant's] privilege log and accompanying affidavits are sufficient to establish that the attorney-client privilege applies to the eleven withheld documents. Thus, the [plaintiff] must establish a sufficient factual basis for the court to conduct an *in camera* inspection. The [plaintiff] has failed to provide an adequate factual showing to allow review. Moreover, even if the [plaintiff] had provided a sufficient factual basis to support such a good faith belief, we would not find that the district court abused its discretion. Therefore, the court did not err in refusing to conduct a review of the documents.

974 F.2d at 1075. Here, the Tolkien/HC Parties' privilege log and evidence establish that the documents sought to be reviewed are, in fact, privileged. Just as in *In re Grand Jury Investigation,* the absence of any factual showing whatsoever

as to the need for an *in camera* review demonstrates that the Order is contrary to law.

Further, the Magistrate never satisfied his obligation to consider the relevant factors in the second part of the *Zolin* analysis. The Magistrate was required to consider factors such as the volume of materials, the relative importance of the documents to the case and the likelihood that the documents may not be privileged. *Zolin*, 491 U.S. at 572. Because the Magistrate acted *sua sponte* and never offered the parties the opportunity to address the propriety of *in camera* review, none of these factors were ever considered.

More importantly, because the Tolkien/HC Parties' privilege log is sufficient to establish a *prima facie* claim of privilege, Warner and Zaentz bear the burden to show that these factors support an *in camera* review. *See e.g., Bank of America, N.A. v. Superior Court of Orange County,* 151 Cal.Rptr.3d 526, 544 (Cal. Ct. App. 2013) (once party claiming privilege has established the prima facie elements of the privilege – a communication between an attorney and a client – party seeking production bears burden of proving the privilege does not apply); *McAdam v. State Nat. Ins. Co., Inc.*, --- F. Supp. 2d ---, 2014 WL 1614515, *2 (S.D. Cal. 2014) (same). Yet, they have offered no evidence or argument that any of the listed documents are important to the case or have any likelihood of helping them present a defense. Moreover, they certainly have offered no basis to believe that the privilege asserted on the Tolkien/HC Parties' privilege log does not apply. As such, the Magistrate had no basis on which to order that the documents be reviewed *in camera*.

Accordingly, the Order requiring the Tolkien/HC Parties to submit documents for *in camera* review does not comply with established Supreme Court precedent, is therefore contrary to law and should be reversed.

### D. The Order Violates the Discovery Cutoff.

Motions to compel discovery ordinarily must be filed sufficiently in advance

of the discovery cutoff so that they may be heard and decided prior to the discovery cutoff. *See, Days Inn Worldwide, Inc. v. Sonia Investments,* 237 FRD 395, 398 (ND TX 2006) (motion heard after the discovery cutoff was denied as untimely). Here, the Motion was set for hearing on the day before the discovery cutoff. The Magistrate issued the Interim Order before the discovery cut-off. However, the Interim Order only resolved certain issues and took other issues under submission. Warner and Zaentz then waited nearly two weeks to provide the list of documents authorized by the Interim Order. That list was provided 5 days *after* the discovery cut-off. Dkt. #285; Haye Decl., ¶ 4. The Magistrate then waited another eight (8) days before issuing the Order. Dkt. #294. Accordingly, the Order violates the discovery cutoff and should be reversed on that basis.[3]

## IV. CONCLUSION

For all of the foregoing reasons, the Tolkien/HC Parties respectfully request that the District Court reverse the Magistrate and set aside the Order as both clearly erroneous and contrary to law.

DATED: August 26, 2014    GREENBERG GLUSKER FIELDS
                          CLAMAN & MACHTINGER LLP


                          By: /s. Bonnie E. Eskenazi
                              BONNIE E. ESKENAZI (SBN 119401)

---

[3] As set forth in *Days Inn*, there are certain circumstances in which the court may consider discovery motions filed and/or heard after the discovery cutoff. 237 FRD at 398. Not only are those circumstances inapplicable here, no showing has been made to justify issuing the Order after the discovery cutoff in this case.