UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | CV 12-09912 AB (SHx) | Date | October 9, 2014 |

| | |
|---|---|
| Title: | Fourth Age Limited, et al., v. Warner Bros. Digital Distribution, Inc., et al. |

Present: The Honorable      ANDRÉ BIROTTE JR.

| | |
|---|---|
| Carla Badirian | N/A |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**       **[In Chambers] Order Re: Motion for Review of Magistrate Judge's August 12, 2014 Order**


Before the Court is a Motion for Review of Magistrate Judge's August 12, 2014, Order ("Motion," docket no. 300), filed by Plaintiffs and Counterclaim Defendants Fourth Age Limited, Priscilla Mary Anne Reuel Tolkien, as Trustee of the Tolkien Trust, The J.R.R. Tolkien Estate Ltd., Harper Collins Publishers, Ltd., Unwin Hyman Ltd. and George Allen & Unwin (Publishers), Ltd. (collectively, the "Tolkien/HC Parties").   Defendants and Counterclaim Plaintiffs the Warner Parties and the Saul Zaentz Company ("Warner" and "Zaentz," respectively) filed an Opposition and the Tolkien/HC Parties filed a Reply. The Court also reviewed the papers on the underlying Motion to Compel.   The Court heard oral argument on October 6, 2014.   For the following reasons, the Court **DENIES** the Motion and **AFFIRMS** the August 12 Order.


## I.   BACKGROUND

On June 26, 2014, Warner and Zaentz filed a Motion to Compel.   The Motion asserted that the Tolkien/HC Parties' privilege log was inadequate and, relatedly, challenged their assertion of various privileges (the attorney-client privilege, work product protection, and the common interest privilege) over certain categories of documents and

sought their production.   See Mot. Compel Documents and Supplemented Privilege Log (docket no. 242).[1]

On July 11, 2014, the Tolkien/HC Parties informed Warner and Zaentz that, upon review, a number of the documents on their privilege log were not in fact privileged.   See 07/11/2014 email from Valadez to Lens, Suppl. Lens Decl. Exh 3 (docket no. 264-1).

On July 14, 2014, Warner and Zaentz filed a Supplemental Brief (docket no. 264) in which they informed Magistrate Judge Hillman that the Tolkien/HC Parties admitted that some of the documents were not privileged, and proposed the alternative of Magistrate Judge Hillman conducting "an in camera review of all or a sampling of the logged documents. . ."   Suppl. Br. 4:21-5:6.

On July 22, 2014, Magistrate Judge Hillman issued an Order that (1) found the privilege log sufficient, and (2) ordered that Warner and Zaentz may identify a total of 150 documents on the privilege log that he would review in camera.   See July 22 Order (docket no. 280).

On August 4, 2014, Warner and Zaentz filed a Joint Submission identifying documents on the privilege log for Magistrate Judge Hillman to review in camera.   See Joint Submission (docket no. 285).

On August 5, 2014 the Tolkien/HC Parties filed a Response to the Joint Submission objecting to the submission generally and to the impending in camera review.   See Response (docket no. 289).   The Tolkien/HC Parties argued that Magistrate Judge Hillman had not yet actually decided to conduct an in camera review, and that such a review was not warranted.

On August 7, 2014, Warner and Zaentz filed an Objection to the Response, arguing that Magistrate Judge Hillman already decided to conduct an in camera review of a limited number of documents and that the Response was an improper motion for reconsideration of that issue.   See Objection (docket no. 290).

On August 12, 2014, Magistrate Judge Hillman issued an Order indicating that Warner and Zaentz's interpretation of his July 22 Order was correct.   Magistrate Judge Hillman stated that he intended to "substantively review in camera a sampling of documents.   The court's finding that Plaintiff's privilege logs are facially adequate was only the first step the court intended to undertake.   The court impliedly, and now explicitly, finds that there is justification for a limited in camera substantive review of the selected documents."   See August 12 Order (docket no. 294).   The Order also explained

---

[1]   Contrary to the  Tolkien/HC Parties' argument, the Motion to Compel did not merely challenge the adequacy of their privilege log, but also sought, in the alternative, the outright production of documents listed on that log.

that after Magistrate Judge Hillman's initial *in camera* review, he would likely conduct a hearing to afford both sides the opportunity to argue on a document-by-document basis. Magistrate Judge Hillman ordered the Tolkien/HC Parties to lodge the documents within 10 days.   Thereafter, he stayed the Order pending this Motion for Review.

The Tolkien/HC Parties seek review of Magistrate Judge Hillman's August 12 Order requiring them to lodge documents for *in camera* review, arguing that it is contrary to law and clearly erroneous in several respects.   The Court will address each argument in turn.

## II.   LEGAL STANDARD

A district court may "modify or set aside" a magistrate judge's non-dispositive pre-trial ruling only if the order is "clearly erroneous or contrary to law."   Fed. R. Civ.P. 72(a).   "The clearly erroneous standard, which applies to a magistrate judge's findings of fact, is 'significantly deferential, requiring a definite and firm conviction that a mistake has been committed.'"   Green v. Baca, 219 F.R.D. 485, 488-89 (C.D. Cal. 2003) (quoting Concrete Pipe & Prods. v.  Constr. Laborers Pension Trust, 508 U.S. 602, 623 (1993)). The contrary to law standard "permits independent [de novo] review of purely legal determinations by the magistrate judge."   Green, 219 F.R.D. at 489 (quoting F.D.I.C. v. Fidelity & Deposit Co. of Maryland, 196 F.R.D. 375, 378 (S.D.Cal.2000)).

## III.   DISCUSSION

Before reaching the substance of Magistrate Judge Hillman's Order, the Court will address the parties' threshold arguments.

### A. The Motion for Review is Timely.

Warner and Zaentz argue that the Motion is untimely.   They contend that although the Tolkien/HC Parties characterize the Motion as seeking review of the August 12 Order, it really seeks review of the July 22 Order, so it is untimely because it was filed more than fourteen days after July 22.   See Fed. R. Civ. P. 72(a) (objections to magistrate judge's order must be filed within fourteen days of service of the order).

The Court finds that the Motion is timely.   The July 22 Order reflected Magistrate Judge Hillman's intention to review documents *in camera*.   However, it wasn't until the Tolkien/HC Parties' August 5 Response that they had the opportunity to object to the proposed *in camera* review and brief the legal standard.   In the August 12 Order, Magistrate Judge Hillman rejected the Tolkien/HC Parties' arguments.   In light of the foregoing, the Court finds that Plaintiffs' Motion for Review was timely because it can reasonably be characterized as seeking review of the August 12 Order.

### B. The Tolkien/HC Parties Were Not Deprived of Due Process.

The Tolkien/HC Parties argue that the August 12 Order deprived them of due process.   They contend that because Warner and Zaentz did not expressly seek *in camera* review in their Motion to Compel, Magistrate Judge Hillman imposed that procedure *sua sponte* and they never had an opportunity to oppose it.   This position is not supported by the record.

First, Magistrate Judge Hillman did not order the *in camera* review procedure *sua sponte*; rather, he ordered it in response to Warner and Zaentz's Motion to Compel.   While it is true that Warner and Zaentz's opening argument did not expressly seek *in camera* review, it in fact sought a more severe remedy: an order requiring the Tolkien/HC Parties to outright produce several categories of documents on the ground that their claims of privilege over those documents were insupportable.   Conducting *in camera* review of certain documents to evaluate the Tolkien/HC Parties' privilege claims is a lesser remedy necessarily encompassed by the more severe remedy – production – that Warner and Zaentz sought.   Thus, even though Warner and Zaentz did not expressly seek *in camera* review in their initial argument, Magistrate Judge Hillman had the discretion to order it.

Second, even though Warner and Zaentz did not expressly seek *in camera* review in their initial argument, they did so in their Supplemental Brief filed on July 14 (docket no. 264).   The Tolkien/HC Parties counter that they had no opportunity to respond to the Supplemental Brief before the July 22 Order was issued.   But, as the Tolkien/HC Parties themselves argue, they are appealing the August 12 Order, not the July 22 Order.   And, they were heard on this issue prior to the August 12 Order: on August 5, the Tolkien/HC Parties filed their Response wherein they briefed the propriety of *in camera* review.   Magistrate Judge Hillman expressly considered the Response and rejected its arguments when he issued his August 12 Order, thus belying the Tolkien/HC Parties' claim that they were never heard on this  question before the order they are appealing (the August 12 Order) was issued.

For these reasons – because *in camera* review is an intermediate remedy necessarily put in issue by the Motion and because the Tolkien/HC Parties in fact were heard on the issue prior to Magistrate Judge Hillman's August 12 Order – the Tolkien/HC Parties' argument that ordering *in camera* review violated their due process rights is meritless.

## C. The August 12 Order Did Not Violate the July 29 Discovery Cut-Off.

The Tolkien/HC Parties also charge that Magistrate Judge Hillman's August 12 Order violates the July 29 discovery deadline.   This argument is also meritless.   The Motion to Compel was timely filed on June 26 – more than one month before the July 29 deadline.   The July 22 Order resolved certain portions of that Motion and required further proceedings as to other portions.   These further proceedings occurred after July 29.   Simply stated, requiring further action beyond the discovery deadline to resolve a timely-filed Motion to Compel was well within Magistrate Judge Hillman's discretion.

### D. The August 12 Order is Neither Contrary to Law Nor Clearly Erroneous.

After finding the Tolkien/HC Parties' privilege log adequate, Magistrate Judge Hillman determined that *in camera* review of a limited number of documents was justified. The Tolkien/HC Parties argue that the August 12 Order is contrary to law on two grounds. First, they claim that once Magistrate Judge Hillman found the privilege log adequate, the inquiry should have ended, and that therefore ordering *in camera* review was necessarily clearly erroneous.   Second, they contend that the August 12 Order is contrary to law because it failed to apply the correct legal standard.   Finally, the Tolkien/HC Parties contend that the August 12 Order is clearly erroneous because Warner and Zaentz's challenge to their privilege claims was insufficient under United States v. Zolin, 491 U.S. 554 (1989) and In re Grand Jury Investigation, 974 F.2d 1068 (9th Cir. 1992).

### 1.   That a Privilege Log is Facially Adequate Does Not Foreclose *In Camera* Review.

The Tolkien/HC Parties are simply wrong that the inquiry should have ended when Magistrate Judge Hillman found their privilege log adequate.   *In camera* review is a procedure for testing the privilege claims reflected in a facially adequate privilege log.   A finding that a privilege log is adequate merely puts the burden on the party seeking disclosure to demonstrate that *in camera* review to check prima facie valid claims of privilege is warranted.   See In re Grand Jury Investigation, 974 F.2d 1068, 1075 (9th Cir. 1992) ("the Corporation's privilege log and accompanying affidavits are sufficient to establish that the attorney-client privilege applies to the eleven withheld documents. Thus, the government must establish a sufficient factual basis for the court to conduct an *in camera* inspection."); see also Applied Med. Res. Corp. v. Ethicon, Inc., SACV 03-1329-JVS, 2005 WL 6567355 *1 (C.D. Cal. May 23, 2005) ("While the court finds that Defendant's privilege log makes out a prima facie showing of privilege, Plaintiff has succeeded in demonstrating facts sufficient to support a good faith basis for believing that some of the documents might not be privileged. Accordingly, an *in camera* inspection is warranted.").   Thus, by definition, a claim of privilege must be deemed prima facie valid before it makes sense to test it through *in camera* review.   Indeed, had Magistrate Judge Hillman found the privilege log *in*adequate, there would be no ostensibly valid privilege claims to test and he would have had no reason to order an *in camera* review.[2]

### 2.   Magistrate Judge Hillman Applied the Correct Legal Standard.

---

[2]   Had Magistrate Judge Hillman found the privilege log inadequate, the appropriate remedy would have been to order the Tolkien/HC Parties to supplement their privilege log, or to order them to produce the withheld documents.

United States v. Zolin, 491 U.S. 554 (1989) and In re Grand Jury Investigation, 974 F.2d 1068 (9th Cir. 1992) together establish the test that a judge must apply to determine whether to conduct *in camera* review of documents withheld from disclosure on privilege grounds.

### a. The **Zolin/In re Grand Jury** Test

In United States v. Zolin, the Supreme Court held that a court may conduct an *in camera* review of privileged materials to determine whether the crime-fraud exception applies, and established a two-step analysis for determining whether *in camera* review is appropriate.   First, the party seeking *in camera* review must make a minimal showing that the crime-fraud exception could apply to the privileged materials.   United States v. Zolin, 491 U.S. 554, 572 (1989).   If this initial hurdle is overcome, then the district court has the discretion to conduct an *in camera* review.   Id.   This discretionary decision turns on "the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply."   Id.

In In re Grand Jury Investigation, the Ninth Circuit held that the two-step Zolin process "applies equally well when a party seeks *in camera* review to contest assertions of [] privilege."   In re Grand Jury Investigation, 974 F.2d 1068, 1074 (9th Cir. 1992).   Thus, "[t]o empower the district court to review the disputed materials *in camera*, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged.   If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court . . . guided by the factors enumerated in Zolin."   Id. at 1075.

### b. Magistrate Judge Hillman Applied the Correct Legal Standard.

The Tolkien/HC Parties contend that Magistrate Judge Hillman did not apply the Zolin/In re Grand Jury test.   None of the Tolkien/HC Parties' arguments is persuasive.   The Court concludes that Magistrate Judge Hillman applied the correct legal standard.

The Tolkien/HC Parties first note that the August 12 Order fails to cite a standard and does not provide any reasoning.   They also contend that the underlying briefing did not address the Zolin/In re Grand Jury test.   As a result, they argue, the Court cannot tell what legal standard Magistrate Judge Hillman applied and must therefore find that the Order is contrary to law.   This argument is inconsistent with the record.

Although the August 12 Order does not identify the test by name or set forth any

reasoning, that Magistrate Judge Hillman applied the Zolin/In re Grand Jury test can be inferred from the Order and the underlying briefing. The August 12 Order reveals that Magistrate Judge Hillman assessed the adequacy of the privilege log, and then engaged in a further analysis of whether *in camera* review was justified despite the log's adequacy. See August 12 Order ("The court's finding that Plaintiff's privilege logs were facially adequate was only the first step the court intended to undertake. The court impliedly, and now explicitly, finds that there is justification for a limited in camera substantive review of the selected documents."). This process – first assessing the privilege log and then determining whether *in camera* review is nevertheless warranted – is exactly the process that the cases applying the Zolin/In re Grand Jury test undertake. See, e.g., In re Grand Jury Investigation, 974 F.2d 1074-1075 (court assessed adequacy of privilege log then analyzed whether in camera review was warranted). It is thus clear that Magistrate Judge Hillman was well-familiar with mechanics of adjudicating challenges to privilege claims even if he did not expressly identify the test he employed at every step.

It is true that Warner and Zaentz did not brief or expressly apply the Zolin/In re Grand Jury test. However, Warner and Zaentz *cited* In re Grand Jury in their July 14 Supplemental Brief when they asked for *in camera* review, and the Tolkien/HC Parties briefed the Zolin/In re Grand Jury test at length in their August 5 Response to the Joint Submission. Thus, the correct test was before Magistrate Judge Hillman when he issued the August 12 Order. In addition, the arguments and evidence that Warner and Zaentz presented to outright challenge the Tolkien/HC Parties' claims of privilege are clearly also pertinent to the Zolin/In re Grand Jury inquiry of whether there is "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." In re Grand Jury Investigation, 974 F.2d at 1075. Thus, even though Warner and Zaentz did not expressly invoke the language or the framework of the Zolin/In re Grand Jury test, Magistrate Judge Hillman could easily apply that test based on the arguments and evidence they did present.

The Court also notes that determining whether to conduct *in camera* review of ostensibly-privileged materials does not require a court to choose among several competing tests. For example, before determining the legality of a Fourth Amendment seizure, the Court must decide whether either reasonable suspicion or probable cause is the appropriate legal standard to apply. By contrast, only one test – the Zolin/In re Grand Jury test – exists to determine whether to conduct *in camera* review of ostensibly privileged documents. The papers before Magistrate Judge Hillman cited this test. Thus, although Magistrate Judge Hillman did not expressly identify the test he applied, the Court can readily infer from the Order, the process he undertook, and from the briefing that he applied the Zolin/In re Grand Jury test.

The Tolkien/HC Parties also contend that Magistrate Judge Hillman could not have applied the Zolin/In re Grand Jury test because he did not allow document-by-document briefing before ordering *in camera* review. But nothing in the cases suggests that such an onerous process is a necessary part of the test. In some of the cases the parties cited the

court did engage in a document-by-document analysis, but that was because there was only a handful of documents in issue, not because such a process is required when there are many documents in issue.   Where, as here, there are many documents in issue, a court need not apply the Zolin/In re Grand Jury test document-by-document, but instead may determine whether the test has been satisfied as to the documents overall.   See, e.g, Applied Med. Res. Corp, 2005 WL 6567355 *3 (ordering in camera review of 400-450 disputed documents without applying the Zolin test on a document-by-document basis). Here, as in Applied Med. Res. Corp., entire categories of documents are in issue. Furthermore, the case law acknowledges that some degree of speculation is inherent in the Zolin/In re Grand Jury test, thus suggesting that the test does not compel document-by-document argument.   See In re Grand Jury Investigation, 974 F.2d at 1073 ("Some speculation is required under the Zolin threshold.   In camera review is appropriate as long as the showing supports a reasonable belief 'that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.' . . . The Zolin threshold is designed to prevent 'groundless fishing expeditions,' not to prevent all speculation by the district court.") (quoting Zolin, 491 U.S. at 571, 572).[3]

Finally, the Tolkien/HC Parties argue that Magistrate Judge Hillman did not examine the discretionary factors that comprise the second part of the Zolin/In re Grand Jury test, that is, that he did not consider the volume of the materials, their importance, and the likelihood that in camera review and other evidence would undermine their privilege claims.   That Magistrate Judge Hillman considered these factors is implicit in the Orders. Cognizant of the volume of documents in issue, Magistrate Judge Hillman limited his review to a total of 150 documents and not the entire set.   The underlying briefing included substantial arguments concerning the importance of the materials to the case, and substantial evidence bearing on whether the privilege claims would hold up under in camera review.   These points comprised almost the entirety of the briefing.   Whether or not these factors are expressly identified as "the factors enumerated in Zolin," they are in substance the Zolin factors, and Magistrate Judge Hillman necessarily had them in mind when he ordered in camera review.

---

[3]   At oral argument, the Tolkien/HC Parties placed great emphasis on their position that Magistrate Judge Hillman denied them the opportunity to defend their privilege claims as to each document.   But the August 12 Order indicates that should document-by-document argument be necessary, Magistrate Judge Hillman would hold a hearing to provide that opportunity.   See August 12 Order ("After an initial in camera review of the documents, the court will likely schedule a hearing, which will afford the parties the opportunity to argue why specific documents are or are not privileged.   The court has successfully held this type of hearing in the past, without revealing the contents of any documents, while insuring that the challenging parties have sufficient information to challenge particular documents.").   Nothing in the Order suggests that Magistrate Judge Hillman would order the Tolkien/HC Parties to disclose any document without first giving them an opportunity to defend their privilege claims as to that document.

The Court therefore concludes based on the process Magistrate Judge Hillman undertook, the August 12 Order, and the briefing, that Magistrate Judge Hillman applied the Zolin/In re Grand Jury test.   The August 12 Order did not expressly state this test, but it is simply not plausible that despite being presented with the relevant arguments and on-point evidence, and despite the correct standard being cited in the briefing, Magistrate Judge Hillman somehow used some other legal standard to decide the Motion.

### 3. Magistrate Judge Hillman's Decision to Conduct *In Camera* Review Is Not Clearly Erroneous.

Magistrate Judge Hillman's decision to conduct an *in camera* review is not clearly erroneous.   Warner and Zaentz presented evidence that called the Tolkien/HC Parties' privilege claims into question, including deposition testimony revealing blanket claims of attorney-client privilege and work-product protection over documents created by Tolkien personnel who had both legal and business roles.   They also presented some evidence and argument that the claimed common interest privilege could not have applied to the entire 45 year duration of the Tolkien/HC Parties' relationship.   The foregoing well-suffices to "show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged."   As for the discretionary factors, the underlying briefing set forth the volume of documents in issue, presented arguments about the importance of the materials, and was thorough enough such that a judge could determine the likelihood of whether *in camera* inspection and other evidence would reveal whether the claimed privileges in fact apply.   As such, evidence in the record to supports Magistrate Judge Hillman's decision.   That decision was not clearly erroneous.

## IV.   CONCLUSION

For the following reasons, the Court **DENIES** the Motion for Review of Magistrate Judge's Order and **AFFIRMS** Magistrate Judge Hillman's August 12 Order in its entirety.

**CC:  Magistrate Judge Hillman**